AVENATTI & ASSOCIATES, APC
Michael J. Avenatti, State Bar No. 206929
mavenatti@eoalaw.com
Ahmed Ibrahim, State Bar No. 238739
aibrahim@eoalaw.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone:  949.706.7000
Facsimile:   949.706.7050

Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, and individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.:  2:18-cv-02217-SJO-FFM<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED JURY TRIAL PURSUANT TO SECTION 4 OF THE FEDERAL ARBITRATION ACT, AND FOR LIMITED EXPEDITED DISCOVERY**<br><br>**Hearing Date:   April 30, 2018**<br>**Hearing Time:  10:00 a.m.**<br>**Location:         Courtroom 10C** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

    A.   The Hush Agreement ......................................................................... 2

    B.   Mr. Cohen's Role and Public Statements Regarding This
        Dispute ................................................................................................ 5

    C.   The White House Denies Any Involvement With the Hush
        Agreement or A Relationship With Plaintiff ...................................... 6

    D.   Procedural Facts. .............................................................................. 7

    E.   The Parties Met and Conferred In Person Regarding the Issues
        Raised in this Motion. ....................................................................... 8

III.  ARGUMENT ............................................................................................. 9

    A.   Plaintiff Requests the Court Set a Jury Trial Pursuant to
        Section 4 of the FAA Regarding Whether an Agreement Was
        Ever Formed. ...................................................................................... 9

    B.   The Court Should Grant Plaintiff Leave to Conduct Limited
        Expedited Discovery. ....................................................................... 11

        1.   An Arbitrator Will Not Decide Whether the Dispute
            Must Be Arbitrated Because Plaintiff Contends No
            Agreement Was Formed. ....................................................... 11

        2.   Plaintiff Is Entitled to Conduct Discovery. .......................... 12

        3.   Good Cause Exists for an Order Compelling Defendants
            to Provide Expedited Discovery. ........................................... 13

            a)   The Discovery Is Needed on an Expedited Basis
                Because there is Urgency to Resolve the Question
                of Arbitrability. ......................................................... 14

            b)   The Breadth of the Proposed Discovery Is
                Reasonable. ................................................................ 14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

c)    Plaintiff Has a Valid Purpose for the Proposed Discovery. ...................................................................... 15

      (1)    The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether Mr. Trump Was Aware of, and Consented to, the Agreement .............................................. 15

      (2)    The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether the Agreement and the Arbitration Clause Had a Lawful Purpose ........................................ 18

d)    The Discovery Requests Do Not Impose an Unreasonable Burden on Defendants. .................................. 22

e)    The Fifth Factor Relating to Timing of the Discovery Weighs in Favor of Expedited Discovery. ................................................................... 24

IV.    CONCLUSION ........................................................................ 24

# TABLE OF AUTHORITIES

## Cases

Armendariz v. Found. Health Psychcare Servs., Inc.,
  24 Cal. 4th 83 (2000) ...........................................................................18

Banner Entertainment, Inc. v. Superior Court,
  62 Cal. App. 4th 348 (1998) ................................................................17

Barraza v. Cricket Wireless LLC,
  No. C 15-02471 WHA, 2015 WL 6689396 (N.D. Cal. Nov. 3, 2015) .................9, 11, 12

Bencharsky v. Cottman Transmission Sys., LLC,
  625 F. Supp. 2d 872 (N.D. Cal. 2008)...............................................22

Britton v. Co-op Banking Grp.,
  4 F.3d 742 (9th Cir. 1993) ...................................................................22

Brown v. Freese,
  28 Cal. App. 2d 608 (1938) .................................................................21

Buckeye Check Cashing, Inc. v. Cardegna,
  546 U.S. 440 (2006)..............................................................................19

Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC,
  816 F.3d 1208 (9th Cir. 2016) .............................................................17

Chaganti v. I2 Phone Int'l, Inc.,
  635 F. Supp. 2d 1065 (N.D. Cal. 2007)...............................................16

Clinton v. Jones,
  520 U.S. 681 (1997)........................................................................22, 23

Comedy Club, Inc. v. Improv W. Assocs.,
  553 F.3d 1277 (9th Cir. 2009) .............................................................11

Doherty v. Barclays Bank Delaware,
  No. 16-CV-01131-AJB-NLS, 2017 WL 588446 (S.D. Cal. Feb. 14, 2017)...................11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

Duffens v. Valenti,
    161 Cal. App. 4th 434 (2008) ....................................................................18

Esparza v. Sand & Sea, Inc.,
    2 Cal. App. 5th 781 (2016) .......................................................................18

Ferguson v. Countrywide Credit Indus., Inc.,
    No. CV00-13096AHM(CTX), 2001 WL 867103 (C.D. Cal. Apr. 23, 2001) ...............10

GIB, LLC v. Salon Ware, Inc.,
    634 F. App'x 610 (9th Cir. 2016) ...............................................................9

Goldman, Sachs & Co. v. City of Reno,
    747 F.3d 733 (9th Cir. 2014) ...................................................................11

Granite Rock Co. v. Int'l Bhd. of Teamsters,
    561 U.S. 287 (2010) ..............................................................................11

Gutierrez v. Carter Bros. Sec. Servs., LLC,
    63 F. Supp. 3d 1206 (E.D. Cal. 2014) ........................................................18

Hicks v. Citigroup, Inc.,
    No. C11-1984-JCC, 2012 WL 254254 (W.D. Wash. Jan. 26, 2012) ......................12

Infineon Techs. AG,
    No. 216CV02859CASPLAX, 2017 WL 1371247 (C.D. Cal. Mar. 17, 2017) .......passim

Kramer v. Toyota Motor Corp.,
    705 F.3d 1122 (9th Cir. 2013) ..................................................................22

McKee v. Audible, Inc.,
    No. CV 17-1941-GW(EX), 2017 WL 7388530 n. 2 (C.D. Cal. Oct. 26, 2017) ...........12

Nagrampa v. MailCoups, Inc.,
    469 F.3d 1257 (9th Cir. 2006) .............................................................19, 22

Newton v. Clearwire Corp.,
    No. 2:11-CV-00783-WBS, 2011 WL 4458971 (E.D. Cal. Sept. 23, 2011) ...............12

Nguyen v. Barnes & Noble, Inc.,
    763 F.3d 1171 (9th Cir. 2014) ..................................................................15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

NobelBiz, Inc. v. Wesson,
   No. 14cv0832 W(JLB), 2014 WL 1588715 (S.D. Cal April 18, 2014) .........................13

O'Brien v. Am. Exp. Co.,
   No. 11-CV-1822-BTM BGS, 2012 WL 1609957 (S.D. Cal. May 8, 2012) .......12, 13, 24

