BLAKELY LAW GROUP
BRENT H. BLAKELY (CA Bar No. 157292)
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone:   (310) 546-7400
Facsimile:    (310) 546-7401
Email:        BBlakely@BlakelyLawGroup.com

Attorneys for Defendant
ESSENTIAL CONSULTANTS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-CV-02217-SJO-FFM<br><br>**DEFENDANT ESSENTIAL CONSULTANT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>**Date:        April 30, 2018**<br>**Time:        10:00 a.m.**<br>**Location:   350 West 1st Street**<br>**                 Courtroom 10C, 10th Floor**<br>**                 Los Angeles, CA 90012**<br><br>Action Filed:  March 6, 2018 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................. 6

II.  FACTUAL BACKGROUND ................................................. 8

III. CLIFFORD'S FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF SHOULD BE COMPELLED TO ARBITRATION ....... 10

   a.   The Federal Arbitration Act Establishes A Liberal Policy Favoring The Enforcement Of Arbitration Agreements ..................................... 11

   b.   Clifford Entered Into A Valid Arbitration Agreement ........................ 12

        1.   Clifford's Agreement To Arbitrate Is Enforceable Regardless Of Whether DD Also Signed The Agreement ........ 13

        2.   Clifford Received Adequate Consideration Under The Settlement Agreement ...................................... 15

   c.   Clifford's Challenges To The Contract As A Whole Should Be Decided By The Arbitrator, Not The Court ........................................... 16

   d.   The "Crux Of The Complaint" Is A Challenge To The Settlement Agreement As A Whole, Not The Arbitration Provision ................... 17

        1.   The Authorities Relied Upon By Clifford To Argue That The Court Should Decide "Formation" Are Highly Distinguishable ........................................................ 19

        2.   The Arbitration Provision Is Not Unconscionable ................... 22

   e.   The Newly Added Second Cause Of Action Against Michael Cohen Does Not Prevent Arbitration Of The First Cause Of Action ... 24

IV.  THE COURT SHOULD STAY THIS ACTION PENDING THE OUTCOME OF THE ARBITRATION ........................................... 25

V.   CONCLUSION ................................................................. 25

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## CASES

*Abers v. Rounsavell*,
189 Cal.App.4th 348 (2010)........................................................15, 16

*Angell v. Rowlands*,
85 Cal.App.3d 536 (1978)................................................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .........................................................................22

*Barham v. Barham*,
33 Cal.2d 416 (1949)........................................................................14

*Beab, Inc. v. First Western Bank & Tr. Co.*,
204 Cal.App.2d 680 (1962)...............................................................15

*Borgarding v. JP Morgan Chase Bank*,
2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) ....................................24

*Brawley v. Crosby Research Found.*,
73 Cal.App.2d 103 (1946).................................................................16

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010)........................................................8, 18

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440, 444 (2006) .......................................................7, 17, 18

*Chalk v. T-Mobile USA, Inc.*,
560 F.3d 1087 (9th Cir. 2009)...........................................................23

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009)...........................................................20

*Crestview Cemetery Ass'n v. Dieden*,
54 Cal.2d 744 (1960)........................................................................14

*Daily Transit Mix, LLC v. Daily Transit Mix Corp.*,
2011 WL 5416188 (Cal. Ct. App. Nov. 9, 2011)...............................16

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ...................................................................12, 24

*Doherty v. Barclays Bank Delaware*,
    No. 16-CV-01131-AJB-NLS, 2017 WL 588446 (S.D. Cal. Feb. 14, 2017)...21

*Encore Prods., Inc. v. Promise Keepers*,
    53 F.Supp.2d 1101 (D. Colo. 1999) ...............................................................25

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733, 741 (9th Cir. 2014)..................................................................20

*Goldman, Sachs & Co. v. City of Reno*, *supra*,
    747 F.3d (9th Cir. 2014)..................................................................................13

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) .......................................................................................20

*Guadagno v. E*Trade Bank*,
    592 F.Supp.2d 1263 (C.D. Cal. 2008).....................................................12, 17

*Hilti, Inc. v. Oldach*,
    392 F.2d 368 (1st Cir. 1968) ..........................................................................25

*Kaneko v. Okuda*,
    195 Cal.App.2d 217 (1961) ............................................................................13

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) .........................................................................................24

*Mentor Capital, Inc. v. Bhang Chocolate Co.*,
    No. 3:14-CV-3630 LB, 2014 WL 6485666 (N.D. Cal. Nov. 19, 2014) .........17

*Mohamed v. Uber Technologies, Inc.*,
    848 F.3d 1201 (9th Cir. 2016)..................................................................22, 24

*Mortensen v. Bresnan Comm., LLC*,
    722 F.3d 1151 (9th Cir. 2013) ........................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .....................................................................................11, 12

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006)........................................................................18

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ................................................................................11, 17

MEMORANDUM OF POINTS AND AUTHORITIES

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ...................................................................................17, 21

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ......................................................................12

*San Diego City Firefighters, Local 145, AFL-CIO v. Bd. of Admin. of San Diego City Employees' Ret. Sys.*,
    206 Cal.App.4th 594 (2012)........................................................................16

*Sanford v. MemberWorks, Inc.*,
    483 F.3d 956 (9th Cir. 2007) ......................................................................19

*Steinberg & Lyman v. Takacs*,
    774 F.Supp. 885 (S.D.N.Y.1991) ...............................................................25

