1
2
3
4
5

6
7

8
9
10

BLAKELY LAW GROUP
BRENT H. BLAKELY (CA Bar No. 157292)
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone:   (310) 546-7400
Facsimile:    (310) 546-7401
Email:        BBlakely@BlakelyLawGroup.com

Attorneys for Defendant
ESSENTIAL CONSULTANTS, LLC

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>             Plaintiff,<br><br>     v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No. 2:18-CV-02217-SJO-FFM<br><br>**DECLARATION OF MICHAEL D. COHEN IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>**Date:        April 30, 2018**<br>**Time:        10:00 a.m.**<br>**Location:   350 West 1st Street**<br>**                   Courtroom 10C, 10th Floor**<br>**                   Los Angeles, CA 90012**<br><br>Action Filed:  March 6, 2018 |

## <u>DECLARATION OF MICHAEL D. COHEN</u>

I, Michael D. Cohen, declare as follows:

1.      I am the President of Essential Consultants, LLC ("EC").  I have personal knowledge of the facts set forth herein, and if called and sworn as a witness, I could and would competently testify to the matters stated herein.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the *Confidential Settlement Agreement and Mutual Release* (the "Settlement Agreement") entered into between EC and Plaintiff Stephanie Clifford aka "Stormy Daniels" aka "Peggy Peterson" aka "PP" ("Clifford" or "Plaintiff") on or about October 26, 2016. The initial draft of the Settlement Agreement was prepared by Clifford's attorney.

3.      I signed the Settlement Agreement on behalf of EC on or about October 28, 2016.  Clifford signed the Settlement Agreement on or about the same date. Thereafter, EC paid Clifford, and she accepted $130,000 pursuant to the Settlement Agreement.  At no time between Clifford's execution of the Settlement Agreement, and the filing of this lawsuit, did Clifford or her attorney ever communicate any assertion to me that the Settlement Agreement was invalid or unenforceable for any reason, including because it was not signed by "David Dennison" or Defendant Donald Trump, or make any attempt to return the $130,000 that EC paid to Clifford.

4.      To the best on my knowledge, Clifford performed all of her obligations under the Settlement Agreement for approximately sixteen months following its execution, and made no public statements disclosing Confidential Information (as defined in the Settlement Agreement) during that time.  Prior to February 2018, Clifford's only complaint relating to the Settlement Agreement was in October 2016, prior to her execution of the Settlement Agreement, when she complained through her attorney that she was not receiving the $130,000 payment quickly enough.

5.      On or about February 22, 2018, EC filed an arbitration proceeding at ADR Services, Inc. ("ADRS") in Los Angeles (the "Arbitration"), pursuant to the arbitration provision in the Settlement Agreement.

6.      In the Arbitration, EC brought an emergency application for a Temporary Restraining Order (the Settlement Agreement expressly empowered the arbitrator to award immediate and *ex parte* injunctive relief); ADRS appointed an emergency arbitrator (a retired California Superior Court judge); and the arbitrator reviewed the papers, found that EC had met its initial burden and granted the application.

7.      The arbitrator entered an order prohibiting Clifford from violating the Settlement Agreement by, among other things, disclosing any Confidential Information to the media or in court filings (the "TRO"). The TRO was subsequently published by the *New York Times*. I am informed and believe that a copy of the TRO was sent to the *New York Times* by counsel for Clifford, Michael Avenatti. A true and correct copy of the TRO is attached hereto as **Exhibit E**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 2, 2018, at New York, New York.

MICHAEL D. COHEN

DECLARATION OF MICHAEL D. COHEN

# Exhibit A

## CONFIDENTIAL SETTLEMENT AGREEMENT
## AND MUTUAL RELEASE; ASSIGNMENT OF
## COPYRIGHT AND NON-DISPARAGMENT
## AGREEMENT

### 1.0    THE PARTIES

1.1    This Settlement Agreement and Mutual Release (hereinafter, this "Agreement") is made and deemed effective as of the ___ day of October, 2016, by and between "**EC, LLC**" and/or **DAVID DENNISON**, (DD), on the one part, and **PEGGY PETERSON**, (PP), on the other part. ("EC, LLC," "DD" and "PP" are pseudonyms whose true identity will be acknowledged in a Side Letter Agreement attached hereto as "EXHIBIT A") This Agreement is entered into with reference to the facts and circumstances contained in the following recitals.

### 2.0    RECITALS

2.1    Prior to entering into this Agreement, PP came into possession of certain "Confidential Information" pertaining to DD, as more fully defined below, only some of which is in tangible form, which includes, but is not limited to information, certain still images and/or text messages which were authored by or relate to DD (collectively the "Property", each as more fully defined below but which all are included and attached hereto as Exhibit "1" to the Side Letter Agreement).

2.2    (a)    PP claims that she has been damaged by DD's alleged actions against her, including but not limited to tort claims proximately causing injury to her person and other related claims. DD denies all such claims. (Hereinafter "PP Claims").

(b)    DD claims that he has been damaged by PP's alleged actions against him, including but not limited to the alleged threatened selling, transferring, licensing, publicly disseminating and/or exploiting the Images and/or Property and/or other Confidential Information relating to DD, all without the knowledge, consent or authorization of DD.  PP denies all such claims. (Hereinafter "DD Claims").

(c)    The PP Claims and the DD Claims are hereinafter collectively referred to as "The Released Claims."

2.3    DD desires to acquire, and PP desires to sell, transfer and turn-over to DD, any and all tangible copies of the Property and any and all physical and intellectual property rights in and to all of the Property.  As a condition of DD releasing any claims against PP related to this matter, PP agrees to sell and transfer to DD all and each of her rights in and to such Property.  PP agrees to deliver each and every existing copy of all tangible Property to DD (and permanently delete any electronic copies that can not be transferred), and agrees that she shall not possess, nor directly nor indirectly disclose convey, transfer or assign Property or any Confidential Information to any Third Party, as more fully provided herein.

