1    AVENATTI & ASSOCIATES, APC
     Michael J. Avenatti, State Bar No. 206929
2    Ahmed Ibrahim, State Bar No. 238739
     520 Newport Center Drive, Suite 1400
3    Newport Beach, CA 92660
     Telephone:  949.706.7000
4    Facsimile:   949.706.7050

5    Attorneys for Plaintiff Stephanie Clifford
     a.k.a. Stormy Daniels a.k.a. Peggy Peterson

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   STEPHANIE CLIFFORD a.k.a.              CASE NO.:  2:18-cv-02217-SJO-FFM
     STORMY DANIELS a.k.a. PEGGY
12   PETERSON, an individual,              **PLAINTIFF'S MEMORANDUM OF**
                                           **POINTS AND AUTHORITIES IN**
13              Plaintiff,                 **SUPPORT OF RENEWED MOTION**
                                           **FOR EXPEDITED JURY TRIAL**
14       vs.                               **PURSUANT TO SECTION 4 OF THE**
                                           **FEDERAL ARBITRATION ACT,**
15                                         **AND FOR LIMITED EXPEDITED**
16   DONALD J. TRUMP a.k.a. DAVID          **DISCOVERY**
     DENNISON, and individual,
17   ESSENTIAL CONSULTANTS, LLC, a
     Delaware Limited Liability Company,
18   MICHAEL COHEN and DOES 1             **Hearing Date:    May 7, 2018**
     through 10, inclusive,               **Hearing Time:   10:00 a.m.**
19                                         **Location:        Courtroom 10C**
                Defendants.
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................1

II.    FACTUAL BACKGROUND.......................................................2

    A.  The Settlement Agreement.............................................2

    B.  Mr. Cohen's Role and Public Statements Regarding This
        Dispute..............................................................................2

    C.  The White House Denies Any Involvement With the
        Settlement Agreement or A Relationship With Plaintiff. ..............4

    D.  The Parties Met and Conferred In Person Regarding the
        Issues Raised in this Motion...........................................5

III.   ARGUMENT ................................................................................5

    A.  Plaintiff Requests the Court Set a Jury Trial Pursuant to
        Section 4 of the FAA Regarding Whether an Agreement
        Was Ever Formed. ............................................................5

    B.  The Court Should Grant Plaintiff Leave to Conduct Limited
        Expedited Discovery. ......................................................7

        1.  The Court Will Decide Whether the Dispute Must Be
            Arbitrated Because Plaintiff Contends No Agreement
            Was Formed. ..........................................................7

        2.  Plaintiff Is Entitled to Conduct Discovery.........................8

        3.  Good Cause Exists for an Order Compelling
            Defendants to Provide Expedited Discovery. ....................9

            a)  The Discovery Is Needed on an Expedited
                Basis Because there is Urgency to Resolve the
                Question of Arbitrability..........................................10

            b)  The Breadth of the Proposed Discovery Is
                Reasonable. ..........................................................11

            c)  Plaintiff Has a Valid Purpose for the Proposed
                Discovery. ............................................................11

(1)    The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether Mr. Trump Was Aware of, and Consented to, the Agreement .........................................11

(2)    The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether the Agreement and the Arbitration Clause Had a Lawful Purpose .......................................14

d)    The Discovery Requests Do Not Impose an Unreasonable Burden on Defendants. ....................................18

e)    The Fifth Factor Relating to Timing of the Discovery Weighs in Favor of Expedited Discovery. ...................................................................19

IV.    CONCLUSION...............................................................................19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

# TABLE OF AUTHORITIES

Cases

Armendariz v. Found. Health Psychcare Servs., Inc.,
  24 Cal. 4th 83 (2000)..........................................................................15

Banner Entertainment, Inc. v. Superior Court,
  62 Cal. App. 4th 348 (1998)................................................................13

Barraza v. Cricket Wireless LLC,
  No. C 15-02471 WHA, 2015 WL 6689396 (N.D. Cal. Nov. 3, 2015) ...................6, 8

Britton v. Co-op Banking Grp.,
  4 F.3d 742 (9th Cir. 1993) ...................................................................17

Brown v. Freese,
  28 Cal. App. 2d 608 (1938) .................................................................17

Buckeye Check Cashing, Inc. v. Cardegna,
  546 U.S. 440 (2006)..........................................................................15

Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC,
  816 F.3d 1208 (9th Cir. 2016) .............................................................13

Chaganti v. I2 Phone Int'l, Inc.,
  635 F. Supp. 2d 1065 (N.D. Cal. 2007)..................................................12

Clinton v. Jones,
  520 U.S. 681 (1997)..........................................................................18

Comedy Club, Inc. v. Improv W. Assocs.,
  553 F.3d 1277 (9th Cir. 2009) .............................................................7

Doherty v. Barclays Bank Delaware,
  No. 16-CV-01131-AJB-NLS, 2017 WL 588446 (S.D. Cal. Feb. 14, 2017)................8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR
EXPEDITED TRIAL SETTING AND DISCOVERY**

Duffens v. Valenti,
   161 Cal. App. 4th 434 (2008) ...................................................................14

Esparza v. Sand & Sea, Inc.,
   2 Cal. App. 5th 781 (2016) ......................................................................14

FEC Advisory Opinion 1990-09 ....................................................................16

Ferguson v. Countrywide Credit Indus., Inc.,
   No. CV00-13096AHM(CTX), 2001 WL 867103 (C.D. Cal. Apr. 23, 2001)...............6

GIB, LLC v. Salon Ware, Inc.,
   634 F. App'x 610 (9th Cir. 2016) ...............................................................6

