1
AVENATTI & ASSOCIATES, APC
Michael J. Avenatti, State Bar No. 206929
2
Ahmed Ibrahim, State Bar No. 238739
520 Newport Center Drive, Suite 1400
3
Newport Beach, CA 92660
Telephone:  949.706.7000
4
Facsimile:   949.706.7050

5
Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson
6

7

8
## UNITED STATES DISTRICT COURT

9
## CENTRAL DISTRICT OF CALIFORNIA

10

11
STEPHANIE CLIFFORD a.k.a.
STORMY DANIELS a.k.a. PEGGY
12
PETERSON, an individual,

13
                    Plaintiff,

14
          vs.

15

16
DONALD J. TRUMP a.k.a. DAVID
DENNISON, and individual,
17
ESSENTIAL CONSULTANTS, LLC, a
Delaware Limited Liability Company,
MICHAEL COHEN and DOES 1
18
through 10, inclusive,

19
                    Defendants.
20

21

22

23

24

25

26

27

28

CASE NO.:  2:18-cv-02217-SJO-FFM

**PLAINTIFF'S OPPOSITION TO
DEFENDANT ESSENTIAL
CONSULTANT, LLC'S MOTION TO
COMPEL ARBITRATION**

**Hearing Date:  April 30, 2018**
**Hearing Time: 10:00 a.m.**
**Location:        350 West 1st Street**
                    **Courtroom 10C**
                    **Los Angeles, CA 90012**

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................ 2

    A.  The Settlement Agreement .............................................................. 2

    B.  Mr. Cohen Claims Mr. Trump Had Nothing to Do With the
    Agreement. ...................................................................................... 2

    C.  Mr. Trump and the White House Deny Any Involvement With
    the Settlement Agreement. .............................................................. 3

III.  ARGUMENT ............................................................................................. 3

    A.  Plaintiff's Assertion that No Agreement Was Formed Is an
    Issue For the Court to Decide.......................................................... 3

    B.  EC Does Not Have Standing to Compel Arbitration. ..................... 5

    C.  Mr. Trump Does Not Petition to Compel Arbitration and Has
    Not Met His Burden. ....................................................................... 6

    D.  No Agreement Was Formed Because Mr. Trump Failed to
    Sign the Agreement and Deliver the Promised Consideration
    to Plaintiff....................................................................................... 7

        1.  No Agreement Exists Because Mr. Trump's Signature
        Was an Express Condition to the Formation of the
        Agreement. ............................................................................ 7

        2.  Mr. Trump Was Incapable of Consenting to a Contract
        Which Imposed Duties on Him That He Was
        Supposedly Unaware Of. ..................................................... 10

        3.  EC's Argument Regarding Adequacy of Consideration
        Is Irrelevant to this Motion................................................. 12

    E.  The Presence of the Term "And/Or" in the Agreement in
    Connection With the Parties Does Not Save the Agreement......... 13

    F.  Plaintiff's Signature on the Settlement Agreement and Her
    Acceptance of Funds Did Not Create a Contract. ........................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G.    Defendants' Position that Mr. Trump Was Not a Contemplated Party Constitutes Fraud in the Execution Rendering the Agreement Void. ..........................................................................................19

IV.   CONCLUSION.........................................................................................20

**PLAINTIFF'S OPPOSITION TO DEFENDANT ESSENTIAL CONSULTANTS, LLC'S MOTION TO COMPEL ARBITRATION**

# TABLE OF AUTHORITIES

## <u>CASES</u>

<u>Abraham Zion Corp. v. Lebow</u>,
  761 F.2d 93 (2d Cir.1985) ..................................................................................11

<u>Am. Aeronautics Corp. v. Grand Cent. Aircraft Co.</u>,
  155 Cal. App. 2d 69 (1957) ..................................................................................9

<u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>,
  475 U.S. 643 (1986) ..............................................................................................4

<u>Bank Bldg. & Equip. Corp. of Am. v. Georgia State Bank</u>,
  132 Ga. App. 762, 209 S.E.2d 82 (1974) ...........................................................13

<u>Banner Entertainment, Inc. v. Superior Court</u>,
  62 Cal. App. 4th 348 (1998) ........................................................................passim

<u>Barnhart Aircraft v. Preston</u>,
  212 Cal. 19 (1931) ...............................................................................................18

<u>Barraza v. Cricket Wireless LLC</u>,
  No. C 15-02471 WHA, 2015 WL 6689396 (N.D. Cal. Nov. 3, 2015) ..................4

<u>Beck v. American Health</u>,
  211 Cal. App. 3d 1555 (1989) ...............................................................................9

<u>Britton v. Co-op Banking Grp.</u>,
  4 F.3d 742 (9th Cir. 1993) .....................................................................................6

<u>Buckeye Check Cashing, Inc. v. Cardegna</u>,
  546 U.S. 440 (2006) ..............................................................................................5

<u>Bustamante v. Intuit, Inc.</u>,
  141 Cal. App. 4th 199 (2006) ..............................................................................10

<u>California Shipbuilding Corp. v. Indus. Acc. Comm'n</u>,
  85 Cal. App. 2d 435 (1948) .................................................................................14

<u>Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC</u>,
  816 F.3d 1208 (9th Cir. 2016) ....................................................................4, 5, 10

Comedy Club, Inc. v. Improv W. Assocs.,
    553 F.3d 1277 (9th Cir. 2009) .......................................................................... 4

Comer v. Micor, Inc.,
    278 F.Supp.2d 1030 (N.D. Cal. 2003) ............................................................ 11

CPR for Skid Row v. City of Los Angeles,
    779 F.3d 1098 (9th Cir. 2015) ........................................................................ 14

Davison v. Stephens Inst.,
    No. A138953, 2014 WL 6654690 (Cal. Ct. App. Nov. 24, 2014) .............................. 17

De Mott v. Amalgamated Meat Cutters & Butcher Workmen of N. Am.,
    157 Cal. App. 2d 13 (1958) .............................................................................. 9

Dinkins v. Am. Nat'l Ins. Co.,
    92 Cal. App. 3d 222 (1979) ............................................................................ 14

DKS, Inc. v. Corp. Bus. Sols., Inc.,
    675 F. App'x 738 (9th Cir. 2017) ..................................................................... 20

Doherty v. Barclays Bank Delaware,
    No. 16-CV-01131-AJB-NLS, 2017 WL 588446 (S.D. Cal. Feb. 14, 2017) ................ 4

Duferco Steel Inc. v. M/V Kalisti,
    121 F.3d 321 (7th Cir. 1997) ............................................................................ 7

Duick v. Toyota Motor Sales, U.S.A., Inc.,
    198 Cal. App. 4th 1316 (2011) ................................................................... 19, 20

Duran v. Duran,
    150 Cal. App. 3d 176 (1983) ............................................................................ 9

Esparza v. Sand & Sea, Inc.,
    2 Cal. App. 5th 781 (2016) ......................................................................... 10, 11

Estakhrian v. Obenstine,
    320 F.R.D. 63 (C.D. Cal. 2017) ...................................................................... 11

