1   AVENATTI & ASSOCIATES, APC
    Michael J. Avenatti, State Bar No. 206929
2   Ahmed Ibrahim, State Bar No. 238739
    520 Newport Center Drive, Suite 1400
3   Newport Beach, CA 92660
    Telephone:  949.706.7000
4   Facsimile:   949.706.7050

5   Attorneys for Plaintiff Stephanie Clifford
    a.k.a. Stormy Daniels a.k.a. Peggy Peterson

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  STEPHANIE CLIFFORD a.k.a.                CASE NO.:  2:18-cv-02217-SJO-FFM
    STORMY DANIELS a.k.a. PEGGY
12  PETERSON, an individual,
                                             **PLAINTIFF STEPHANIE**
13                    Plaintiff,             **CLIFFORD'S OPPOSITION TO**
                                             **DEFENDANTS ESSENTIAL**
14        vs.                                **CONSULTANTS, LLC, DONALD J.**
                                             **TRUMP AND MICHAEL COHEN'S**
15                                           **JOINT *EX PARTE* APPLICATION**
    DONALD J. TRUMP a.k.a. DAVID             **TO STAY ACTION**
16  DENNISON, and individual,
    ESSENTIAL CONSULTANTS, LLC, a
17  Delaware Limited Liability Company,
    MICHAEL COHEN and DOES 1
18  through 10, inclusive,

19
                      Defendants.
20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

III.  LEGAL STANDARD ................................................................................ 4

IV.  ARGUMENT .............................................................................................. 5

     A.   Mr. Cohen's Alleged Fifth Amendment Concerns Do Not
         Justify a Stay.................................................................................... 5

         1.   Any Claimed Fifth Amendment Privilege Does Not
             Justify a Stay. ...................................................................... 5

                a)    Mr. Cohen Has Failed to Meet His Burden. ............... 5

                b)    EC Cannot Invoke Any Fifth Amendment
                      Protections and Mr. Trump Has Not Invoked
                      Any Such Protection. .................................................. 9

                c)    Less Drastic Measures are Available than a
                      Blanket Stay. ............................................................ 10

                d)    The Law Defendants Rely Upon is Inapposite. ......... 11

         2.   Mr. Cohen Has Waived Any Fifth Amendment
             Protections as to Matters Voluntarily Disclosed in this
             Action. ............................................................................... 12

         3.   Mr. Trump Does Not Raise Any Fifth Amendment
             Concerns. ............................................................................ 15

     B.   The Five *Keating/Molinaro* Factors Do Not Require a Stay ........ 15

         1.   The Prejudice to Plaintiff and Her Interest in
             Proceeding Expeditiously Weigh Against a Stay .............. 16

         2.   The Purported Burden on Defendant Does Not
             Require a Stay .................................................................... 17

         3.   The Conservation of Judicial Resources Weighs
             Against a Stay .................................................................... 18

4.   The Interests of Non-Parties Does Not Weigh in
Favor of a Stay ....................................................................... 19

5.   The Public Interest in the Speedy Resolution of this
Action Weighs Against a Stay ............................................... 19

V.   CONCLUSION ...................................................................................... 20

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY ACTION**

# TABLE OF AUTHORITIES

## CASES

AIG Prop. Cas. Co. v. Cosby,
  No. CV 15-04842-BRO (RAOx), 2016 WL 6662733 (C.D. Cal. July 15, 2016).........8

Air-India v. Goswami,
  No. 91 CIV. 7290 (JSM), 1993 WL 403999 (S.D.N.Y. Oct. 5, 1993) ......................14

American Express Bus. Fin. Corp. v. RW Prof'l Leasing Serv. Corp.,
  225 F. Supp. 2d 263 (E.D.N.Y. 2003)........................................................................11

Bolbol v. Feld Entm't, Inc., No. C,
  11-5539 PSG, 2013 WL 257133 (N.D. Cal. Jan. 23, 2013)........................................13

Braswell v. United States,
  487 U.S. 99 (1988)...........................................................................................9, 10, 18

Brown v. United States,
  356 U.S. 148 (1958)........................................................................................12, 13, 15

Cruz v. City of Maywood,
  No. CV 07-1999 GPS (JCX), 2008 WL 11342706 (C.D. Cal. Sept. 3, 2008)..............8

Davis v. Fendler,
  650 F.2d 1154 (9th Cir. 1981) ...............................................................................6, 10

Earp v. Cullen,
  623 F.3d 1065 (9th Cir. 2010) .....................................................................................6

Edwards v. C. I. R.,
  680 F.2d 1268 (9th Cir. 1982) .....................................................................................6

Englebrick v. Worthington Indus., Inc.,
  670 F. Supp. 2d 1048 (C.D. Cal. 2009).........................................................................9

ESG Capital Partners LP v. Stratos,
  22 F. Supp. 3d 1042 (C.D. Cal. 2014).....................................................8, 16, 17, 18

Estate of Morad v. City of Long Beach,
  No. CV 16-06785 MWF (AJWx), 2017 WL 5187826 (C.D. Cal. Apr. 28, 2017) .....17

Fed. Sav. & Loan Ins. Corp. v. Molinaro,
   889 F.2d 899 (9th Cir. 1989) ...............................................................passim

Fed. Trade Comm'n v. Lucaslawcenter "Incorporated," No. SACV 09-0770 DOC
   (ANx), 2009 WL 10669363, at *7 (C.D. Cal. Sept. 30, 2009) ...................13

Garner v. United States,
   424 U.S. 648 (1976)................................................................................15

Howard v. State Farm Lloyds,
   No. H-04-0352, 2005 WL 2600442 (S.D. Tex. Oct. 13, 2005) .................14

IBM v. Brown,
   857 F. Supp 1384 (C.D. Cal 1994)............................................................18

In re Edmond,
   934 F.2d 1304 (4th Cir. 1991) ..................................................................13

In re Grand Jury Proceedings,
   13 F.3d 1293 (9th Cir. 1994) .......................................................................6

In re Master Key Litig.,
   507 F.2d 292 (9th Cir. 1974)......................................................................12

Int'l Floor Crafts, Inc. v. Adams,
   No. CV 05-11654-NMG, 2008 WL 11388730 (D. Mass. May 2, 2008)...................13

Juice It Up Franchise Corp. v. Budhraja,
   No. SACV 07-00678-CJC(MLGx), 2008 WL 11334598 (C.D. Cal. July 10, 2008) .13

