AVENATTI & ASSOCIATES, APC
Michael J. Avenatti, State Bar No. 206929
Ahmed Ibrahim, State Bar No. 238739
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile: 949.706.7050

Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,

Plaintiff,

vs.

DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN and DOES 1 through 10, inclusive,

Defendants.

CASE NO.: 2:18-cv-02217-SJO-FFM

**PLAINTIFF STEPHANIE CLIFFORD'S RESPONSE TO DECLARATION OF MICHAEL D. COHEN FILED IN SUPPORT OF DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR STAY**

## I. INTRODUCTION

Despite having been provided an opportunity to cure their deficient application for a stay, Defendants continue to fail to meet their burden. That burden requires Defendants to provide the Court with sufficient information from which it can make an intelligent evaluation of the claim of Fifth Amendment privilege. Instead, Defendants offer a skeletal declaration from Michael Cohen asserting an across-the-board, *blanket* refusal to answer any questions. But such blanket claims of Fifth Amendment privilege are expressly prohibited by law. United States v. Pierce, 561 F.2d 735, 741 (9th Cir. 1977). Moreover, Mr. Cohen continues to fail to offer the essential details required to support his declaration and the stay motion. Rather, Defendants mistakenly believe that the mere *possibility* one defendant may be able to raise Fifth Amendment concerns grants them an affirmative right to a stay. That is simply not the law. Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir. 1995) ("A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege.").

But perhaps the most glaring omission from Mr. Cohen's declaration is the absence of any explanation as to why his Fifth Amendment rights prevent any of the defendants from adequately defending this case. As the Court knows, Mr. Cohen is not the only witness in this case. Thus, even if he takes the Fifth on a question by question basis, the case may proceed with document discovery from defendant Essential Consultants, LLC ("EC") and others, and with witness testimony from many other witnesses in the case. Defendants offer no meaningful response to this contention. Accordingly, less drastic measures in lieu of a stay are available and should be utilized.

## II. MR. COHEN'S BLANKET ASSERTION OF THE FIFTH AMENDMENT PRIVILEGE DOES NOT SALVAGE DEFENDANTS' STAY MOTION

Mr. Cohen's declaration fails to cure Defendants' deficient stay application. It is well settled that in invoking the Fifth Amendment, a "*blanket refusal to answer any question is unacceptable*." United States v. Pierce, 561 F.2d 735, 741 (9th Cir. 1977)

(emphasis added). This is so because the Court has a "duty to scrutinize a witness' invocation of the Fifth Amendment." United States v. Vavages, 151 F.3d 1185, 1192 (9th Cir. 1998). In order to permit the Court to carry out this duty, the "proper application" of the Fifth Amendment privilege "requires that the Fifth Amendment claim *be raised in response to specific questions*." Pierce, 561 F.2d at 741 (emphasis added). Otherwise, the Court has no ability "to determine whether a responsive answer might lead to injurious disclosures." Id. When faced with a blanket invocation, the Court "need proceed no further in determining the extent" of any claimed Fifth Amendment rights. Id. at 741-42.

Here, the declaration is a textbook example of that which the law expressly prohibits—namely, a blanket assertion of the Fifth Amendment privilege. He states: "I will assert my 5th amendment rights in connection with *all* proceedings in this case due to the ongoing criminal investigation by the FBI and U.S. Attorney for the Southern District of New York." [Cohen Decl., ¶3 (emphasis added).] This is no different from a "blanket refusal to answer any question[.]" Pierce, 561 F.2d at 741. Mr. Cohen has thus failed to provide the Court with a sufficient basis to evaluate his claimed Fifth Amendment rights.