Plows v. Rockwell Collins, Inc.,
   812 F. Supp. 2d 1063 (C.D. Cal. 2011) ........................................................................13

R. M. Sherman Co. v. W. R. Thomason, Inc.,
   191 Cal. App. 3d 559 (1987) ........................................................................................18

Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.,
   907 F. Supp. 2d 1086 (N.D. Cal. 2012) ........................................................................13

Sanford v. MemberWorks, Inc.,
   483 F.3d 956 (9th Cir. 2007) ..................................................................................passim

Semitool, Inc. v. Tokyo Electron America, Inc.,
   208 F.R.D. 273 (N.D. Cal. 2002) .................................................................................13

Smith v. Superior Court,
   41 Cal. App. 4th 1014 (1996) .......................................................................................21

Switch, LLC v. ixmation, Inc.,
   No. 15-CV-01637-MEJ, 2015 WL 4463672 (N.D. Cal. July 21, 2015) ..................11, 15

Synergy HomeCare Franchising, LLC v. Aviatech, LLC,
   No. CV-12-1601-PHX-SMM, 2013 WL 12284536 (D. Ariz. Mar. 12, 2013) ..............10

Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,
   925 F.2d 1136 (9th Cir. 1991) ....................................................................................9, 11

Weddington Prods., Inc. v. Flick,
   60 Cal. App. 4th 793 (1998) .........................................................................................16

Williamson v. Superior Court,
   21 Cal. 3d 829 (1978) ...................................................................................................21

**<u>Statutes</u>**

52 U.S.C. § 30101(8)(A)(i) ................................................................19

52 U.S.C. § 30104(b)(3)(A), (4), (5) ..........................................19, 20

52 U.S.C. §§ 30116(a)(1)(A), (c) .....................................................19

9 U.S.C. § 2 ......................................................................................19

9 U.S.C. § 4 .................................................................2, 9, 10, 14

Cal. Civ. Code § 1550 .................................................................15, 18

Cal. Civ. Code § 1558 .......................................................................16

Cal. Civ. Code § 1580 .......................................................................16

Cal. Civ. Code § 1542 .........................................................................4

N.Y. Penal Law § 255.17 ..................................................................21

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(1) .....................................................................12

**<u>Regulations</u>**

11 C.F.R. § 100.52(d)(1) ...................................................................19

11 C.F.R. § 104.3(a)(3)(ii) .................................................................19

**<u>Other Authorities</u>**

Restatement (First) of Contracts § 557 (1932) ..................................21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

# I.    INTRODUCTION

This case centers on a dispute concerning whether a settlement agreement, containing a mutual release and terms of non-disclosure, was ever formed between the parties.  To be clear, Plaintiff Stephanie Clifford, also known as Stormy Daniels ("Plaintiff"), contends she is not bound by any of the terms and conditions of the agreement, including the provision of the agreement providing for arbitration, for a variety of reasons.

At issue is an agreement entitled "Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement" (hereafter, the "Hush Agreement" or "Agreement").  Plaintiff contends the Hush Agreement was prepared and presented by Michael Cohen, Defendant Donald Trump's personal attorney and "fixer," to Plaintiff in an effort to silence Plaintiff (who had an intimate relationship with Mr. Trump) and thus help ensure Mr. Trump won the 2016 Presidential Election.  The Hush Agreement was signed by Plaintiff and by Mr. Cohen on behalf of Defendant Essential Consultants, LLC ("EC"), an entity formed just weeks before the election.  However, it was not signed by Mr. Trump, a party to the Agreement who would owe important contractual obligations to Plaintiff, including a release, covenant not to sue, and representations and warranties, were the agreement fully executed.

In public statements made by the White House purportedly on his behalf, the White House denies any involvement in the Hush Agreement or having any relationship with Plaintiff.  Mr. Cohen in his public statements has also claimed that the Hush Agreement and payment to Plaintiff was all carried out on his own without Mr. Trump's knowledge or involvement.  However, Mr. Trump has never personally addressed any of the issues concerning the Hush Agreement in public, let alone under oath.

EC intends to file a Petition to Compel Arbitration of this matter with the support of Mr. Trump.  Plaintiff, however, contends no Agreement was ever formed between the parties.  More specifically, as detailed in her First Amended Complaint, Plaintiff contends that (1) the Hush Agreement was never formed between the parties, and (2)

even if such an agreement had been formed, there was no lawful object or purpose for the Hush Agreement in general, or the confidential arbitration clause in particular.

Contrary to the position of the Defendants, this Court, not an arbitrator, must decide the issue as to whether the contract as a whole was entered into. Sanford v. MemberWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007) ("[C]hallenges to the existence of a contract as *a whole* must be determined by the court prior to ordering arbitration."); 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."). Further, Plaintiff is entitled to a summary jury trial on an expedited basis to resolve this dispute. 9 U.S.C. § 4.

By this Motion, Plaintiff seeks two forms of relief. First, Plaintiff seeks an order setting a jury trial no later than 90 days from the date of the Court's order deciding this motion, or as soon thereafter as is convenient to the Court.

Second, Plaintiff seeks an order granting her leave to conduct limited expedited discovery in connection with opposing EC's forthcoming Petition to Compel Arbitration and to present evidence in support of her position at the aforementioned trial pursuant to 9 U.S.C. § 4. Specifically, Plaintiff requests: (1) a deposition of Mr. Trump of no greater than two (2) hours, (2) a deposition of Mr. Cohen of no greater than two (2) hours, and (3) no more than ten (10) targeted requests for production of documents directed to Mr. Trump and Mr. Cohen on various topics relating to the Agreement.

## II.   FACTUAL BACKGROUND

### A.   The Hush Agreement

The agreement at issue in this action is entitled "Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement." A true and correct copy of the agreement, referred to hereafter as the "Hush Agreement" or simply the "Agreement," is attached to the First Amended Complaint as

Exhibit 1.   The following is an overview of selected relevant provisions of the Hush Agreement.

By design, the Hush Agreement used an alias to refer to Plaintiff, and an alias believed to be Donald Trump.  Specifically, the parties named in the Hush Agreement are (1) "Peggy Peterson" or "PP," (2) "David Dennison" or "DD," and (3) "EC, LLC." [Dkt No. 14, Ex. 1 (the "Agreement") at ¶1.1.]   A Side Letter Agreement, attached to the Complaint as Exhibit 2 and attached to the Hush Agreement as Exhibit A, indicates "Peggy Peterson" was used as a pseudonym for Plaintiff Ms. Clifford. [Dkt No. 14, Ex. 2 (the "Side Agreement") at p. 1.]   Although redacted, "David Dennison" and "DD" are believed to be aliases used by the drafter of the Agreement to refer to Mr. Trump.  [Dkt No. 14 (First Amended Complaint) (hereafter, the "FAC"), ¶18.]