*Switch, LLC v. Ixmation, Inc.*,
    No. 15-CV-01637-MEJ, 2015 WL 4463672 (N.D. Cal. July 21, 2015).........21

*Teledyne, Inc. v. Kone Corp.*,
    892 F.2d 1404 (9th Cir. 1989) ....................................................................21

*Tennant v. Wilde*,
    98 Cal.App. 437 (1929) ...............................................................................16

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) ....................................................................20

**STATUTES**

9 U.S.C. § 1..........................................................................................................11

9 U.S.C. § 2..........................................................................................................22

9 U.S.C. § 3..........................................................................................................25

9 U.S.C. § 4..........................................................................................................10

# I.     **INTRODUCTION**

Defendant and moving party Essential Consultants, LLC ("EC") and Plaintiff Stephanie Clifford aka "Stormy Daniels" aka "Peggy Peterson" aka "PP" (herein, "Clifford") are signatories to a written *Confidential Settlement Agreement and Mutual Release* dated October 28, 2016 (the "Settlement Agreement").  Declaration of Michael D. Cohen ("Cohen Decl."), Ex. A, Settlement Agreement.

This motion seeks to enforce the arbitration provision in the Settlement Agreement, which was negotiated at arms' length by the parties' respective counsel, and pursuant to which Clifford accepted $130,000 as consideration.  The strong policy favoring arbitration set forth by Congress in the Federal Arbitration Act ("FAA") dictates that this motion be granted, and that Clifford be compelled to arbitration, as she knowingly and voluntarily agreed to do.

Paragraph 5.2 of the Settlement Agreement contains an arbitration provision that requires Clifford to arbitrate any and all claims that may arise between Peggy Peterson ("PP") and David Dennison ("DD"), stating in pertinent part:

> Dispute Resolution.  In recognition of the mutual benefits to DD and PP of a voluntary system of alternative dispute resolution which involves binding confidential arbitration of all disputes which may arise between them, it is their intention and agreement that any and all claims or controversies arising between DD on the one hand, and PP on the other hand, shall be resolved by binding confidential Arbitration to the greatest extent permitted by law.

According to Clifford's allegations, Peggy Peterson ("PP") is a pseudonym for Clifford, and David Dennison ("DD") is a pseudonym for Defendant Donald J. Trump ("Mr. Trump").  Declaration of Brent H. Blakely ("Blakely Decl."), Ex. B, Complaint, ¶ 18 and Ex. C, First Amended Complaint ("FAC"), ¶ 19.

The first cause of action in the FAC is for Declaratory Relief against Mr.

Trump (and EC). This claim undeniably falls within the arbitration provision: a claim or controversy between PP and DD.

Clifford asserts in the FAC that the Settlement Agreement was never formed because it was not signed by Mr. Trump, and thus the arbitration provision contained therein is unenforceable. This argument is without merit.

The first paragraph of the Settlement Agreement defines the parties to the agreement as EC, LLC "**and/or**" DAVID DENNISON (DD), "**on the one part**," and PEGGY PETERSON (PP), "**on the other part**." Ex. A, p. 0 (emphasis added). This provision demonstrates the parties' intent for the Settlement Agreement to be binding once signed by EC and Clifford, and regardless of whether it was also signed by DD.

In conformance with this intent, and according to her own admissions, Clifford and EC signed the Settlement Agreement, and Clifford accepted $130,000 in consideration from EC, despite not receiving a signature from Mr. Trump. Ex. B, ¶¶ 16, 22-23; Ex. C, ¶¶ 17, 23-24. Then, over the course of the next sixteen (16) months, Clifford did not at any time: reject the Settlement Agreement; offer to return or return the $130,000; or assert that the Settlement Agreement is unenforceable because it was not signed by Mr. Trump, or for any other reason. Cohen Decl., ¶ 3.

In fact, Clifford did not assert any claim challenging the validity of the Settlement Agreement until she filed this action on March 6, 2018. To this day, Clifford has not returned the $130,000 she received from EC. Thus, there is no question that a valid agreement to arbitrate Clifford's claims against DD (and EC) was formed. *See infra* Section III.b.

On March 26, 2018, Clifford filed the FAC, which added several new challenges purportedly directed to the enforceability of the arbitration provision itself, as opposed to the enforceability of the Settlement Agreement as a whole. These allegations are a sham and were added in a transparent attempt to circumvent the holding in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006), which requires that Clifford's challenges to the Settlement Agreement be decided by

1    the arbitrator.  Blakely Decl., ¶¶ 7-8.[1]

2           Under the Ninth Circuit's "crux of the complaint" test, Clifford's challenges to

3    the enforceability of the arbitration clause are effectively the same as her challenges

4    to the Settlement Agreement as a whole.  *See Bridge Fund Capital Corp. v.*

5    *Fastbucks Franchise Corp.*, 622 F.3d 996, 1001 (9th Cir. 2010).  Thus, the Court

6    need not decide those issues for purposes of the instant motion.  However, to the

7    extent the Court does consider Clifford's challenges to the arbitration provision, they

8    should be rejected.  For example, Clifford's argument that the arbitration provision is

9    unconscionable fails for several reasons.  *See infra*, Section III.d.3.

10          Pursuant to well-established U.S. Supreme Court jurisprudence, the Court

11   simply needs to determine that Clifford agreed to arbitrate any claim or controversy

12   between her and DD arising under the Settlement Agreement.  Clifford's admissions

13   in her Complaint and FAC confirm that she agreed to do just that.