2.4    It is the intention of the Parties that Confidential Information, as defined herein, shall remain confidential as expressly provided hereinbelow.  The Parties expressly acknowledge, agree and understand that the Confidentiality provisions herein and the



Page 0



representations and warranties made by PP herein and the execution by her of the Assignment & Transfer of Copyright are at the essence of this Settlement Agreement and are a material inducement to DD's entry into this Agreement, absent which DD would not enter into this Agreement. DD expects and requires that PP never communicate with him or his family for any reason whatsoever.

2.5     The Parties wish to avoid the time, expense, and inconvenience of potential litigation, and to resolve any and all disputes and potential legal claims which exist or may exist between them, as of the date of this Agreement including but not limited to the PP Claims and/or the DD Claims. The Parties agree that the claims released include but are not limited to DD's Claims against PP  as relates to PP having allowed, whether intentionally, unintentionally or negligently, anyone else other than those listed in section 4.2 herein below to become aware of the existence of and content of the Property, to have gained possession of the Property, and to PP's having allegedly engaged in efforts to disclose, disseminate and/or commercially exploit the Images and/or Property and/or Confidential Information, and any harm suffered by DD therefrom. The Parties agree that the claims released include but are not limited to PP's Claims against DD  as relates to DD having allowed, whether intentionally, unintentionally or negligently, anyone else to have interfered with PP's right to privacy or any other right that PP may possess.

2.6     These Recitals are essential, integral and material terms of this Agreement, and this Agreement shall be construed with respect thereto.  The Parties enter into this Agreement in consideration of the promises, covenants and conditions set forth herein, and for good and valuable consideration, the receipt of which is hereby acknowledged. It is an essential element of this Settlement Agreement that the Parties shall never directly or indirectly communicate with each other and/or attempt to contact their respective families. This matter, the existence of this Settlement Agreement and its terms are strictly confidential.

NOW, THEREFORE, the Parties adopt the foregoing recitals as a statement of their intent and in consideration of the promises and covenants contained herein, and further agree as follows:

///

///

///



**3.0      SETTLEMENT TERMS**

3.0.1.1 <u>EC, LLC SHALL PAY TO PP $130,000.00 U.S.D. AS FOLLOWS:</u>

3.0.1.1.1   $130,000.00 USD shall be wired into PP's Attorney's Attorney Client Trust Account on or before 1600 hrs. PST on 10/27/16.(Hereinafter "Gross Settlement Amount"). PP's Attorney's Wiring Instructions are:

| | |
|---|---|
| Bank Name: | City National Bank |
| Bank Address: | 8641 Wilshire Blvd. |
| | Beverly Hills, CA 90211 |
| ABA Routing No: | 122016066 |
| Beneficiary Account Name: | Keith M. Davidson & Associates, |
| | PLC, Attorney Client Trust Account |
| Beneficiary Account No: | 600106201 |
| Beneficiary Address: | 8383 Wilshire Blvd. Suite 510 |
| | Beverly Hills, CA 90211 |
| SWIFT Code: | CINA US6L |

3.0.1.1.2   Keith M. Davidson, Esq. shall receive the Gross Settlement Amount in Trust. No portion of the Gross Settlement Amount shall be disbursed by Attorney for PP unless and until PP executes all required Settlement Documents.

3.1      <u>Undertakings & Obligations by PP</u>.  PP will do each of the following by 11/01/16:

(a)      PP shall execute this Agreement and return a signed copy to DD:

(b)      PP shall transfer and/or assign any and all rights in and to the Property to DD (as set forth hereinbelow), and execute an Assignment & Transfer of Copyright, in the form attached hereto, and return a signed copy of same to DD's counsel;

(c)      PP shall deliver to DD every existing copy of all tangible Property.  PP shall completely divest herself of any and all artistic media, impressions, paintings, video images, still images, e-mail messages, text messages, Instagram message, facebook posting or any other type of creation by DD. PP shall transfer all physical, ownership and intellectual property rights to DD;

(1)      PP shall deliver to DD any and all non-privileged correspondence concerning or related to DD between PP and any 3rd party.

(d)      PP shall not, at any time from the date of this Agreement forward, directly or indirectly disclose or disseminate any of the Property or any Confidential Information (including confirmation of the fact that it exists or ever existed, and/or confirming any rumors as to any such existence) to any third party, as more fully provided herein.

(e)      PP shall provide to DD (to the extent not already done so and set forth in paragraph 4.2 hereinbelow), summary details disclosing to whom PP (or anyone else on PP's behalf) disclosed, displayed to, disseminated, transferred to, provided a copy to, and/or

PP

P a g e **2**

DD

distributed, sold, licensed or otherwise sought to have commercially exploit, the Images and/or Property and/or any Confidential Information.

(f)     PP shall provide to DD's counsel the names and contact information of each and any persons or entities who: (1) PP has provided to or who otherwise obtained possession of the original and/or any copies of any of the Images and/or any Property, if any, (ii) to whom PP has scanned the Images and/or any Property at any time, and (iii) to whom PP knows had, has or may potentially have possession of a copy of the Images and/or any Property at any time, including but not limited to the present time (and specify with detail to which of the referenced categories (i.e., possession, shown, past, present, etc.) any name corresponds, the name so relates).

(g)     PP shall provide to DD's counsel copies of any agreements and/or other documentation in PP's possession, custody or control, if any, regarding (e) and/or (f) above, that evidences who has or may have been provided a copy of any of the Property.