Goldman, Sachs & Co. v. City of Reno,
   747 F.3d 733 (9th Cir. 2014) ...................................................................7

Granite Rock Co. v. Int'l Bhd. of Teamsters,
   561 U.S. 287 (2010)............................................................................7

Gutierrez v. Carter Bros. Sec. Servs., LLC,
   63 F. Supp. 3d 1206 (E.D. Cal. 2014) .........................................................15

Hicks v. Citigroup, Inc.,
   No. C11-1984-JCC, 2012 WL 254254 (W.D. Wash. Jan. 26, 2012)...........................8

Infineon Techs. AG,
   No. 216CV02859CASPLAX, 2017 WL 1371247 (C.D. Cal. Mar. 17, 2017) ....10, 11, 18, 19

Kramer v. Toyota Motor Corp.,
   705 F.3d 1122 (9th Cir. 2013) .................................................................17

McKee v. Audible, Inc.,
   No. CV 17-1941-GW(EX), 2017 WL 7388530 n. 2 (C.D. Cal. Oct. 26, 2017) ...........9

Nagrampa v. MailCoups, Inc.,
   469 F.3d 1257 (9th Cir. 2006) .................................................................15

-4-

Newton v. Clearwire Corp.,

   No. 2:11-CV-00783-WBS, 2011 WL 4458971 (E.D. Cal. Sept. 23, 2011)..................9

Nguyen v. Barnes & Noble, Inc.,

   763 F.3d 1171 (9th Cir. 2014) ...........................................................................12

NobelBiz, Inc. v. Wesson,

   No. 14cv0832 W(JLB), 2014 WL 1588715 (S.D. Cal April 18, 2014) ......................10

O'Brien v. Am. Exp. Co.,

   No. 11-CV-1822-BTM BGS, 2012 WL 1609957 (S.D. Cal. May 8, 2012)...........9, 19

Plows v. Rockwell Collins, Inc.,

   812 F. Supp. 2d 1063 (C.D. Cal. 2011)...............................................................9

R. M. Sherman Co. v. W. R. Thomason, Inc.,

   191 Cal. App. 3d 559 (1987) ...........................................................................14

Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.,

   907 F. Supp. 2d 1086 (N.D. Cal. 2012)..............................................................10

Sanford v. MemberWorks, Inc.,

   483 F.3d 956 (9th Cir. 2007) .................................................................5, 6, 7, 8

Semitool, Inc. v. Tokyo Electron America, Inc.,

   208 F.R.D. 273 (N.D. Cal. 2002) ......................................................................9

Smith v. Superior Court,

   41 Cal. App. 4th 1014 (1996) ...........................................................................16

Switch, LLC v. ixmation, Inc.,

   No. 15-CV-01637-MEJ, 2015 WL 4463672 (N.D. Cal. July 21, 2015)................8, 12

Synergy HomeCare Franchising, LLC v. Aviatech, LLC,

   No. CV-12-1601-PHX-SMM, 2013 WL 12284536 (D. Ariz. Mar. 12, 2013) .............6

Three Valleys,

   925 F.2d ........................................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR
EXPEDITED TRIAL SETTING AND DISCOVERY**

Williamson v. Superior Court,

   21 Cal. 3d 829 (1978) ...................................................................................16

## **STATUTES**

9 U.S.C. § 2 ........................................................................................................15

9 U.S.C. § 4 .................................................................................................passim

52 U.S.C. § 30101(8)(A)(i) ...............................................................................15

52 U.S.C. § 30104(b)(3)(A), (4), (5) ...........................................................15, 16

52 U.S.C. §§ 30116(a)(1)(A), (c) ......................................................................15

Cal. Civ. Code § 1550 ................................................................................12, 14

Cal. Civ. Code § 1558 .......................................................................................12

Cal. Civ. Code § 1580 .......................................................................................12

N.Y. Penal Law § 255.17 ..................................................................................17

## **RULES**

Fed. R. Civ. P. 26(b)(1) .......................................................................................8

## **REGULATIONS**

11 C.F.R. § 100.52(d)(1) ....................................................................................15

11 C.F.R. § 104.3(a)(3)(ii) .................................................................................15

## **OTHER AUTHORITIES**

Restatement (First) of Contracts § 557 (1932) ...........................................16, 17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR
EXPEDITED TRIAL SETTING AND DISCOVERY**

## I.     INTRODUCTION

Plaintiff Stephanie Clifford, also known as Stormy Daniels ("Plaintiff") files this renewed motion for expedited jury trial pursuant to 9 U.S.C. § 4, and for limited expedited discovery.  On March 29, this Court denied Plaintiff's previous motion requesting the same relief without prejudice on the sole ground that the motion was premature because defendants Essential Consultants, LLC ("EC") and Donald J. Trump ("Mr. Trump") had not yet moved to compel arbitration.  Now that a motion to compel arbitration has been filed (as Plaintiff predicted), and Plaintiff's return date on the motion has arrived, Plaintiff's motion is ripe for decision.

This case centers on a dispute concerning whether a settlement agreement, containing a mutual release and terms of non-disclosure, was ever formed between the parties.  Plaintiff contends she is not bound by any of the terms and conditions of the agreement, including the provision of the agreement providing for arbitration, for a variety of reasons.

At issue is an agreement entitled "Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement" (hereafter, the "Settlement Agreement" or "Agreement").  As detailed in her First Amended Complaint, Plaintiff contends that (1) the Settlement Agreement was never formed, and (2) even if such an agreement had been formed, there was no lawful object or purpose for the Settlement Agreement in general, or the confidential arbitration clause in particular.