Evox Prods. LLC v. Kayak Software Corp.,
    No. CV15-5053 PSG (AGRX), 2017 WL 5634858 (C.D. Cal. Apr. 4, 2017) ........... 18

F.B.T. Prods., LLC v. Aftermath Records,
    621 F.3d 958 (9th Cir. 2010) .......................................................................... 18

Goldman, Sachs & Co. v. City of Reno,
   747 F.3d 733 (9th Cir. 2014) ................................................................. 5

Granite Rock Co. v. Int'l Bhd. of Teamsters,
   561 U.S. 287 (2010)................................................................................ 5

Grill v. BAC Home Loans Servicing LP.,
   No. 10-CV-03057-FCD/GGH, 2011 WL 127891 (E.D. Cal. Jan. 14, 2011).............. 8

Guadagno v. E*Trade Bank,
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ................................................. 5, 6

Helperin v. Guzzardi,
   108 Cal. App. 2d 125 (1951) ................................................................. 9

Herbert H. Post & Co. v. Sidney Bitterman, Inc.,
   219 A.D.2d 214, 639 N.Y.S.2d 329 (1996)............................................. 13

In re Bell,
   19 Cal. 2d 488 (1942) ......................................................................... 13

In re Captain Blythers, Inc.,
   311 B.R. 530 (B.A.P. 9th Cir. 2004) ..................................................... 15

J.B. Enterprises Int'l, L.L.C. v. Sid & Marty Krofft Pictures Corp.,
   No. CV 02-7779 CBM (SHX), 2003 WL 21037837 (C.D. Cal. Mar. 3, 2003)...... 8, 17

Jackson v. Grant,
   890 F.2d 118 (9th Cir. 1989) ............................................................... 13

Kaneko v. Okuda,
   195 Cal. App. 2d 217 (1961) ............................................................... 10

Khajavi v. Feather River Anesthesia Med. Grp.,
   84 Cal. App. 4th 32 (2000)................................................................... 8

Knutson v. Sirius XM Radio Inc.,
   771 F.3d 559 (9th Cir. 2014) ............................................................... 18

Kramer v. Toyota Motor Corp.,
   705 F.3d 1122 (9th Cir. 2013) ............................................................. 6

Los Angeles Rams Football Club v. Cannon,
   185 F. Supp. 717 (S.D. Cal. 1960) ....................................................... 8

**PLAINTIFF'S OPPOSITION TO DEFENDANT ESSENTIAL CONSULTANTS, LLC'S
MOTION TO COMPEL ARBITRATION**

Lyne v. Bonner,
129 Cal. App. 2d 743 (1954) ................................................................... 9

Monterey Bay Unified Air Pollution Control Dist. for People of State of California v. U.S.
Dep't of Army,
176 F. Supp. 2d 979 (N.D. Cal. 2001) ............................................... 15, 16

Mundi v. Union Sec. Life Ins. Co.,
555 F.3d 1042 (9th Cir. 2009) ................................................................. 6

No. B077509,
1994 WL 814244 (Cal. Ct. App. Sept. 22, 1994) ..................................... 14

Ollilo v. Clatskanie Peoples' Util. Dist.,
170 Or. 173, 132 P.2d 416 (1942) ........................................................ 13

Ortiz v. America's Servicing Co.,
No. EDCV 12-191 CAS SPX, 2012 WL 2160953 (C.D. Cal. June 11, 2012) ............ 8

Perez v. DirecTV Grp. Holdings, LLC,
251 F. Supp. 3d 1328 (C.D. Cal. 2017) .................................................. 18

PSM Holding Corp. v. Nat'l Farm Fin. Corp.,
339 F. App'x 693 (9th Cir. 2009) ...................................................... 8, 17

Rebolledo v. Tilly's, Inc.,
228 Cal. App. 4th 900 (2014) ................................................................. 8

Robinson v. OnStar, LLC,
No. 16-56412, 2018 WL 1323630 (9th Cir. Mar. 15, 2018) ....................... 18

Romo v. Y–3 Holdings, Inc.,
87 Cal. App. 4th 1153 (2001) ................................................................. 8

Rosenthal v. Great W. Fin. Sec. Corp.,
14 Cal. 4th 394 (1996) ......................................................................... 20

Roth v. Garcia Marquez,
942 F.2d 617 (9th Cir. 1991) ............................................................. 1, 8

S.E.C. v. Daifotis,
No. C 11-00137 WHA, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011) ............. 7

Sanford v. MemberWorks, Inc.,
483 F.3d 956 (9th Cir. 2007) ................................................................. 4

Switch, LLC v. ixmation, Inc.,
    No. 15-CV-01637-MEJ, 2015 WL 4463672 (N.D. Cal. July 21, 2015) ......................4

Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,
    925 F.2d 1136 (9th Cir. 1991) .........................................................................4

## **STATUTES**

9 U.S.C. § 4 ...............................................................................................2, 7

Cal. Civ. Code § 1550 ...............................................................................10

Cal. Civ. Code §1565(3) ...........................................................................10

Cal. Civ. Code § 1558 ...............................................................................13

Cal. Civ. Code § 1589 ..........................................................................17, 18

Cal. Civ. Code § 1641 ...............................................................................15

## **OTHER AUTHORITIES**

1 Witkin, Summary of Cal. Law, Contracts § 143 (9th ed. 1987)....................................8

**PLAINTIFF'S OPPOSITION TO DEFENDANT ESSENTIAL CONSULTANTS, LLC'S
MOTION TO COMPEL ARBITRATION**

## I.      INTRODUCTION

Plaintiff Stephanie Clifford (aka Stormy Daniels) ("Plaintiff") filed this action seeking declaratory relief confirming she is not bound by any of the terms and conditions of a settlement agreement containing a mutual release and terms of non-disclosure, including the provision of the agreement providing for arbitration (the "Settlement Agreement" or "Agreement").  Defendant Essential Consultants, LLC's ("EC") current motion to compel arbitration, to which defendant Donald Trump ("Mr. Trump") "consents," is without merit for several reasons.

*First*, EC has no standing to bring this motion because the arbitration clause is between Plaintiff and "DD."  Further, DD (presumably Mr. Trump) has not met any threshold burden of demonstrating he is an actual party to the Agreement, or to the arbitration clause.

*Second*, paragraph 8.6 of the Settlement Agreement states that "this Agreement, **when signed by all Parties**, is a valid and binding agreement, enforceable in accordance with its terms" (emphasis added).  Mr. Trump, however, never signed the Agreement. The agreement was, therefore, never formed as a matter of law.  See Roth v. Garcia Marquez, 942 F.2d 617, 626 (9th Cir. 1991); Banner Entertainment, Inc. v. Superior Court, 62 Cal. App. 4th 348, 358 (1998).  Thus, there never was an agreement to arbitrate.

*Third*, the contract was a "Settlement Agreement" to resolve potential litigation between Mr. Trump and Plaintiff that required Mr. Trump to personally provide consideration to Plaintiff in the form of releases, and representations and warranties described as a "material inducement" to Plaintiff to enter into the Agreement.  As a result, Plaintiff's signature and her receipt of funds from EC are insufficient to form a contract. Without the essential consideration from Mr. Trump to Plaintiff, and further, without Mr. Trump's signature on the Agreement or any form of communicated assent to accept the obligations he owed to Plaintiff, no contract could have been created.