Keating v. Office of Thrift Supervision,
   45 F.3d 322 (9th Cir. 1995) ...............................................................passim

Lindsey v. City of Pasadena,
   No. CV1608602SJORAOX, 2017 WL 5891097 (C.D. Cal. Mar. 24, 2017)........17, 18

Microfinancial, Inc. v. Premier Holidays Int'l, Inc.,
   385 F.3d 72 (1st Cir. 2004)..........................................................................6

Minnesota v. Murphy,
   465 U.S. 420 (1984).....................................................................................15

Mitchell v. United States,
    526 U.S. 314 (1999) ..................................................................................12

Neman Fin., L.P. v. Citigroup Glob. Markets, Inc.,
    No. CV1402499BROPLAX, 2015 WL 12837640 (C.D. Cal. Apr. 17, 2015) ...........11

Nutramax Labs., Inc. v. Twin Labs., Inc.,
    32 F. Supp. 2d 331 (D. Md. 1999)..............................................................14

O. Thronas, Inc. v. Blake,
    No. CIV.09-00353DAE-LEK, 2010 WL 931924 (D. Haw. Mar. 10, 2010) ........10, 15

OSRecovery, Inc. v. One Groupe Int'l, Inc.,
    262 F. Supp. 2d 302 (S.D.N.Y. 2003) ........................................................14

Perez v. Cty. of Los Angeles,
    No. CV 15-09585 SJO (FFMx), 2016 WL 10576622 (C.D. Cal. May 3, 2016)7, 8, 18, 19

Roberts v. Brown,
    No. 2:13-CV-07461-ODW, 2014 WL 3503094 (C.D. Cal. July 14, 2014) .................8

S.E.C. v. Braslau,
    No. 14-01290-ODW (AJWx), 2015 WL 9591482 (C.D. Cal. Dec. 29, 2015) ....10, 16, 17, 18

S.E.C. v. Dresser Indus., Inc.,
    628 F.2d 1368 (D.C. Cir. 1980)...................................................................6

S.E.C. v. Glob. Express Capital Real Estate Inv. Fund, I, LLC,
    289 F. App'x 183 (9th Cir. 2008) .................................................................6

Sanrio, Inc. v. Ronnie Home Textile Inc.,
    No. 2:14-CV-06369-RSWL, 2015 WL 1062035 (C.D. Cal. Mar. 10, 2015) 10, 17, 18, 19

Shendal v. United States,
    312 F.2d 564 (9th Cir. 1963) ....................................................................12

Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.,
    720 F. Supp. 805 (N.D. Cal. 1989)..............................................................16

Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.,
    No. 2:09-CV-0954 FCD EFB, 2009 WL 2136986 (E.D. Cal. July 15, 2009)............11

United States v. Gwinn,
    No. 8:02-CV-1112-T-27EAJ, 2003 WL 23357667 (M.D. Fla. Aug. 15, 2003) .........14

Zicarelli v. New Jersey State Comm'n of Investigation,
    406 U.S. 472 (1972)..................................................................................................6, 10

## **<u>STATUTES</u>**

28 U.S.C. §§ 471-82........................................................................................................19

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY ACTION**

# I.     INTRODUCTION

Before the Court is the *ex parte* application for a stay filed by defendants Essential Consultants, LLC ("EC"), Donald J. Trump, and Michael Cohen (collectively, "Defendants"), based on the mere alleged existence of a criminal investigation involving Mr. Cohen.  Defendants' application must be denied for many reasons.

*First*, Defendants fail to proffer any evidence to support such a broad and sweeping remedy.  Defendants offer no declaration from Mr. Cohen or Mr. Trump, let alone a declaration establishing the existence of a criminal investigation, or the supposed relationship between the criminal investigation and the facts of this case.  They rely exclusively on a declaration from counsel from EC, who himself appears to rely on a single news article from the Internet that is clear hearsay.  To invoke the extraordinary and powerful remedy of a stay, Defendants cannot require the Court to simply *assume* certain facts are true.  The Court must be presented with competent admissible evidence.  Here, there is none.

*Second*, the mere fact that an FBI raid occurred does not end the inquiry as Defendants argue.  Indeed, Defendants ignore that there is "no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege."  Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir. 1995). They also ignore the overwhelming weight of authority denying stays and, even in those limited cases where stays are granted, the *requiremen*t to demonstrate that criminal charges have actually been filed.

*Third*, even if Mr. Cohen's Fifth Amendment rights were implicated, they have been *waived*.  He has filed *two* separate declarations in this case addressing the facts – with one of them being filed *after* the FBI raids.  This is in addition to the myriad public statements issued by Mr. Cohen, including a phone interview with Don Lemon of *CNN* occurring the day *after* the raids.  Mr. Cohen made the choice to make these public statements with full knowledge of the raids; he cannot now refuse cross-examination.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY ACTION**

*Finally*, the five Keating factors weigh against a stay.  Among other things, Plaintiff would suffer prejudice from a delay in the proceedings—a proceeding necessitated by EC'S filing of arbitration and Defendants' threats to recover $20 Million from her. Defendants fail to make any showing of prejudice.

For each of these reasons, Defendants' *ex parte* application should be denied.

## II.   FACTUAL BACKGROUND

Even though Mr. Cohen expresses concern about making self-incriminating statements regarding this case in his *ex parte* application, the record demonstrates that Mr. Cohen has already freely and openly discussed this matter in the public, including under oath in declarations filed in this case.

On February 13, 2018, Mr. Cohen issued a public statement regarding Plaintiff, the existence of the Settlement Agreement, and details concerning the Settlement Agreement.  [Avenatti Decl., Ex. 1.]  Therein, Mr. Cohen stated, in part:

> In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford.  Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly.  The payment to Ms. Clifford was lawful, *and was not a campaign contribution or a campaign expenditure by anyone*.  [Id. (emphasis added).]

On February 22, 2018, EC filed an arbitration proceeding at ADR Services, Inc. in Los Angeles.  [Dkt No. 31-2 at ¶8.]  In the arbitration proceeding, EC brought an emergency application for a temporary restraining order.  [Id., ¶9.]  The arbitrator entered an order in favor of EC and against Plaintiff.  [Id.]

Plaintiff filed this action on March 6, 2018.  [Dkt No. 1 at Ex. 1.]  On March 16, Defendants filed a Notice of Removal.  [Dkt No. 1.]  In it, Defendants state that the Settlement Agreement contains a liquidated damages clause in the amount of "'One-Million Dollars ($1,000,000)' for '<u>each</u> breach' of the confidentiality provisions of the Settlement Agreement."  [Dkt No. 1 at 5.]  In a threat directed at Plaintiff, Defendants proclaimed they have the right to seek liquidated damages against Plaintiff and they approximate such damages to be in excess of **$20 Million**.  [Id.]