Indeed, Mr. Cohen's declaration does very little to respond to the concerns raised by the Court at the prior hearing. He still makes no attempt to show why his testimony would be self-incriminating. He fails to demonstrate the government is investigating, or is even interested in pursuing, criminal charges relating to the Settlement Agreement, the $130,000 payment, or any other issue in this case. There is still no evidence of an actual indictment or that criminal charges relating to anything Mr. Cohen would be testifying about in this case (as opposed to other non-legal, business activities of Mr. Cohen)[1] are

---

[1] In fact, Defendant Trump this morning repeatedly emphasized that in the investigation, "they're looking [in]to something having to do with his [i.e., Mr. Cohen's] ***business***" and not the legal work he did for Mr. Trump in this case, that Mr. Cohen did "absolutely nothing wrong," that Mr. Cohen is pleading the Fifth because "he's got other things—he's got ***businesses***," and that no campaign funds were used to pay the $130,000. [See <http://video.foxnews.com/v/5776719790001/?#sp=show-clips> at 14:15-16:00.] These statements—which contradict the position taken by Mr. Cohen in this declaration (and by Defendants in their stay application)—further underscore why the absence of any meaningful detail in Mr. Cohen's declaration to enable the Court to make an intelligent assessment of his Fifth Amendment claim is fatal to Defendants' position.

imminent. At best, Mr. Cohen's declaration merely establishes that documents were seized from his office "which contain information relating to the $130,000 payment to Plaintiff Stephanie Clifford at the center of this case…" [Dkt. No. 50 at ¶2.] It does not, however, establish that Mr. Cohen's testimony *as to any and all topics* in this action "would 'support a conviction under a federal criminal statute'" or "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" Earp v. Cullen, 623 F.3d 1065, 1070 (9th Cir. 2010). In short, the declaration fails to amount to "a good faith effort to provide … sufficient information from which [the Court] can make an intelligent evaluation of the claim." Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981).

Defendants' Request for Judicial Notice, filed without leave of the Court, also does not cure this deficiency. Even if considered substantively, which it should not be,[2] the cited portions of the transcripts do not offer the missing details regarding the nature of the investigation and its claimed relationship to the $130,000 payment, and do not establish a likely causal link between Mr. Cohen's testimony in this action and possible criminal consequences. [See Dkt. No. 51.]

## IV. THE DECLARATION DOES NOT CHANGE THE WAIVER ANALYSIS

Mr. Cohen's declaration also does not alter the conclusion that he waived any Fifth Amendment rights he may have had by filing a declaration discussing this case after the FBI raids. Mr. Cohen attempts to address his waiver problem with one conclusory sentence: "On April 10, 2018 I first realized my Fifth Amendment rights would be implicated in this case, after I considered the events of April 9, 2018, described in the above paragraph 2." [Cohen Decl., ¶4.] This self-serving statement is insufficient. Mr. Cohen, *a practicing lawyer*, admits he was aware that the FBI conducted raids of his residence, office, and hotel room. He also admits he was aware the FBI seized materials "relating to the $130,000 payment[.]" [Cohen Decl., ¶2.] It follows, therefore, that if

[2] AS this Court previously noted, judicial notice cannot be taken over the truth of the facts asserted in the transcript. Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).

there are any Fifth Amendment concerns to begin with, Mr. Cohen must have *immediately* identified and recognized those concerns *while the raids were occurring* on the morning of April 9 (Eastern Time).[3] Indeed, Mr. Cohen provides no detail as to what, if anything, changed between the time of the raids on April 9 and the next day on April 10.[4]

Ultimately, however, the declaration does not change the waiver analysis. Mr. Cohen voluntarily testified in *this proceeding*.[5] He did so even after the FBI raids. And he did so voluntarily, without any compulsion, for his own benefit to support his motion to strike. In fact, Mr. Cohen was not even under a time constraint to file the declaration as there was no deadline to file the motion on April 9. Accordingly, Brown v. United States, 356 U.S. 148 (1958), along with all of the other case law cited on pages 12 through 15 of the Opposition (none of which Defendants addressed in their Reply), is controlling.