The Hush Agreement states that "this Agreement, *when signed by all Parties*, is a valid and binding agreement, enforceable in accordance with its terms."  [Agreement at ¶8.6 (emphasis added).]   However, the Agreement was *not* signed by all parties.  The Agreement contains signature blocks for DD, PP, and EC, LLC.  [Agreement at p. 14.] The Agreement was signed by Plaintiff on October 28, 2016 above the signature line for PP.  [Id.]  It is believed that Michael Cohen signed the Agreement on behalf of EC, LLC. [Id.]  However, there is no signature present for DD.  [Id.]  Significantly, the signature blocks are preceded by the following language:  "**IN WITNESS WHEREOF**, by their signatures below, the Parties each have approved and executed this Agreement as of the effective date first set forth above."  [Id.]

The Agreement also contains signature lines for the parties' attorneys to sign the Agreement "As to Form."  [Agreement at p.15.]   The Agreement contains a signature from the attorney for "PP."   [Id.]  Mr. Cohen signed the Agreement as the attorney for Essential Consultants, LLC.  [Id.]  However, the signature block for the "Attorney for DD" is blank.  [Id.]

Similarly, Plaintiff signed the Side Letter Agreement on October 28, 2016, where she is listed as "PEGGY PETERSON a.k.a. Stephanie Gregory Clifford a.k.a. Stormy Daniels." [Side Agreement at p.2.]   The space above the signature for "DAVID DENNISON," however, is left blank.  [Id.]  The Side Letter Agreement is also signed by Keith Davidson, the attorney for Plaintiff in connection with the Hush Agreement.  [Id.] It also contains an additional signature on behalf of a person whose identity is redacted. [Id.]  Similar to the signature section of the Hush Agreement, the signatures in the Side Letter Agreement are preceded by the following language:  "By signing below, each of the Parties signifies their agreement to the terms hereof and each of their respective counsel signify their approval as to the form of this letter agreement." [Id.]

As noted above, the Agreement includes in its title the fact that it is a "Settlement Agreement and Mutual Release."  [Dkt. No. 14, Ex. 1 at p. 0.]  Consistent with this title, the Agreement defines potential claims of PP (i.e., Plaintiff) and DD (believed to be Mr. Trump) as the "PP Claims" and the "DD Claims," respectively.  [Id., ¶¶2.2(a), 2.2(b).] As reflected in the Agreement, the obligations of Plaintiff were conditioned upon DD's (Mr. Trump's) agreement to release Plaintiff of liability for these claims, and recognizes the parties' desire to avoid "potential litigation[.]"  [Id., ¶2.5.]  Paragraph 6.1 of the Agreement contains DD's obligation to release Plaintiff of certain claims.  [Id., ¶6.1.] Paragraph 6.4 of the Agreement contains a California Civil Code section 1542 waiver. [Id., ¶6.4.]

Paragraphs 4.3(a) & (b) list "Representations & Warranties and Agreements By DD."  [Id., ¶4.3(a).]  It provides that DD agrees to refrain from "pursuing any civil action against PP" for any attempts to "sell, exploit, and/or disseminate the Property [as defined elsewhere] prior to the date of this Agreement" and that DD will refrain "from disclosing PP's name to the authorities" absent a direct inquiry from law enforcement.  [Id., ¶4.3(b).]  Paragraph 4.3(a) states that these "agreements, representations, warranties and representations are made by DD as material inducements to PP to enter into this

Agreement, and each Party acknowledges that she/he is executing this Agreement in reliance thereon[.]" [Id., ¶4.3(a).]

Pursuant to the Agreement, *EC is given no rights to enforce the Agreement against Plaintiff*. To the contrary, all such rights are vested *exclusively with DD*. This includes the right to compel arbitration. Indeed, the arbitration clause applies only to disputes arising between DD and Plaintiff and makes no mention of EC. [Agreement at ¶5.2.]

Similarly, the Agreement reflects that Plaintiff's various confidentiality obligations and duties to transfer property are not owed to EC, but rather run exclusively from Plaintiff to DD. [Id., ¶4.3.3.] Further, there is no release from EC, or given to EC, in the Agreement. [Id., ¶¶4.3.3-4.4.1.] In fact, other than the requirement imposed on EC to make payment to Plaintiff, the Agreement makes very little reference to EC. [See id., ¶3.0 (regarding EC's obligation to pay to PP $130,000).]

Nothing in the Agreement refers to EC or Mr. Cohen as the agent, attorney, or representative of DD or David Dennison, or that EC or Mr. Cohen were acting in any way on behalf of DD or David Dennison.

## B.    Mr. Cohen's Role and Public Statements Regarding This Dispute.

As alleged in the Complaint, Michael Cohen is an attorney licensed in the State of New York. [FAC, ¶16.] Mr. Cohen worked as the "top attorney" at the Trump Organization from 2007 until after the election and presently serves as Mr. Trump's personal attorney. [Id.] He is also generally referred to as Mr. Trump's "fixer." [Id.]

Mr. Cohen is alleged to have prepared the Hush Agreement and presented it to Plaintiff. [Id., ¶¶17-18.] Mr. Cohen is also alleged to have formed EC on October 17, 2016, just weeks before the 2016 presidential election. [Id., ¶18.]

On or about February 13, 2018, Mr. Cohen issued a public statement regarding Ms. Clifford, the existence of the Hush Agreement, and details concerning the Hush Agreement. Mr. Cohen stated in part: "In a private transaction in 2016, I used my own

personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford. Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly." [FAC, ¶27.]

On March 9, 2018, regarding the $130,000 payment, Mr. Cohen said "[t]he funds were taken from my home equity line and transferred internally to my LLC account in the same bank." [Declaration of Michael Avenatti in Support of Motion for Expedited Jury Trial and Discovery ("Avenatti Decl."), Ex. A.] An e-mail confirming the transfer by Mr. Cohen to Plaintiff's attorney in connection with the Agreement, however, showed Mr. Cohen used his Trump Organization e-mail account to conduct the transfer. [Id.]

In a March 19, 2018 *Vanity Fair* article, Mr. Cohen again suggested Mr. Trump had no knowledge of the Hush Agreement or hush payment. [Avenatti Decl., Ex. B.] In it, he is quoted as saying: "What I did defensively for my personal client, and my friend, is what attorneys do for their high-profile clients." [Id.] The article also states that Mr. Cohen "claims that Trump did not know that he had paid Clifford the $130,000" and that Mr. Cohen and his counsel determined "there is no bar-association violation for his action." [Id.]