14          Accordingly, EC respectfully requests that the Court issue an order compelling

15   Clifford to arbitrate her dispute with DD (and EC).

16   **II.     FACTUAL BACKGROUND**

17          Clifford is an adult-film actress and exotic dancer.  In October 2016, according

18   to an exclusive news report, Clifford unsuccessfully attempted to sell a story about an

19   alleged one-night-stand with Mr. Trump to tabloid magazines and related outlets for

20   $200,000.  Blakely Decl., Ex. D, 3/29/18 *Daily Mail* Article.

21          Instead, on or about October 28, 2016, Clifford (who was represented by legal

22   counsel) entered into the Settlement Agreement with EC.  Ex. A, p. 14; Ex. B, ¶ 22;

23   Ex. C, ¶ 23; Cohen Decl., ¶¶ 2-3.  In the Settlement Agreement, Clifford agreed to

---

25          [1] Clifford also added a second cause of action against a newly named
26   defendant, Michael Cohen, for defamation.  This claim should be dismissed pursuant
     to California's anti-SLAPP statute.  Blakely Decl., Ex. I.  However, as set forth in
27   Section III.e. below, arbitration between EC and Clifford should proceed, regardless
28   of whether Clifford's claim against Mr. Cohen is also subject to arbitration.

accept $130,000 from EC in exchange for, among other things, her promise not to disclose any Confidential Information (as defined in the Settlement Agreement), including any of DD's "alleged sexual partners, alleged sexual actions or alleged sexual conduct." Ex. A, pp. 4-5; Ex. B, ¶¶ 16, 22-23; Ex. C, ¶¶ 17, 23-24.  In the Settlement Agreement, Clifford also promised to arbitrate any dispute that might later arise between her and DD.  Ex. A, pp. 10.

EC paid Clifford the sum of $130,000, as required under the Settlement Agreement.  Ex. B, ¶ 23; Ex. C, ¶ 24; Cohen Decl., ¶ 3.  For the next sixteen months, Clifford did not: reject the Settlement Agreement; assert that the Settlement Agreement was unenforceable because it was not signed by Mr. Trump; or make any attempt to return the $130,000 that she was paid by EC.  Cohen Decl., ¶ 3.

During that time, Clifford performed all of her obligations under the Settlement Agreement, and made no public statements disclosing Confidential Information.  Cohen Decl., ¶ 4.  Prior to February 2018, Clifford's only complaint relating to the Settlement Agreement was in October 2016, when she complained that she was not receiving the $130,000 due to her under the Settlement Agreement quickly enough.  *Id*.

In February 2018, Clifford threatened to breach the Settlement Agreement by publicizing allegations that constitute Confidential Information.  On or about February 22, 2018, EC filed an arbitration proceeding with ADR Services, Inc. ("ADRS") in Los Angeles (the "Arbitration"), pursuant to the arbitration provision in the Settlement Agreement.  Cohen Decl., ¶ 5.  Upon EC's emergency application for a Temporary Restraining Order ("TRO"), the arbitrator (a retired California Superior Court judge) issued an order prohibiting Clifford from violating the Settlement Agreement by, among other things, disclosing any Confidential Information to the media or in court filings (the "TRO").  *Id*. at ¶¶ 6-7, Ex. E, TRO.

Clifford has violated the Settlement Agreement and the TRO by, among other things, filing the Complaint and FAC in this action, and also by disclosing

1  Confidential Information to the news media, including in a nationally televised
2  interview with Anderson Cooper on *60 Minutes*, which reportedly was watched by
3  twenty-two million viewers.  Clifford further breached the Settlement Agreement by
4  sending her attorney of record in this action, Michael Avenatti, to participate in
5  dozens of interviews on national television programs, wherein he has repeatedly
6  disclosed Confidential Information.[2]

7      Within days of filing this action, and the massive news coverage that it
8  generated, Clifford made appearances at various adult entertainment clubs, claiming
9  publicly that her pay has quadrupled from the publicity of this lawsuit.  Blakely
10  Decl., Ex. F, 3/11/18 CNN article and Ex. G, 3/9/18 *Rolling Stone* article.

11      On March 21, 2018, counsel for the parties participated in the Local Rule 7-3
12  conference of counsel.  Blakely Decl., ¶ 7.  During the conference, EC's counsel
13  specifically informed counsel for Clifford that, pursuant to *Buckeye Check Cashing,*
14  *Inc. v. Cardegna*, *supra*, Clifford's defenses to the enforcement of the Settlement
15  Agreement as a whole must be decided by the arbitrator, not the Court.  *Id*.  Five days
16  later, Clifford filed the FAC, which includes several new challenges to the arbitration
17  provision, and a second cause of action against Mr. Cohen.

18  **III.   CLIFFORD'S FIRST CAUSE OF ACTION FOR DECLARATORY**
19  **RELIEF SHOULD BE COMPELLED TO ARBITRATION**

20      Where the making of an agreement to arbitrate is not "in issue," as is the case
21  here, the District Court should order the parties to proceed with arbitration upon
22  petition of the aggrieved party.  9 U.S.C. § 4.  Section 4 states, in pertinent part:

23          A party aggrieved by the alleged failure, neglect, or refusal
24          of another to arbitrate under a written agreement for
25          arbitration may petition any United States district court

26  ───────────────────────

27      [2] Section 4.3.4 of the Settlement Agreement provides that any disclosure of
28  Confidential Information by Clifford's counsel is deemed to be a disclosure by her.