3.2     Transfer of Property Rights to DD.  In further consideration for the promises, covenants and consideration herein, PP hereby transfers and conveys to DD all of PP's respective rights, title and interest in and to the Property, and any and all physical and intellectual property rights related thereto.  Without limiting the generality of the foregoing, PP does hereby sell, assign, and transfer to DD, his successors and assigns, throughout the universe in perpetuity, all of PP's entire right, title, and interest (including, without limitation, all copyrights and all extensions and renewals of copyrights), of whatever kind or nature in and to the Property, without reservation, condition or limitation, whether or not such rights are now known, recognized or contemplated, and the complete, unconditional and unencumbered ownership and all possessory interest and rights in and to the Property, which includes, but is not limited to the originals, copies, negatives, prints, positive, proof sheets, CD-roms, DVD-roms, duplicates, outtake and the results of any other means of exhibiting, reproducing, storing, recording and/or archiving any of the Property or related material, together with all rights of action and claims for damages and benefits arising because of any infringement of the copyright to the Property, and assigns and releases to DD any and all other proprietary rights and usage rights PP may own or hold in the copyright and/or Property, or any other right in or to the Property.  PP assigns and transfers to DD all of the rights herein granted, without reservation, condition or limitation, and agrees that PP reserves no right of any kind, nature or description related to the Property and contents therein.  Notwithstanding the foregoing, if any of the rights herein granted are subject to termination under section 203 of the Copyright Act, or any similar provisions of the Act or subsequent amendments thereof, PP hereby agrees to re-grant such rights to DD immediately upon such termination.  All rights granted herein or agreed to be granted hereunder shall vest in DD immediately and shall remain vested in perpetuity.  DD shall have the right to freely assign, sell, transfer or destroy the Property as he desires.  DD shall have the right to register sole copyright in and to any of the Property with the US Copyright Office.  DD shall also have the right, in respect to the Property, to add to, subtract from, change, arrange, revise, adapt, into any and all form of expression or tangible communication, and the right to combine any of the Property with any other works of any kind and/or to create derivative works with any of the Property, and to do with it as she so deems.  To the fullest extent allowable under the applicable law, PP shall irrevocably waive and assign to DD any of PP's so-called "moral rights" or "droit moral" (laws for the protection of copyrights outside of the United States), if any, or any similar rights under any principles of law which PP may now have or later have in the Property.  With respect to and in furtherance of the above, PP agrees to and shall execute and deliver to DD an

PP

DD

"Assignment & Transfer of Copyright", in the form attached hereto as <u>Exhibit "B"</u>. For greater certainty the foregoing assignment shall be applicable worldwide.

       3.2.1   Notwithstanding the foregoing paragraph 3.2, and without in anyway limiting or diminishing from the full transfer and assignment of rights therein without reservation, the Parties understand the purpose of the transfer of rights is to provide DD the fullest possible ability and remedies to prevent and protect against any publication and/or dissemination of the Property.

     3.3   <u>Delivery of the Property to DD</u>.   Concurrently upon execution of this Agreement, PP, as applicable, shall deliver to DD, by delivery to his counsel herein, all of the Property which is embodied in tangible form (all originals and duplicates), whether documents, canvasses, paper art, digital copies, letters, prints, electronic data, films, tapes, CD-Roms, DVD-Roms, Images recording tapes, photographs, negatives, originals, duplicates, contact sheets, audio recordings, Images recordings, magnetic data, computerized data, digital recordings, or other recorded medium or any other format of embodying information or data.   Without limiting the generality of the foregoing, such tangible Property shall include all documents as defined by California Evidence Code §250 which contain any of the Property.   PP represents and warrants that the materials delivered pursuant to the terms of this Paragraph 3.3 comprise the totality of all existing originals and duplicates of all Property in any tangible form, whether within their possession, custody or control, and including otherwise (and that PP knows of no other copies or possible or potential copies not in PP's possession and control and delivered pursuant to this paragraph), and that upon such delivery to DD, PP shall not maintain possession, custody or control of any copy of all or any portion of any tangible Property. The Property Delivered under this Paragraph shall become Exhibit 1 to the Side Letter Agreement. For avoidance of any doubt, PP, nor her attorney are entitled to retain possession of said Property after execution of this Agreement. The retention of said Property by PP is a material breach of this agreement.

       3.3.1   This Agreement is conditioned on PP's compliance with each and every term of  the Settlement Agreement including Paragraph 3.3 <u>and</u> the personal verification by DD or his attorney of the Images and that the Images are comprised of and captures the content previously represented to his counsel to exist and be captured therein (i.e., text messages between PP and DD)), all of which terms are essential and material.

## 4.0   <u>CONFIDENTIALITY & REPRESENTATIONS & WARRANTIES.</u>

    4.1   <u>Definition of Confidential Information</u>.   "Confidential Information" means and includes each and all of the following:

       (a)   All *intangible* information pertaining to DD and/or his family, (including but not limited to his children or any alleged children or any of his alleged sexual partners, alleged sexual actions or alleged sexual conduct or  related matters ),and/or friends learned, obtained, or acquired by PP, including without limitation information contained in letters, e-mails, text messages, agreements, documents, audio or Images recordings, electronic data, and photographs;

       (b)   All *intangible* information pertaining to the existence and content of the Property;



PP

P a g e **4**



DD

(c)      All *intangible* private information (*i.e.*, information not generally available to and/or known by the general public) relating and/or pertaining to DD, including without limitation DD's business information, familial information, any of his alleged sexual partners, alleged sexual actions or alleged sexual conduct,  related matters  or paternity information, legal matters, contractual information, personal information, private social life, lifestyle, private conduct, (all information/items in 4.1 "(a)", "(b)" and "(c)" are sometimes collectively referred to as, "Intangible Confidential Information");

(d)      All *tangible* materials of any kind containing information pertaining to DD learned, obtained, participated or acquired by PP, including without limitation letters, agreements, documents, audio or Images recordings, electronic data, and photographs, canvas art, paper art, or art in any other form on any media. The Images and Photos and all information/items in 4.1(d) are collectively referred to as, the "Property" and/or the "Tangible Confidential Information");

4.2      <u>PP's Representations & Warranties Regarding Prior Disclosures of Tangible Confidential Information</u>.  PP represents and warrants that prior to entry into this Agreement, PP has directly or indirectly disclosed any *Tangible* an/or Intangible Confidential Information (i.e., any of the Property), to any Third Party, including without limitation disclosure or indirect disclosure of the content of such Confidential Information in tangible form, other than the following persons or entities to whom PP has made such prior disclosures (herein "PP Disclosed Individuals/Entities"):

a)   *Mike Mosney*

b)   *Angel Ryan*

c)   *Gina Rodriguez*

d)   *Keith Munyan*

e)   _____

f)   _____

g)   _____

h)   _____

i)   _____

PP shall not be responsible for any subsequent public disclosure of any of the Confidential Information (a) attributable <u>directly</u> to each of them; and/or (b) not disclosed hereinabove as a previously disclosed PP Disclosed Individuals/Entities, and any such disclosure shall be deemed a breach of this Agreement by PP. For greater clarity, PP must not induce, promote or actively inspire anyone  to disclose Confidential Information.