By this Motion, Plaintiff seeks two forms of relief.  First, Plaintiff seeks an order setting a jury trial as soon as possible, on a date that is convenient for the Court and its extremely busy calendar.[1]

---

[1] Plaintiff recognizes the incredible amount of work and demands that are placed on this Court by way of the Court's docket and its caseload. By way of this motion, Plaintiff is not suggesting in any way, shape or form that she believes this case is entitled to special treatment or that the claims in this case are deserving of an inordinate amount of attention from the Court.

Second, Plaintiff seeks an order granting her leave to conduct limited expedited discovery in connection to assist with opposing EC's motion to compel arbitration (in which Mr. Trump joins and "consents") and to present evidence in support of her position at the aforementioned trial pursuant to 9 U.S.C. § 4. Specifically, Plaintiff requests: (1) a deposition of Mr. Trump of no greater than two hours, (2) a deposition of Mr. Cohen of no greater than two hours, and (3) no more than ten (10) targeted requests for production of documents directed to Mr. Trump and Mr. Cohen on various topics relating to the Settlement Agreement.

Because the requested discovery is needed in connection with opposing EC's motion to compel arbitration and the trial, Plaintiff requests that consideration of EC's motion to be stayed pending consideration of the present motion and the completion of the requested jury trial.

## II.   FACTUAL BACKGROUND

### A.   The Settlement Agreement

The agreement at issue in this action is entitled "Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement." A true and correct copy of the agreement, referred to hereafter as the "Settlement Agreement" or simply the "Agreement," is attached to the First Amended Complaint as Exhibit 1. The provisions of the Settlement Agreement relevant to the motion are discussed below in connection with Plaintiff's arguments below.

### B.   Mr. Cohen's Role and Public Statements Regarding This Dispute.

As alleged in the FAC, Michael Cohen is an attorney licensed in the State of New York. [FAC, ¶16.] Mr. Cohen worked as the "top attorney" at the Trump Organization from 2007 until after the election and presently serves as Mr. Trump's personal attorney. [Id.] He is also generally referred to as Mr. Trump's "fixer." [Id.]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

Mr. Cohen is alleged to have prepared the Settlement Agreement and presented it to Plaintiff.  [Id., ¶¶17-18.]  Mr. Cohen is also alleged to have formed EC on October 17, 2016, just weeks before the 2016 presidential election.  [Id., ¶18.]

On or about February 13, 2018, Mr. Cohen issued a public statement regarding Ms. Clifford, the existence of the Settlement Agreement, and details concerning the Settlement Agreement.  Mr. Cohen stated in part:  "In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford.  Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly."  [FAC, ¶27.]

On March 9, 2018, regarding the $130,000 payment, Mr. Cohen said "[t]he funds were taken from my home equity line and transferred internally to my LLC account in the same bank."  [Declaration of Michael Avenatti in Support of Renewed] Motion for Expedited Jury Trial and Discovery ("Avenatti Decl."), Ex. A.]  An e-mail confirming the transfer by Mr. Cohen to Plaintiff's attorney in connection with the Agreement, however, showed Mr. Cohen used his Trump Organization e-mail account to conduct the transfer.  [Id.]

In a March 19, 2018 *Vanity Fair* article, Mr. Cohen again suggested Mr. Trump had no knowledge of the Settlement Agreement or $130,000 payment.  [Avenatti Decl., Ex. B.]  In it, he is quoted as saying:  "What I did defensively for my personal client, and my friend, is what attorneys do for their high-profile clients."  [Id.]  The article also states that Mr. Cohen "claims that Trump did not know that he had paid Clifford the $130,000" and that Mr. Cohen and his counsel determined "there is no bar-association violation for his action."  [Id.]

### C.  The White House Denies Any Involvement With the Settlement Agreement or A Relationship With Plaintiff.

White House and campaign representatives purportedly speaking on Mr. Trump's behalf, have denied that Mr. Trump had any knowledge of, or involvement with, the Settlement Agreement.  [See Avenatti Decl., Ex. C.]

On April 5, 2018, Mr. Trump, making his first public comments regarding this dispute, denied having knowledge of the $130,000 payment to Plaintiff under the Settlement Agreement.  [Avenatti Decl., Ex. D.]  Mr. Trump stated he did not know where the money came from, denied setting up a fund from which Mr. Cohen could draw from to make the payment, and directed reporters' questions to Mr. Cohen.  [Id.]

In light of these seemingly contradictory and implausible statements, many things that bear directly on the formation of the Agreement and its existence—issues soon to be before the Court—remain uncertain.  By way of example only, it continues to remain unclear:

- Whether Mr. Trump is "David Dennison" or "DD" as referenced in the Settlement Agreement;

- Whether Mr. Trump knew about the Settlement Agreement;

- Whether Mr. Trump truly did not know about the $130,000 payment;

- Whether the payment was made with Mr. Trump's own money, money from his presidential campaign, money from The Trump Organization, another source linked to Mr. Trump, or from Mr. Cohen;

- What was the scope of Mr. Trump's participation or involvement in the Settlement Agreement, and did Mr. Trump consider himself a party?

- What was Mr. Cohen's role?

- What is Essential Consultants, LLC, who are its members, and what other business does it conduct?

- Did Mr. Trump approve or authorize Mr. Cohen's actions?;

- Whether Mr. Trump consented to be a party to the Settlement Agreement;

- Did Mr. Trump consent to the contractual obligations imposed on him by the

-4-

Settlement Agreement?;

• If so, did Mr. Trump actually communicate any assent to the Settlement Agreement to Plaintiff given that he never signed the Settlement Agreement?;

• Was Mr. Trump personally involved in an effort to silence Plaintiff in order to benefit his presidential campaign by preventing voters from hearing Plaintiff speak publicly;

• Who (if anyone) was acting as Mr. Trump's attorney in connection with the Settlement Agreement?