*Fourth*, EC's dubious attempt to argue that the use of the term "and/or" saves the agreement is devoid of merit.  To the contrary, courts have repudiated the use of the term

as creating rampant ambiguity. Plaintiff also submits the declaration of Professor Lawrence Solan, a leading expert in the field of linguistic analysis and the law, including in the use of the terms "and" and "or" in legal writings. Professor Solan concurs that the term "and/or" as used in the Agreement leaves it unclear as to who the parties actually are and causes too much uncertainty. Moreover, as shown below, reading the Settlement Agreement in its entirety leads to the inescapable conclusion that there can be no serious dispute that Mr. Trump was a contemplated party to the Agreement.

Finally, Plaintiff demands a jury trial pursuant to 9 U.S.C. § 4 for a determination of whether the Settlement Agreement (which contains the arbitration clause EC seeks to enforce) was ever formed. In addition, to meaningfully oppose this motion, Plaintiff requires limited discovery, as set forth in Plaintiff's concurrently filed Renewed Motion for Expedited Discovery. Accordingly, before the Court issues a ruling on the motion, the Court must first allow Plaintiff to conduct discovery and must conduct the trial.

For these reasons and the reasons stated below, Plaintiff respectfully requests that the Court stay consideration of the motion to compel arbitration until after discovery is complete and the completion of trial. In the alternative, Plaintiff requests the Court deny the motion to compel arbitration in its entirety.

## II.   STATEMENT OF FACTS

### A.   The Settlement Agreement

The Settlement Agreement is attached to the Declaration of Stephanie Clifford as Exhibit 1.

### B.   Mr. Cohen Claims Mr. Trump Had Nothing to Do With the Agreement.

As alleged in the FAC, Mr. Cohen is an attorney licensed in the State of New York. [FAC, ¶16.] Mr. Cohen worked as the "top attorney" at the Trump Organization from 2007 until after the election and presently serves as Mr. Trump's personal attorney. [Id.] He is also generally referred to as Mr. Trump's "fixer." [Id.] Mr. Cohen is also alleged to have formed EC on October 17, 2016, just weeks before the 2016 presidential election and 11 days before he signed the Agreement. [Id., ¶18; Cohen Decl., ¶3.]

On February 13, 2018, Mr. Cohen issued a statement that said in part: "In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford. Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly." [FAC, ¶27.]

On March 9, 2018, regarding the $130,000 payment, Mr. Cohen said "[t]he funds were taken from my home equity line and transferred internally to my LLC account in the same bank." [Declaration of Michael Avenatti ("Avenatti Decl."), Ex. 3.]

In a March 19, 2018 *Vanity Fair* article, Mr. Cohen again suggested Mr. Trump had no knowledge of the Settlement Agreement or payment. [Avenatti Decl., Ex. 4.] In it, he is quoted as saying: "What I did defensively for my personal client, and my friend, is what attorneys do for their high-profile clients." [Id.] The article also states that Mr. Cohen "claims that Trump did not know that he had paid Clifford the $130,000." [Id.]

### C. Mr. Trump and the White House Deny Any Involvement With the Settlement Agreement.

White House and campaign representatives purportedly speaking on Mr. Trump's behalf, have denied that Mr. Trump had any knowledge of, or involvement with, the Settlement Agreement. [See Avenatti Decl., Ex. 5.]

On April 5, 2018, Mr. Trump, making his first public comments regarding this dispute, denied having knowledge of the $130,000 payment to Plaintiff under the Settlement Agreement. [Avenatti Decl., Ex. 6.] Mr. Trump stated he did not know where the money came from, denied setting up a fund from which Mr. Cohen could draw from to make the payment, and directed reporters' questions to Mr. Cohen. [Id.]

## III. ARGUMENT

### A. Plaintiff's Assertion that No Agreement Was Formed Is an Issue For the Court to Decide.

EC argues that the initial question of whether an agreement exists at all is one for the Court to decide, not an arbitrator. This position is devoid of merit.

"It is axiomatic that '[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.'" Sanford v. MemberWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)).  Thus, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1287 (9th Cir. 2009) (citation omitted).  For this reason, although it is true that questions "regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator," this is not true for "challenges to the *existence* of a contract as a whole" - which "must be determined ***by the court prior to ordering arbitration***." Sanford, 483 F.3d at 962 (emphasis added); see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140–41 (9th Cir. 1991).[1]

Accordingly, challenges to the making of the arbitration agreement encompass "*not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause*." Sanford, 483 F.3d at 962 (emphasis added). Here, Plaintiff asserts the purported Settlement Agreement was never formed.  Under Sanford and the case law cited above, this is an issue that must be decided in this Court.

The Ninth Circuit's recent decision in Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC, 816 F.3d 1208 (9th Cir. 2016) is instructive.  There, as here, the contract at issue contained an arbitration clause.  Id. at 1211.  The Court explained that "the threshold issue" for the Court "is whether that document constituted a binding agreement at all."  Id.  "If it did not" then "it follows that the arbitration provision is not enforceable."  Id.  The Court concluded that because the asserted agreement "was a mere

---

[1] District Courts in this Circuit are in accord.  See, e.g., Doherty v. Barclays Bank Delaware, No. 16-CV-01131-AJB-NLS, 2017 WL 588446, at *3 (S.D. Cal. Feb. 14, 2017); Barraza v. Cricket Wireless LLC, No. C 15-02471 WHA, 2015 WL 6689396, at *3 (N.D. Cal. Nov. 3, 2015); Switch, LLC v. ixmation, Inc., No. 15-CV-01637-MEJ, 2015 WL 4463672, at *3 (N.D. Cal. July 21, 2015) (same).

sham" and not enforceable, there was no agreement to arbitrate.  Id. at 1214.

Importantly, even though EC contends there is a presumption in favor of arbitration, where as here, "the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply."  Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) (emphasis in original).

EC misapplies the "crux of the complaint" rule, arguing that Plaintiff's challenges to the Settlement Agreement must be decided by the arbitrator. In doing so, EC strategically conflates Plaintiff's challenge to the *formation* of the Settlement Agreement with a challenge to the *validity* of the Settlement Agreement.[2]  The Supreme Court in Buckeye Check Cashing, Inc. v. Cardegna, recognized that "[t]he issue of the contract's *validity* is different from the issue of whether any agreement between the alleged obligor and obligee *was ever concluded*.  Our opinion today addresses only the former, and does not speak to the issue decided in the cases . . . ***which hold that it is <u>for courts to decide whether the alleged obligor ever signed the contract</u>***."  546 U.S. 440, 444 n. 1 (2006) (emphasis added).  Indeed, the Supreme Court reaffirmed four years later that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010).

**B.    EC Does Not Have Standing to Compel Arbitration.**

As a threshold matter, EC's motion should be denied because EC has no standing to compel Plaintiff to arbitrate.  Simply put, the plain language of the arbitration clause demonstrates there is no agreement to arbitrate between EC and Plaintiff.