On March 9, 2018, referring to the $130,000 payment, Mr. Cohen said "[t]he funds were taken from my home equity line and transferred internally to my LLC account in the same bank." [Avenatti Decl., Ex. 2.]

In a March 19, 2018 *Vanity Fair* article, Mr. Cohen again suggested Mr. Trump had no knowledge of the Settlement Agreement or payment. [Avenatti Decl., Ex. 3.] In it, he is quoted as saying: "What I did defensively for my personal client, and my friend, is what attorneys do for their high-profile clients." [Id.] The article also states that Mr. Cohen "claims that Trump did not know that he had paid Clifford the $130,000." [Id.]

Undeterred by any concerns about self-incrimination, on April 2, 2018, Mr. Cohen filed a declaration personally testifying in this matter to support EC's Motion to Compel Arbitration. [Dkt No. 20-5.] Among other things, Mr. Cohen authenticated the Settlement Agreement. [Dkt No. 20-5, at ¶2, Ex. A.] He also testified he "signed the Settlement Agreement on behalf of EC on or about October 28, 2016." [Dkt No. 20-5 at ¶3.] Regarding the payment, Mr. Cohen admitted: "*EC paid Clifford*, and she accepted $130,000 pursuant to the Settlement Agreement." [Dkt No. 20-5 at ¶3 (emphasis added).]

On Monday, April 9, the FBI raided Mr. Cohen's residence, office, and hotel room in New York. [Blakely Decl., ¶3.] The raid occurred in the *morning* hours on Monday in New York. [Avenatti Decl., Ex. 4 ("The F.B.I. raided the Rockefeller Center office and Park Avenue hotel room of President Trump's longtime personal lawyer, Michael D. Cohen, on Monday *morning* . . .") (emphasis added).]

Despite the FBI raid, **much later that same day**, Mr. Cohen filed another declaration providing testimony in this action. [Dkt No. 31-2.] In it, Mr. Cohen *again* authenticates the Settlement Agreement, confirms he signed it, and confirms that EC paid the $130,000 pursuant to the Settlement Agreement to Plaintiff. [Cohen Decl., ¶¶2-3.] According to the Court's ECF notification, Mr. Cohen filed his declaration at "3:08 PDT"—or at least *six* hours after the FBI raids. [Avenatti Decl., Ex. 5.]

But Mr. Cohen's public statements did not stop. They *continued* the next day. On April 10, according to *CNN*, Mr. Cohen stated in a phone interview to Don Lemon that he

1  "continues to say everything he did in regards to paying Stormy Daniels for the non-
2  disclosure agreement was perfectly legal."  [Avenatti Decl., Ex. 6.]

3      Notwithstanding Mr. Cohen's claims through counsel that his Fifth Amendment
4  rights may be adversely impacted if this case proceeds, Mr. Trump has made no such
5  similar claim regarding his own Fifth Amendment rights.

6  **III.   LEGAL STANDARD**

7      "The Constitution does not ordinarily require a stay of civil proceedings pending
8  the outcome of criminal proceedings."  <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d
9  322, 324 (9th Cir. 1995); <u>see also</u> <u>Fed. Sav. & Loan Ins. Corp. v. Molinaro</u>, 889 F.2d 899,
10 902 (9th Cir. 1989) ("While a district court may stay civil proceedings pending the
11 outcome of parallel criminal proceedings, such action is not required by the
12 Constitution.").   "Nevertheless, a court may decide in its discretion to stay civil
13 proceedings ... 'when the interests of justice seem [ ] to require such action.'"  <u>Keating</u>, 45
14 F.3d at 324 (citation omitted) (alterations in original).  "A court must decide whether to
15 stay civil proceedings in the face of parallel criminal proceedings in light of the particular
16 circumstances and competing interests involved in the case."  <u>Molinaro</u>, 889 F.2d at 902.
17 In doing so, "[o]bviously a court should consider the extent to which the defendant's fifth
18 amendment rights are implicated."  <u>Id.</u>

19     Other factors a court should consider will vary according to the case itself, but
20 generally will include:

21
22     (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or
       any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2)
23     the burden which any particular aspect of the proceedings may impose on
       defendants; (3) the convenience of the court in the management of its cases, and
24     the efficient use of judicial resources; (4) the interests of persons not parties to
       the civil litigation; and (5) the interest of the public in the pending civil and
25     criminal litigation.
26 <u>Molinaro</u>, 889 F.2d at 902-03; <u>Keating</u>, 45 F.3d at 325.

27     Here, as explained below, neither Defendant Cohen's purported Fifth Amendment
28 concerns, nor the remaining five <u>Keating/Molarino</u> factors, support the issuance of a stay.

## IV.   ARGUMENT

### A.   Mr. Cohen's Alleged Fifth Amendment Concerns Do Not Justify a Stay.

In deciding whether to issue a stay, the first issue that should be considered by the Court is whether, and the extent to which, any Fifth Amendment concerns are implicated by proceeding with this action.   Molinaro, 889 F.2d at 902-03.   Here, the Fifth Amendment does not weigh in favor of a stay because Defendant Cohen has failed to demonstrate that his Fifth Amendment rights justify a stay and, in any event, he waived his rights by his prior voluntary public statements and declarations filed in this action.

### 1.   Any Claimed Fifth Amendment Privilege Does Not Justify a Stay.

Defendant Cohen's Fifth Amendment concerns are largely irrelevant for at least three reasons.   First, Mr. Cohen has failed to meet his evidentiary burden to show his testimony would be self-incriminating.   His individual concerns simply do not justify the issuance of a stay.   Second, Defendant EC has no Fifth Amendment rights and Defendant Trump has not invoked any.   Third, less drastic measures, such as ordering Mr. Cohen to testify and requiring Mr. Cohen to invoke the Fifth Amendment on a question-by-question basis, are available to the Court than imposing a blanket stay.

### a)   Mr. Cohen Has Failed to Meet His Burden.

Mr. Cohen's principal argument is that "if the case moves forward, Defendants' key witness would have to choose between exercising his Fifth Amendment rights, and testifying on Defendants' behalf."   [Dkt No. 38 at 4:22-24.]   The problem with Mr. Cohen's argument is that according to the Ninth Circuit, "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege."   Keating, 45 F.3d at 326.   Indeed, "[n]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding."   Id.