## V. LESS DRASTIC MEASURES ARE AVAILABLE

Among all of the fatal omissions in Mr. Cohen's declaration, perhaps none is as damaging as the following: Mr. Cohen fails to assert that he and the other defendants would be unable to adequately defend themselves in this litigation without Mr. Cohen. Nor has Mr. Trump offered any testimony or other evidence demonstrating why he would be unable to adequately defend himself in this case without Mr. Cohen.

For this reason, any legitimate "Fifth Amendment rights can be protected through

---

[3] There is also very good reason to question the genuineness of Mr. Cohen's claim that he supposedly first realized on April 10 that his Fifth Amendment rights would be implicated. *On that same day*, Mr. Cohen addressed the allegations directly when he told Don Lemon of *CNN* in a phone interview that "everything he did in regards to paying Stormy Daniels was perfectly legal." [Avenatti Decl., Ex. 6.]

[4] Mr. Cohen's self-professed and subjective state of mind is ultimately irrelevant. That is because, as set forth in Minnesota v. Murphy, "an individual may lose the benefit of the privilege [against self-incrimination] without making a knowing and intelligent waiver." 465 U.S. 420, 428 (1984) (quoting Garner v. United States, 424 U.S. 648, 654 n. 9 (1976)). Defendants rely on cases citing Fifth Amendment waiver rules that apply specifically to custodial interrogations. Here, in contrast, as the Court in Murphy recognized, "this extraordinary safeguard 'does not apply outside the context of the inherently coercive custodial interrogations for which it was designed.'" Id. at 429-30 (quoting Roberts v. United States, 445 U.S. 552, 560 (1980).

[5] Plaintiff's argument is thus consistent with the portion of the Ninth Circuit opinion Defendants cite in their reply. See U.S. v. Licavoli, 604 F.2d 613, 623 (9th Cir. 1979) ("It is settled that a waiver of the Fifth Amendment privilege is limited to the *particular proceeding* in which the waiver occurs.") (emphasis added).

less drastic means [than a stay], such as asserting the privilege on a question by question basis and implementing protective orders." O. Thronas, Inc. v. Blake, No. CIV.09-00353DAE-LEK, 2010 WL 931924, at *3 (D. Haw. Mar. 10, 2010).

Here, Mr. Cohen can testify and assert Fifth Amendment rights he deems appropriate on a question by question basis. As an initial matter, the mere possibility that an adverse inference may be drawn from Mr. Cohen's invocation of the Fifth Amendment does not justify a stay. Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir. 1995); Estate of Morad v. City of Long Beach, No. CV 16-06785 MWF (AJWx), 2017 WL 5187826, at *9 (C.D. Cal. Apr. 28, 2017) ("Simply being forced to invoke the Fifth Amendment, and accordingly incurring an adverse inference, is not by itself the sort of prejudice that categorically favors a stay."). Moreover, there is no prejudice to Mr. Cohen or any of the other defendants because Mr. Cohen is not the only witness in this case. Indeed, as Plaintiff pointed out at the hearing, many other witnesses—witnesses with no apparent need at this time to assert Fifth Amendment rights—will have to testify in this case. This includes, among others, Mr. Trump, witnesses from First Republic Bank (the bank from which the $130,000 payment was made), Keith Davidson (Plaintiff's prior counsel involved in the Settlement Agreement), Mr. Cohen's assistant or other associates who assisted him with the Settlement Agreement and payment, possibly the four individuals named in paragraph 4.2 of the Settlement Agreement, and Mr. Cohen's wife. Moreover, as previously noted, because EC does not have any Fifth Amendment rights, Braswell v. United States, 487 U.S. 99, 102 (1988), its records are available to the parties in this case.

## VI. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests the Court DENY Defendants' *ex parte* application for a stay of this action in its entirety.

Dated: April 26, 2018

AVENATTI & ASSOCIATES, APC

By: /s/ Michael J. Avenatti
Michael J. Avenatti
Attorneys for Plaintiff Stephanie Clifford