C. **The White House Denies Any Involvement With the Hush Agreement or A Relationship With Plaintiff.**

White House and campaign representatives purportedly speaking on Mr. Trump's behalf, have denied that Mr. Trump had any knowledge of, or involvement with, the Hush Agreement. In fact, they even deny the existence of any intimate relationship between Plaintiff and Mr. Trump. Mr. Trump, however, has never addressed the subject directly.

Most recently, on March 26, 2018, following the airing of an interview of Plaintiff on *60 Minutes* the night before, White House Deputy Press Secretary Raj Shah, on behalf of the White House and Mr. Trump, again denied all of Plaintiff's allegations. [Avenatti

Decl., Ex. C.]   However, many things that bear directly on the formation of the Agreement and its existence—issues soon to be before the Court—remain uncertain.   By way of example only, it continues to remain unclear:

- whether Mr. Trump is "David Dennison" or "DD" as referenced in the Hush Agreement;

- whether Mr. Trump knew about the Hush Agreement;

- whether Mr. Trump knew about the hush payment;

- whether the hush payment was made with Mr. Trump's own money, money from his presidential campaign, money from The Trump Organization, another source linked to Mr. Trump, or from Mr. Cohen;

- what was the scope of Mr. Trump's participation or involvement in the Hush Agreement?

- what was Mr. Cohen's role?

- what is Essential Consultants, LLC, who are its members, and what other business does it conduct?

- whether Mr. Trump approved or authorized Mr. Cohen's actions;

- whether Mr. Trump consented to be a party to the Hush Agreement;

- whether Mr. Trump consented to the contractual obligations imposed on him by the Hush Agreement;

- if so, whether he actually communicated any assent to the Hush Agreement to Plaintiff given that he never signed the Hush Agreement?;

- whether Mr. Trump was personally involved in an effort to silence Plaintiff in order to benefit his presidential campaign by preventing voters from hearing Plaintiff speak publicly;

- who (if anyone) was acting as Mr. Trump's attorney in connection with the Agreement?

**D.    Procedural Facts.**

On March 6, 2018, Plaintiff filed a complaint to initiate this litigation in the California Superior Court for the County of Los Angeles.  [Dkt No. 1 at Ex. 1.]

On March 16, 2018, defendant EC filed a Notice of Removal to remove the action from the Superior Court to this Court.  [Dkt No. 1.]  In it, EC states that it "intends to file

-7-

a Petition to Compel Arbitration with this Court at the earliest possible time permitted by the Federal Rules of Civil Procedure and Local Rules of this Court, to compel this action to the Pending Arbitration Proceeding." [Dkt No. 1 at p. 3.]

The same day, defendant Donald Trump filed a joinder in the Notice of Removal filed by EC.  [Dkt No. 5.]  In it, Mr. Trump states he "intends to join in EC's anticipated Petition to Compel Arbitration under the Arbitration Agreement."  [Dkt No. 5 at 2.]

On March 26, 2018, Plaintiff filed a First Amended Complaint.  [Dkt No. 14.]  In it, Plaintiff asserts a cause of action for Declaratory Judgment against defendants Donald J. Trump a.k.a. David Dennison, and Essential Consultants, LLC, along with a claim for defamation against Michael Cohen.  [FAC, ¶¶36-71.]  Plaintiff seeks a declaration that the Hush Agreement and Side Agreement were never formed and thus do not exist. [FAC, ¶41.]  Plaintiff contends that as a result, she is not bound by any of the duties, obligations, or conditions set forth in those agreements.  [Id.]  In the alternative, Plaintiff seeks an order declaring the Hush Agreement and Side Letter Agreement invalid, unenforceable, or void under the doctrine of unconscionability.  [Id., ¶¶42-43.]  In the further alternative, Plaintiff seeks an order declaring the Hush Agreement and Side Letter Agreement invalid, unenforceable, or void because they are illegal and because they violate public policy.  [Id., ¶44-55.]  Separately, Plaintiff seeks an order declaring that no agreement to arbitrate exists between Plaintiff and EC, [id., ¶56], and that the arbitration clause is void *ab initio* because it is unconscionable, illegal, and violates public policy. [Id., ¶¶57-61.]

### E.   The Parties Met and Conferred In Person Regarding the Issues Raised in this Motion.

On March 21, 2018, the parties met and conferred in person concerning the relief requested in this Motion.  [Avenatti Decl., ¶10.]  Specifically, Plaintiff's counsel advised counsel for Defendants that Plaintiff sought limited discovery on an expedited basis as follows:  (1) a deposition of Mr. Trump of no greater than two (2) hours, (2) a deposition

of Mr. Cohen of no greater than two (2) hours, and (3) no more than ten (10) targeted requests for production of documents directed to Mr. Trump and Mr. Cohen on various topics relating to the Agreement.  [Avenatti Decl., ¶6.]  Defendants contend that no discovery should be conducted in the case, and no trial should be set, because the case should be summarily ordered to arbitration.  [Id.]  The parties, therefore, were unable to successfully resolve their dispute.  [Id.]

## III.   ARGUMENT

### A.   Plaintiff Requests the Court Set a Jury Trial Pursuant to Section 4 of the FAA Regarding Whether an Agreement Was Ever Formed.

Under the Federal Arbitration Act (FAA), "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4; see also Sanford v. MemberWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007) ("[W]hen one party disputes 'the making of the arbitration agreement,' the Federal Arbitration Act requires that 'the court [ ] proceed summarily to the trial thereof' before compelling arbitration under the agreement.") (brackets in original); GIB, LLC v. Salon Ware, Inc., 634 F. App'x 610, 611 (9th Cir. 2016) (where triable issues existed on whether agreement was formed, district court erred in compelling arbitration without first proceeding under Section 4 of the FAA to resolve the dispute).  The Ninth Circuit has "interpreted this language to encompass not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause." Sanford, 483 F.3d at 962 (citing Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140–41 (9th Cir. 1991)).  For this reason, "challenges *to the existence of a contract as a whole* must be determined by the court prior to ordering arbitration."  Id. (emphasis added).

"If no jury trial be demanded . . . , the court shall hear and determine such issue." 9 U.S.C. § 4.  If on the other hand, one party demands a jury trial in a timely fashion,

-9-

"upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose." Id.; see also Barraza v. Cricket Wireless LLC, No. C 15-02471 WHA, 2015 WL 6689396, at *6 (N.D. Cal. Nov. 3, 2015) (setting "summary jury trial" less than 45 days from date of order to determine whether plaintiffs agreed to terms and conditions contained in guide enclosed with their wireless phones); Synergy HomeCare Franchising, LLC v. Aviatech, LLC, No. CV-12-1601-PHX-SMM, 2013 WL 12284536, at *3 (D. Ariz. Mar. 12, 2013) (denying motion to compel arbitration pending a jury trial and setting the "matter for a pre-trial status hearing in order to schedule any necessary discovery, depositions, etc., prior to trial on the existence of an arbitration agreement . . ."); Ferguson v. Countrywide Credit Indus., Inc., No. CV00-13096AHM(CTX), 2001 WL 867103, at *1 (C.D. Cal. Apr. 23, 2001), aff'd, 298 F.3d 778 (9th Cir. 2002) (recognizing that the "plaintiff has raised a genuine dispute regarding whether an arbitration agreement governs her claims and is therefore entitled to a trial of the issue" but declining to order a trial because, even assuming an agreement, the claims were not required to be arbitrated). "If the jury find that no agreement in writing for arbitration was made . . . the proceeding shall be dismissed." 9 U.S.C. § 4.