1        which, save for such agreement, would have jurisdiction

2        under title 28…for an order directing that such arbitration

3        proceed in the manner provided for in such agreement….

4        The court shall hear the parties, and **upon being satisfied**

5        **that the making of the agreement for arbitration or the**

6        **failure to comply therewith is not in issue**, the court shall

7        make an order directing the parties to proceed to arbitration

8        in accordance with the terms of the agreement.

9  *Id.* (emphasis added.)

10       Here, the Settlement Agreement contains an agreement by EC and Clifford to

11  arbitrate any dispute between PP and DD.  The Complaint and FAC were filed by

12  Clifford against DD and EC, assert a claim arising under the Settlement Agreement,

13  and thus undeniably fall within the scope of the arbitration provision.

14       Contrary to Clifford's assertion, a valid agreement to arbitrate was formed.  By

15  Clifford's own admission, she signed the Settlement Agreement, accepted the

16  consideration required of EC thereunder and did not raise any objection to its

17  enforceability until approximately sixteen months thereafter.  Thus, Clifford

18  knowingly and voluntarily agreed to arbitrate this dispute.  The Court need not go

19  any further to grant this motion and compel this matter to arbitration.  Thereafter,

20  Clifford's claims of invalidity or unenforceability of the Settlement Agreement

21  should be determined by the arbitrator.  *See infra,* Sections III.c. and III.d.

22      **a.**    **The Federal Arbitration Act Establishes A Liberal Policy Favoring**

23          **The Enforcement Of Arbitration Agreements**

24       "[T]he Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.* (2000 ed.

25  and Supp. V), establishes a national policy favoring arbitration when the parties

26  contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349

27  (2008); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

28  24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy

favoring arbitration agreements."); *Mortensen v. Bresnan Comm., LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) ("the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions."). "The Act, which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Id*.

The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement **has been signed**." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (bold added); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 n.8 (9th Cir. 1991) (the FAA "reflects the strong Congressional policy favoring arbitration by making such clauses 'valid, irrevocable, and enforceable.'"). The FAA "is phrased in mandatory terms," thus a District Court "has little discretion to deny an arbitration motion." *Republic of Nicaragua*, *supra*, 937 F.2d at 475. "If a contract contains an arbitration clause, claims brought under or against that contract are presumed arbitrable." *Guadagno v. E\*Trade Bank,* 592 F.Supp.2d 1263, 1272 (C.D. Cal. 2008).

In *Gaudagno v. E\*Trade Bank*, the plaintiff filled out an online application for an E\*Trade account, and clicked a box acknowledging that she had reviewed E\*Trade's account agreement, which contained an arbitration clause. 592 F.Supp.2d at 1267. This Court rejected plaintiff's argument that she did not assent to the arbitration agreement, and granted defendant's motion to compel arbitration. *Id*. at 1273. In doing so, this Court held that any "[d]oubts should be resolved in favor of arbitrability." *Id*. at 1272; *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

### b.   Clifford Entered Into A Valid Arbitration Agreement

The Ninth Circuit uses "general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists." *Goldman, Sachs & Co.*

1   *v. City of Reno*, *supra*, 747 F.3d at 743 (9th Cir. 2014).  Under those principles, there

2   should be no question that an enforceable arbitration agreement was reached.

3        Clifford admits that she (and EC) signed the Settlement Agreement, that she

4   was represented by counsel in connection therewith, and that EC paid her $130,000

5   pursuant to the Settlement Agreement.  Ex. B, ¶¶ 16, 22-23.  By doing so, Clifford

6   accepted the terms of Settlement Agreement, including her obligation to arbitrate

7   contained therein.  *See* Cal. Civ. Code § 1589 ("A **voluntary acceptance of the**

8   **benefit of a transaction** is equivalent to a consent to all the obligations arising from

9   it, so far as the facts are known, or ought to be known, to the person accepting.")

10  (emphasis added); Cal. Civ. Code § 1584 ("Performance of the conditions of a

11  proposal, or the **acceptance of the consideration offered with a proposal**, is an

12  acceptance of the proposal.") (emphasis added.)

13       1.   <u>Clifford's Agreement To Arbitrate Is Enforceable Regardless Of</u>

14       <u>Whether DD Also Signed The Agreement</u>

15       Clifford is bound by the terms of the Settlement Agreement, including the

16  arbitration provision, even though it was not signed by DD.  First, the Settlement

17  Agreement contemplated a binding agreement between Clifford and EC, regardless

18  of whether DD also signed.  Second, California law does not require all parties to

19  sign a contract for it to be binding on those who did sign it.  "It is not the rule that a

20  contract, which on its face purports to be between the parties named in the

21  instrument, must invariably be executed by all whose names appear in the instrument

22  before it will be binding on any."  *Kaneko v. Okuda*, 195 Cal.App.2d 217, 225

23  (1961).  "In the absence of a showing that a contract is not to be deemed complete

24  unless signed by all parties, **the parties signing may be bound though others have**

25  **not signed**."  *Id.* (emphasis added); *see also Angell v. Rowlands*, 85 Cal.App.3d 536,

26  540 (1978).