PP

DD

4.3     Representations & Warranties and Agreements.

(a)     Representations & Warranties and Agreements By DD.  The following agreements, warranties and representations are made by DD as material inducements to PP to enter into this Agreement, and each Party acknowledges that she/he is executing this Agreement in reliance thereon:

(b)     DD warrants and represents that, as relates to or in connection with any of PP's attempts to sell, exploit and/or disseminate the Property prior to the date of this Agreement, DD and his counsel will refrain (i) from pursuing any civil action against PP, and/or (ii) absent a direct inquiry from law enforcement, from disclosing PP's name to the authorities. Notwithstanding the foregoing, if DD is informed that or should or if it is believed that either of PP has possession, custody and/or control of any of the Property after the date of this Agreement and/or transferred any copies to any Third Party, and/or it is believed that any of PP, whether directly or indirectly, intends the release, use, display, dissemination, disclosure or exploitation, whether actual, threatened or rumored, of any for the Property, then DD and his counsel shall be entitled to, at DD's sole discretion, (i) contact the respective member of PP, including with legal demands and related statements of liability and legal action, and/or (ii) advance a civil action against the respective member of PP, and/or (iii) disclose any of PP's name to the authorities.

4.3.2     Representations & Warranties and Agreements By PP.  The following agreements, warranties and representations are made by PP as material inducements to DD to enter into this Agreement, without which DD would not enter into this Agreement and without which DD would not agree to pay any monies whatsoever hereunder, and with the express acknowledgment that DD is executing this Agreement in reliance on the agreements, warranties, and representations herein which are at the essence of this Agreement, including, the following:

(a)     PP agrees and warrants and represents that PP will permanently cease and desist from any efforts to and/or attempting to and/or engaging in and/or arranging the use, License, distribution, dissemination or sale of any of the Confidential Information and/or Property, including any Tangible and/or Intangible Confidential information created by or relating to DD;

(b)     PP agrees and warrants and represents that PP will permanently cease and desist from any posting or dissemination or display of the Confidential Information, Tangible and/or Intangible Confidential information created by or relating to DD and/or Property, including the Images (including, but not limited to, to any form media outlet, on any blog or posting board, on the Internet, or otherwise);

(c)     PP agrees and warrants and represents that PP will permanently cease and desist from using or disseminating or disclosing any information to any Third Persons (including, but not limited to, to any media outlet, on any blog or posting board, on the Internet, or otherwise) about any details of or as to the contents of the Confidential Information, Tangible and/or Intangible Confidential information created by or relating to DD and/or Property, including any Text Messages, and/or as to any other personal details of or about or pertaining to DD and/or his family and/or friends and/or social interactions;

(d)     PP agrees and warrants and represents that PP will permanently cease and desist from and will not, at any time, make any use of or reference to the name, image or likeness


PP

P a g e  **6**

DD

of DD in any manner whatsoever, including without limitation, through any print or electronic media of any kind or nature for any purpose, including, but not limited to, on any websites;

(e)    PP agrees and warrants and represents that any and all existing copies of the Images, Text Messages and any Property (other than as expressly specified in paragraphs 3.2 and 3.3 herein) have been turned over and provided to counsel; and PP further warrants and represents that the only copy of the Images and Property that has ever existed, at any time, has been turned over to DD's counsel pursuant to this Agreement, and the Images and any Property has never been transferred to or existed in any other form, including not in electronic form, nor on any computer, or electronic device and other storage media;

(f)    PP warrants and represents that PP has not provided any copies, whether hard-copy or electronic copies, of the Property to anyone other than as specified in paragraph 4.2 herein);

(g)    PP warrants and represents that the information PP is obligated to provide pursuant to the terms herein will be complete and truthful;

(h)    PP warrants and represents that PP has not omitted or withheld any information that PP is obligated to provide pursuant to the terms herein;

(i)    PP warrants and represents that PP has not contracted to earn and/or collect any monies as compensation from the sell, license and/or any other exploitation of the Images and/or any Property and/or any Confidential Information, Tangible and/or Intangible Confidential information created by or relating to DD nor any monies as compensation or an advance for any efforts to sell, license and/or any other exploitation of the Images and/or any Property and/or any Confidential Information or any Tangible and/or Intangible Confidential information created by or relating to DD;

(j)    PP warrants and represents that PP has not assigned nor transferred, either in whole or in part, any purported rights in or to the Images and/or any Property to any other person or entity, other than to DD pursuant to this Agreement.

4.3.3    Agreement By PP Not to Disclose/Use Confidential Information. Tangible and/or Intangible Confidential information created by or relating to DD.  As further material inducements for DD to enter into this Agreement, PP agrees, represents and warrants that she shall not directly or indirectly, verbally or otherwise, publish, disseminate, disclose, post or cause to be published, disseminated, disclosed, or posted (herein "disclose"), any Confidential Information or Tangible and/or Intangible Confidential information created by or relating to DD to any person, group, firm or entity whatsoever, including, but not limited to, family members, friends, associates, journalists, media organizations, newspapers, magazines, publications, television or radio stations, publishers, databases, blogs, websites, posting boards, and any other enterprise involved in the print, wire or electronic media, including individuals working directly or indirectly for, or on behalf of, any of said persons or entities ("Third Parties" and/or Third Party").  In no event shall PP be relieved of such party's confidentiality obligations herein by virtue of any breach or alleged breach of this Agreement.  In no event shall any dispute in connection with this Agreement relieve PP of her confidentiality obligations arising pursuant to this Agreement, and any disclosure of Confidential Information  and/or  Tangible and/or Intangible Confidential information created by or relating to DD in connection with any such



proceeding or dispute shall constitute a breach of this Agreement. PP shall use their best efforts to prevent the unauthorized disclosure of Confidential Information in connection with any such proceeding or dispute.