### D. The Parties Met and Conferred In Person Regarding the Issues Raised in this Motion.

On March 20, 2018, the parties met and conferred in person concerning the relief requested in this Motion. [Avenatti Decl., ¶10.] Specifically, Plaintiff's counsel advised counsel for Defendants that Plaintiff sought limited discovery on an expedited basis as follows: (1) a deposition of Mr. Trump of no greater than two hours, (2) a deposition of Mr. Cohen of no greater than two hours, and (3) no more than ten (10) targeted requests for production of documents directed to Mr. Trump and Mr. Cohen on various topics relating to the Agreement. [Avenatti Decl., ¶6.] Defendants contend that no discovery should be conducted in the case, and no trial should be set, because the case should be summarily ordered to arbitration. [Id.] The parties, therefore, were unable to successfully resolve their dispute. [Id.] Since the Court's denial of the prior motion as premature, the parties' positions have remained the same. [Id.]

## III. ARGUMENT

### A. Plaintiff Requests the Court Set a Jury Trial Pursuant to Section 4 of the FAA Regarding Whether an Agreement Was Ever Formed.

Under the Federal Arbitration Act (FAA), "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; see also Sanford v. MemberWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007) ("[W]hen one party disputes 'the making of the arbitration agreement,' the Federal Arbitration Act requires that 'the court [ ] proceed summarily to the trial thereof' before

-5-

compelling arbitration under the agreement.") (brackets in original); <u>GIB, LLC v. Salon Ware, Inc.</u>, 634 F. App'x 610, 611 (9th Cir. 2016) (where triable issues existed on whether agreement was formed, district court erred in compelling arbitration without first proceeding under Section 4 of the FAA to resolve the dispute).  The Ninth Circuit has "interpreted this language to encompass not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause." <u>Sanford</u>, 483 F.3d at 962.  For this reason, "challenges *to the existence of a contract as a whole* must be determined by the court prior to ordering arbitration."  <u>Id.</u> (emphasis added).

"If no jury trial be demanded . . . , the court shall hear and determine such issue." 9 U.S.C. § 4.  If on the other hand, one party demands a jury trial in a timely fashion, "upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose."  <u>Id.; see also</u> <u>Barraza v. Cricket Wireless LLC</u>, No. C 15-02471 WHA, 2015 WL 6689396, at *6 (N.D. Cal. Nov. 3, 2015) (setting "summary jury trial" less than 45 days from date of order to determine whether plaintiffs agreed to terms and conditions contained in guide enclosed with their wireless phones).[2]  "If the jury find that no agreement in writing for arbitration was made . . . the proceeding shall be dismissed."  9 U.S.C. § 4.

---

[2] <u>Synergy HomeCare Franchising, LLC v. Aviatech, LLC</u>, No. CV-12-1601-PHX-SMM, 2013 WL 12284536, at *3 (D. Ariz. Mar. 12, 2013) (denying motion to compel arbitration pending a jury trial and setting the "matter for a pre-trial status hearing in order to schedule any necessary discovery, depositions, etc., prior to trial on the existence of an arbitration agreement . . ."); <u>Ferguson v. Countrywide Credit Indus., Inc.</u>, No. CV00-13096AHM(CTX), 2001 WL 867103, at *1 (C.D. Cal. Apr. 23, 2001), <u>aff'd</u>, 298 F.3d 778 (9th Cir. 2002) (recognizing that the "plaintiff has raised a genuine dispute regarding whether an arbitration agreement governs her claims and is therefore entitled to a trial of the issue" but declining to order a trial because, even assuming an agreement, the claims were not required to be arbitrated).

Here, Plaintiff has demanded a jury trial pursuant to section 4 of the FAA. [FAC at p. 18; see also Dkt No. __ at __.]  Moreover, Plaintiff disputes the "making of the arbitration agreement[.]"  9 U.S.C. § 4; Sanford, 483 F.3d at 962; see also FAC, ¶¶36-57. Such a trial "shall proceed summarily" upon a showing that the making of the arbitration agreement is at issue.  9 U.S.C. § 4.  Therefore, Plaintiff is entitled to an expedited jury trial regarding whether the Settlement Agreement was ever formed.

**B.     The Court Should Grant Plaintiff Leave to Conduct Limited Expedited Discovery.**

**1.     The Court Will Decide Whether the Dispute Must Be Arbitrated Because Plaintiff Contends No Agreement Was Formed.**

Based on the parties' meet and confer discussion and the arguments made in EC's motion to compel arbitration, Plaintiff anticipates Defendant will argue that discovery should not be ordered because the arbitrator, not the Court, will resolve the parties' dispute over whether an agreement exists.  Defendants are incorrect.

It is axiomatic that "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit."  Sanford, 483 F.3d at 962.  Thus, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."  Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1287 (9th Cir. 2009) (citation omitted).  Importantly, "[i]f the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply."  Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) (emphasis in original).

For this reason, although it is true that questions "regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator," this is not so for "challenges to the *existence* of a contract as a whole"— which "must be determined by the court prior to ordering arbitration."  Sanford, 483 F.3d at 962 (emphasis in original); see also Granite Rock Co. v. Int'l Bhd. of Teamsters, 561

-7-

U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); Three Valleys v. E.F. Hutton, 925 F.2d 1136, 1140–41 ("[A] party who contests the *making of a contract* containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate.").[3]

Therefore, Defendants' contention that discovery should be denied because the arbitrator will resolve the parties' dispute concerning the formation of the Settlement Agreement is without merit.