Paragraph 5.2 of the Settlement Agreement, entitled "Dispute Resolution," contains the arbitration clause.  It states, in relevant part:

---

[2] For this reason, this Court's opinion in Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263 (C.D. Cal. 2008), is quoted out of context.   The Court indicated that challenges to the "validity" of the entire contract would be for the arbitrator, but made no ruling suggesting that challenges to the "formation" or "existence" of a contract containing an arbitration clause are for the arbitrator.  Id. at 1271.

1
2
3
4

> In recognition of the mutual benefits to **DD and PP** of a voluntary system of alternative dispute resolution which involves binding confidential arbitration of all disputes **which may arise between them**, it is their intention and agreement that any and all claims or controversies **arising between DD on the one hand, and PP on the other hand**, shall be resolved by binding confidential Arbitration to the greatest extent permitted by law.

5

[Agreement, ¶5.2 (emphasis added).]

6
7
8
9
10
11
12
13

Here, EC is not a party to the arbitration agreement nor is it even mentioned in the arbitration clause.  "Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'"  Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1126 (9th Cir. 2013)) (quoting Britton v. Co-op Banking Grp., 4 F.3d 742, 744 (9th Cir. 1993)); see also Britton, 4 F.3d at 748 (non-party "lacked standing to enforce the arbitration clause."); Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045 (9th Cir. 2009).  As a result, EC's motion must be denied.

14
15

**C.     Mr. Trump Does Not Petition to Compel Arbitration and Has Not Met His Burden.**

16
17
18
19
20

Because EC is the only moving party, Plaintiff cannot be compelled to arbitrate. This is especially true because Mr. Trump has not filed *his own* motion to compel arbitration.  Rather, Mr. Trump, through his counsel, merely filed a "joinder" in support of EC's motion whereby he "consents."  [Dkt No. 21.]  This "joinder," however, does not suffice under the record presently before the Court.

21
22
23
24
25
26
27
28

"A defendant seeking to compel arbitration has the burden of showing that an agreement to arbitrate exists."  Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263, 1270 (C.D. Cal. 2008).  But Mr. Trump has failed to meet this burden.  The arbitration agreement is between "DD" and "PP," but Mr. Trump has not submitted **_any_** evidence demonstrating he is DD.  In addition, EC's motion argues that Mr. Trump is not a party to Settlement Agreement.  [Dkt No. 20-1 at 7.]  In fact, Mr. Trump's counsel during meet and confer discussions relating to this Motion refused to tell Plaintiff's counsel whether Mr. Trump is a party.  [Avenatti Decl., ¶5.]  This alone is dubious and remarkable.

Further, by failing to sign the Agreement or otherwise communicate his consent to the Agreement, Mr. Trump failed to make himself a party to the Agreement—precluding the very existence of the Agreement to begin with.  [See Agreement, ¶8.6; section III(D), infra.]  Nor do EC or Mr. Trump contend that Mr. Trump should be deemed a third-party beneficiary of the Settlement Agreement.  Mr. Trump, therefore, has not met his burden.

Moreover, as noted, Mr. Trump did not file his own motion to compel arbitration. In fact, he merely "joins" in EC's motion, and, far from actually "*seeking*" to compel arbitration, he states passively that he "consents" to arbitration (whatever that means). The Federal Arbitration Act, however, requires more than merely "consenting" to arbitration; a party aggrieved by another's failure to arbitrate under a written agreement must "**petition** . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4 (emphasis added); Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 326 (7th Cir. 1997) ("[B]ecause neither party petitioned the district court for an order compelling arbitration, Duferco's contention that § 4 required the district court to compel arbitration has no force."); cf. S.E.C. v. Daifotis, No. C 11-00137 WHA, 2011 WL 3295139, at *6–7 (N.D. Cal. Aug. 1, 2011) (disallowing defendant's "me too" joining in, and incorporation of, other defendant's brief).  Under the facts of this case, this distinction carries substantive import.

Mr. Trump, therefore, should not be permitted to engage in a "shell game" before this Court.  He should not be allowed to, on the one hand, invoke "plausible deniability" by distancing himself from the Agreement and thereby avoid the myriad of consequences of associating himself with the Agreement, while at the same time he attempts to enjoy the possible benefits of that very Agreement he claims to have nothing to do with.

**D.  No Agreement Was Formed Because Mr. Trump Failed to Sign the Agreement and Deliver the Promised Consideration to Plaintiff.**

**1.  No Agreement Exists Because Mr. Trump's Signature Was an Express Condition to the Formation of the Agreement.**

The well-settled rule in California is that "'[i]f the evidence shows that the

signatures of other parties were required as one of the conditions of the completed agreement, it is incomplete and not binding upon those who sign until the others sign.'" Roth v. Garcia Marquez, 942 F.2d 617, 626 (9th Cir. 1991) (quoting 1 Witkin, Summary of Cal. Law, Contracts § 143 (9th ed. 1987))).  Stated differently, "[w]hen it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created."  Banner Entertainment, Inc. v. Superior Court, 62 Cal. App. 4th 348, 358 (1998).   This rule is repeatedly, and routinely, applied by the Ninth Circuit,[3] District Courts in California,[4] and California appellate courts.[5]

---

[3] Roth, 942 F.2d at 626–27 (agreement not binding where author's signature was a condition precedent); PSM Holding Corp. v. Nat'l Farm Fin. Corp., 339 F. App'x 693, 695 (9th Cir. 2009) (where "plain terms of the agreement dictate that no contract was formed because the signature lines for" various parties "were left blank[,]" holding that "none of the parties could be liable under its terms.").

[4] Ortiz v. America's Servicing Co., No. EDCV 12-191 CAS SPX, 2012 WL 2160953, at *3 (C.D. Cal. June 11, 2012) ("[W]hen it is clear that the proposed written contract would become operative only when signed by the parties, the failure to sign the agreement means no binding contract was created.") (quoting Grill v. BAC Home Loans Servicing LP., No. 10-CV-03057-FCD/GGH, 2011 WL 127891, at *3 (E.D. Cal. Jan. 14, 2011)); J.B. Enterprises Int'l, L.L.C. v. Sid & Marty Krofft Pictures Corp., No. CV 02-7779 CBM (SHX), 2003 WL 21037837, at *2 (C.D. Cal. Mar. 3, 2003) ("When the parties contemplate that acceptance of a contract's terms would be signified in writing, no binding contract is created when the parties fail to sign the agreement."); Los Angeles Rams Football Club v. Cannon, 185 F. Supp. 717, 721-22 (S.D. Cal. 1960) (no contract based on express condition requiring Commissioner approval where he did not sign).

[5] Rebolledo v. Tilly's, Inc., 228 Cal. App. 4th 900, 923 (2014) (modification to original employment agreement signed by employee was unenforceable because it did not, as required, contain the signatures of three of the employer's executives); Romo v. Y–3 Holdings, Inc., 87 Cal. App. 4th 1153, 1159–60 (2001) (affirming denial of motion to compel arbitration where employee handbook containing the arbitration agreement contemplated signature from the employee and employee did not sign); Khajavi v. Feather River Anesthesia Med. Grp., 84 Cal. App. 4th 32, 61–62 (2000) ("[W]here the parties

Continued on the next page

**PLAINTIFF'S OPPOSITION TO DEFENDANT ESSENTIAL CONSULTANTS, LLC'S MOTION TO COMPEL ARBITRATION**

Here, the Settlement Agreement is unequivocal: "**Each of the Parties represents and warrants . . . that this Agreement, <u>when signed by all Parties</u>, is a valid and binding agreement, enforceable in accordance with its terms.**" [Agreement, ¶8.6 (emphasis added).]  Despite this clear requirement, neither the Settlement Agreement nor the Side Letter Agreement were signed by Mr. Trump.