Thus, not surprisingly, it is well settled that the case for staying civil proceedings is

1  *"**far weaker**"* when no indictment has been returned.   Molinaro, 889 F.2d at 903

2  (emphasis added); see also S.E.C. v. Glob. Express Capital Real Estate Inv. Fund, I, LLC,

3  289 F. App'x 183, 191 (9th Cir. 2008) ("The case for staying civil proceedings is weak

4  when no indictment has been returned."); Microfinancial, Inc. v. Premier Holidays Int'l,

5  Inc., 385 F.3d 72, 79 (1st Cir. 2004) ("[A]n unindicted defendant who argues that going

6  forward with a civil proceeding will jeopardize his Fifth Amendment rights usually

7  presents a much less robust case for such extraordinary relief."); S.E.C. v. Dresser Indus.,

8  Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980) ("The case at bar is a far weaker one for

9  staying the administrative investigation.   No indictment has been returned; no Fifth

10 Amendment privilege is threatened.").

11       This principle is in accord with the general law governing the invocation of the

12 Fifth Amendment wherein it "is well established that the privilege protects against *real*

13 *dangers*, not remote and speculative possibilities." Zicarelli v. New Jersey State Comm'n

14 of Investigation, 406 U.S. 472, 478 (1972) (emphasis added); see also Earp v. Cullen, 623

15 F.3d 1065, 1070 (9th Cir. 2010) ("A witness justifiably claims the privilege if he is

16 'confronted by substantial and real, and not merely trifling or imaginary, hazards of

17 incrimination.'"); In re Grand Jury Proceedings, 13 F.3d 1293, 1295 (9th Cir. 1994);

18 Edwards v. C. I. R., 680 F.2d 1268, 1270 (9th Cir. 1982).

19       Thus, generally, "a witness must show that his testimony would 'support a

20 conviction under a federal criminal statute" or "furnish a link in the chain of evidence

21 needed to prosecute the claimant for a federal crime.'" Earp, 623 F.3d at 1070. "A proper

22 assertion of a Fifth Amendment privilege requires, at a minimum, a good faith effort to

23 provide the trial judge with sufficient information from which he can make an intelligent

24 evaluation of the claim." Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981).

25       Here, Mr. Cohen has failed to meet his burden to establish that his purported Fifth

26 Amendment concerns justify the issuance of a stay.  He makes no attempt to demonstrate

27 why his testimony about the Settlement Agreement or the payment made thereunder

28 would be self-incriminating.  To justify such a broad and sweeping remedy, one would

expect a declaration from Mr. Cohen testifying about, among other things, the FBI raids, what was seized in the raids, the supposed relationship between the seizures and this case, the fact that he has been informed that he is under criminal investigation and that criminal charges are imminent.  And yet, no such declaration was filed.  Nor did Defendant Trump file any such declaration.  Rather, Defendants rely *exclusively* on two sentences from the declaration of EC's counsel regarding the FBI raids *and a citation to a CNN article*. [Blakely Decl., ¶3, Ex. A.]  Needless to say, Defendants' mere reliance on a news article (which is hearsay and renders counsel's declaration lacking foundation) does not come close to satisfying the heavy burden imposed on Defendants.[1]  The Court may not simply *assume* facts to be true based on a news story; it must rely on competent *evidence*.

Indeed, no *evidence* has been presented to demonstrate that the materials the FBI seized have any relationship to this case.  Nor do Defendants present evidence showing that the government is investigating, or even interested in pursuing, criminal charges relating to the Settlement Agreement and $130,000 payment at issue here.  Accordingly, the evidence presented is thus insufficient and as in a prior case before this Court, there is "no basis in either law or reason to create" a rule that civil litigation should be stayed based on the mere "**possibility** of bringing criminal charges…" <u>Perez v. Cty. of Los Angeles</u>, No. CV 15-09585 SJO (FFMx), 2016 WL 10576622, at *3 (C.D. Cal. May 3, 2016) (emphasis in original) (Otero, J.).  This is particularly true where, as here, Mr. Cohen has already testified in this action about these topics and initiated legal action by pursuing the arbitration on behalf of EC.

Further, Mr. Cohen, Mr. Trump and EC have not been indicted.  The case law is clear that in the absence of an indictment, the case for staying civil proceedings is "far weaker."  <u>Molinaro</u>, 889 F.2d at 903.  Indeed, as this specific Court has previously ruled, in the absence of evidence "tending to show that criminal charges . . .  are likely to be

---

[1] EC's counsel similarly fails to establish any foundation or basis for his belief that the FBI sought documents relating to the $130,000 payment, or why Defendants contend Mr. Cohen is under criminal investigation for matters that overlap with this case.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY ACTION**

brought" through, for example, an "affidavit by a member of the DA's office" or similar law enforcement official, there is very little reason to impose a stay based on Fifth Amendment concerns.  <u>Perez</u>, 2016 WL 10576622, at \*2.

But even if an indictment were issued, this fact alone is not determinative.  For example, where the facts of the criminal proceeding and the civil proceeding are dissimilar, staying the civil proceeding "would eviscerate th[e] element of the *Keating* rubric" relating to the implicating of Fifth Amendment rights.  <u>Roberts v. Brown</u>, No. 2:13-CV-07461-ODW, 2014 WL 3503094, at \*3 (C.D. Cal. July 14, 2014); <u>see also</u> <u>AIG Prop. Cas. Co. v. Cosby</u>, No. CV 15-04842-BRO (RAOx), 2016 WL 6662733, at \*8 (C.D. Cal. July 15, 2016) ("In sum, the Court concludes that continuing with this declaratory relief action while Defendant faces criminal charges involving a completely different set of facts will likely not implicate Defendant's Fifth Amendment right against self-incrimination.").  Moreover, even when the facts of the civil and criminal proceedings are similar, this "is not enough by itself to stay a civil action."  <u>ESG Capital Partners LP v. Stratos</u>, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014).

Significantly, like Mr. Cohen's prior public statements and declarations, the defendant in <u>ESG Capital</u> had previously offered testimony regarding the subject matter of the criminal action.  While the Court expressed "no view" on waiver, it noted that the defendant "can't have it both ways, using the Fifth Amendment only when it is convenient for him and his interests."  <u>Id.</u>; <u>see also</u> <u>Molinaro</u>, 889 F.2d at 903 (affirming denial of stay where the defendant "had already given a partial deposition."); <u>Cruz v. City of Maywood</u>, No. CV 07-1999 GPS (JCX), 2008 WL 11342706, at \*2 (C.D. Cal. Sept. 3, 2008) (denying stay even where indictments were issued and the facts overlap because the defendant can "refuse to testify on a question-by-question basis.").  Similarly, here, Mr. Cohen should not be permitted to speak when it suits him and then invoke the Fifth Amendment to stay this action.