Here, Plaintiff has demanded a jury trial pursuant to section 4 of the FAA. [FAC at p. 18.]  Moreover, Plaintiff disputes the "making of the arbitration agreement[.]"  9 U.S.C. § 4; Sanford, 483 F.3d at 962; see also FAC, ¶¶36-57.  Such a trial "shall proceed summarily" upon a showing that the making of the arbitration agreement is at issue.  9 U.S.C. § 4.  Therefore, Plaintiff is entitled to an expedited jury trial regarding whether the Hush Agreement was ever formed.  Plaintiff requests that the Court set the trial within ninety (90) days from the date of the Court's order deciding this Motion, or as soon thereafter as is convenient with the Court's schedule.

**B.**   **The Court Should Grant Plaintiff Leave to Conduct Limited Expedited Discovery.**

    **1.**   **An Arbitrator Will Not Decide Whether the Dispute Must Be Arbitrated Because Plaintiff Contends No Agreement Was Formed.**

Based on the parties' meet and confer discussion, Plaintiff anticipates Defendant will argue that discovery should not be ordered because the arbitrator, not the Court, will resolve the parties' dispute over whether an agreement exists.  Defendants are incorrect.

It is axiomatic that "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit."  Sanford, 483 F.3d at 962.  Thus, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."  Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1287 (9th Cir. 2009) (citation omitted).  Importantly, "[i]f the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply."  Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) (emphasis in original).

For this reason, although it is true that questions "regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator," this is not so for "challenges to the *existence* of a contract as a whole"— which "must be determined by the court prior to ordering arbitration."  Sanford, 483 F.3d at 962 (emphasis in original); see also Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); Three Valleys, 925 F.2d at 1140–41 ("[A] party who contests the *making of a contract* containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate.").

District courts in this Circuit are in accord.  Doherty v. Barclays Bank Delaware, No. 16-CV-01131-AJB-NLS, 2017 WL 588446, at *3 (S.D. Cal. Feb. 14, 2017) ("Plaintiff is challenging the existence of a contract with Defendant. Therefore, following

-11-

relevant Ninth Circuit case law, the Court must first decide whether a valid contract exists."); <u>Barraza</u>, 2015 WL 6689396, at *3 (the "existence of a contract as a whole must be determined by the court prior to ordering arbitration" according to state law principles governing the formation of contracts) (quoting <u>Sanford</u>, 483 F.3d at 962); <u>Switch, LLC v. ixmation, Inc.</u>, No. 15-CV-01637-MEJ, 2015 WL 4463672, at *3 (N.D. Cal. July 21, 2015) (same).

Therefore, Defendants' contention that discovery should be denied because the arbitrator will resolve the parties' dispute concerning the formation of the Hush Agreement is without merit.

### 2.   Plaintiff Is Entitled to Conduct Discovery.

As a logical and necessary corollary of Plaintiff's right to a jury trial in the context of this dispute and of opposing EC's impending Petition to Compel Arbitration, Plaintiff is also entitled to conduct discovery.  Permitting a party to conduct discovery in conjunction with an opposition to a motion to compel arbitration "is consistent with the FAA and within the Court's discretion."  <u>Hicks v. Citigroup, Inc.</u>, No. C11-1984-JCC, 2012 WL 254254, at *2 (W.D. Wash. Jan. 26, 2012).  For that reason, "[c]ourts have permitted limited discovery as to arbitrability where parties have placed the validity of the arbitration agreement in issue."  <u>Id.</u> at *1; <u>see also</u> <u>Barraza</u>, 2015 WL 6689396, at *6 (ordering "summary jury trial" and that "[b]oth sides should cooperate in expedited discovery on the factual matters in play on this motion, and failure to cooperate may lead to preclusion or adverse inferences as a sanction.").

Such discovery is appropriate because "it is relevant to a 'claim or defense.'" <u>Newton v. Clearwire Corp.</u>, No. 2:11-CV-00783-WBS, 2011 WL 4458971, at *6 (E.D. Cal. Sept. 23, 2011) (quoting Fed. R. Civ. P. 26(b)(1)).  More specifically, courts will permit discovery that "is relevant to the formation or making of the agreement."  <u>O'Brien v. Am. Exp. Co.</u>, No. 11-CV-1822-BTM BGS, 2012 WL 1609957, at *1 (S.D. Cal. May 8, 2012); <u>McKee v. Audible, Inc.</u>, No. CV 17-1941-GW(EX), 2017 WL 7388530, at *3

n. 2 (C.D. Cal. Oct. 26, 2017) (permitting discovery on issue of "mutual assent" in connection with motion to compel arbitration).

Similarly, when the party opposing arbitration raises unconscionability arguments, "the parties must be afforded an opportunity to gather the appropriate evidence." <u>Plows v. Rockwell Collins, Inc.</u>, 812 F. Supp. 2d 1063, 1069–70 (C.D. Cal. 2011) (granting parties four months to conduct discovery on enforceability of arbitration agreement); <u>O'Brien</u>, 2012 WL 1609957, at *2 ("Based on [the] available defenses to the validity of an arbitration agreement, courts have permitted parties opposing a motion to compel arbitration to take discovery on the unconscionability of an arbitration provision").

Accordingly, Plaintiff is entitled to conduct discovery in connection with EC's planned Petition to Compel Arbitration and the summary jury trial regarding whether an agreement was formed.

### 3. Good Cause Exists for an Order Compelling Defendants to Provide Expedited Discovery.

Having established Plaintiff is *entitled* to conduct discovery, the next question is whether the request for the limited discovery should be *expedited.* As shown below, Plaintiff's request should be granted.

To obtain discovery on an expedited basis, Plaintiff must show "good cause." <u>Semitool, Inc. v. Tokyo Electron America, Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause" exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." <u>Id.</u>

"In considering whether good cause exists, factors courts may consider include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." <u>MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG</u>, No.

216CV02859CASPLAX, 2017 WL 1371247, at *2 (C.D. Cal. Mar. 17, 2017) (citing Rovio Entertainment Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012); see also NobelBiz, Inc. v. Wesson, No. 14cv0832 W(JLB), 2014 WL 1588715, at *1 (S.D. Cal April 18, 2014).