27       Here, the first paragraph of the Settlement Agreement demonstrates that the

28  parties intended for the Settlement Agreement to be binding regardless of whether it

MEMORANDUM OF POINTS AND AUTHORITIES

was signed by DD.  It expressly defines the parties to the agreement as EC, LLC "**and/or**" DAVID DENNISON (DD), "**on the one part**," and PEGGY PETERSON (PP), "**on the other part**."  Ex. A, p. 0 (emphasis added).

If this language is not clear enough, it is well-settled under California law that the Court need look no further than Clifford's subsequent conduct to determine that she intended for the Settlement Agreement to be binding without DD's signature. "Where any doubt exists as to the purport of the parties' dealings as expressed in the wording of their contract, the court may look to…subsequent acts or declarations of the parties 'shedding light upon the question of their mutual intention at the time of contracting.' (citation)." *Barham v. Barham*, 33 Cal.2d 416, 423 (1949).  "[I]t is said that 'a construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court.' (citation)." *Id.*

In *Crestview Cemetery Ass'n v. Dieden*, 54 Cal.2d 744, 757 (1960), the California Supreme Court held that the subsequent actions of the parties to a contract demonstrated their belief that the "contract had been fully performed."  The Court stated:  "The practical construction placed on the contract by the parties is far more convincing than the construction arrived at in an attempt to escape a liability already accrued." *Id.* at 755.[3]

_____

[3] In doing so, the California Supreme Court quoted the following passage from its opinion in *Mitau v. Roddan*, 149 Cal. 1, 14 (1906):

> It is to be assumed that parties to a contract best know what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to his own interests, and to insistence on his rights, and that whatever is done by the parties contemporaneously with the execution of the contract is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the intention

(footnote continued)

Clifford signed the Settlement Agreement, accepted the $130,000 that EC was obligated to pay her, and, despite not receiving any signature from Mr. Trump, Clifford did not reject the Settlement Agreement, did not deem it null and void because it was supposedly missing a signature, and did not return, or offer to return, the $130,000 she was paid, prior to filing this lawsuit approximately sixteen months thereafter.  Ex. B, ¶¶ 16, 22-23; Ex. C, ¶¶ 17, 23-24; Cohen Decl., ¶ 3.  Further, Clifford performed all of her obligations under the Settlement Agreement during those sixteen months and made no public statements that EC is aware of disclosing Confidential Information.  Cohen Decl., ¶ 4.  Prior to February 2018, Clifford's only complaint relating to the Settlement Agreement was that she was not receiving the payment quickly enough.  *Id*.  This is powerful evidence that Clifford intended for the Settlement Agreement to be binding absent DD's signature.

        2.     <u>Clifford Received Adequate Consideration Under The Settlement Agreement</u>

Under California Civil Code § 1550, "sufficient cause or consideration" is necessary for an enforceable contract.  However, "[a]dequacy of consideration need not be proved where the defendant has already accepted the consideration."  *Abers v. Rounsavell*, 189 Cal.App.4th 348, 362 (2010), citing *Beab, Inc. v. First Western Bank & Tr. Co.*, 204 Cal.App.2d 680, 685 (1962).  Because Clifford accepted EC's consideration under the Settlement Agreement ($130,000), and made no attempt to

---

        of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it.

*Crestview Cemetery Ass'n v. Dieden*, 54 Cal.2d at 753; *see also City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 393 (2008) ("A party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean.")

1  reject such consideration for nearly sixteen months, there should be no question that

2  such consideration was adequate.

3         Regardless, "[a] consideration of one dollar is ordinarily sufficient to support a

4  contract at law." *Abers v. Rounsavell*, *supra*, 189 Cal.App.4th at 362. "'A written

5  instrument is presumptive evidence of a consideration' (Civ.Code, § 1614), and in

6  any event all the law requires for sufficient consideration is the proverbial

7  'peppercorn.'" *San Diego City Firefighters, Local 145, AFL-CIO v. Bd. of Admin. of*

8  *San Diego City Employees' Ret. Sys.*, 206 Cal.App.4th 594, 619 (2012).

9         Moreover, the consideration that Clifford received from EC ($130,000) was

10 sufficient to support all of her obligations under the Settlement Agreement, including

11 to arbitrate, independent of whether the Settlement Agreement also provided for non-

12 monetary consideration from DD. "[W]here there is consideration for any of the

13 agreements specified in a contract[,] the contract as a whole cannot be said to lack

14 mutuality or consideration, nor can any particular promise or agreement contained

15 therein be singled out and deemed inoperative because no special or particular

16 consideration appears to have been given or promised for it." *Brawley v. Crosby*

17 *Research Found.*, 73 Cal.App.2d 103, 118 (1946), quoting *Tennant v. Wilde*, 98

18 Cal.App. 437, 442 (1929). "In other words, '[w]hile consideration is a necessary

19 element of every contract, it is not necessary that each separate promise or covenant

20 should have a distinct consideration.'" *Daily Transit Mix, LLC v. Daily Transit Mix*

21 *Corp.*, 2011 WL 5416188, at *10 (Cal. Ct. App. Nov. 9, 2011), citing *Brawley v.*

22 *Crosby Research Found.*, *supra*, 73 Cal.App.2d at 118. Thus, Clifford should be

23 required to arbitrate this dispute, regardless of whether she received separate

24 consideration from DD under the Settlement Agreement.