4.3.4    Any direct or indirect disclosure of Confidential Information or  Tangible and/or Intangible Confidential information created by or relating to DD to any Third Party by PP and/or any of her representatives, heirs, agents, children, family members, relatives , confidents, advisors, employees, attorneys, transferors, transferees, successors or assigns, and/or any friend of any of PP (collectively "PP Group"), after the date of this Agreement, shall be deemed a disclosure by PP in breach of the terms of this Agreement, entitling the non-breaching Party to all rights and remedies set forth herein.

4.3.5    PP separately and further warrants and represent that, prior to entering into this Agreement, that she has not written, published, caused to be published, or authorized the writing, publication, broadcast, transmission or public dissemination of any interview, article, essay, book, memoir, story, photograph, film, script, Images tape, biography, documentary, whether written, oral, digital or visual, whether fictionalized or not, about the opposing Party to this Agreement or their family, whether truthful, laudatory, defamatory, disparaging, deprecating or neutral, which discloses any Confidential Information and/or which includes any description or depiction of any kind whatsoever whether fictionalized or not, about any Party to this agreement or their respective family, other than as expressly disclosed by PP hereto in writing and as set forth herein in paragraph 4.2 above.

4.3.6    Agreement By PP Not to Disparage DD.  PP hereby irrevocably agrees and covenants that she shall not, directly or indirectly, publicly disparage DD, nor write, publish, cause to be published, or authorize, consult about or with or otherwise be involved in the writing, publication, broadcast, transmission or dissemination of any book, memoir, letter, story, photograph, film, script, Images, interview, article, essay, biography, diary, journal, documentary, or other written, oral, digital or visual account or description or depiction of any kind whatsoever whether fictionalized or not, about DD or his family, whether truthful, laudatory, defamatory, disparaging, deprecating or neutral.  PP further warrants and represents that PP has not and will not enter into any written or oral agreement with any third party purportedly requiring or obligating PP to do so. Fore greater clarity PP will never discuss with anyone the contents of this Settlement Agreement, nor will she voluntarily confirm the existence of this Settlement Agreement.

4.4    Disclosure Of Confidential Information Is Prohibited:  The Parties to this Agreement hereby recognize and agree that substantial effort and expense have been dedicated to limit the efforts of the press, other media, and the public to learn of personal and business affairs involving DD.  PP further acknowledges that any future disclosure of Confidential Information to any Third Party would constitute a serious and material breach of the terms of this Agreement, and shall constitute a breach of trust and confidence, invasion of privacy, and a misappropriation of exclusive property rights, and may also constitute fraud and deceit.  Some of the Confidential Information may also constitute and include proprietary business information and trade secrets which have independent economic value.  The Parties hereto acknowledge that any unauthorized use, dissemination or disclosure of Confidential Information, or the fabrication and dissemination of false and/or misleading information, about DD would result in irreparable injury to him, and would be injurious to a reasonable person, and/or would constitute an injurious violation of the right of privacy or publicity, and/or would be injurious to his business,

**PP**    P a g e **8**    
**DD**

profession, person, family and/or career. The Parties acknowledge that substantial and valuable property rights and other proprietary interests in the exclusive possession, ownership and use of Confidential Information, and recognizes and acknowledges that such Confidential Information is a proprietary, valuable, special and unique asset which belongs to DD and to which the PP has no claim of ownership or other interest.

4.4.1   Disclosures Permitted By PP.  Notwithstanding the foregoing, PP shall only be permitted to disclose Confidential Information to another person or entity only if compelled to do so by valid legal process, including without limitation a subpoena duces tecum or similar legal compulsion, provided that PP shall not make any such disclosure unless PP has first provided DD with notice of such order or legal process not less than ten (10) days in advance of the required date of disclosure pursuant to the Written Notice provisions set forth hereinbelow, providing DD with an opportunity to intervene and with full and complete cooperation should she choose to oppose such disclosure. PP agrees that if the valid legal process can be stopped by her consent or at her behest then PP shall agree to use best efforts to avoid the disclosure of the Confidential Information.

## 5.0   REMEDIES

5.1   DD's Remedies for Breach of Agreement.  Each breach or threatened breach (*e.g.*, conduct by PP reflecting that said person intends to breach the Agreement), including without limitation by breach of any representation or warranty, by failing to deliver to DD all tangible Property as required, by the disclosure or threatened disclosure of any Confidential Information to any Third Party by PP (herein "Prohibited Communication"), or otherwise, shall render PP liable to DD for any and all damages and injuries incurred as a result thereof, including but not limited to the following, all of which rights and remedies shall be cumulative:

5.1.1   Disgorgement of Monies:  In the event an Arbitrator determines there has been a breach or threatened breach of this Agreement by PP, PP shall be obligated to account to, and to disgorge and turn over to DD any and all monies, profits, or other consideration, or benefits, which PP, or anyone on PP's behalf or at PP's direction, directly or indirectly derive from any disclosure or exploitation of any of the Confidential Information; and