## 2.    Plaintiff Is Entitled to Conduct Discovery.

As a logical and necessary corollary of Plaintiff's right to a jury trial in the context of this dispute and of opposing EC's motion to compel arbitration, Plaintiff is also entitled to conduct discovery.  Permitting a party to conduct discovery in conjunction with an opposition to a motion to compel arbitration "is consistent with the FAA and within the Court's discretion."  Hicks v. Citigroup, Inc., No. C11-1984-JCC, 2012 WL 254254, at *2 (W.D. Wash. Jan. 26, 2012).  For that reason, "[c]ourts have permitted limited discovery as  to arbitrability where  parties  have  placed  the  validity  of  the arbitration agreement in issue." Id. at *1; see also Barraza, 2015 WL 6689396, at *6 (ordering "summary jury trial" and that "[b]oth sides should cooperate in expedited discovery on the factual matters in play on this motion, and failure to cooperate may lead to preclusion or adverse inferences as a sanction.").

Such discovery is appropriate because "it is relevant to a 'claim or defense.'"

---

[3] District courts in this Circuit are in accord.  Doherty v. Barclays Bank Delaware, No. 16-CV-01131-AJB-NLS, 2017 WL 588446, at *3 (S.D. Cal. Feb. 14, 2017) ("Plaintiff is challenging the existence of a contract with Defendant. Therefore, following relevant Ninth Circuit case law, the Court must first decide whether a valid contract exists."); Barraza, 2015 WL 6689396, at *3 (the "existence of a contract as a whole must be determined by the court prior to ordering arbitration") (quoting Sanford, 483 F.3d at 962); Switch, LLC v. ixmation, Inc., No. 15-CV-01637-MEJ, 2015 WL 4463672, at *3 (N.D. Cal. July 21, 2015) (same).

Newton v. Clearwire Corp., No. 2:11-CV-00783-WBS, 2011 WL 4458971, at *6 (E.D. Cal. Sept. 23, 2011) (quoting Fed. R. Civ. P. 26(b)(1)).  More specifically, courts will permit discovery that "is relevant to the formation or making of the agreement."  O'Brien v. Am. Exp. Co., No. 11-CV-1822-BTM BGS, 2012 WL 1609957, at *1 (S.D. Cal. May 8, 2012); McKee v. Audible, Inc., No. CV 17-1941-GW(EX), 2017 WL 7388530, at *3 n. 2 (C.D. Cal. Oct. 26, 2017) (permitting discovery on issue of "mutual assent" in connection with motion to compel arbitration).

Similarly, when the party opposing arbitration raises unconscionability arguments, "the parties must be afforded an opportunity to gather the appropriate evidence."  Plows v. Rockwell Collins, Inc., 812 F. Supp. 2d 1063, 1069–70 (C.D. Cal. 2011) (granting parties four months to conduct discovery on enforceability of arbitration agreement); O'Brien, 2012 WL 1609957, at *2 ("Based on [the] available defenses to the validity of an arbitration agreement, courts have permitted parties opposing a motion to compel arbitration to take discovery on the unconscionability of an arbitration provision").

Accordingly, Plaintiff is entitled to conduct discovery in connection with EC's motion to compel arbitration and the FAA section 4 summary jury trial.

### 3.     Good Cause Exists for an Order Compelling Defendants to Provide Expedited Discovery.

Having established Plaintiff is *entitled* to conduct discovery, the next question is whether the request for the limited discovery should be *expedited*.  As shown below, Plaintiff's request should be granted.

To obtain discovery on an expedited basis, Plaintiff must show "good cause." Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause" exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR EXPEDITED TRIAL SETTING AND DISCOVERY**

"In considering whether good cause exists, factors courts may consider include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." <u>MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG</u>, No. 216CV02859CASPLAX, 2017 WL 1371247, at *2 (C.D. Cal. Mar. 17, 2017) (citing <u>Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.</u>, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012); <u>see also</u> <u>NobelBiz, Inc. v. Wesson</u>, No. 14cv0832 W(JLB), 2014 WL 1588715, at *1 (S.D. Cal April 18, 2014).

Here, Plaintiff seeks the following limited discovery on an expedited basis: (1) a deposition of Mr. Trump of no greater than two hours, (2) a deposition of Mr. Cohen of no greater than two hours, and (3) a maximum of ten (10) targeted requests for production of documents directed to Mr. Trump and Mr. Cohen on various topics relating to the Agreement. Good cause exists for this requested discovery.

### a) The Discovery Is Needed on an Expedited Basis Because there is Urgency to Resolve the Question of Arbitrability.

The first factor courts may consider in the "good cause" analysis is "whether a preliminary injunction is pending[.]" <u>MACOM</u>, 2017 WL 1371247, at *2. Although no motion for preliminary injunction has been filed in this case, this factor nevertheless weighs in favor of granting expedited discovery. Specifically, there is urgency to resolving the present dispute over arbitrability because EC—without any notice to Plaintiff—initiated an arbitration proceeding in Los Angeles before ADR Services and obtained a temporary restraining order on an *ex parte* basis (again, without any notice to Plaintiff) purporting to restrict Plaintiff from speaking.[4]  [Avenatti Decl., ¶5.]  Because Defendants threaten to enforce the order (which Plaintiff does not recognize as valid because, among other reasons, there was no agreement to arbitrate formed between the

---

[4] It is widely understood that prior restraints on speech are generally unconstitutional.

parties), it is important that the FAA section 4 trial be set as soon as possible, and that discovery be ordered on an expedited basis to use at the trial.