In fact, execution of the Settlement Agreement and Side Letter Agreement was deemed so important, it is repeatedly mentioned throughout both documents, including in paragraph 4.3.2 which contains an "express acknowledgment that DD is *executing* this Agreement in reliance on" certain agreements, warranties and representations.  [See also Agreement, ¶¶3.3 (requiring delivery of property "[c]oncurrently upon **execution** of this Agreement . . ."), 4.3(a) ("[E]ach Party acknowledges that she/he is **executing** this Agreement" in reliance on certain "agreements, warranties, and representations . . . made by DD . . ."), p. 14 ("IN WITNESS WHEREOF, by *their signatures* below, the Parties

---

Continued from the previous page

understood that the proposed agreement is not complete until reduced to formal writing and signed, no binding contract results until this is done."); <u>Beck v. American Health</u>, 211 Cal. App. 3d 1555, 1562 (1989) ("[W]here it is part of the understanding between the parties that the terms of their contract are to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed on or it does not become a binding or a completed contract."); <u>Duran v. Duran</u>, 150 Cal. App. 3d 176, 180 (1983) (same); <u>De Mott v. Amalgamated Meat Cutters & Butcher Workmen of N. Am.</u>, 157 Cal. App. 2d 13, 25 (1958) ("When an agreement is signed and handed over with the understanding that it will not be used or become operative until it is signed by another who is expected to join therein, it does not become a contract until the additional signature has been obtained."); <u>Am. Aeronautics Corp. v. Grand Cent. Aircraft Co.</u>, 155 Cal. App. 2d 69, 80 (1957) ("[W]hen it is a part of the understanding between the parties that the terms of their contract are to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed upon, or it does not become a binding or completed contract."); <u>Lyne v. Bonner</u>, 129 Cal. App. 2d 743, 746 (1954) (contract signed by three of four owners not binding on any of the owners); <u>Helperin v. Guzzardi</u>, 108 Cal. App. 2d 125, 128 (1951) ("When an agreement is signed and handed over with the understanding that it will not be used or become operative until it is signed by another who is expected to join therein, it does not become a contract until the additional signature is obtained.")

each have approved and executed this Agreement as of the effective date first set forth above."); Side Letter Agreement, p. 2 ("By *signing* below, *each* of the Parties signifies their agreement to the terms hereof and each of their respective counsel signify their approval as to the form of this letter agreement.").]

The circumstances here are thus strikingly similar to <u>Banner</u> and <u>Roth</u>, and are indistinguishable from the litany of cases cited above.  In short, Mr. Trump's failure to sign the Settlement Agreement is fatal and ends the Court's inquiry.  No contract was ever formed, and hence, there is no agreement to arbitrate.

EC's reliance on <u>Kaneko v. Okuda</u>, 195 Cal. App. 2d 217 (1961), is unavailing.  Indeed, the very excerpt quoted by EC states "*[i]n the absence of a showing that a contract is not to be deemed complete unless signed by all parties*, the parties signing may be bound though others have not signed."  <u>Id.</u> (emphasis added).  Here, unlike the defendants in <u>Kaneko</u>, Plaintiff *has* made such a showing - Paragraph 8.6 of the Agreement clearly provides that no agreement is formed unless signed by all parties.

### 2.   Mr. Trump Was Incapable of Consenting to a Contract Which Imposed Duties on Him That He Was Supposedly Unaware Of.

"[T]here is no contract until there has been a meeting of the minds on all material points."  <u>Banner</u>, 62 Cal. App. 4th at 357–58.  Consent is an essential element of a contract.  Cal. Civ. Code § 1550.  The "failure to reach a meeting of the minds on all material points prevents the formation of a contract *even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract*."  <u>Bustamante v. Intuit, Inc.</u>, 141 Cal. App. 4th 199, 215 (2006) (emphasis in original).  "Further, the consent of the parties to a contract must be communicated by each party to the other."  <u>Esparza v. Sand & Sea, Inc.</u>, 2 Cal. App. 5th 781, 788 (2016) (citing Cal. Civ. Code §1565(3)).  Consequently, "where the parties to a 'contract' have not mutually consented to be bound by their agreement, they have not formed a true contract."  <u>Casa del Caffe</u>, 816 F.3d at 1212.

Here, the fundamental element of consent cannot exist. If Mr. Trump and Mr.

Cohen are to be believed (a matter that will have to be tested in discovery), Mr. Trump never consented to the Settlement Agreement because he never even knew about it. And further, without knowledge of the Agreement and his obligations under the Agreement, he could not have possibly communicated his consent. See Esparza, 2 Cal. App. 5th at 788. Indeed, if he knew nothing about the Agreement, Mr. Trump could not have possibly consented to provide the consideration he owed to Plaintiff.

EC's signature on the Settlement Agreement is insufficient to create a contract for several reasons. *First*, as argued above, the signature of all parties was an express condition of the contract. *Second*, nothing in the contract indicates that EC was acting as Mr. Trump's agent (nor do EC or Mr. Cohen argue that they were acting as such). EC is described as a separate party to the Agreement and, more to the point, if Mr. Trump did not even know about the Agreement or the payment, then no such agency could have been created. *Third*, and perhaps most important, Mr. Trump is not a passive third-party beneficiary of the Settlement Agreement.[6] To the contrary, Mr. Trump *is a party* who was required to deliver material consideration to Plaintiff. Specifically:

- As the title indicates, the contract is a "Settlement Agreement and Mutual Release" which recognizes the parties' desire to avoid "potential litigation" and defines potential claims of Plaintiff *and* of Mr. Trump as the "PP Claims" and the "DD Claims," respectively. [Agreement, ¶¶2.2(a), 2.2(b), 2.5.]

- Mr. Trump was required to release Plaintiff of liability for the "DD Claims." Specifically, paragraph 6.1 of the Agreement states in part that: "DD . . . discharges PP . . . from any and all claims, . . . actions and causes of actions of every kind and

[6] EC does not argue it was Mr. Trump's agent, or that Mr. Trump is a third-party beneficiary, and Plaintiff would object to any such argument being introduced for the first time on Reply. Indeed, any arguments Defendants have failed to raise in their moving papers must be deemed waived. Estakhrian v. Obenstine, 320 F.R.D. 63, 91 (C.D. Cal. 2017) (argument not raised in opening brief was waived). Further, a "third-party *beneficiary* is not a third-party *obligor*." Comer v. Micor, Inc., 278 F.Supp.2d 1030, 1041 (N.D. Cal. 2003) (emphasis in original) (citing Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103 (2d Cir.1985) (holding agreement could not be enforced against alleged third-party beneficiary of agreement); Motorsport Eng'g, Inc. v. Maserati SPA, 316 F.3d 26, 29 (1st Cir. 2002) ("But the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either.") Here, Mr. Trump owed affirmative obligations to Plaintiff and thus was an intended *party*, and not a third-party beneficiary.

nature whatsoever, . . . from the beginning of time to the effective date of this Agreement . . ."