Nothing Defendants offer in their *ex parte* application changes the analysis.  Defendants completely ignore that in the absence of an indictment, the case for staying

civil proceedings is "far weaker." Molinaro, 889 F.2d at 903.  Instead, Defendants argue that the "possibility of prosecution" is enough.  [Dkt. No. 38 at 8:10.]  This assertion is against the great weight of the case law establishing that "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." Keating, 45 F.3d at 326.  In fact, one of the cases relied upon by Defendants for the principle that the "possibility" of criminal prosecution is enough is not even a case granting a stay of civil proceedings. See Englebrick v. Worthington Indus., Inc., 670 F. Supp. 2d 1048 (C.D. Cal. 2009) (addressing whether the invocation of the privilege was proper in response to deposition questions).

### b)   EC Cannot Invoke Any Fifth Amendment Protections and Mr. Trump Has Not Invoked Any Such Protection.

Even aside from his failure to meet his fundamental burden, a stay should be denied because Mr. Cohen's individual Fifth Amendment concerns are largely irrelevant to the majority of issues raised by this action.  This action centers on the Settlement Agreement itself, the propriety of arbitration, and any discovery pertaining to the formation of that Agreement.   In this regard, *EC, Mr. Trump, and Plaintiff are the only contemplated parties to that Agreement*.  Mr. Cohen is not a party to the Agreement.  He merely signed it on behalf of EC.  Further, as of this filing, Mr. Trump has not asserted any claimed Fifth Amendment concerns.

Importantly, as to Defendant EC, corporations cannot invoke the Fifth Amendment. Indeed, "it is well established that such artificial entities are not protected by the Fifth Amendment." Braswell v. United States, 487 U.S. 99, 102 (1988).  Further, any corporate records produced by EC are not entitled to Fifth Amendment protections and "a corporate custodian … may not resist a subpoena for corporate records on Fifth Amendment grounds." Id. at 109.  This is so, "*even though the act of production may prove personally incriminating*" for a custodian of records. Id. at 112 (emphasis added).

Thus, as to any discovery from EC, regardless of whether it is sought from Mr. Cohen as a custodian of those records or information, there is no Fifth Amendment

protection.  Further, Mr. Cohen may not resist discovery on the grounds that it would be personally incriminating.  Braswell, 487 U.S. at 109.  Consequently, as to EC, there is no basis to invoke the Fifth Amendment or seek to avoid discovery regarding matters pertaining to EC or the enforceability of the Settlement Agreement or arbitration.  Even if Mr. Cohen has individual Fifth Amendment concerns, these cannot preclude discovery from EC.

### c)  Less Drastic Measures are Available than a Blanket Stay.

The Fifth Amendment protects against "real dangers, not remote and speculative possibilities."  Zicarelli, 406 U.S. at 478.  Mr. Cohen must, at a minimum, "provide the trial judge with sufficient information from which he can make an intelligent evaluation of the claim."  Davis, 650 F.2d at 1160.  Mr. Cohen, however, has failed to proffer evidence extending beyond speculation and conjecture.  Indeed, Mr. Cohen has not even been called upon to testify and, therefore, it is not clear whether any question posed to him would even require him to invoke the Fifth Amendment.

Based on this record, as other courts have found, any legitimate "Fifth Amendment rights can be protected through less drastic means [than a stay], such as asserting the privilege on a question by question basis and implementing protective orders."  O. Thronas, Inc. v. Blake, No. CIV.09-00353DAE-LEK, 2010 WL 931924, at *3 (D. Haw. Mar. 10, 2010); see also S.E.C. v. Braslau, No. 14-01290-ODW (AJWx), 2015 WL 9591482, at *3 (C.D. Cal. Dec. 29, 2015) (the defendant can "protect his Fifth Amendment rights through other, less drastic measures, like those discussed in O. Thronas.");  Sanrio, Inc. v. Ronnie Home Textile Inc., No. 2:14-CV-06369-RSWL, 2015 WL 1062035, at *3 (C.D. Cal. Mar. 10, 2015) (noting that "[a]s to other potentially incriminating evidence outside of [corporate] business records, if [the defendants] are indicted, 'the Court can rule on individual assertions of fifth amendment privilege if and when such assertions occur.'").

Here, therefore, when Mr. Cohen is deposed individually, he may assert any Fifth Amendment rights he deems appropriate at that time on a question by question basis.

Depending on the testimony, along with the testimony from Mr. Trump, other witnesses, and the documents produced in this action, Mr. Cohen's testimony may very well be sufficient to proceed to the jury trial under section 4 of the Federal Arbitration Act (FAA). A blanket stay is both premature and an overly drastic and prejudicial remedy.

### d) The Law Defendants Rely Upon is Inapposite.

As to those decisions Defendants cite that do grant a stay, virtually every decision involved circumstances where an indictment had been issued. For instance, the unreported <u>Chrome Hearts</u> order Defendants relied upon in their meet and confer discussions and emphasize again before this Court involved actual pending criminal charges. See <u>Chrome Hearts, LLC, v. Old School Fairfax, Inc.</u>, No. 16-CV-09080 AB, Dkt. No. 70 at 3:13-16.

<u>Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.</u>, No. 2:09-CV-0954 FCD EFB, 2009 WL 2136986, at *1 (E.D. Cal. July 15, 2009), cited by Defendants, is also distinguishable. In <u>Taylor</u>, two of the corporate officers had actually been indicted for crimes that also formed the basis for the civil proceeding. Similarly, <u>American Express Bus. Fin. Corp. v. RW Prof'l Leasing Serv. Corp.</u>, 225 F. Supp. 2d 263 (E.D.N.Y. 2003), also involved corporate officers who actually faced criminal indictments.

Defendants' reliance on <u>Neman Fin., L.P. v. Citigroup Glob. Markets, Inc.</u>, No. CV1402499BROPLAX, 2015 WL 12837640 (C.D. Cal. Apr. 17, 2015), is likewise misplaced. In <u>Neman</u>, the plaintiff—the party seeking the stay in that case—had already "been convicted on three counts of mail and wire fraud and is currently incarcerated." <u>Id.</u> at *1. Moreover, unlike in this case, *there was no opposition to the motion to stay*. <u>See</u> <u>id.</u> at *4 ("Defendant does not oppose Plaintiffs motion, and therefore Defendant identifies no burden that it will suffer by the Court granting a stay.").