Here, Plaintiff seeks the following limited discovery on an expedited basis:

1.    A deposition of Mr. Trump of no greater than two (2) hours;

2.    A deposition of Mr. Cohen of no greater than two (2) hours;

3.    A maximum of ten (10) targeted requests for production of documents directed to Mr. Trump and Mr. Cohen on various topics relating to the Agreement.

Good cause exists for this requested discovery for the reasons stated below.

### a)    The Discovery Is Needed on an Expedited Basis Because there is Urgency to Resolve the Question of Arbitrability.

The first factor courts may consider in the "good cause" analysis is "whether a preliminary injunction is pending[.]"  MACOM, 2017 WL 1371247, at *2.  Although no motion for preliminary injunction has been filed in this case, this factor nevertheless weighs in favor of granting expedited discovery.  Specifically, there is urgency to resolving the present dispute over arbitrability because EC—without any notice to Plaintiff—initiated an arbitration proceeding in Los Angeles before ADR Services and obtained a temporary restraining order on an *ex parte* basis (again, without any notice to Plaintiff) purporting to restrict Plaintiff from speaking.  [Avenatti Decl., ¶5.]  Because Defendants threaten to enforce the order (which Plaintiff does not recognize as valid because, among other reasons, there was no agreement to arbitrate formed between the parties), it is important that the FAA section 4 trial be set as soon as possible, and that discovery be ordered on an expedited basis to use at the trial.

### b)    The Breadth of the Proposed Discovery Is Reasonable.

The second factor the Court may consider in the "good cause" analysis is the "breadth of the discovery request" at issue.  MACOM, 2017 WL 1371247, at *2.

-14-

Here, Plaintiff makes very modest, limited, and targeted discovery requests. Although entitled to seven (7) hours of deposition for each witness, Plaintiff requests only two (2) hours to depose Messrs. Trump and Cohen, a small fraction of the time she is allotted under Rule 30. Plaintiff also does not seek broad document discovery. Plaintiff intends to propound no more than ten (10) document requests narrowed in scope by time period and subject matter.

### c)   Plaintiff Has a Valid Purpose for the Proposed Discovery.

The third factor is the "purpose for requesting the expedited discovery." <u>MACOM</u>, 2017 WL 1371247, at *2. This factor is also met. Simply stated, the purpose of the expedited discovery is to enable Plaintiff to oppose EC's Petition to Compel Arbitration. As explained below, the requested discovery is narrowly targeted to establishing that (1) the Hush Agreement was never formed between the parties, and (2) even if such an agreement had been formed, there was no lawful purpose for the Hush Agreement in general, or the confidential arbitration clause in particular. There are several examples of factual issues likely to arise which demonstrate why such expedited discovery will be necessary.

### (1)   The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether Mr. Trump Was Aware of, and Consented to, the Agreement

The first reason why the requested discovery has a valid purpose is that there is likely to be a factual dispute between the parties regarding whether Defendant Trump was aware of the Hush Agreement, whether he was a party to the Agreement, and whether he ever consented to the Agreement. This issue goes directly to whether a valid contract was ever in fact formed between the parties. "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" <u>Nguyen v. Barnes & Noble, Inc.</u>, 763 F.3d 1171, 1175 (9th Cir. 2014). The elements "essential to the existence of a contract" are as

follows: (1) that the parties are capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.  Cal. Civ. Code § 1550; see also Switch, 2015 WL 4463672, at *4.  Consent is an essential element.  Id.

Here, statements in the public record from the White House and Mr. Cohen show in stark terms why EC's Petition to Compel Arbitration cannot possibly be decided without facts and evidence, and thus, discovery.  Reading these statements at face value, both the White House (theoretically on behalf of Mr. Trump) and Michael Cohen appear to call into question whether Defendant Trump knew of the Hush Agreement, whether he consented to it, whether he authorized it, and, more fundamentally, whether he even had any relationship at all with Plaintiff.[1]

For his part, Mr. Cohen has suggested that he paid the $130,000 to Plaintiff out of his own pocket (through a home equity line of credit), that he did not make Mr. Trump aware of what he was doing, and that he did it as a favor to Mr. Trump as a "friend." [Avenatti Decl., Exs. A-B.]   Indeed, if Mr. Trump was completely unaware of Mr. Cohen's actions, the question naturally arises as to how it would be possible for a "meeting of the minds" to have occurred between parties where one of the parties does not even know about the existence of the agreement?  Chaganti v. I2 Phone Int'l, Inc., 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007) ("In order for a contract to form, there must be a meeting of the minds with an intent to be bound by a legally enforceable agreement."); Cal. Civ. Code § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense."); Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 810 (1998) ("The parties' outward manifestations must show that the parties all agreed upon the same thing in the same sense.") (quoting Cal. Civ. Code § 1580). Therefore, Plaintiff must be permitted to request documents from Defendants and to

---

[1] Indeed, Defendants will not even confirm or deny whether the "David Dennison" mentioned in the Agreement is Mr. Trump.  See Cal. Civ. Code § 1558 ("It is essential to the validity of a contract, not only that the parties should exist, *but that it should be possible to identify them*.") (emphasis added).

-16-

cross-examine Mr. Trump and Mr. Cohen at a deposition regarding these topics that are at the heart of whether an agreement was ever formed.

Moreover, the absence of Mr. Trump's signature is a highly relevant topic of discovery in this proceeding.  This is particularly so where, as here, the Agreement *requires* the signature of all parties as a condition to it becoming valid and binding. [Agreement at ¶8.6 ("[T]his Agreement, *when signed by all Parties*, is a valid and binding agreement, enforceable in accordance with its terms.") (emphasis added).]  See Banner Entertainment, Inc. v. Superior Court, 62 Cal. App. 4th 348, 358 (1998) ("When it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created.").  Moreover, by failing to sign the Agreement, Mr. Trump failed to supply essential consideration to Plaintiff in the form of a release, covenant not to sue, and representations and warranties.  [See Agreement at ¶¶2.3, 2.5, 4.3, 8.6.]  See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208, 1212 (9th Cir. 2016) ("[W]here the parties to a 'contract' have not mutually consented to be bound by their agreement, they have not formed a true contract."); Banner, 62 Cal. App. 4th at 362 (reversing order compelling arbitration on the grounds that in the absence of a signature, there was no agreement at all.).

Therefore, the lack of a signature from Mr. Trump, along with his testimony and Mr. Cohen's testimony explaining why he did not sign the Agreement when the Agreement plainly included a place for his signature, is an unmistakably relevant area of inquiry in connection with resolving EC's Petition to Compel Arbitration.