25         **c.**      **Clifford's Challenges To The Contract As A Whole Should Be**
26                  **Decided By The Arbitrator, Not The Court**

27         The U.S. Supreme Court has held that "a challenge to the validity of the

28 contract as a whole, and not specifically to the arbitration clause, must go to the

-16-

MEMORANDUM OF POINTS AND AUTHORITIES

1   arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. at 444.  In *Buckeye*

2   *Check Cashing*, the Court held that a claim that the subject contract was illegal and

3   void *ab initio* must be decided by the arbitrator, not the court.  *Id*; *see also Preston v.*

4   *Ferrer*, *supra*, 552 U.S. at 349.  The holding in *Buckeye Check Cashing* followed the

5   decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404

6   (1967), wherein the Supreme Court held that the FAA "does not permit the federal

7   court to consider claims of fraud in the inducement of the contract generally," as

8   opposed to a claim of "fraud in the inducement of the arbitration clause itself."  *See*

9   *also Mentor Capital, Inc. v. Bhang Chocolate Co.*, No. 3:14-CV-3630 LB, 2014 WL

10  6485666, at *4-6 (N.D. Cal. Nov. 19, 2014) (held that claim for rescission of entire

11  agreement for failure of consideration must be decided by arbitrator), citing *Buckeye*

12  *Check Cashing v. Cardegna, supra*, 546 U.S. at 444-446.

13      "[A]s a matter of substantive federal arbitration law, an arbitration provision is

14  severable from the remainder of the contract."  *Buckeye Check Cashing, Inc. v.*

15  *Cardegna*, *supra*, 546 U.S. at 445-446.  "[U]nless the challenge is to the arbitration

16  clause itself, the issue of the contract's validity is considered by the arbitrator in the

17  first instance."  *Id; Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (the Supreme

18  Court requires "the basis of challenge to be directed specifically to the agreement to

19  arbitrate before the court will intervene.").  In *Guadagno v. E*Trade Bank*, *supra*,

20  592 F.Supp.2d at 1270, this Court held:  "If a party challenges the validity of an

21  arbitration clause itself, rather than the entire contract containing the clause, the

22  arbitration clause's validity is for the court, rather than an arbitrator, to decide."

23  (citing *Buckeye Check Cashing, Inc. v. Cardegna*, *supra*, 546 U.S. at 445-446.)

24      **d.    The "Crux Of The Complaint" Is A Challenge To The Settlement**

25           **Agreement As A Whole, Not The Arbitration Provision**

26      Clifford's newly added, sham challenges to the validity of the arbitration

27  provision should be viewed as nothing more than challenges to the Settlement

28  Agreement as a whole, and thus are to be decided by the arbitrator.  Following the

U.S. Supreme Court's holding in *Buckeye Check Cashing*, the Ninth Circuit Court of Appeals has "applied the 'crux of the complaint' rule as a method for differentiating between challenges to the arbitration provision alone and challenges to the entire contract." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1001 (9th Cir. 2010). "The 'crux of the complaint' matters when the complaint itself makes clear that the challenge to the arbitration clause is the same challenge that is being made to the entire contract." *Id.*

In *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1263-1264 (9th Cir. 2006), the Ninth Circuit held that "when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator." Prior to Clifford's thinly veiled attempt to circumvent the holding of *Buckeye Check Cashing, Inc.* by filing the FAC, the Complaint demonstrated that Clifford's challenges to arbitration clause are the same as her challenges to the Settlement Agreement as a whole:

- Paragraph 38 alleges, in pertinent part, that the Settlement Agreement was "never formed" because "Mr. Trump never signed" it; and "as a … result, there is no agreement to arbitrate between the parties."

- Paragraph 39 alleges, in pertinent part, that the Settlement Agreement is "invalid, unenforceable, and/or void under the doctrine of unconscionability"; and "as a … result, there is no agreement to arbitrate between the parties."

- Paragraph 40 alleges, in pertinent part, that the Settlement Agreement is "invalid, unenforceable, and/or void because [it] is illegal and/or violate[s] public policy"; and "as a … result, there is no agreement to arbitrate between the parties."

Ex. B, pp. 6-7. Clifford's newly asserted defenses to the enforceability of the arbitration provision in the FAC are also the same as her defenses to the validity of

the Settlement Agreement as a whole:

- Paragraph 41 alleges, in pertinent part, that "no agreement was ever formed or existed" and "as a … result, there is no agreement to arbitrate between the parties."

- Paragraphs 42 and 43 allege that the Settlement Agreement as a whole is unconscionable, while paragraph 58 also alleges that the arbitration provision is unconscionable.

- Paragraphs 44 through 55 allege that the Settlement Agreement as a whole is void *ab initio* because it is illegal and violates public policy, while paragraphs 59 through 61 allege that the arbitration provision is void *ab initio* because it is illegal and violates public policy.

Ex. C, pp. 8-15.

Thus, the "crux of the complaint" is a challenge to the Settlement Agreement as a whole, not the arbitration provision contained therein.

   1. <u>The Authorities Relied Upon By Clifford To Argue That The Court Should Decide "Formation" Are Highly Distinguishable</u>

Clifford contends that her challenge to the formation of the Settlement Agreement should be decided by the Court, not the arbitrator.  However, the authorities Clifford relied upon during the parties' Local Rule 7-3 conference of counsel are highly distinguishable.  Blakely Decl., ¶ 7.