5.1.2   Liquidated Damages:  PP agrees that any breach or violation of this Settlement Agreement by either of PP individually or the PP Group by his/her/their unauthorized disclosure of any of the Confidential Information (as defined in paragraphs 4.1(a), (b), (c), and (d)) to any Third Party, and/or any unauthorized exploitation or prohibited use of the same, and/or by the breach of and/or by any false representations and warranties set forth in this Agreement, and/or any public disparagement of DD by PP (collectively, the "LD Breach Terms"), shall result in substantial damages and injury to DD, the precise amount of which would be extremely difficult or impracticable to determine, even after the Parties have made a reasonable endeavor to estimate fair compensation for such potential losses and damages to DD. Therefore, in addition to disgorgement of the full amount of all monies or other consideration pursuant to paragraph 5.1.2, in the event an Arbitrator determines there has been a breach of the LD Breach Terms of this Agreement by PP individually or the PP Group, PP shall also be obligated to pay, and agree to pay to DD the sum of One-Million Dollars ($1,000,000.00 as a reasonable and fair amount of liquidated damages to compensate DD for any loss or damage


PP

Page 9

DD

resulting from each breach, it being understood that the Liquidated damages calculation is on a per item basis. The Parties agree that such sum bears a reasonable and proximate relationship to the actual damages which DD will or might suffer from each breach of the terms of this Agreement and that this amount is not a penalty. Alternatively, at DD's sole discretion, DD may seek to recover actual damages proximately caused by each such breach, according to proof. Any other breaches not a LD Breach Terms shall be subject to a claim for actual damages according to proof; furthermore, any monies held in Trust by PP's Attorney shall be frozen and shall not be disbursed to PP until the Arbitrator finally resolves the allegation of Breach.

       5.1.3   Injunctive Relief.  PP acknowledges and agrees that any unauthorized disclosure to Third Parties of any Confidential Information will cause irreparable harm to DD, which damages and injuries will most likely not be measurable or susceptible to calculation. PP further acknowledges and agrees that any breach or threatened breach of this Agreement due to the unauthorized disclosure or threatened disclosure by PP to Third Parties, of any Confidential Information shall entitle DD to immediately obtain, either from the Arbitrator and/ or from any other court of competent jurisdiction, an *ex parte* issuance of a restraining order and preliminary injunction or other similar relief (herein "Injunctive Relief") without advance notice to any of PP, preventing the disclosure or any further disclosure of Confidential Information protected by the terms hereof, pending the decision of the Arbitrator or Court.  The Parties further acknowledge and agree that in connection with any such proceeding, any Party may obtain from the Court or Arbitrator on an ex parte application or noticed motion without opposition, an order sealing the file in any such proceeding, and the Parties stipulate to the factual and legal basis for issuance of an order sealing the file in any such proceedings.  The rights and remedies set forth in this Injunctive Relief Section are without prejudice to any other rights or remedies, legal or equitable, that the Parties may have as a result of any breach of this Agreement.

      5.2   Dispute Resolution.  In recognition of the mutual benefits to DD and PP of a voluntary system of alternative dispute resolution which involves binding confidential arbitration of all disputes which may arise between them, it is their intention and agreement that any and all claims or controversies arising between DD on the one hand, and PP on the other hand, shall be resolved by binding confidential Arbitration to the greatest extent permitted by law.  Arbitration shall take place before JAMS ENDISPUTE ("JAMS") pursuant to JAMS Comprehensive Arbitration Rules and Procedures (including Interim Measures) ("JAMS Rules") and  the law selected by DD, (such selection shall be limited to either, California, Nevada or Arizona), or before ACTION DISPUTE RESOLUTION SERVICES ("ADRS") pursuant to the ADRS Rules (including Interim Measures) and the law selected by DD (whichever the claimant elects upon filing an arbitration), in a the location selected by DD, and will be heard and decided by a sole, neutral arbitrator ("Arbitrator") selected either by agreement of the Parties, or if the Parties are unable to agree, then selected under the Rules of the selected arbitration service.  The costs and fees associated with any Arbitrator and/or Arbitration service shall be split equally among the parties to any such dispute.  The Parties shall have the right to conduct discovery in accordance with the California Code of Civil Procedure Section 1283.05 *et. seq.* or any similar provision existing in the jurisdiction selected by DD and the written discovery requests and results of discovery shall be deemed to constitute Confidential Information.  The Arbitrator shall have the right to impose all legal and equitable remedies that would be available to any Party before any governmental dispute resolution forum or court of competent jurisdiction, including without limitation temporary, preliminary and permanent injunctive relief, compensatory damages, liquidated damages, accounting, disgorgement, specific performance, attorneys fees and costs,


PP

Page **10**

EC
DD

and punitive damages.  It is understood and agreed that each of the Parties shall bear his/its own attorneys' fees, expert fees, consulting fees, and other litigation costs (if any) ordinarily associated with legal proceedings taking place in a judicial forum, subject to the Arbitrator's reassessment in favor of the prevailing party to the extent permitted by law.  **Each of the Parties understands, acknowledges and agrees that by agreeing to arbitration as provided herein, each of the Parties is giving up any right that he/she/it may have to a trial by judge or jury with regard to the matters which are required to be submitted to mandatory and binding Arbitration pursuant to the terms hereof.  Each of the Parties further understands, acknowledges and agrees that there is no right to an appeal or a review of an Arbitrator's award as there would be a right of appeal or review of a judge or jury's decision.**

### 6.0   MUTUAL RELEASES

6.1   Except for the rights and obligations of the Parties set forth in this Agreement, DD, for himself, and each of his representatives, agents, assigns, heirs, partners, companies, affiliated companies, employees, insurers and attorneys, absolutely and forever releases and discharges PP, individually, and all of PP's heirs, and PP's attorneys, and each of them ("PP Releasees"), of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs (including attorney's fees), expenses, liens, actions and causes of actions of every kind and nature whatsoever, whether known or unknown, from the beginning of time to the effective date of this Agreement, including without limitation any and all matters, facts, claims and/or defenses asserted or which could have been asserted in the Matter, or which could have been asserted in any other legal action or proceeding, except as may be provided herein (the "DD Released Claims").