### b)    The Breadth of the Proposed Discovery Is Reasonable.

The second factor the Court may consider in the "good cause" analysis is the "breadth of the discovery request" at issue.  <u>MACOM</u>, 2017 WL 1371247, at *2.

Here, Plaintiff makes very modest, limited, and targeted discovery requests. Although entitled to seven (7) hours of deposition for each witness, Plaintiff requests only two (2) hours to depose Messrs. Trump and Cohen, a small fraction of the time she is allotted under Rule 30.   Plaintiff also does not seek broad document discovery. Plaintiff intends to propound no more than ten (10) document requests narrowed in scope by time period and subject matter.

### c)    Plaintiff Has a Valid Purpose for the Proposed Discovery.

The third factor is the "purpose for requesting the expedited discovery." <u>MACOM</u>, 2017 WL 1371247, at *2.  This factor is also met.  Simply stated, the purpose of the expedited discovery is to enable Plaintiff to oppose EC's motion to compel arbitration.   As explained below, the requested discovery is narrowly targeted to establishing that (1) the Settlement Agreement was never formed between the parties, and (2) even if such an agreement had been formed, there was no lawful purpose for the Settlement Agreement in general, or the confidential arbitration clause in particular. There are several examples of factual issues likely to arise which demonstrate why such expedited discovery will be necessary.

### (1)    The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether Mr. Trump Was Aware of, and Consented to, the Agreement

The first reason why the requested discovery has a valid purpose is that there is a factual dispute between the parties regarding whether Defendant Trump was aware of the Settlement Agreement, whether he was a party to the Agreement, and whether he ever

-11-

consented to the Agreement.  This issue goes directly to whether a valid contract was ever in fact formed between the parties.  "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'"  Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1175 (9th Cir. 2014).  The elements "essential to the existence of a contract" are as follows: (1) that the parties are capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.  Cal. Civ. Code § 1550; see also Switch, 2015 WL 4463672, at *4.  Consent is an essential element.  Id.

Here, statements in the public record from the White House and Mr. Cohen show in stark terms why EC's motion to compel arbitration cannot possibly be decided without facts and evidence, and thus, discovery.  Reading these statements at face value, both the White House (theoretically on behalf of Mr. Trump) and Michael Cohen appear to call into question whether Mr. Trump knew of the Settlement Agreement, whether he consented to it, whether he authorized it, and, more fundamentally, whether he even had any relationship at all with Plaintiff.[5]

For his part, Mr. Cohen has suggested that he paid the $130,000 to Plaintiff out of his own pocket (through a home equity line of credit), that he did not make Mr. Trump aware of what he was doing, and that he did it as a favor to Mr. Trump as a "friend." [Avenatti Decl., Exs. A-B.]  Indeed, if Mr. Trump was completely unaware of Mr. Cohen's actions, the question naturally arises as to how it would be possible for a "meeting of the minds" to have occurred between parties where one of the parties does not even know about the existence of the agreement?  Chaganti v. I2 Phone Int'l, Inc.,

---

[5] Indeed, Defendants will not even confirm or deny whether the "David Dennison" mentioned in the Agreement is Mr. Trump.  See Cal. Civ. Code § 1558 ("It is essential to the validity of a contract, not only that the parties should exist, *but that it should be possible to identify them.*") (emphasis added).  ***In fact, despite repeated requests from Plaintiff's counsel as to their position, Defendants refuse to state whether Mr. Trump is even a party to the Agreement.***

635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007) ("In order for a contract to form, there must be a meeting of the minds with an intent to be bound by a legally enforceable agreement."); Cal. Civ. Code § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense."). Therefore, Plaintiff must be permitted to request documents from Defendants and to cross-examine Mr. Trump and Mr. Cohen at a deposition regarding these topics that are at the heart of whether an agreement was ever formed.

Moreover, the absence of Mr. Trump's signature is a highly relevant topic of discovery in this proceeding. This is particularly so where, as here, the Agreement *requires* the signature of all parties as a condition to it becoming valid and binding. [Agreement at ¶8.6 ("[T]his Agreement, *when signed by all Parties*, is a valid and binding agreement, enforceable in accordance with its terms.") (emphasis added).] See Banner Entertainment, Inc. v. Superior Court, 62 Cal. App. 4th 348, 358 (1998) ("When it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created."). Moreover, by failing to sign the Agreement, Mr. Trump failed to supply essential consideration to Plaintiff in the form of a release, covenant not to sue, and representations and warranties. [See Agreement at ¶¶2.3, 2.5, 4.3, 8.6.] See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208, 1212 (9th Cir. 2016) ("[W]here the parties to a 'contract' have not mutually consented to be bound by their agreement, they have not formed a true contract."); Banner, 62 Cal. App. 4th at 362 (reversing order compelling arbitration on the grounds that in the absence of a signature, there was no agreement at all.).

Therefore, the lack of a signature from Mr. Trump, along with his testimony and Mr. Cohen's testimony explaining why he did not sign the Agreement when the

Agreement plainly included a place for his signature, is an unmistakably relevant area of inquiry in connection with resolving EC's motion to compel arbitration.

Further, the source of funds for the $130,000 payment is highly relevant to the motion to compel arbitration. If Mr. Trump did not supply the funds or did not even know about the funds, this would be another relevant fact demonstrating that he never consented to the Settlement Agreement. On the other hand, if Mr. Trump, The Trump Organization, or another Trump related entity *is* the source of funds for the $130,000 payment, then Mr. Trump may be said to have consented to the terms of the Agreement.