- Mr. Trump's release obligations are reinforced earlier in the Agreement: "[t]he Parties agree that the claims released include but are not limited to DD's claims against PP" relating to disclosure of certain property to others and includes a release from "any harm suffered by DD therefrom." [Agreement, ¶2.5.] This provision, along with others, is described as "essential, integral, and material terms of this Agreement." [Agreement, ¶2.6.]

- Mr. Trump was also obligated to provide certain representations and warranties to Plaintiff, along with a covenant not to sue. Paragraph 4.3(a) of the Agreement is titled "<u>Representations & Warranties & Agreements By DD</u>" and acknowledges "agreements, warranties and representations made by DD[.]"

- Specifically, pursuant to paragraph 4.3(b) of the Agreement:

> DD warrants and represents that, as relates to or in connection with any of PP's attempts to sell, exploit and/or disseminate the Property <u>prior</u> to the date of this Agreement, DD and his counsel will refrain (i) from pursuing any civil action against PP, and/or (ii) absent a direct inquiry from law enforcement, from disclosing PP's name to the authorities.

- Paragraph 4.3(a) states that the paragraph 4.3(b) "agreements, warranties and representations **are made by DD <u>as material inducements to PP</u>** to enter into this Agreement, and each Party acknowledges that she/he **is executing this Agreement in reliance thereon**[.]" [Agreement, ¶4.3(a) (emphasis added).]

In sum, the necessity of Mr. Trump's consent to the Settlement Agreement, and his express agreement to accept the obligations imposed on him, are self-evident.[7] No agreement, therefore, was ever formed. EC's motion must be denied.

### 3. EC's Argument Regarding Adequacy of Consideration Is Irrelevant to this Motion.

EC contends that Plaintiff received adequate consideration under the Settlement Agreement by her receipt of $130,000 for EC. EC's argument is a red herring. The relevant issue is not whether $130,000 is sufficient consideration to support a *hypothetical*

---

[7] Nor can Mr. Trump argue that the $130,000 payment was a communication of his acceptance of his obligations under the Agreement. *According to Mr. Trump, the payment was made by EC*, not Mr. Trump. [Agreement, ¶3.0.1.1.]

*contract* between Plaintiff and EC.  That is not the contract Plaintiff understood she was entering into when she signed the Settlement Agreement.  [Clifford Decl., ¶5.]  Rather, the real question is whether Plaintiff received the consideration she actually bargained for under the Settlement Agreement—namely, the releases, representations and warranties, and covenant not to sue, from Mr. Trump.  Recognizing she did not, EC asks the Court to ignore the Settlement Agreement and rewrite it to create a new contract.  But Clifford cannot be bound to an entirely different contract than the one she assented to simply because she received *something*.

### E.   The Presence of the Term "And/Or" in the Agreement in Connection With the Parties Does Not Save the Agreement.

Under California law, "[i]t is essential not only that the parties to [a] contract *exist*, but that it is possible to identify them."  <u>Jackson v. Grant</u>, 890 F.2d 118, 121 (9th Cir. 1989) (citing Cal. Civ. Code § 1558).  Here, the Settlement Agreement is unintelligible as to the intended parties to the Agreement.  Thus, no valid contract was formed.

Paragraph 1.1 of the Settlement Agreement states, in part, the following:

> This Settlement Agreement and Mutual Release . . . is made . . . by and between "EC, LLC" and/or DAVID DENNISON, (DD), on the one part, and PEGGY PETERSON, (PP), on the other part.  ("EC, LLC," "DD" and "PP" are pseudonyms whose true identity will be acknowledged in a Side Letter Agreement attached hereto as "EXHIBIT A")

"The expression 'and/or' . . . has met with widespread condemnation."  <u>Ex parte Bell</u>, 19 Cal. 2d 488, 499 (1942).[8]  Accordingly, the use of "and/or" gives "rise to

---

[8] <u>See also</u> <u>Herbert H. Post & Co. v. Sidney Bitterman, Inc.</u>, 219 A.D.2d 214, 223, 639 N.Y.S.2d 329 (1996) (the "use of 'and/or' has been roundly condemned as a 'deliberate amphibology, susceptible of more than one interpretation and . . . a purposefully ambiguous expression, useful in its self-evident equivocality.'") (citation and quotation omitted); <u>Bank Bldg. & Equip. Corp. of Am. v. Georgia State Bank</u>, 132 Ga. App. 762, 765, 209 S.E.2d 82, 84 (1974) (same); <u>Ollilo v. Clatskanie Peoples' Util. Dist.</u>, 170 Or. 173, 180, 132 P.2d 416, 419 (1942) ("Courts struggle with 'and/or' to determine what it means and generally end in bewilderment.").

multiple meanings" and "it can mean either or it can mean both."  <u>Dinkins v. Am. Nat'l</u>
<u>Ins. Co.</u>, 92 Cal. App. 3d 222, 232 (1979), <u>disapproved of on other grounds by</u> <u>Moore v.</u>
<u>Am. United Life Ins. Co.</u>, 150 Cal. App. 3d 610 (1984).  In <u>California Shipbuilding Corp.</u>
<u>v. Indus. Acc. Comm'n</u>, 85 Cal. App. 2d 435, 436 (1948), for example, the Court held that
the use of the words "and/or" in an order of a public commission rendered the
commission's finding and award in favor of the employee "indefinite, uncertain and
unintelligible" because there was no way of determining if the finding was against the
employer, the managing representative, or both.  Similarly, in <u>Main Line Pictures, Inc. v.</u>
<u>Basinger</u>, the Court held that a special verdict in favor of the plaintiff against "Basinger
and/or Mighty Wind" are "prejudicially ambiguous and require reversal" because it was
unclear whether the jury found that the contract at issue was breached by the actress Kim
Basinger, her "loan-out" corporation Mighty Wind, or both.  No. B077509, 1994 WL
814244, at *6 (Cal. Ct. App. Sept. 22, 1994).[9]

Plaintiff also proffers the declaration of Professor Lawrence Solan.  [Declaration of
Lawrence Solan ("Solan Decl."), ¶1.]  Professor Solan is a leading expert in the field of
linguistic analysis and the law and is the author of the book *The Language of Judges* in
which he devotes a section discussing issues that arise concerning the interpretation of the
words "and" and "or."  [<u>Id.</u>, ¶¶2-6.]  According to Professor Solan, "and/or" leads to
"interpretive problems" and, as used in the Agreement, "it is not clear who the parties
actually are."  [<u>Id.</u>, ¶11.]  He explains that "read alone," paragraph 1.1 "causes too much
uncertainty and ambiguity" and makes it "necessary to examine other provisions in the
Agreement."  [<u>Id.</u>, ¶13.]  He concludes these provisions taken together "strongly imply
that DD was intended to be understood to be a party to the Agreement."  [<u>Id.</u>, ¶15.]