Here, there has been no indictment and Defendants fail to address, let alone distinguish, the law on this point. As such, Mr. Cohen's speculative and individual Fifth Amendment concerns simply do not justify a stay of this action.

### 2.   Mr. Cohen Has Waived Any Fifth Amendment Protections as to Matters Voluntarily Disclosed in this Action.

Defendants' request for a stay should be also denied for a separate reason:  Mr. Cohen has waived any Fifth Amendment rights by voluntarily testifying *twice* on topics he now seeks to avoid testifying about.  [Dkt. No. 20-5, 31-2.]

The Supreme Court's decision in <u>Brown v. United States</u>, 356 U.S. 148 (1958) is controlling.  In that case, the defendant voluntarily testified in a civil denaturalization proceeding, but refused to answer questions on cross examination.  The district court held her in criminal contempt.  The Supreme Court affirmed.  <u>See id.</u> at 150–52.  The Court reached this conclusion even though the defendant's testimony "did not amount to an admission of guilt or furnish clear proof of crime, but was, on the contrary, a denial of any activities that might provide a basis for prosecution."  <u>Id.</u> at 154 (quotation omitted).  The Court explained that if a defendant "takes the stand and testifies in his own defense [then] his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination."  <u>Id.</u> at 154-55.  This rule, according to the Supreme Court, "applies to a witness in any proceeding who voluntarily takes the stand and offers testimony in his own behalf."  <u>Id.</u> at 154–55.[2]  The Court explicitly distinguished the operation of waiver when a witness *voluntarily* testifies from the line of cases that govern waiver by a "witness who is compelled to testify."  <u>Id.</u> at 155.[3]

---

[2] <u>Brown</u> was quoted with approval in <u>Mitchell v. United States</u>, where the Court stated "[t]he illogic of allowing a witness to offer only self-selected testimony should be obvious even to the witness, so there is no unfairness in allowing cross-examination when testimony is given without invoking the privilege."  526 U.S. 314, 322 (1999).

[3] In <u>In re Master Key Litig.</u>, the Ninth Circuit recognized the same distinction, although it mistakenly referred to the defendant in <u>Brown</u> as a criminal, rather than civil, defendant. 507 F.2d 292, 294 (9th Cir. 1974) ("Whatever may be the rule with respect to such a 'waiver' by a criminal defendant who elects to take the stand in his own behalf, an ordinary witness may 'pick the point beyond which he will not go,' and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further incriminate him.") (quoting <u>Shendal v. United States</u>, 312 F.2d 564, 566 (9th Cir. 1963)).  However, because

Continued on the next page

-12-

Declarations made under oath and subject to the penalty of perjury are the equivalent of live testimony in court.  See Juice It Up Franchise Corp. v. Budhraja, No. SACV 07-00678-CJC(MLGx), 2008 WL 11334598, at *10 (C.D. Cal. July 10, 2008) ("It is the presence of the penalties of perjury, in part, that allows for out of court declarations to be treated as the equivalent of in-court, sworn testimony"); Bolbol v. Feld Entm't, Inc., No. C 11-5539 PSG, 2013 WL 257133, at *6 (N.D. Cal. Jan. 23, 2013). A declaration "operates like other testimonial statements to raise the possibility that the witness has waived the Fifth Amendment privilege."  Fed. Trade Comm'n v. Lucaslawcenter "Incorporated," No. SACV 09-0770 DOC (ANx), 2009 WL 10669363, at *7 (C.D. Cal. Sept. 30, 2009) (quoting In re Edmond, 934 F.2d 1304, 1308–09 (4th Cir. 1991)).

In fact, numerous courts have found a Fifth Amendment waiver in circumstances similar to those here.  See id. at *7 ("The right to invoke the privilege against self-incrimination may be waived in some cases in which a witness makes a sworn statement about a matter and then later attempts to assert the privilege."); Int'l Floor Crafts, Inc. v. Adams, No. CV 05-11654-NMG, 2008 WL 11388730, at *1 (D. Mass. May 2, 2008) (defendant's "affidavit constitute[d] a waiver of his Fifth Amendment privilege and [the plaintiff was] entitled to interrogate him about his statements" and argument otherwise was an attempt "to testify in [the] case without subjecting himself to cross examination.

---

Continued from the previous page

Mr. Cohen's two declarations were entirely voluntary and were not in response to a discovery request, such cases are distinguishable and should thus be disregarded because the policy rationale is entirely different.  As the Supreme Court in Brown explained, the scope of waiver for "[a] witness who is compelled to testify" is narrower because he "has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate."  356 U.S. at 155.  As a consequence, "he must be able to raise a bar at the point in his testimony when his immunity becomes operative. A witness thus permitted to withdraw from the cross-fire of interrogation before the reliability of his testimony has been fully tested may on occasion have succeeded in putting before the trier of fact a one-sided account of the matters in dispute."  Id.

-13-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY ACTION**

No witness enjoys that right.")[4]

In this case, Mr. Cohen has filed two declarations that contain substantive testimony.  First, he filed a declaration in support of EC's Motion to Compel Arbitration on April 2, 2018.  [Dkt. No. 20-5.]  Then on the morning of April 9, Mr. Cohen's office, home, and hotel room were raided by the FBI in New York (EST).  [Blakely Decl., ¶3.] Apparently unconcerned by the raid that morning, Mr. Cohen *still elected to file a second declaration* at approximately 3:08 p.m. Pacific time, at least *six* hours after the raid.  [Dkt. No. 31-2; Avenatti Decl., Ex. 5.]  He did so not because he was compelled to, but for his own benefit.  Mr. Cohen's decision to testify by declaration a second time only provides further support that he has waived his Fifth Amendment rights.