Further, the source of funds for the $130,000 payment is highly relevant to the Petition to Compel Arbitration.  If Mr. Trump did not supply the funds or did not even know about the funds, this would be another relevant fact demonstrating that he never

-17-

consented to the Hush Agreement.  On the other hand, if Mr. Trump (or The Trump Organization) *is* the source of funds for the $130,000 hush payment, then Mr. Trump may be said to have consented to the terms of the Agreement.

Finally, if Mr. Trump *was* aware of the Hush Agreement, given that he never signed it, Plaintiff must be permitted to explore through document demands and deposition testimony how he claims he communicated his acceptance and assent of the Agreement, including his assent to the terms requiring him to provide Plaintiff with a release of claims and a covenant not to sue.  Esparza v. Sand & Sea, Inc., 2 Cal. App. 5th 781, 788 (2016) (the "consent of the parties to a contract must be communicated by each party to the other.").

> **(2)    The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether the Agreement and the Arbitration Clause Had a Lawful Purpose**

In addition to discovery on the question of whether an agreement was formed in light of Mr. Trump's failure to consent to the Agreement, discovery concerning whether there was a lawful purpose to the Agreement as a whole (or to the confidential arbitration clause more specifically) is also highly probative of whether a contract was formed.  Cal. Civ. Code § 1550 (contract must have a "lawful object" which is "essential to the existence of a contract").

The illegality of a contract "voids the entire contract, including the arbitration clause."  Duffens v. Valenti, 161 Cal. App. 4th 434, 454 (2008); see also R. M. Sherman Co. v. W. R. Thomason, Inc., 191 Cal. App. 3d 559, 563 (1987) ("If the contract was truly void it created no right or claim whatsoever. . . . [I]t binds no one and is a mere nullity.") (internal quotation marks omitted).  Thus, for example, in Gutierrez v. Carter Bros. Security Services, the district court concluded, in part, that "if a contract's 'central purpose' is 'tainted with illegality,' then the contract as a whole is unenforceable" and thus denied a motion to compel arbitration.  Gutierrez v. Carter Bros. Sec. Servs., LLC,

63 F. Supp. 3d 1206, 1214 (E.D. Cal. 2014) (quoting <u>Armendariz v. Found. Health
Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 124 (2000))

Under federal law (including the FAA), the legality of the arbitration provision is
to be decided by the Court, not the arbitrator.  <u>See Nagrampa v. MailCoups, Inc.</u>, 469
F.3d 1257, 1264 (9th Cir. 2006) ("When the crux of the complaint is not the invalidity of
the contract as a whole, but rather the arbitration provision itself, then the federal courts
must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C.
§ 2 of the FAA.").  In <u>Buckeye Check Cashing v. Cardegna</u>, the Supreme Court held that
"a challenge to the validity of the contract as a whole" based on illegality "and *not
specifically to the arbitration clause*, must go to the arbitrator." <u>Buckeye Check Cashing,
Inc. v. Cardegna</u>, 546 U.S. 440, 449 (2006) (emphasis added).

Here, Plaintiff's challenge to the lawful purpose of the contract is not simply to the
legality of the contract as a whole.  Rather, the *arbitration clause itself* does not have a
lawful purpose.  [FAC, ¶¶57-61.]  Specifically, under the Federal Election Campaign Act
(FECA), it is unlawful to make campaign contributions—defined broadly to include "any
gift, subscription, loan, advance, or deposit of money *or anything of value* made by any
person *for the purpose of influencing any election for Federal office"*— to a candidate for
federal office where the contribution exceeds the limits provided for by federal law.  52
U.S.C. § 30101(8)(A)(i) (emphasis added). <u>see</u> <u>also</u> 52 U.S.C. §§ 30116(a)(1)(A), (c).
The phrase "anything of value" includes "all in-kind contributions."   11 C.F.R. §
100.52(d)(1).

Moreover, critical to the legality of the arbitration clause itself, any such campaign
"contributions" or "expenditures" (defined similarly to "contribution") must be <u>made
public</u>.  52 U.S.C. § 30104(b)(3)(A), (4), (5).  This also includes any contributions or
expenditures to benefit the campaign made by the "candidate."   11 C.F.R. §
104.3(a)(3)(ii); FEC Advisory Opinion 1990-09.

Here, Plaintiff intends to prove that the Hush Agreement did not have a lawful

object or purpose.  Rather, the Agreement and the $130,000 payment made pursuant to the Agreement, was for the "purpose of influencing" the 2016 presidential election by silencing Plaintiff from speaking openly and publicly about Mr. Trump just weeks before the 2016 election.  Either EC, Mr. Trump, or both in concert (depending on what the discovery and evidence shows) intended to prevent American voters from hearing Plaintiff speak about Mr. Trump. The $130,000 payment, therefore, was a thing "of value" and an "in-kind" contribution exceeding the contribution limits in violation of FECA and FEC regulations.  It was also a violation of FECA and FEC regulations because it was not publicly reported as a contribution or expenditure.  Plaintiff intends to prove the purpose of the Hush Agreement was to skirt these laws. And, therefore, the Hush Agreement did not have a lawful object or purpose and was void *ab initio.*

But in addition to requiring expedited discovery to prove that the entire agreement is void for the lack of a lawful object or purpose, the discovery is needed to establish that the *arbitration clause itself* has no such lawful object or purpose.  [See FAC, ¶59.]  More specifically, Plaintiff intends to prove the arbitration clause was entered with the purpose of keeping facts concerning federal campaign contributions and expenditures secret and hidden from public view by using a confidential arbitration proceeding in violation of FECA's mandates to publicly report campaign contributions and expenditures.  See 52 U.S.C. § 30104(b)(3)(A), (4), (5).  In other words, the principal aim and design of the arbitration clause is to keep confidential that which, by law, must be publicly disclosed. Indeed, Plaintiff contends the clause plainly is designed to prevent the public disclosure of an illegal campaign contribution by mandating that disputes between Plaintiff and Mr. Trump be resolved in a confidential arbitration proceeding shielded from public scrutiny. [FAC, ¶59.]