In *Sanford v. MemberWorks, Inc*., 483 F.3d 956, 964 (9th Cir. 2007), the plaintiff alleged that she never received, much less signed, the membership agreement containing the arbitration clause, and that she did not even known about the membership until approximately 13 months after she was supposedly sent the agreement.  *Id*. at 958-959.  Under those facts, the Ninth Circuit held that the District Court should determine whether an enforceable arbitration agreement was formed. This case is very different:  here, Clifford acknowledges that she signed and received the agreement, along with the consideration required of EC thereunder.

In *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1144 (9th Cir. 1991), the cities of Lawndale, San Marino, and Palmdale, and the Palmdale Redevelopment Agency, claimed that the person who signed the subject agreements on their behalf, an individual "who worked in various financial capacities for those entities," did not have authority to bind them to those agreements, which opened investments accounts with defendant (in which the plaintiffs lost $8 million). *Id*. at 1140–1141.  Under those facts, the Ninth Circuit held that the District Court should determine whether the signatory to the agreements containing the arbitration clauses had authority to bind the plaintiffs to those agreements. *Id.*  By contrast, Clifford has not, nor can she, make any argument that she lacked the authority to enter into the Settlement Agreement.

In *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741, 747 (9th Cir. 2014), the Ninth Circuit held that the forum selection clauses in Goldman, Sachs & Co.'s Broker-Dealer Agreements with the City of Reno, which stated that "all actions and proceedings ... shall be brought in the ... District of Nevada," superseded Goldman's default obligation to arbitrate under FINRA's general rules.  Here, Clifford makes no such argument.

In *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 303-304 (2010), the Court held that the District Court should determine arbitrability of a dispute over **when** the contract was formed, because this issue governed whether the arbitration agreement was in existence and enforceable during the relevant time period.  Here, there is no dispute that the Settlement Agreement was executed by Clifford and EC more than a year before this dispute arose.

Moreover, the cases cited in Clifford's Motion for Expedited Jury Trial for the proposition that the court should decide her challenges to the formation of the Settlement Agreement also are highly distinguishable.  Dkt. No. 16, pp., 11-12.

In *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009), the Ninth Circuit held that an arbitrator did not have the authority to issue an

1   injunction against non-parties, "such as cousins of former spouses" of signatories,

2   and a "a non-party grandmother" of a signatory, to an arbitration agreement.  The

3   Court held that "these collateral relatives are not in privity with the…signatories."

4   *Id*.  Here, there is no dispute that EC is seeking to enforce the arbitration provision

5   against a signatory to the Settlement Agreement (Clifford).

6       In *Doherty v. Barclays Bank Delaware*, No. 16-CV-01131-AJB-NLS, 2017

7   WL 588446, at *4 (S.D. Cal. Feb. 14, 2017), the defendant, one of the top ten issuers

8   of credit cards in the United States, alleged that plaintiff was bound by the arbitration

9   provision contained in defendant's "Cardmember Agreement" because plaintiff was

10  an authorized user of his father's credit card account.  However, the plaintiff claimed

11  that he did not know he was an authorized user on the account, and that he was added

12  as an authorized user without his knowledge.  *Id*. at *1, 4.  Under those facts, the

13  District Court denied the defendant's motion to compel arbitration.  *Id*. at *4.  Here,

14  there is no dispute that Clifford signed the Settlement Agreement.

15      In *Switch, LLC v. Ixmation, Inc.*, No. 15-CV-01637-MEJ, 2015 WL 4463672,

16  at *3 (N.D. Cal. July 21, 2015), the plaintiff argued that "it did not sign or otherwise

17  agree to" the defendant's "Proposal," which contained the subject arbitration

18  provision.  Under those facts, the District Court denied the defendant's motion to

19  compel arbitration.  *Id*. at *5.  Again, there is no similar dispute here.

20      In contrast to the authorities relied upon by Clifford, in *Teledyne, Inc. v. Kone*

21  *Corp.*, 892 F.2d 1404, 1410 (9th Cir. 1989), the Ninth Circuit held that the arbitrator,

22  not the District Court, must decide whether an agreement signed by both parties, but

23  that defendant claimed was an unenforceable "DRAFT", was formed.  In doing so,

24  the Court held that cases must "be submitted to arbitration unless there is a challenge

25  to the arbitration provision which is *separate* and *distinct* from any challenge to the

26  underlying contract."  *Id*. (emphasis in original), citing *Prima Paint Corp. v. Flood &*

27  *Conklin Mfg. Co.*, *supra*, 388 U.S. at 402-404.

28

2.     The Arbitration Provision Is Not Unconscionable

Clifford argues that the arbitration provision in the Settlement Agreement is unconscionable based on various theories.  To the extent the Court even decides this issue, it should find that none of these arguments have merit.

**First**, under the FAA, there are strict limits on the types of unconscionability arguments that may be raised against an arbitration agreement.  9 U.S.C. § 2 limits the grounds for denying enforcement of arbitration agreements to "such grounds as exist at law or in equity for the revocation of any contract."  The U.S. Supreme Court has interpreted this rule to prohibit unconscionability arguments directed to the substantive effect of the arbitration clause itself.  Thus, in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340-341 (2011), the Court held that a California doctrine holding that contractual waivers of class action arbitration were unconscionable was preempted by the FAA, even though it was an application of a state law rule.  Thus, to the extent that Clifford seeks to use unconscionability doctrine to impose substantive limits on the arbitration clause, these arguments must fail.