6.2   Except for the rights and obligations of the Parties set forth in this Agreement, PP, for herself, and her representatives, agents, assigns, heirs, partners, companies, affiliated companies, employees, insurers and attorneys, absolutely and forever release and discharge DD, individually, and each of his representatives, agents, assigns, heirs, partners, companies, affiliated companies, subsidiaries, employees, attorneys, successors, insurers, and each of them ("DD Releasees"), of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs (including attorney's fees), expenses, liens, actions and causes of actions of every kind and nature whatsoever, whether known or unknown, from the beginning of time to the date of this Agreement, including without limitation any and all matters, facts, claims and/or defenses asserted or which could have been asserted in the Action, or which could have been asserted in any other legal action or proceeding (the "PP Released Claims").

6.3   The subject matter referred to in paragraphs 6.1 and 6.2, above (i.e., the DD Released Claims and PP Released Claims), are collectively referred to as the "Released Matters."

6.4   The Parties hereto, and each of them, hereby warrant, represent and agree that each of them is fully aware of §1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."


PP

Page 11


DD

The Parties, and each of them, voluntarily waive the provisions of California <u>Civil Code</u> **§ 1542, and any other similar federal and state law as to any and all claims, demands, causes of action, or charges of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected.**

    6.4.1 For avoidance of any doubt, by virtue of this Settlement and this Settlement Agreement, the parties hereby waive any unknown claims against each other individually, and each of their representatives, agents, assigns, heirs, partners, companies, affiliated companies, subsidiaries, employees, attorneys, successors, insurers, and each of them.

  6.5 Each of the Parties hereto acknowledges and agrees that this Agreement constitutes a settlement and compromise of claims and defenses in dispute, and shall not be construed in any fashion as an admission of liability by any party hereto.

**7.0 <u>CONFIDENTIALITY OF THIS AGREEMENT</u>**

  7.1 The Parties, respectively, shall not to disclose the terms of this Agreement, either directly or indirectly, to the media or to anyone else other than their respective attorneys and representatives and/or as may be required by law.  PP may not comment or make any press releases or otherwise discuss the resolution of the subject of this Agreement.

**8.0 <u>MISCELLANEOUS TERMS</u>**

  8.1 <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding concerning the Released Matters hereof between the Parties hereto and supersedes any and all prior negotiations and proposed agreement and/or agreements, written and/or oral, between the Parties.  Each of the Parties hereto acknowledges that neither they, nor any other party, nor any agent or attorney of any other party has made any promise, representation, or warranty whatsoever, expressed or implied, written or oral, which is not contained herein, concerning the subject matter hereof, to induce it to execute this Agreement, and each of the Parties hereto acknowledges that she/he has not executed this Agreement in reliance on any promise, representation, and/or warranty not contained herein.  This Agreement shall be binding on and inure to the benefit of the Parties, the Releasees, and each of their respective successors and assigns and designees.

  8.2 <u>DD's Election of either California, Nevada or Arizona Law & Venue</u>.  This Agreement and any dispute or controversy relating to this Agreement, shall in all respects be construed, interpreted, enforced and governed by the laws of the State of California, Arizona or Nevada at DD's election.  <u>Attorneys' Fees in the case of a Dispute</u>.  In the event of any dispute, action, proceeding or controversy regarding the existence, validity, interpretation, performance, enforcement, claimed breach or threatened breach of this Agreement, the prevailing party in any resulting arbitration proceeding and/or court proceeding shall be entitled to recover as an element of such Party's costs of suit, and not as damages, all attorneys' fees, costs and expenses incurred or sustained by such prevailing Party in connection with such action, including, without limitation, legal fees and costs.


PP

DD

8.3     <u>Attorney Fees and Costs in Formation of this Agreement</u>.  The Parties shall each bear their own costs, expert fees, attorneys' fees and other fees incurred in connection with the creation this Settlement Agreement.

8.4     <u>Waivers; Modification</u>.  This Agreement cannot be modified or changed except by written instrument signed by all of the Parties hereto.  No waiver of any of the provisions of this Agreement shall be deemed to constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the party making the waiver.

8.5     <u>Scope of Provisions/Severability/Headings</u>.  None of the Parties hereto shall be deemed to be the drafter of this Agreement, but it shall be deemed that this Agreement was jointly drafted by each of the Parties hereto.  Should any provision of this Agreement be found to be ambiguous in any way, such ambiguity shall not be resolved by construing this Agreement in favor of or against any party herein, but rather construing the terms of this Agreement as a whole according to their fair meaning.  In the event that any provision hereof is deemed to be illegal or unenforceable, such a determination shall not affect the validity or enforceability of the remaining provisions thereof, all of which shall remain in full force and effect.  Notwithstanding the foregoing, if  a provision is deemed to be illegal the Parties agree to waive any defense on said grounds.  In the event that such any provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law.  The captions appearing at the commencement of certain paragraphs herein are descriptive only and for convenience of reference.  Should there be any conflict between any such caption or heading and the paragraph at the caption of which it appears, the paragraph, and not such caption, shall control and govern.

8.6     <u>Advice of Counsel and Understanding of this Binding Agreement</u>.  Each of the Parties represents, acknowledges, and declares that she/he has received the advice of legal counsel of his/her own choosing regarding the form, substance, and effect of this Agreement.  Each of the Parties represents, acknowledges, and declares that she/he has carefully read this Agreement, knows and understands this Agreement's contents, and signs this Agreement freely, voluntarily, and without either coercion or duress.  Each of the Parties represents and warrants that she/he is fully competent to manage his/her business affairs, and that she/he has full power and authority to execute this Agreement, and to do any and all of the things reasonably required hereunder; and that this Agreement, when signed by all Parties, is a valid and binding agreement, enforceable in accordance with its terms.

8.7     <u>Further Execution</u>.  In order to carry out the terms and conditions of this Agreement, PP agrees to promptly execute, upon reasonable request, any and all documents and instruments necessary to effectuate the terms of this Agreement.

8.8     <u>Notice Provisions</u>.  Any notice, demand or request that one Party desires, or is required to give (including service of any subpoena, court pleadings, summons and/or complaint), to the other Party must be promptly communicated to the other Party by using their respective contact information below, by both (i) e-mail or facsimile; <u>and</u> (ii) telephone.  Either Party may change his or her contact information by notifying the other Party of said change(s) pursuant to the applicable terms herein.