Finally, if Mr. Trump *was* aware of the Settlement Agreement, given that he never signed it, Plaintiff must be permitted to explore through document demands and deposition testimony how he claims he communicated his acceptance and assent of the Agreement, including his assent to the terms requiring him to provide Plaintiff with a release of claims and a covenant not to sue. Esparza v. Sand & Sea, Inc., 2 Cal. App. 5th 781, 788 (2016) (the "consent of the parties to a contract must be communicated by each party to the other.").

### (2)  The Discovery Is Necessary to Resolve Factual Disputes Concerning Whether the Agreement and the Arbitration Clause Had a Lawful Purpose

In addition to discovery on the question of whether an agreement was formed in light of Mr. Trump's failure to consent to the Agreement, discovery concerning whether there was a lawful purpose to the Agreement's confidential arbitration clause is also highly probative of whether a contract was formed. Cal. Civ. Code § 1550 (contract must have a "lawful object" which is "essential to the existence of a contract").

The illegality of a contract "voids the entire contract, including the arbitration clause." Duffens v. Valenti, 161 Cal. App. 4th 434, 454 (2008); see also R. M. Sherman Co. v. W. R. Thomason, Inc., 191 Cal. App. 3d 559, 563 (1987) ("If the contract was truly void it created no right or claim whatsoever. . . . [I]t binds no one and is a mere nullity.") (internal quotation marks omitted). Thus, for example, in Gutierrez v. Carter

-14-

Bros. Security Services, the district court concluded, in part, that "if a contract's 'central purpose' is 'tainted with illegality,' then the contract as a whole is unenforceable" and thus denied a motion to compel arbitration.  Gutierrez v. Carter Bros. Sec. Servs., LLC, 63 F. Supp. 3d 1206, 1214 (E.D. Cal. 2014) (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 124 (2000))

Under federal law (including the FAA), the legality of the arbitration provision is to be decided by the Court, not the arbitrator.  See Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th Cir. 2006) ("When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2 of the FAA.").  In Buckeye Check Cashing v. Cardegna, the Supreme Court held that "a challenge to the validity of the contract as a whole" based on illegality "and *not specifically to the arbitration clause*, must go to the arbitrator."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) (emphasis added).

Here, Plaintiff's challenge to the lawful purpose of the contract is not simply to the legality of the contract as a whole, but also specifically to the *arbitration clause itself*. [FAC, ¶¶57-61.]  Under the Federal Election Campaign Act (FECA), it is unlawful to make campaign contributions—defined broadly to include "any gift, subscription, loan, advance, or deposit of money *or anything of value* made by any person *for the purpose of influencing any election for Federal office"*— to a candidate for federal office where the contribution exceeds the limits provided for by federal law.  52 U.S.C. § 30101(8)(A)(i) (emphasis added). see also 52 U.S.C. §§ 30116(a)(1)(A), (c).  The phrase "anything of value" includes "all in-kind contributions."  11 C.F.R. § 100.52(d)(1).

Moreover, critical to the legality of the arbitration clause itself, any such campaign "contributions" or "expenditures" (defined similarly to "contribution") must be made public.  52 U.S.C. § 30104(b)(3)(A), (4), (5).  This also includes any contributions or expenditures to benefit the campaign made by the "candidate."   11 C.F.R. §

104.3(a)(3)(ii); FEC Advisory Opinion 1990-09.

Here, the discovery is needed to establish that the arbitration clause had no such lawful object or purpose.  [See FAC, ¶59.]  More specifically, Plaintiff intends to prove the arbitration clause was entered with the purpose of keeping facts concerning federal campaign contributions and expenditures secret and hidden from public view by using a confidential arbitration proceeding in violation of FECA's mandates to publicly report campaign contributions and expenditures.  See 52 U.S.C. § 30104(b)(3)(A), (4), (5).  In other words, the principal aim and design of the arbitration clause is to keep confidential that which, by law, must be publicly disclosed. Indeed, Plaintiff contends the clause plainly is designed to prevent the public disclosure of an illegal campaign contribution by mandating that disputes between Plaintiff and Mr. Trump be resolved in a confidential arbitration proceeding shielded from public scrutiny.  [FAC, ¶59.]

In short, deposition testimony of Mr. Trump and Mr. Cohen, along with document requests directed to Defendants, is necessary to determine whether the Agreement and the arbitration clause had a lawful object and purpose.  These are issues the Court, not the arbitrator, will be required to decide in connection with EC's forthcoming Petition to Compel Arbitration.

Further, Plaintiff also intends to prove that the Settlement Agreement, along with the arbitration clause, are also without a lawful object or purpose and thus void *ab initio* because they violate public policy by suppressing speech on a matter of enormous public concern about a candidate for President of the United States, mere weeks before the election.  "'Agreements to suppress evidence have long been held void as against public policy, both in California and in most common law jurisdictions.'" Smith v. Superior Court, 41 Cal. App. 4th 1014, 1025 (1996) (quoting Williamson v. Superior Court, 21 Cal. 3d 829, 836–837 (1978)).  "A bargain that has for its consideration the nondisclosure of discreditable facts, or of facts that the promisee is under a fiduciary duty not to disclose, is illegal."  Restatement (First) of Contracts § 557 (1932).  Remarkably,

-16-

Illustration 1 in the official comments to section 557 provides the following example of a bargain that is illegal:

> 1. A, a candidate for political office, and as such advocating certain principles, had previously written letters to B, taking a contrary position. B is about to publish the letters, and A fearing that the publication will cost him his election, agrees to pay $1000 for the suppression of the letters. The bargain is illegal.