Here, *read in isolation*, the plain language of paragraph 1.1 provides *no clarity* on
who the parties are to the Settlement Agreement.  By stating that the agreement is "by and

---

[9] District courts may rely on California unpublished decisions as "persuasive authority."
<u>See</u> <u>CPR for Skid Row v. City of Los Angeles</u>, 779 F.3d 1098, 1117 (9th Cir. 2015).

between 'EC, LLC' and/or DAVID DENNISON, (DD), on the one part," the Agreement leaves open the question of whether (1) only EC, (2) only Mr. Trump, or (3) both EC *and* Mr. Trump are intended parties.  Indeed, the Agreement does not specify that EC (or any individual party for that matter) holds the option of deciding who is a party, and who is not a party, to the Agreement.  Significantly, DD and David Dennison's signature lines and identities are not crossed out on the Settlement Agreement or Side Letter Agreement. Moreover, although the Settlement Agreement states that the true identities of "EC, LLC," "DD," and "PP" are revealed in the Side Letter Agreement, the Side Letter Agreement itself compounds the hopeless ambiguity of the identity of the parties because there is no signature from Mr. Trump confirming that he is the "David Dennison" and "DD" identified in the Settlement Agreement.  Nor does the Side Letter Agreement, which provides that it is "deemed part of" the Settlement Agreement by way of amendment, use the term "and/or" to describe the parties.  Instead, it lists *all three parties* while repeatedly using the term "the Parties."  Importantly, Plaintiff understood at all times that Mr. Trump was an intended party of the Settlement Agreement.  [Clifford Decl., ¶6.]

**In any event, paragraph 1.1 cannot be read in isolation**.  Rather, it is a well-settled rule of contract interpretation that the "whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641; see also In re Captain Blythers, Inc., 311 B.R. 530, 536 (B.A.P. 9th Cir. 2004) ("[U]nder California law, 'one phrase of a contract should not be interpreted so as to render another phrase of the contract meaningless'"); Monterey Bay Unified Air Pollution Control Dist. for People of State of California v. U.S. Dep't of Army, 176 F. Supp. 2d 979, 988 (N.D. Cal. 2001) (settlement agreement like any contract "must be interpreted as a whole.").

Applying this rule of contract interpretation to the Settlement Agreement, EC's attempted construction to exclude Mr. Trump as a party negates large, essential portions of the Agreement and the consideration Plaintiff was to receive under the contemplated agreement had it been finalized.  As noted above, Mr. Trump was required to provide to

Plaintiff releases, representations and warranties, and a covenant not to sue.  [Agreement, ¶¶2.2, 2.5, 2.6, 4.3(a), 4.3(b), 6.1.]  Mr. Trump's releases were among "essential, integral and material terms" of the Settlement Agreement [Agreement, ¶¶2.5-2.6], and the representations and warranties made by Mr. Trump were "*material inducements*" to Plaintiff to enter into the Settlement Agreement.  [Agreement, ¶4.3(a) (emphasis added).]  The presence of these provisions is inconsistent with the notion that Mr. Trump was not intended to be a party to the Settlement Agreement.  Nothing in the Agreement suggests that this essential consideration could be supplied by EC rather than Mr. Trump.

As further evidence that Mr. Trump is an intended party of the Settlement Agreement, the Settlement Agreement also contemplates that Mr. Trump is a party by acknowledging throughout the Agreement that he is "entering" into the Agreement. [Agreement, ¶¶2.4, 4.3.2, 4.3.3.]  The Agreement also grants remedies and enforcement rights *exclusively* to Mr. Trump, including the right to seek damages, obtain injunctive relief, and (as discussed above) to enforce the arbitration clause.  [Id., ¶¶5.1-5.2.]  *None of these rights are conferred upon EC*.  Further, all duties Plaintiff is contemplated to owe under the Settlement Agreement extend only from Plaintiff to Mr. Trump.  [See, e.g., Agreement, ¶¶3.1, 3.2, 3.3, 4.3.2, 4.3.6.]  No obligations are owed to EC.  Nor is EC granted any rights or authorities to take action, or receive consideration, on behalf of Mr. Trump.  ***In fact, EC is mentioned by name only six (6) times in the Settlement Agreement, whereas Mr. Trump (i.e., "DD") is mentioned over 130 times.***

In sum, the only rational interpretation of the plain text of the Settlement Agreement is that the Agreement could not possibly exist without Mr. Trump and that he is therefore an intended party who was required to sign the Agreement for it to have been finalized.  At the very minimum, the Agreement is vague as to the identity of the parties.  For these additional reasons, no contract was formed in this case and thus, there is no agreement to arbitrate.  EC's motion should be denied.

   **F.    Plaintiff's Signature on the Settlement Agreement and Her Acceptance of Funds Did Not Create a Contract.**

1    EC argues that Plaintiff's signature on the Settlement Agreement, her acceptance of

2    the $130,000 payment, and her refraining from filing suit until March 2018 were sufficient

3    to create a contract.  EC's contentions are without merit for several reasons.

4        *First*, EC's argument ignores the indisputable fact that the Settlement Agreement

5    called upon Mr. Trump himself to provide additional consideration to Plaintiff *above and*

6    *beyond* the $130,000 payment from EC.  [Agreement, ¶¶2.2, 2.5, 2.6, 4.3(a), 4.3(b), 6.1.]

7    In other words, the purpose of the Settlement Agreement was to resolve potential

8    litigation, not simply to pay money to Plaintiff.  Because Mr. Trump never completed the

9    Agreement by providing his signature on the Agreement, no contract came into existence.

10       *Second*, EC ignores the express condition of the Settlement Agreement requiring

11   Mr. Trump to sign the Agreement.  [See Agreement, ¶8.6.]  This ends the inquiry.  EC

12   cannot point to mere conduct to circumvent the plain language of the Agreement, and

13   further, cannot point to any case law where a court has cast aside an express condition

14   requiring signature even where acts of performance or conduct are shown.  In fact, the

15   very same argument advanced by EC was rejected in J.B. Enterprises, 2003 WL

16   21037837.  There, the letter of intent at issue explicitly stated that the obligation to

17   complete a stock purchase would only arise upon the signing of a purchase agreement.

18   The Court thus concluded that "[t]he parties never executed the Purchase Agreement and

19   they are not bound by the terms of the draft agreement.  *The Krofft Group may not look to*

20   *the parties' conduct to imply that the Letter of Intent contains an obligation that*

21   *contradicts the express language of the Letter of Intent.*"  Id. at *3 (emphasis added); see

22   also PSM Holding, 339 F. App'x at 694 ("The extrinsic evidence regarding the parties'

23   behavior . . . cannot substitute for the parties' signatures on the agreement."); Davison v.

24   Stephens Inst., No. A138953, 2014 WL 6654690, at *5 (Cal. Ct. App. Nov. 24, 2014) (the

25   defendant's "mere acts of performance" of "allowing [the plaintiff] to teach and paying

26   him—cannot validate the agreements without the required signature.")