In addition, Mr. Cohen's waiver was not inadvertent.  Even before the raids, Mr. Cohen was on notice that his involvement in the Settlement Agreement could result in criminal prosecution.  As referenced in Mr. Cohen's own February 13, 2018 statement, Common Cause had already filed a complaint with the Federal Election Commission alleging he "violated campaign finance laws."  [Avenatti Decl. Ex. 1.]  Further, Plaintiff

---

[4] See also, e.g., Howard v. State Farm Lloyds, No. H-04-0352, 2005 WL 2600442, at *9 (S.D. Tex. Oct. 13, 2005) ("By voluntarily offering testimony through multiple depositions and through her affidavit submitted in response to State Farm's motion for summary judgment on the affirmative defense of concealment and fraud, Howard waived her right to invoke the Fifth Amendment in response to questions by State Farm during the July 7, 2005 show cause hearing related to matters about which she previously testified."); United States v. Gwinn, No. 8:02-CV-1112-T-27EAJ, 2003 WL 23357667, at *6 (M.D. Fla. Aug. 15, 2003) (holding that "[a] witness may waive his Fifth Amendment privilege as to any matters addressed by the witness in an affidavit to the court" and that by doing so, it is also "waived as to documentary admissions on the same subject matter."); OSRecovery, Inc. v. One Groupe Int'l, Inc., 262 F. Supp. 2d 302, 310 (S.D.N.Y. 2003); Nutramax Labs., Inc. v. Twin Labs., Inc., 32 F. Supp. 2d 331, 336 (D. Md. 1999)("[I]f [defendant] testified to [certain] matters . . . in his prior affidavits . . . he waived his privilege against self-incrimination on these matters."); Air-India v. Goswami, No. 91 CIV. 7290 (JSM), 1993 WL 403999, at *9 (S.D.N.Y. Oct. 5, 1993) ("Once you have waived your Fifth Amendment privilege by filing an affidavit setting forth certain facts, you open yourself up to examination with regard to those facts and circumstances disclosed in the affidavit.").

alleged that the Settlement Agreement itself was illegal because it involved an in-kind contribution in violation of the Federal Election Campaign Act.   [Dkt. No. 14 ¶¶ 44-51.] Mr. Cohen's decision to proceed with filing the second declaration after the raid only underscores that his request for a stay has very little to do with his Fifth Amendment rights, but is rather a naked attempt to now avoid being subject to cross-examination at a deposition.  This is precisely the type of conduct the <u>Brown</u> Court held defendants should not be permitted to engage in.  <u>See</u> 356 U.S. at 154–55.  Moreover, the Supreme Court has "made clear that an individual may lose the benefit of the privilege [against self-incrimination] without making a knowing and intelligent waiver."  <u>Minnesota v. Murphy,</u> 465 U.S. 420, 428 (1984) (quoting <u>Garner v. United States</u>, 424 U.S. 648, 654 n. 9 (1976)).

### 3.    Mr. Trump Does Not Raise Any Fifth Amendment Concerns.

Returning to the legal standard the Court must apply to Defendants' request, the Court "should consider the extent to which the defendant's fifth amendment rights are implicated."  <u>Molinaro</u>, 889 F.2d at 902; <u>Keating</u>, 45 F.3d at 325.   In this regard, Defendants' application ignores two very important facts:  Mr. Trump is also a defendant, and yet he does not presently claim his Fifth Amendment rights are personally implicated. In fact, Mr. Trump did not file his own declaration or submit any evidence supporting a stay.    Accordingly,  even  if  the  Court  were  to  agree  that  Mr. Cohen  has  properly established that his Fifth Amendment rights are substantially implicated (which, as shown above, he has failed to do), a blanket stay should be denied.  <u>See</u> <u>O. Thronas</u>, 2010 WL 931924, at *3 ("Fifth Amendment rights can be protected through less drastic means" than a stay).

### B.    The Five *Keating/Molinaro* Factors Do Not Require a Stay

The remainder of the five (5) <u>Keating/Molinaro</u> factors do not require a stay.   In fact, contrary to Defendants' arguments, not a single factor weighs in favor of a stay.

### 1.    The Prejudice to Plaintiff and Her Interest in Proceeding Expeditiously Weigh Against a Stay

The first of the factors to be considered is the plaintiff's interest in proceeding expeditiously and any prejudice to Plaintiff likely caused by the issuance of a stay. <u>Keating</u>, 45 F.3d at 325. As to this factor, courts uniformly recognize that a "civil plaintiff has an interest in having her case resolved quickly." <u>ESG Capital</u>, 22 F. Supp. 3d at 1046. This is so because "[w]itnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end." <u>Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.</u>, 720 F. Supp. 805, 809 (N.D. Cal. 1989); <u>see also</u> <u>Braslau</u>, 2015 WL 9591482, at *3 ("The Court also recognizes that a stay would increase the odds that key witnesses may become unavailable, that their memories will fade, and that documents in their possession may be lost.").

Consequently, plaintiffs are necessarily prejudiced by the delay caused by a stay. Here, these concerns are particularly acute because Plaintiff's claims center on her ability to speak and be free from any potential liability for a violation of the Settlement Agreement. Defendants have already initiated arbitration proceedings against Plaintiff and sought an injunction preventing her from speaking. Defendants have further indicated that they intend to seek damages from Plaintiff in excess of $20 million. [Dkt. No. 1 at 5:8-18.] In addition to her general interest in the speedy resolution of her case, Plaintiff has an interest in being free from the cloud of this potential liability. Consequently, this factor necessarily weighs against granting a stay.

Nothing Defendants argue establishes otherwise. Instead, Defendants focus on the supposedly short duration of the requested stay. [Dkt. No. 38 at 9-10.] However, Defendants have offered no concrete reason to believe that a stay of 90 days will be sufficient. It is far more likely that it will extend longer and that Defendants will seek to extend the stay indefinitely. Accordingly, Plaintiff's prejudice is clear and this factor weighs in favor of denying Defendants' application.

## 2.      The Purported Burden on Defendant Does Not Require a Stay

The second factor is the consideration of any prejudice to a defendant likely to be caused by the denial of the requested stay. Keating, 45 F.3d at 325. Although Mr. Cohen argues he will suffer prejudice, "[c]ourts have found that *even when a defendant's Fifth Amendment rights are implicated*, this factor does not support granting a stay unless the defendant can show other 'compelling factors as described in *Keating.*'" ESG Capital, 22 F. Supp. 3d at 1046 (emphasis added); see also Lindsey v. City of Pasadena, No. CV1608602SJORAOX, 2017 WL 5891097, at *4 (C.D. Cal. Mar. 24, 2017) (Otero, J.) (same). Indeed, as cited above, "[n]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." Keating, 45 F.3d at 326. As such, "[t]he Ninth Circuit has found that where a defendant has had adequate time to prepare for a related civil trial, the burden on the defendant is substantially diminished." Id. (citing Keating, 45 F.3d at 325).