In short, deposition testimony of Mr. Trump and Mr. Cohen, along with document requests directed to Defendants, is necessary to determine whether the Agreement and the arbitration clause had a lawful object and purpose.  These are issues the Court, not the

-20-

1 arbitrator, will be required to decide in connection with EC's forthcoming Petition to

2 Compel Arbitration.

3     Further, Plaintiff also intends to prove that the Hush Agreement, along with the

4 arbitration clause, are also without a lawful object or purpose and thus void *ab initio*

5 because they violate public policy by suppressing speech on a matter of enormous public

6 concern about a candidate for President of the United States, mere weeks before the

7 election. "'Agreements to suppress evidence have long been held void as against public

8 policy, both in California and in most common law jurisdictions.'" <u>Smith v. Superior</u>

9 <u>Court</u>, 41 Cal. App. 4th 1014, 1025 (1996) (quoting <u>Williamson v. Superior Court</u>, 21

10 Cal. 3d 829, 836–837 (1978)). "A bargain that has for its consideration the nondisclosure

11 of discreditable facts, or of facts that the promisee is under a fiduciary duty not to

12 disclose, is illegal." Restatement (First) of Contracts § 557 (1932). Remarkably,

13 Illustration 1 in the official comments to section 557 provides the following example of a

14 bargain that is illegal:

15           1. A, a candidate for political office, and as such advocating
16     certain principles, had previously written letters to B, taking a
       contrary position. B is about to publish the letters, and A fearing
17     that the publication will cost him his election, agrees to pay
18     $1000 for the suppression of the letters. The bargain is illegal.

19 Restatement (First) of Contracts § 557, Illustration 1 (1932); <u>see also</u> <u>Brown v. Freese</u>, 28

20 Cal. App. 2d 608, 618 (1938) (contract offering to pay the plaintiff to refrain from

21 disclosing information the plaintiff discovered about transactions in which the decedent's

22 husband had participated held illegal). The arbitration clause itself is illegal because it

23 facilitates the suppression of speech by mandating a confidential arbitration proceeding

24 shielded from public view.

25     Finally, the Hush Agreement, and the arbitration clause, are also without a lawful

26 object or purpose and are thus void *ab initio* because they cover up adulterous conduct, a

27 crime in Mr. Trump's home state of New York, N.Y. Penal Law § 255.17, and because

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

the Hush Agreement was designed to cover up Mr. Cohen's ethical violations, including his violations of Rule 1.4 and 1.8(e) of the New York Rules of Professional Conduct. [See FAC, ¶¶53-55, 61.]

In addition to the foregoing challenges to the formation of the Hush Agreement, Plaintiff also contends no agreement to arbitrate was formed between Plaintiff and EC under the plain language of section 5.2 of the Hush Agreement [FAC, ¶56], see Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1126 (9th Cir. 2013) ("Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'") (quoting Britton v. Co-op Banking Grp., 4 F.3d 742, 744 (9th Cir. 1993)), and that the arbitration clause is unconscionable.   [FAC, ¶¶57-58.]   Nagrampa, 469 F.3d at 1277 (unconscionability challenge to the arbitration clause itself was to be decided by the court, not the arbitrator.); Bencharsky v. Cottman Transmission Sys., LLC, 625 F. Supp. 2d 872, 878 (N.D. Cal. 2008) (same).

For all these reasons, Plaintiff has established she has a valid purpose for requesting limited expedited discovery and thus satisfies the third factor in the good cause analysis.  Plaintiff must be permitted to present evidence at the FAA section 4 trial supporting these bases for voiding the arbitration clause.  To do so, Plaintiff must be permitted to conduct the limited discovery she has requested.

### d)   The Discovery Requests Do Not Impose an Unreasonable Burden on Defendants.

The fourth factor – the "burden on the defendants to comply with the requests" – also strongly favors expedited discovery.  MACOM, 2017 WL 1371247, at *2.

**As a preliminary matter, it is firmly established that a sitting president is not afforded special protection from a civil suit regarding conduct before he or she entered office.**  See Clinton v. Jones, 520 U.S. 681, 717 (1997) (The "Constitution does *not* offer    a sitting President significant    protections    from    potentially

distracting civil litigation . . .") (Breyer, J. *concurring*) (emphasis in original).  Indeed, even prior to the Supreme Court's decision in <u>Clinton v. Jones</u>, there were "several instances"  when "sitting Presidents have  given  depositions  or  testified  at criminal trials" and the Supreme Court had previously "twice authorized the enforcement of subpoenas seeking documents from a sitting President…" <u>Id.Id.</u> at 717.  Therefore, Mr. Trump cannot reasonably argue that he is not subject to being compelled to provide discovery in this case based on his status as President.

The burdens of discovery are also minimal.  Instead of the seven (7) hours of testimony from each witness that she is entitled to under Rule 30, Plaintiff requests a modest two hours from each witness.  Plaintiff is willing to accommodate the witnesses and their counsels' respective schedules by conducting the depositions on any day of their choosing (even weekends) within 21 days of the Court's order.  Further, Plaintiff is agreeable to conducting the depositions in any location of Defendants' choosing.

Further, although under Rule 34, Plaintiff is not limited in the number of document demands she may propound, here, she requests leave to propound no more than ten (10) document requests.  The requests will be limited by subject matter to only those topics pertaining to the Hush Agreement as described in this Motion.

Finally, the burdens imposed by the expedited discovery are not unreasonable because Plaintiff merely proposes to conduct discovery that will be relevant to this dispute regardless of where the case is ultimately litigated.  In other words, even if later in the case or in arbitration, Mr. Trump and Mr. Cohen will in any event be required to answer the same questions and produce the same documents regarding this dispute. Therefore, there is no undue burden or prejudice to Mr. Trump or Mr. Cohen to compel them to provide this discovery on a limited basis now.

**e)     The Fifth Factor Relating to Timing of the Discovery Weighs in Favor of Expedited Discovery.**

The last factor the Court may consider in deciding whether good cause exists for expedited discovery is "how far in advance of the typical discovery process the request was made." MACOM, 2017 WL 1371247, at *2.  This factor is of minimal relevance under the particular circumstances of this case.  Because this will case will require a jury trial under section 4 of the FAA, it is not unusual or unreasonable for Plaintiff to request expedited discovery at this early stage to support their position with admissible evidence through formal discovery demonstrating there was no agreement that was ever formed. See, e.g., O'Brien, 2012 WL 1609957, at *1; see also section III(B)(2), supra.  Indeed, Defendants' objection is not to the *timing* of the discovery; their position is that the discovery should not be conducted *at all.*

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion in its entirety and enter an order (1) setting a jury trial pursuant to section 4 of the FAA within 90 days from the date of the Court's order deciding this Motion at the earliest possible date convenient to the Court's schedule, and (2) requiring Defendants to produce Mr. Trump and Mr. Cohen for depositions within 21 days of the Court's order for no more than two (2) hours of deposition time for each witness, and to produce documents responsive to Plaintiff's requests for production of documents (not to exceed ten (10) requests) within ten (10) days of the Court's Order.

Dated: March 28, 2018                  AVENATTI & ASSOCIATES, APC


                                       By:  _____/s/ Michael J. Avenatti_____
                                       Michael J. Avenatti
                                       Attorneys for Plaintiff Stephanie Clifford
                                       a.k.a. Stormy Daniels a.k.a. Peggy Peterson