**Second** and independently, the arbitration clause is not unconscionable under California law.  "Under California law, unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."  *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (broad delegation of arbitrability issues to arbitrator is not unconscionable) (internal quotations omitted).  "**Both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable**, but they need not be present in the same degree… Recently, the California Supreme Court has emphasized that unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain… Rather, unconscionable contracts are those that are so one-sided as to shock the conscience."  *Id.* (emphasis added; internal quotations omitted).

1    "Procedural unconscionability focuses on two factors in contract formation:

2  oppression and surprise…. Oppression arises when there is inequality in bargaining

3  power between the parties to a contract, resulting in no real opportunity to negotiate

4  the terms of the contract and the absence of meaningful choice.  Surprise involves the

5  extent to which the supposedly agreed terms were hidden from the party seeking to

6  avoid enforcement of the agreement."  *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087,

7  1093-94 (9th Cir. 2009) (arbitration clause in readable type in cellular service

8  agreement was not procedurally unconscionable).

9    Here, there is no procedural unconscionability.  There is no evidence that

10  Clifford was forced to enter into the Settlement Agreement, had no meaningful choice

11  to do so, or had no choice but to accede to the terms of the arbitration clause as

12  drafted.  The Settlement Agreement was the antithesis of standard form adhesion

13  contracts imposed by large corporations that the procedural ucnconscionability

14  doctrine addresses.  Clifford had the power to walk away, the power to negotiate the

15  terms of the agreement, and only entered into the agreement after she unsuccessfully

16  attempted to sell her story for $200,000.  Ex. D.  Because there is no procedural

17  unconscionability, all of Clifford's unconscionability defenses fail.

18    In any event, Clifford also has not shown substantive unconscionability.  Her

19  contention is exactly what *Mohamed* states cannot constitute substantive

20  unconscionability, namely, that she made an old fashioned bargain that she now

21  regrets, not that any terms of the Settlement Agreement shock the conscience.

22  Clifford has shown no unfairness in the arbitration process (an argument that is barred

23  under *Concepcion* anyway), and no unfairness in the terms of the arbitration clause.

24  For instance, Clifford has not shown how she is prejudiced by being required to go to

25  the arbitrator to get an injunction to enforce the Settlement Agreement, or that the

26  choice of law rule in the Settlement Agreement has harmed her in any way.  Nor has

27  she shown that the other terms of the agreement—a straightforward promise to pay

28  $130,000 in exchange for various confidentiality obligations—were so one-sided as to

-23-

shock the conscience.  If this agreement is unconscionable, then any confidentiality agreement is unconscionable, and that is not the law.  *Borgarding v. JP Morgan Chase Bank*, 2016 WL 8904413 at *9 (C.D. Cal. Oct. 31, 2016) ("A confidentiality clause, however, does not, render the entire arbitration agreement substantively unconscionable.").

Finally, even if there is a provision (such as the choice of law provision) of the arbitration agreement that is found to step too far under unconscionability doctrine, any such provision is severable from the rest of the arbitration agreement.  The core agreement is to arbitrate all disputes arising under the Settlement Agreement; restrictions on injunctive relief and special choice of law rules are not central to the bargain and can be excised if the Court determines that they are unconscionable. *Mohamed v. Uber Technologies, Inc*, *supra*, 848 F.3d at 1213-14 (holding that waiver of private attorney general suits, which was unenforceable, was severable from remainder of arbitration clause).

### e.   The Newly Added Second Cause Of Action Against Michael Cohen Does Not Prevent Arbitration Of The First Cause Of Action

Clifford cannot avoid arbitration of her first cause of action against DD and EC on the basis that her second cause of action asserts a non-arbitrable claim against Mr. Cohen.  "[W]hen a complaint contains both arbitrable and nonarbitrable claims, the [Federal Arbitration] Act requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011), citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985).  "The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *Id*. at 19.

"Moreover, a plaintiff cannot avoid arbitration merely by claiming that one or more of its claims for relief is against a defendant who is not a signatory to the

agreement." *Encore Prods., Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1113 (D. Colo. 1999), citing *Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n. 2 (1st Cir. 1968) ("arbitration should not be foreclosed simply by adding persons to a civil action who are not parties to the arbitration agreement because such an inclusion would thwart the federal policy in favor of arbitration"); *Steinberg & Lyman v. Takacs*, 774 F.Supp. 885, 888 (S.D.N.Y.1991) ("while [plaintiff] asserts that notions of judicial economy favor having this Court try the entire action at one time, rather than sending only two of the defendants to arbitration, such an argument does not withstand the mandate of the [FAA].")

## IV.   THE COURT SHOULD STAY THIS ACTION PENDING THE OUTCOME OF THE ARBITRATION

The Court should stay all proceedings with respect to the first cause of action, pending the completion of the arbitration.  9 U.S.C. § 3.  Section 3 provides, in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had…

## V.   CONCLUSION

For the foregoing reasons, the instant Motion to Compel Arbitration should be granted; Clifford should be ordered to arbitration in the currently pending arbitration between the parties with ADRS, consistent with the parties' agreement; and the first cause of action in the FAC should be stayed pending the outcome of the arbitration.

1   Dated: April 2, 2018                    BLAKELY LAW GROUP

2

3                                            By:  */s/ Brent H. Blakely*

4                                                 BRENT H. BLAKELY
                                                 ***Attorneys for Defendant***
5                                                 ***ESSENTIAL CONSULTANTS, LLC***

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28