PP

Page **13**

DD

8.8.1   <u>To DD as follows:</u>

*Essential Consultants, LLC*
*C/O: Michael Cohen, ESQ.*
*502 Park Avenue #8A*
*New York, NY 10022*

8.8.2   <u>To PP, as follows:</u>

C/O KEITH M. DAVIDSON, ESQ.
8383 Wilshire Boulevard, Suite 510
Beverly Hills, CA 90211
tel. 323.658.5444
fax. 323-658-5444
e-mail: keith@KmdLaw.com

8.9  .   This Agreement may be executed with one or more separate counterparts, each of which, when so executed shall be deemed to be an original and, together shall constitute and be one and the same instrument.  Any executed copies or signed counterparts of this Agreement, the Declaration, and any other documentation may be executed by scanned/printed pdf copies of signatures and/or facsimile signatures, which shall be deemed to have the same force and effect as if they were original signatures.

**IN WITNESS WHEREOF,** by their signatures below, the Parties each have approved and executed this Agreement as of the effective date first set forth above.

DATED: _____, 2016

DATED: _Oct 28_____, 2016

DATED: _10/28_____, 2016

DD

PP

ERICA JACKSON
Notary Public, State of Texas
Comm. Expires 01-04-2020
Notary ID 130483626

E.C., LLC

PP

P a g e  **14**

EC
DD

DATED: _10/31/16_ , 2016

As to Form:

Keith M. Davidson, Esq., Attorney for PP

DATED: _____ , 2016

As to Form:

_____

Attorney for DD

DATED: _10/28_ , 2016

As to Form:

MICHAEL D. COHEN, ESQ.
Attorney for ▮▮▮
ESSENTIAL CONSULTANTS, LLC

PP

DD

# Exhibit E

**CONFIDENTIAL PROCEEDING**

1  Honorable Jacqueline A. Connor (Ret.)
   ADR SERVICES, INC.
2  1900 Avenue of the Stars, Suite 250
   Los Angeles, California 90067
3  (310) 201-0010 PH
   (310) 201-0016 FAX
4  Emergency Arbitrator

5

6  **ADR SERVICES, INC.**

7  **IN RE THE MATTER OF THE ARBITRATION BETWEEN**

8

| | | |
|---|---|---|
| EC, LLC, | ) | ADRS Case No. 18-1118-JAC |
| | ) | |
| Claimant, | ) | **TEMPORARY RESTRAINING ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| PEGGY PETERSON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

By written emergency application with exhibits pursuant to Rule 24 of the ADR Services, Inc. Arbitration Rules, Claimant EC, LLC has requested an emergency order precluding Respondent Peggy Peterson ("Ms. Peterson") from (i) disclosing or inducing, promoting or actively inspiring anyone to disclose Confidential Information, as defined in the "Confidential Settlement Agreement and Mutual Release: Assignment of Copyright and Non-Disparagement Agreement," effective October 28, 2016 (the "Settlement Agreement") whether in the media, court filings, or otherwise, (ii) disclosing or inducing, promoting, or actively inspiring anyone to disclose the fact of the commencement and pendency of this Arbitration and any details relating thereto, including, but not limited, to the existence of this Emergency Application and any emergency order issued in response to that application (the "Emergency Application").

ADR Services, Inc., has appointed the undersigned, Honorable Jacqueline A. Connor (Ret.), as the Emergency Arbitrator to hear the emergency application. Having reviewed the emergency application, including the parties' Settlement Agreement and other exhibits, the

1

CONFIDENTIAL PROCEEDING

Emergency Arbitrator finds that the Settlement Agreement expressly authorizes issuance of an *ex parte* restraining order without the requirement of advance notice to Ms. Peterson in the event she has breached or threatened to breach the confidentiality obligations expressly agreed upon in the Settlement Agreement.

Upon due consideration, the Emergency Arbitrator issued a tentative ruling and order, which was accepted on submission without oral argument by Claimant and Claimant's counsel.

NOW, THEREFORE, upon Claimant's application, it is hereby ORDERED that the Emergency Application is GRANTED, in part, as follows:

1. Pending further determination by the selected or appointed Arbitrator(s), Ms. Peterson is precluded from disclosing or disclosing or inducing, promoting or actively inspiring anyone to disclose Confidential Information, as defined in the "Confidential Settlement Agreement and Mutual Release: Assignment of Copyright and Non-Disparagement Agreement," effective October 28, 2016 (the "Settlement Agreement") whether in the media, court filings, or otherwise; and

2. Pending further determination by the selected or appointed Arbitrator(s), Ms. Peterson is precluded from disclosing or inducing, promoting, or actively inspiring anyone to disclose the fact of the commencement and pendency of this Arbitration and any details relating thereto, together with all proceedings and papers filed herein including, but not limited, to EC's Emergency Application and this Order; and

3. The foregoing shall not apply if, in accordance with Paragraph 4.4.1 of the Settlement Agreement, Ms. Peterson is compelled to disclose Confidential Information to another person or entity by valid legal process, including without limitation, a subpoena duces tecum or similar legal compulsion. Ms. Peterson shall not make any such disclosure unless she has first provided DD with notice of such order or legal process not less than ten (10) days in advance of the required date of disclosure pursuant to the Written Notice provisions set forth in the parties' Settlement Agreement, providing DD with an opportunity to intervene and with full and complete cooperation should such disclosure be opposed. If the valid legal process can be stopped by Ms. Peterson's consent or at her behest, Ms. Peterson shall use best efforts to avoid the disclosure of the Confidential Information.

2

The Emergency Arbitrator retains the power to modify or reconsider this interim order until the appointment of an arbitrator or arbitration panel for consideration of the entire matter. (ADRS Rule 24.)

**IT IS SO ORDERED**.

DATED: February 27, 2018

Hon. Jacqueline A. Connor (Ret.)
Emergency Arbitrator

TEMPORARY RESTRAINING ORDER