Restatement (First) of Contracts § 557, Illustration 1 (1932); see also Brown v. Freese, 28 Cal. App. 2d 608, 618 (1938) (contract offering to pay the plaintiff to refrain from disclosing information the plaintiff discovered about transactions in which the decedent's husband had participated held illegal).  The arbitration clause itself is illegal because it facilitates the suppression of speech by mandating a confidential arbitration proceeding shielded from public view.

Finally, the Settlement Agreement, and the arbitration clause, are also without a lawful object or purpose and are thus void *ab initio* because they cover up adulterous conduct, a crime in Mr. Trump's home state of New York, N.Y. Penal Law § 255.17, and because the Settlement Agreement was designed to cover up Mr. Cohen's ethical violations, including his violations of Rule 1.4 and 1.8(e) of the New York Rules of Professional Conduct.  [See FAC, ¶¶53-55, 61.]

In addition to the foregoing, Plaintiff also contends no agreement to arbitrate was formed between Plaintiff and EC under the plain language of section 5.2 of the Settlement Agreement [FAC, ¶56], see Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1126 (9th Cir. 2013) ("Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'") (quoting Britton v. Co-op Banking Grp., 4 F.3d 742, 744 (9th Cir. 1993)). [FAC, ¶¶57-58.]

For all these reasons, Plaintiff has established she has a valid purpose for requesting limited expedited discovery and thus satisfies the third factor in the good

cause analysis.  Plaintiff must be permitted to present evidence at the FAA section 4 trial supporting these bases for voiding the arbitration clause.  To do so, Plaintiff must be permitted to conduct the limited discovery she has requested.

**d)**      **The Discovery Requests Do Not Impose an Unreasonable Burden on Defendants.**

The fourth factor – the "burden on the defendants to comply with the requests" – also strongly favors expedited discovery.  <u>MACOM</u>, 2017 WL 1371247, at *2.

**As a preliminary matter, it is firmly established that a sitting president is not afforded special protection from a civil suit regarding conduct before he or she entered office.**  <u>See</u> <u>Clinton v. Jones</u>, 520 U.S. 681, 717 (1997) (The "Constitution does *not* offer     a sitting President significant     protections     from     potentially distracting civil litigation . . .") (Breyer, J. *concurring*) (emphasis in original).  Indeed, even prior to the Supreme Court's decision in <u>Clinton v. Jones</u>, there were "several instances"  when "sitting Presidents have  given  depositions  or  testified  at criminal trials" and the Supreme Court had previously "twice authorized the enforcement of subpoenas seeking documents from a sitting President…"  <u>Id.</u> at 717.  Therefore, Mr. Trump cannot reasonably argue that he is not subject to being compelled to provide discovery in this case based on his status as President.

The burdens of discovery are also minimal.  Instead of the seven (7) hours of testimony from each witness that she is entitled to under Rule 30, Plaintiff requests a modest two hours from each witness.  Plaintiff is willing to accommodate the witnesses and their counsels' respective schedules by conducting the depositions on any day of their choosing (even weekends) within 21 days of the Court's order.  Further, Plaintiff is agreeable to conducting the depositions in any location of Defendants' choosing.

Further, although under Rule 34, Plaintiff is not limited in the number of document demands she may propound, here, she requests leave to propound no more than ten (10)

-18-

document requests.  The requests will be limited by subject matter to only those topics pertaining to the Settlement Agreement as described in this Motion.

Finally, the burdens imposed by the expedited discovery are not unreasonable because Plaintiff merely proposes to conduct discovery that will be relevant to this dispute regardless of where the case is ultimately litigated.  In other words, even if later in the case or in arbitration, Mr. Trump and Mr. Cohen will in any event be required to answer the same questions and produce the same documents regarding this dispute. Therefore, there is no undue burden or prejudice to Mr. Trump or Mr. Cohen to compel them to provide this discovery on a limited basis now.

### e)   The Fifth Factor Relating to Timing of the Discovery Weighs in Favor of Expedited Discovery.

The last factor the Court may consider in deciding whether good cause exists for expedited discovery is "how far in advance of the typical discovery process the request was made."  MACOM, 2017 WL 1371247, at *2.  This factor is of minimal relevance under the particular circumstances of this case.  Because this will case will require a jury trial under section 4 of the FAA, it is not unusual or unreasonable for Plaintiff to request expedited discovery at this early stage to support their position with admissible evidence through formal discovery demonstrating there was no agreement that was ever formed. See, e.g., O'Brien, 2012 WL 1609957, at *1; see also section III(B)(2), supra.  Indeed, Defendants' objection is not to the *timing* of the discovery; their position is that the discovery should not be conducted *at all*.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion in its entirety and enter an order (1) setting a jury trial pursuant to section 4 of the FAA on the earliest possible date convenient to the Court's schedule, and (2) requiring Defendants to produce Mr. Trump and Mr. Cohen for depositions within 21 days of the Court's order for no more than two hours of deposition time for each witness,

1  and to produce documents responsive to Plaintiff's requests for production of documents
2  (not to exceed ten (10) requests) within 14 days of the Court's Order.  Further, because
3  the requested discovery is needed in connection with opposing EC's motion to compel
4  arbitration, Plaintiff requests that consideration of EC's motion to be stayed pending
5  consideration of the present motion and the completion of the requested jury trial.

Dated:  April 8, 2018                        AVENATTI & ASSOCIATES, APC

                                  By:  _____/s/ Michael J. Avenatti_____
                                         Michael J. Avenatti
                                         Attorneys for Plaintiff Stephanie Clifford
                                         a.k.a. Stormy Daniels a.k.a. Peggy Peterson

-20-