27       *Third*, EC's reliance on California Civil Code section 1589 is misplaced.  Section

28   1589 states that "[a] voluntary acceptance of the benefit of a transaction is equivalent to a

**PLAINTIFF'S OPPOSITION TO DEFENDANT ESSENTIAL CONSULTANTS, LLC'S MOTION TO COMPEL ARBITRATION**

consent to all the obligations arising from it, *so far as the facts are known, or ought to be known, to the person accepting.*"   Cal. Civ. Code § 1589 (emphasis added).   EC conveniently ignores the italicized portion of the statute.   Here, Plaintiff understood that she was entering into a contract with Mr. Trump, was unaware that Mr. Trump did not sign the agreement, and had no idea that Mr. Trump would later claim that he was not a party.   [Clifford Decl., ¶¶5-6.]   Thus, it was not "known" to Plaintiff that Mr. Trump would take the position that he is not a party to the Settlement Agreement.   That he now so claims *after the fact* is no different from EC and Mr. Trump attempting to introduce *new* terms of the Agreement that Plaintiff never consented to.   See, e.g., Robinson v. OnStar, LLC, No. 16-56412, 2018 WL 1323630, at *1 (9th Cir. Mar. 15, 2018) (applying section 1589 and reversing district court decision dismissing complaint pursuant to arbitration clause because the plaintiff cannot be deemed to have accepted additional terms and conditions after activation of subscription); Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 566 (9th Cir. 2014); Perez v. DirecTV Grp. Holdings, LLC, 251 F. Supp. 3d 1328, 1340 (C.D. Cal. 2017).

 *Fourth*, EC's reliance on Plaintiff's "subsequent conduct" is also unavailing. Plaintiff's conduct was based on the understanding that Mr. Trump was a party to the Settlement Agreement, which included his obligations to provide consideration to Plaintiff.   Reliance on conduct to interpret a contract requires that "such acts must be direct, positive, and deliberate, and must show that the acts so done were done in an attempted compliance with the terms of the contract or agreement."   Barnhart Aircraft v. Preston, 212 Cal. 19, 24–25 (1931).   Relying on this principle, the Ninth Circuit rejected the argument that conduct supported the defendant's interpretation of a contract involving music royalties where the plaintiff received statements for years, but only became aware the parties were not interpreting the contract in the same manner after the statements were audited.   See F.B.T. Prods., LLC v. Aftermath Records, 621 F.3d 958, 966-67 (9th Cir. 2010); see also Evox Prods. LLC v. Kayak Software Corp., No. CV15-5053 PSG (AGRX), 2017 WL 5634858, at *7 (C.D. Cal. Apr. 4, 2017) (post-contract conduct did not

support defendant's interpretation when plaintiff was unaware of defendant's breach).

*Finally*, EC's proposed handling of the Settlement Agreement is ill equipped to address a very important problem: If Plaintiff's acceptance of the $130,000 and her signature created a binding settlement agreement exclusively between Plaintiff and EC (and not Mr. Trump or DD), what exactly are the terms of *that* agreement?  In other words, if Mr. Trump is not a party to the agreement, then which parts, if any, of the Settlement Agreement survive?  As noted above, EC's only role in the Settlement Agreement was payment of the $130,000.  EC has no rights of enforcement.  EC is not entitled to seek remedies.  EC is not a party to the arbitration clause.  Further, the "Settlement Agreement" is to resolve potential litigation between Plaintiff and Mr. Trump, *not* between Plaintiff and EC.  Moreover, EC does not claim (nor can it claim) that it was Mr. Trump's agent, that it was authorized to provide releases, and representations and warranties, on behalf of Mr. Trump, or that the Agreement was structured to make Mr. Trump a beneficiary as opposed to a contracting party.[10]

### G.    Defendants' Position that Mr. Trump Was Not a Contemplated Party Constitutes Fraud in the Execution Rendering the Agreement Void.

"California law distinguishes between fraud in the 'execution' or 'inception' of a contract and fraud in the 'inducement' of a contract."  <u>Duck v. Toyota Motor Sales, U.S.A., Inc.</u>, 198 Cal. App. 4th 1316, 1320 (2011).  "Fraud in the inception" as opposed to fraud in the inducement, "will render a contract 'wholly void, despite the parties' apparent assent to it, when, '*without negligence on his part,* a signer attaches his signature to a paper assuming it to be a paper of a different character.'"  <u>Id.</u> at 1321 (emphasis in original).  "[C]laims of fraud in the execution of the entire agreement are not arbitrable

---

[10] To the extent the Court finds it relevant to its analysis, Plaintiff notes that although not ripe for the Court on the present motion (and not raised by the pleadings in the case), Plaintiff makes no argument that she is entitled to *both* a judgment declaring the Settlement Agreement void *and* retention of the $130,000 payment.  Plaintiff is thus prepared to return the money if so ordered by the Court.

1  under either state or federal law" because if "the entire contract is void *ab initio* because

2  of fraud, the parties have not agreed to arbitrate any controversy." <u>Rosenthal v. Great W.</u>

3  <u>Fin. Sec. Corp.</u>, 14 Cal. 4th 394, 416 (1996); <u>see also</u> <u>DKS, Inc. v. Corp. Bus. Sols., Inc.</u>,

4  675 F. App'x 738, 739 (9th Cir. 2017) (affirming denial of motion to compel arbitration

5  based on allegation that the contract was void due to fraud in the execution.).

6       Here, Plaintiff believed, and was led to believe, that the contemplated Agreement

7  was between herself and Mr. Trump to settle possible claims between the two of them.

8  [Clifford Decl., ¶¶5-6.]  This understanding was, as discussed above, reasonable based on

9  the language of the document itself and the promises and consideration offered therein.

10  Indeed, the Agreement itself specifically represents that Mr. Trump makes certain

11  warranties and promises, and provides releases to Plaintiff, which would necessarily

12  imply that he is a party to the Agreement.

13       To the extent that EC now seeks to seize upon the ambiguity of the use of "and/or"

14  to allow Mr. Trump to evade association with the contemplated Settlement Agreement,

15  the Agreement was plainly drafted "in such a way as to conceal from [Plaintiff] the true

16  nature" of the document and the fact that EC either had no authority to bind Mr. Trump or

17  that Mr. Trump was not in fact releasing any potential claims against Plaintiff.  <u>Duick</u>,

18  198 Cal. App. 4th at 1322.  Consequently, a fraud was committed against Plaintiff and the

19  alleged agreement is void along with any arbitration clause contained therein.  <u>Id.</u>

20  **IV.   CONCLUSION**

21       For the reasons set forth above, Plaintiff respectfully requests that the Court stay

22  consideration of EC's Motion to Compel Arbitration (to which Mr. Trump "consents") to

23  allow the completion of discovery and the FAA section 4 jury trial.  In the alternative,

24  Plaintiff requests the Court deny EC's motion (in which Mr. Trump joins) in its entirety.

25  Dated:  April 9, 2018              AVENATTI & ASSOCIATES, APC

26                          By:      /s/ Michael J. Avenatti

27                               Michael J. Avenatti
                                 Ahmed Ibrahim
                                 Attorneys for Plaintiff Stephanie Clifford
28                               a.k.a. Stormy Daniels a.k.a. Peggy Peterson