Not surprisingly, courts routinely reject the argument that the Fifth Amendment prevents the defendant from presenting a defense because a party "has no constitutional right to a stay of this civil proceeding" and a defendant "may assert his Fifth Amendment privilege on an issue-by-issue basis throughout the proceedings, giving him the opportunity to defend himself even while asserting the privilege." Braslau, 2015 WL 9591482, at *4; see also Estate of Morad v. City of Long Beach, No. CV 16-06785 MWF (AJWx), 2017 WL 5187826, at *9 (C.D. Cal. Apr. 28, 2017) ("Simply being forced to invoke the Fifth Amendment, and accordingly incurring an adverse inference, is not by itself the sort of prejudice that categorically favors a stay."); Sanrio, 2015 WL 1062035, at *3 ("Defendants have not identified any legitimate burden that could result from this Action proceeding, other than Defendants' "Fifth Amendment concerns…").[5]

---

[5] In fact, as this specific Court has noted, although defendants such as Mr. Cohen typically complain of the prejudice from denial of a stay, because they typically contest

Continued on the next page

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY ACTION**

Here, Defendants make no showing sufficient to justify a stay.  Rather, they rely entirely on the fact that Mr. Cohen may seek to invoke his Fifth Amendment protections and that this will deprive the defense of a "key witness."  [Dkt. No. 38 at 10:10-12.]  In doing so, Defendants do not address or distinguish the well-established rule that this *alone* is insufficient to establish the requisite prejudice.  Lindsey, 2017 WL 5891097, at *4.  Rather, Defendants must establish "other compelling factors" and fail to do so here.  ESG Capital Partners, 22 F. Supp. 3d at 1046.  Further, Defendants ignore binding precedent that, as a representative of EC, Mr. Cohen *cannot* invoke any Fifth Amendment protections even if it would be personally incriminating.  Braswell, 487 U.S. at 109.

Moreover, Defendant Trump has submitted nothing to establish that he would suffer any prejudice from denial of a stay.  Neither he, nor his counsel, submit a declaration of offer any evidence.  This, too, weighs against a stay.

### 3.    The Conservation of Judicial Resources Weighs Against a Stay

The third factor to be considered addresses the conservation of judicial resources.  Keating, 45 F.3d at 325.  As to this factor, the law is clear that the Court has an "interest in clearing its docket."  Molinaro, 889 F.2d at 903.  Consequently, "[t]his factor usually weighs against granting a stay . . ."  Braslau, 2015 WL 9591482, at *4; see also Sanrio, 2015 WL 1062035, at *4 (same).  Indeed, "a policy of issuing stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration."  IBM v. Brown, 857 F. Supp. 1384, 1392.  Again, Mr. Cohen offers nothing to change this analysis.  Instead, Defendants focus on the purportedly short duration of the requested stay.  As argued above, it is highly unlikely Defendants will not seek to extend the stay beyond 90 days.  Moreover, the Chrome Heart order cited by Defendants involved circumstances where an

---

Continued from the previous page

the relief sought by the plaintiff, they are in fact "prejudiced *by a stay*, as delaying resolution of [the] civil lawsuit would affect [the defendant's] ability to extricate himself from what he claims is a meritless lawsuit against him."  Perez, 2016 WL 10576622, at *3 (Otero, J.) (emphasis added).

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY ACTION**

indictment had in fact been issued.  Here, particularly in the absence of an indictment, Defendants offer no concrete reason to conclude that the criminal investigation will in any meaningful way obstruct the resolution of this action.  Thus, this factor weighs against a stay.

### 4.  The Interests of Non-Parties Does Not Weigh in Favor of a Stay

The fourth factor is the interest of third parties.  <u>Keating</u>, 45 F.3d at 325. Defendants identify no third parties with an interest in a stay.  This factor is thus neutral. <u>Sanrio</u>, 2015 WL 1062035, at *4.

### 5.  The Public Interest in the Speedy Resolution of this Action Weighs Against a Stay

The final factor is the public interest.  <u>Keating</u>, 45 F.3d at 325.  The public has an interest in the "speedy resolution" of this action.  <u>Keating</u>, 45 F.3d at 325; <u>see also</u> <u>Molinaro</u>, 889 F.2d at 903 (finding that the interest of the public "would be frustrated by further delay.").  Indeed, as this Court has previously held, the "public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law through the Civil Justice Reform Act of 1990." <u>Perez</u>, 2016 WL 10576622, at *4 (citing 28 U.S.C. §§ 471-82) (Otero, J.).  "A stay would clearly impair that interest." <u>Id.</u>

This action especially has received significant media attention.  This is understandable as it involves the President of the United States and his personal attorney as defendants, and an allegation that hush money was paid just weeks before the presidential election to influence American voters.  For example, in <u>Keating</u> the Ninth Circuit held that "in light of the inordinate amount of media attention given to the case, any delay would have been detrimental to public confidence" in judicial enforcement and resolution of pending actions.  <u>Keating</u>, 45 F.3d at 326.  The same conclusion should be reached here.  This action should proceed in the normal course towards resolution, as to do otherwise would impair the public interest in the outcome of this action and the resolution of the claims directly involving and impacting the President of the United States and his lawyer.

1   Defendants cannot establish otherwise.   Instead, they advance a conclusory
2   argument that the public interest is served by ensuring this action does not interfere with
3   the criminal investigation.  [Dkt. No. 38 at 10:24-25.]  Defendants have offered no reason
4   to believe that this action will or could interfere with the criminal investigation nor do
5   they discuss the importance or scope of the criminal investigation.   Indeed, their
6   assumption and the very position they advance plainly contradicts the general rule that it
7   is "permissible to conduct a civil proceeding at the same time as a related criminal
8   proceeding, even if that necessitates invocation of the Fifth Amendment privilege" and
9   that "[a] defendant has no absolute right not to be forced to choose between testifying in a
10  civil matter and asserting his Fifth Amendment privilege."  Keating, 45 F.3d at 326.

11  ## V.    CONCLUSION

12      For the reasons stated above, Plaintiff respectfully requests the Court DENY
13  Defendants' *ex parte* application for a stay of this action in its entirety.

14
15  Dated:  April 16, 2018                    AVENATTI & ASSOCIATES, APC

16

17                          By:      /s/ Michael J. Avenatti
                                    Michael J. Avenatti
18                                  Attorneys for Plaintiff Stephanie Clifford
                                    a.k.a. Stormy Daniels a.k.a. Peggy Peterson
19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY ACTION**