AVENATTI & ASSOCIATES, APC
Michael J. Avenatti, State Bar No. 206929
Ahmed Ibrahim, State Bar No. 238739
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone:  949.706.7000
Facsimile:   949.706.7050

Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.:  2:18-cv-02217-SJO-FFM<br><br>**PLAINTIFF STEPHANIE CLIFFORD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION IN PART OF ORDER IMPOSING STAY**<br><br>[*filed concurrently with Notice of Motion and Declaration of Michael J. Avenatti*]<br><br>**Hearing Date:  June 21, 2018**<br>(Pursuant to Court's Order Dkt. No. 55)<br>**Hearing Time:  1:30 p.m.**<br>**Location:  Courtroom 10C** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     SUMMARY OF NEW FACTUAL DEVELOPMENTS
        BEARING ON THE STAY ORDER ...................................................... 2

III.    LEGAL STANDARD ON MOTION FOR RECONSIDERATION ....... 7

III.    ARGUMENT ........................................................................................... 8

        A.      Plaintiff Does Not Seek to Modify the Stay on Discovery
                From Mr. Cohen Previously Imposed By the Court. ..................... 8

        B.      The Court Should Reconsider In Part Its Order Based on the
                New Factual Revelations and Changed Circumstances In the
                Case. .......................................................................................... 9

                1.      The New Facts Revealed Directly From Mr. Trump
                        and His Lawyer Mr. Giuliani Cast Doubt on the
                        Strength of Mr. Cohen's Fifth Amendment Rights
                        With Regards to this Case. ............................................... 9

                2.      The New Developments Demonstrate that Less
                        Drastic Measures Are Available in Lieu of a Blanket
                        Stay. ................................................................................ 12

                3.      The New Developments Demonstrate That Lifting the
                        Blanket Stay Would Not Substantially Prejudice
                        Defendants ..................................................................... 13

                4.      Reconsideration in Part Would Promote the Efficient
                        Use of Judicial Resources. ............................................ 14

                5.      Mr. Trump's Incendiary Tweet Inciting His Followers
                        and Renewed Threat to Seek Damages From Plaintiff
                        Causes Continued Prejudice to Plaintiff From
                        Maintaining the Stay. ..................................................... 15

        C.      Stays Are Extraordinary Remedies and Extremely Rare. ........... 16

IV.     CONCLUSION ..................................................................................... 20

-i-

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
RECONSIDERATION IN PART OF ORDER IMPOSING STAY**

# TABLE OF AUTHORITIES

## CASES

389 Orange Street Partners v. Arnold,
    179 F.3d 656 (9th Cir. 1999) .................................................................8

Afro-Lecon, Inc. v. United States,
    820 F.2d 1198 (Fed. Cir. 1987) ..........................................................19

AIG Prop. Cas. Co. v. Cosby,
    No. CV 15-04842-BRO (RAOx), 2016 WL 6662733 (C.D. Cal. July 15, 2016).......11

Anglada v. Sprague,
    822 F.2d 1035 (11th Cir. 1987) ..........................................................18

Cady v. S. Suburban Coll.,
    152 F. App'x 531 (7th Cir. 2005) ........................................................19

Creative Consumer Concepts, Inc. v. Kreisler,
    563 F.3d 1070 (10th Cir. 2009) ..........................................................17

Doe v. City of San Diego,
    No. 12-CV-689-MMA-DHB, 2012 WL 6115663 (S.D. Cal. Dec. 10, 2012).............12

ESG Capital Partners LP v. Stratos,
    22 F. Supp. 3d 1042 (C.D. Cal. 2014) ...........................................11, 16

Estate of Limon v. City of Oxnard,
    No. CV 13-01961 SS, 2013 WL 12131359 (C.D. Cal. Dec. 10, 2013) ........................8

Exch. Comm'n v. Dresser Indus., Inc.,
    628 F.2d 1368 (D.C. Cir. 1980).........................................................18

Exch. Comm'n v. First Fin. Grp. of Texas, Inc.,
    659 F.2d 660 (5th Cir. 1981) ..........................................................18

Fed. Sav. & Loan Ins. Corp. v. Molinaro,
    889 F.2d 899 (9th Cir. 1989) .................................................9, 11, 15

F.T.C. v. E.M.A. Nationwide, Inc.,
    767 F.3d 611 (2014) ........................................................................................ 16, 17

Guggenheim Capital, LLC v. Birnbaum,
    722 F.3d 444 (2d Cir. 2013) ................................................................................. 16

Hoover v. Knight,
    678 F.2d 578 (5th Cir. 1982) ................................................................................ 20

Ironbridge Corp. v. C.I.R.,
    528 F. App'x 43 (2d Cir. 2013) ............................................................................ 19

Kashi v. Gratsos,
    790 F.2d 1050 (2d Cir. 1986) ............................................................................... 18

Keating v. Office of Thrift Supervision,
    45 F.3d 322 (9th Cir. 1995) ........................................................................... passim

Koester v. American Republic Investments, Inc.,
    11 F.3d 818 (8th Cir. 1993) .................................................................................. 17

Louis Vuitton Malletier S.A. v. Ly USA, Inc.,
    676 F.3d 83 (2d Cir 2012) .................................................................................... 16

Microfinancial Inc. v. Premier Holidays International, Inc.,
    385 F.3d 72 (1st Cir. 2004) ............................................................................. 16, 17

Mid-Am.'s Process Serv. v. Ellison,
    767 F.2d 684 (10th Cir. 1985) .............................................................................. 18

Nosik v. Singe,
    40 F.3d 592 (2d Cir. 1994) ................................................................................... 17

O. Thronas, Inc. v. Blake,
    No. CIV.09-00353DAE-LEK, 2010 WL 931924 (D. Haw. Mar. 10, 2010) ............. 12

S.E.C. v. Wright,
    261 F. App'x 259 (11th Cir. 2008) ....................................................................... 19

School Dist. No. 1J, Multnomah County v. ACandS, Inc.,
    5 F.3d 1255 (9th Cir. 1993) ................................................................................... 8

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
RECONSIDERATION IN PART OF ORDER IMPOSING STAY**

Serafino v. Hasbro, Inc.,
    82 F.3d 515 (1st Cir. 1996) ...........................................................................17

Smith v. Massachusetts,
    543 U.S. 462 (2005) ..........................................................................................7

United States v. Certain Real Prop., Commonly Known as 6250 Ledge Rd., Egg
    Harbor, Wis.,
    943 F.2d 721 (7th Cir. 1991) .........................................................................18

United States v. Int'l Bhd. of Teamsters,
    247 F.3d 370 (2d Cir. 2001) ...........................................................................17

United States v. Little Al,
    712 F.2d 133 (5th Cir. 1983) .........................................................................18

United States v. Lot 5, Fox Grove, Alachua Cty., Fla.,
    23 F.3d 359 (11th Cir. 1994) .........................................................................17

United States v. White,
    589 F.2d 1283 (5th Cir. 1979) .......................................................................19

Wehling v. CBS,
    608 F.2d 1084 (5th Cir. 1979) .......................................................................20

Zicarelli v. New Jersey State Comm'n of Investigation,
    406 U.S. 472 (1972) .........................................................................................11

## **RULES**

Local Rule 7-18 ....................................................................................................8

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
RECONSIDERATION IN PART OF ORDER IMPOSING STAY**

# I.    INTRODUCTION

Based on new facts and evidence, Plaintiff Stephanie Clifford (aka Stormy Daniels) ("Plaintiff") files this motion seeking reconsideration, *in part*, of the Court's order dated April 27, 2018 imposing a stay of this action for 90 days.   Plaintiff *does not* seek reconsideration of the Court's order staying discovery as to Defendant Michael Cohen. However, the new facts that emerged beginning on May 2nd do justify a modification of the Court's order staying the remainder of the case.  This is true for at least five reasons:

1.    New facts call into question whether Mr. Cohen's Fifth Amendment rights relating to the matters at issue in this case are as compelling as previously argued by Defendants.  Statements from Defendant Donald J. Trump himself, along with his attorney Rudy Giuliani speaking on behalf of Mr. Trump, suggest that the criminal proceeding in New York pertain solely to Mr. Cohen's "businesses" and that the $130,000 payment to Plaintiff did not result in campaign finance violations.

2.    The new developments in the case make clear that less drastic measures than a complete stay of all proceedings are available.  Mr. Cohen will not be deposed while the existing stay is in place.  Plaintiff has agreed to only pursue a deposition of Mr. Trump - who is not reportedly under criminal investigation for any of his dealings relating to the facts of this case.  Plaintiff is also agreeable to permit Defendants to rely on Mr. Cohen's April 2 and 9 declarations during the existing stay.  All of this evidence, along with testimony of other witnesses previously identified and the documents that will be available in discovery, is more than adequate to enable Defendants to mount a defense to Plaintiff's first cause of action.

3.    Mr. Trump and Mr. Giuliani's new revelations concerning the Settlement Agreement and $130,000 payment demonstrate that Defendants Trump and EC are fully equipped to defend Plaintiff's declaratory judgment claim even without Mr. Cohen. Further, because Plaintiff agrees a stay should be maintained as to Mr. Cohen's deposition for the remaining 90 days covered by the Court's prior order, Mr. Cohen will not have to assert the Fifth Amendment privilege on specific questions.   Therefore, the second

<u>Keating</u> factor—namely, the burden on Defendants—weighs decidedly in favor of denying the stay.

4.     Because Plaintiff will not be seeking a deposition of Mr. Cohen during the remainder of the 90-day stay period, the third Keating factor regarding convenience of the court in the management of its cases and the efficient use of judicial resources weighs in favor of denying a stay.  The Court's previously stated concerns about inefficiencies associated with compelling Mr. Cohen to be deposed when he would merely assert Fifth Amendment objections, and the attendant discovery and other disputes associated with the deposition no longer apply.  Further, because Plaintiff will not object to Defendants' use of Mr. Cohen's declarations to support their two existing motions, the Court's interest in clearing its docket is served by hastening the resolution of these motions.

5.     Finally, Mr. Trump's renewed public threat to obtain damages from Plaintiff, and his disparagement of Plaintiff and her story as "false and extortionist" underscore Plaintiff's strong interest in proceeding expeditiously with this litigation and the prejudice to her of a delay.  The first <u>Keating</u> factor, therefore, also now weighs in favor of Plaintiff.

## II.     SUMMARY OF NEW FACTUAL DEVELOPMENTS BEARING ON THE STAY ORDER

Plaintiff's motion for reconsideration is based on the following new factual developments.

On April 26 (after Defendants filed their joint application for a stay and the declaration of Mr. Cohen supporting the stay), Mr. Trump gave a phone interview with the television program *Fox & Friends*.  [Avenatti Decl., Ex. 1 http://video.foxnews.com/v/5776719790001/?#sp=show-clips.]   In the interview, when asked about the criminal investigation in New York of Mr. Cohen, Mr. Trump responded that:  "they're looking [in]to something having to do with his [i.e., Mr. Cohen's] business" and not the legal work he did for Mr. Trump in this case; that Mr. Cohen did "absolutely nothing wrong"; that Mr. Cohen is pleading the Fifth because "he's got other things—he's got businesses"; and that no campaign funds were used to pay the $130,000. [See Avenatti

Decl., Ex. 1 at 14:15-16:00.][1]  These statements contradicted the position taken by Mr. Cohen days earlier in his declaration (and by Defendants in their stay application).

On May 2, new factual revelations directly impacting this case also came to light from Mr. Trump's attorney, Rudy Giuliani.  That evening, Sean Hannity of *Fox News* interviewed Mr. Giuliani on his television program, in which the following exchange occurred:

> GIULIANI:   Having something to do with paying some Stormy Daniels woman $130,000?  I mean, which is going to turn out to be perfectly legal.  That money was not campaign money. Sorry, I'm giving you a **fact** now that you don't know.  It's not campaign money. No campaign finance violation.
>
> HANNITY:  So, they funneled it through the law firm?
>
> GIULIANI:  **Funneled it through the law firm, and the president repaid it.**
>
> HANNITY: Oh.  I didn't know—he did?
>
> GIULIANI:  Yeah.
>
> HANNITY:  There's no campaign finance law?
>
> GIULIANI:  Zero!

[Avenatti Decl., Ex. 2  http://video.foxnews.com/v/5779751128001/?#sp=show-clips  at 39:50-40:26 (emphasis added).]

Mr. Hannity's interview of Mr. Giuliani continued:

> GIULIANI:   Everybody was nervous about this from the very beginning.  I wasn't. I knew how much money Donald Trump put into

---

[1] Plaintiff referenced this evidence in a footnote in her supplemental brief in support of her opposition to Defendants' stay application.  [See Dkt No. 52 at 3 n.1.]  Because, as noted, the evidence could not have been discovered before April 26—well after Defendants filed their application and Plaintiff filed her opposition—the Court may have disregarded this evidence on the basis that it was not properly before the Court because Defendants would not have had an opportunity to respond.  Out of caution, therefore, Plaintiff resubmits this evidence.

that campaign, and I said, "$130,000?  He could do a couple of checks for $130,000.

When I heard of Cohen's retainer of 35,000 when he was doing no work for the president.  **I said, "Well, that's how he's repaying it, with a little profit and a little margin for paying taxes for Michael."**

HANNITY:  But do you know the president didn't know about this?  I believe that's what Michael said.

GIULIANI:  Ah, he didn't know about the specifics of it, as far as I know.  **But he did know about the general arrangement**, that Michael would take care of things like this.  Like, I take care of things like this for my clients.  I don't burden them with every single thing that comes along.  These are busy people.

[Avenatti Decl., Ex. 2 at 40:30-41:17 (emphasis added).]

Later in the interview, Mr. Giuliani continued discussing the Settlement Agreement and payment:

GIULIANI:  Sure, I was talking about the $130,000 payment.

HANNITY:  Right.

GIULIANI:  The settlement payment which is a very regular thing for lawyers to do. The question there was, the only possible violation there would be wasn't a campaign finance violation, which usually results in a fine, by the way, not this big storm troopers coming in and breaking down his apartment and breaking down his office.

That was money that was paid by his lawyer, the way I would do out of his law firm funds or whatever funds, It doesn't matter.  **The president reimbursed that over the period of several months.**

HANNITY:  But he had said did it, I remem—I distinctly remember, that he did it on his own --

GIULIANI:  He did.

HANNITY:  -- without asking.

GIULIANI:   Look, I don't know.   I haven't investigated that, no

-4-

1      reason to dispute that, no reason to dispute his recollection.   I like
2      Michael a lot, you like Michael a lot.

3      HANNITY:  A long time.

4      GIULIANI:   I feel very bad he's been victimized like this.   The
     President feels even worse.  The fact is, just trust me, they are going to
5      come up with no violations there.

6      HANNITY:  Alright, you mean the payment --

7      GIULIANI:  Yes, the payment was perfectly legal.

8      HANNITY:  Let me go back to the main crux of it.
9

10      GIULIANI:  All documented.

11 [Avenatti Decl., Ex. 2  at 44:14-45:20 (emphasis added).]

12      Early the next morning on May 3, consistent with the new revelations disseminated

13 by Mr. Giuliani, Mr. Trump issued three separate tweets discussing Mr. Cohen, Plaintiff,

14 the Settlement Agreement, and the $130,000 payment:

15      Mr. Cohen, an attorney, received a monthly retainer, not from the
16      campaign and having nothing to do with the campaign, from which he
     entered into, through reimbursement, a private contract between two
17      parties, known as a non-disclosure agreement, or NDA. These
18      agreements are.....
     https://twitter.com/realDonaldTrump/status/991992302267785216
19

20      ...very common among celebrities and people of wealth. In this case it
     is in full force and effect and will be used in Arbitration for damages
21      against Ms. Clifford (Daniels). The agreement was used to stop the
     false and extortionist accusations made by her about an affair,......
22      https://twitter.com/realDonaldTrump/status/991994433750142976

23

24      ...despite already having signed a detailed letter admitting that there
     was no affair. Prior to its violation by Ms. Clifford and her attorney,
25      this was a private agreement. Money from the campaign, or campaign
     contributions, played no roll [sic] in this transaction.
26      https://twitter.com/realDonaldTrump/status/991995845120753664

27 [Avenatti Decl., Ex. 3.]

28      On the same morning of May 3, Mr. Giuliani went on *Fox & Friends* and continued

openly discussing the Settlement Agreement and $130,000 payment:

> EARHARDT:  . . .  Something that did stand out to me.  I remember when Michael Cohen was interviewed about it and he, uh—it seemed like he was saying that he was never reimbursed that $130,000, and now it sounds like the story is changing.

> GIULIANI:  Well he, I mean he's uh, he was definitely reimbursed.  There's no doubt about it.

> https://www.youtube.com/watch?v=MJSZgwdvNvQ  at  6:00-6:16

\* \* \* \*

> DOOCY:  So let's go into that.  Why was the $130,000 payment given to Stephanie Clifford?

> GIULIANI:  That's what they negotiated.

> DOOCY:  But why did he, the campaign, err…why did the attorney pay her the money?  What was she alleging?

> GIULIANI:  Well she was alleging, although there's the contrary letter that she signed that it never happened, that there was some…a one-time affair…uh and I think when Cohen heard $130,000, he said "My god, this is cheap."  They come cheap.  Let me get the thing signed up and signed off.

> https://www.youtube.com/watch?v=MJSZgwdvNvQ  at  7:00-7:31

\* \* \* \*

> DOOCY:  So you're saying, you're saying that Stephanie Clifford, uh, made these allegations, uh, told Donald Trump's lawyer—

> GIULIANI:  And denied them.

> DOOCY:  —look I'm about to go public—

> GIULIANI:  And denied them.  And then said it wasn't true.  **However, imagine if that came out on October 15, 2016 in the middle of the, you know, last debate with Hillary Clinton.**

> DOOCY:  So to make it go away, they, they made this—

GIULIANI: **Cohen didn't even ask, Cohen, Cohen made it go
away. He did his job.**

https://www.youtube.com/watch?v=MJSZgwdvNvQ at 8:03-8:29

[Avenatti Decl., Ex. 4.]

On May 16, Mr. Trump made another factual statement concerning his knowledge
about the payment to Plaintiff, this time in a signed disclosure made to the United States
Office of Government Ethics entitled "Executive Branch Personnel Public Financial
Disclosure Report (OGE Form 278e)." [Avenatti Decl., Ex. 5.] In a footnote in Part 8 of
the Report in a section for "Liabilities," Mr. Trump disclosed the following:

> In the interest of transparency, while not required to be
> disclosed as 'reportable liabilities' on Part 8, in 2016 expenses
> were incurred by one of Donald J. Trump's attorneys, Michael
> Cohen. Mr. Cohen sought reimbursement of those expenses and
> Mr. Trump fully reimbursed Mr. Cohen in 2017. The category
> of value would be $100,001 - $250,000 and the interest rate
> would be zero.

[Avenatti Decl., Ex. 5] According to United States Office of Government Ethics in a
letter sent to Deputy Attorney General Rod Rosenstein, "the payment made by Mr. Cohen
is required to be reported as a liability." [Id., Ex. 6; see also Avenatti Decl., Ex. 5 at 1
("OGE has concluded that the information related to the payment made by Mr. Cohen is
required to be reported and that the information provided meets the disclosure
requirement for a reportable liability.")]

As of the date of this filing, Plaintiff is not aware of any criminal charges being
filed against Mr. Cohen or any indictment having been made public. [Avenatti Decl., ¶8.]

## III. LEGAL STANDARD ON MOTION FOR RECONSIDERATION

A district court has the "*inherent power* to reconsider and modify its interlocutory
orders prior to the entry of judgment . . ." Smith v. Massachusetts, 543 U.S. 462, 475
(2005) (emphasis added; internal quotes omitted). A motion for reconsideration will not
be granted unless "the district court (1) *is presented with newly discovered evidence*, (2)
committed clear error or the initial decision was manifestly unjust, or (3) if there is an

intervening change in controlling law." School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (emphasis added); see also 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

Additionally, Local Rule 7-18 provides:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) *a material difference in fact* or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) *the emergence of new material facts* or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18 (emphasis added).

## III.   ARGUMENT

### A.   Plaintiff Does Not Seek to Modify the Stay on Discovery From Mr. Cohen Previously Imposed By the Court.

As a preliminary matter and for clarity, Plaintiff by this motion does not seek to disturb the portion of the Court's order staying discovery as to Mr. Cohen for 90 days. Therefore, although Plaintiff respectfully disagrees that such a stay is necessary or justified for all the reasons previously articulated, she does not propose that Mr. Cohen be required to sit for deposition or produce his own documents during the 90 day period of the stay.[2]  See Estate of Limon v. City of Oxnard, No. CV 13-01961 SS, 2013 WL 12131359, at *2 (C.D. Cal. Dec. 10, 2013) (partially staying case by granting stay of discovery against individual officers named in suit who were present for shooting of victim, but ruling that "Defendants are not entitled to a complete stay that would, in effect, penalize Plaintiffs for diligently pursuing their claims.")

---

[2] However, by declining to challenge this portion of the Court's order in this motion, Plaintiff does not waive any rights on appeal or otherwise.

**B.     The Court Should Reconsider In Part Its Order Based on the New Factual Revelations and Changed Circumstances In the Case.**

Although Plaintiff does not seek reconsideration of the Court's order staying discovery as to Mr. Cohen, the new facts that emerged beginning on May 2 do justify a modification of the Court's order staying the remainder of the case.  This is so for the reasons stated below.

**1.     The New Facts Revealed Directly From Mr. Trump and His Lawyer Mr. Giuliani Cast Doubt on the Strength of Mr. Cohen's Fifth Amendment Rights With Regards to this Case.**

"While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution." Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989).  In deciding whether to impose a stay, the first step in the analysis requires the Court to assess "the extent to which the defendant's fifth amendment rights are implicated." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995).  Based on arguments advanced by *all* of the Defendants that Mr. Cohen was being investigated criminally for his role in the $130,000 payment made to Plaintiff, this Court found "that there is a large potential factual overlap between the civil and criminal proceedings that would heavily implicate Mr. Cohen's Fifth Amendment rights."  [Dkt No. 53 at 4.]

However, Defendant Trump's own statements were not before the Court when the Court reached this conclusion.  On April 26, in response to questions on *Fox News*, Mr. Trump spoke confidently the criminal investigation in New York ***had nothing to do with the facts of this case***.  Asked to react to Mr. Cohen taking the Fifth Amendment, Mr. Trump responded:  "But this doesn't have to do with me.  Michael is a business man. He's got a business.  He also practices law.  I would say, probably the big thing is his business.  **And they're looking at something having to do with his business.  I have nothing to do with his business.**"  [Avenatti Decl., Ex. 1 at 14:43.]  Mr. Trump continued:  "He [Mr. Cohen] represents me, like with this crazy Stormy Daniels deal, he represented me.  **And, you know, from what I see he did absolutely nothing wrong.**

**There were no campaign funds going into this that could have been a problem.**" [Avenatti Decl., Ex. 1 at 15:26.]  Asked bluntly, "[t]hen why is he pleading the Fifth," Mr. Trump responded:  "**Because he's got other things.  He's got businesses.  And from what I understand, they're looking at his businesses**."  [Avenatti Decl., Ex. 1 at 15:40.]

Subsequent revelations confirmed this was not an off-hand remark.  On May 2, Mr. Giuliani told Sean Hannity:  "Sorry, I'm going to give you a **fact** now that you don't know.  It's not campaign money.  No campaign finance violation."  [Avenatti Decl., Ex. 2 at 40:06.]  Mr. Giuliani also verified that Mr. Trump reimbursed Mr. Cohen for the $130,000 payment:  "**They funneled it through a law firm, and the President repaid it.**"  [Id. at 40:16; see also id. at 44:45 ("the President reimbursed that over the period of several months.").]  Mr. Giuliani explained that Mr. Trump repaid the funds through retainer funds for Mr. Cohen "with a little profit and a little margin for paying taxes for Michael."  [Id. at 40:50.]  Mr. Giuliani also confirmed that Mr. Trump "did know about the general arrangement, that Michael would take care of things like this."  [Id. at 41:04.]  Mr. Giuliani also stated, very confidently, the $130,000 payment "is going to turn out to be perfectly legal.  That money was not campaign money" and "just trust me.  They're gonna come up with no [campaign] violations there."  [Id. at 40:00 and 45:10.]

However, Mr. Trump and Mr. Giuliani did not stop there.  The next day on May 3, backing up Mr. Giuliani's statements, Mr. Trump from his official Twitter account confirmed that he reimbursed Mr. Cohen for the funds used to pay Plaintiff, that the money had "nothing to do with the campaign," and that the agreement at issue here was "between two parties" that are "very common among celebrities and people of wealth" in order to "stop the false and extortionist accusations made by [Plaintiff] about an affair." [Avenatti Decl., Ex. 3.]  Mr. Giuliani picked up the mantle and continued revealing the same new information about this case hours later to Fox News.  [Avenatti Decl., Ex. 4.]

These new revelations—emanating directly from Defendant Trump—cast doubt on whether Mr. Cohen's Fifth Amendment rights are truly implicated by continuing with this proceeding.  Among other things, Mr. Trump—along with his authorized agent Mr.

1   Giuliani—for the first time have confirmed Mr. Trump's personal involvement in the facts

2   that gave rise to this lawsuit, including in the payment and the reasons the agreement were

3   entered into.  They both assert that no crime was committed.  And Mr. Trump states, with

4   great certainty, that Mr. Cohen is being is being investigated "for something having to do

5   with his business," not with any matters at issue in this lawsuit.

6          The question then is how is the Court to resolve these contradictory facts from

7   Defendant Cohen and Defendant Trump?   Mr. Cohen, on the one hand, claims his

8   testimony about the $130,000 payment and the Settlement Agreement will be self-

9   incriminating.  Defendant Trump on the other hand, asserts based on his own knowledge

10  of the transaction and the investigation, that Mr. Cohen did "absolutely nothing wrong"

11  and that he is being investigated for unrelated matters concerning his "businesses."  See

12  AIG Prop. Cas. Co. v. Cosby, No. CV 15-04842-BRO (RAOx), 2016 WL 6662733, at *8

13  (C.D. Cal. July 15, 2016) ("[C]ontinuing with this declaratory relief action while

14  Defendant faces criminal charges involving a completely different set of facts will likely

15  not implicate Defendant's Fifth Amendment right against self-crimination.").       It    is

16  for precisely this reason—namely that civil defendants may wish to invoke the First

17  Amendment for opportunistic reasons to avoid having to defend a case—that courts

18  conclude that in the absence of an actual indictment to clear up any speculation and self-

19  serving uses of the Fifth Amendment, the case for staying civil proceedings is "**far**

20  **weaker**."   Molinaro, 889 F.2d at 903 (emphasis added); ESG Capital Partners LP v.

21  Stratos, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014) (a defendant "can't have it both ways,

22  using the Fifth Amendment only when it is convenient for him and his interests."); cf.

23  Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 478 (1972) (it "is

24  well established that the privilege protects against real dangers, not remote and speculative

25  possibilities.") (emphasis added).

26         Accordingly, the Court should reconsider its stay order by issuing a new order

27  imposing a partial stay.  Specifically, the Court should preserve the stay of discovery on

28  Mr. Cohen for the remaining 90 days of the Court's prior stay order, but permit all other

proceedings to continue.  This way, Mr. Cohen's claimed Fifth Amendment rights remain unencumbered.  The genuine doubts placed on the legitimacy of these rights, however, justify the Court lifting the stay in all other respects.

> ### 2. The New Developments Demonstrate that Less Drastic Measures Are Available in Lieu of a Blanket Stay.

"A stay of an action is not necessary where a defendant's fifth amendment rights can be protected through less drastic means, such as asserting the privilege on a question-by-question basis and implementing protective orders."  Doe v. City of San Diego, No. 12-CV-689-MMA-DHB, 2012 WL 6115663, at *2 (S.D. Cal. Dec. 10, 2012) (citing O. Thronas, Inc. v. Blake, No. CIV.09-00353DAE-LEK, 2010 WL 931924, at *3 (D. Haw. Mar. 10, 2010)).  In its stay order, the Court "carefully considered Plaintiff's request" to impose less drastic measures than a blanket, but ultimately denied Plaintiff's arguments. It did so because of concerns about protecting Mr. Cohen from a deposition and the futility of proceeding with a deposition in which Mr. Cohen would be asserting his Fifth Amendment privilege in response to nearly every question.

Here, no such concerns are implicated under a partial stay as proposed by Plaintiff. In the interim 90 day period, Mr. Cohen would not be required to sit for a deposition, answer any questions, or individually produce any documents that would be incriminating to him.  Therefore, Plaintiff's motion should be granted.

The Court also found that Mr. Cohen was "the alleged mastermind behind the Agreement with the most direct knowledge of the facts and circumstances surrounding its formation[.]"  [Dkt No. 53 at 7.]  *However, we now know that Mr. Trump is also capable of testifying authoritatively and with personal knowledge about the Settlement Agreement and payment.*  [Avenatti Decl., Exs. 1, 3 and 5.]  This is also true of Mr. Giuliani.  [Id., Exs. 2 and 4 (cite Hannity and Fox & Friends).]  In addition, according to Mr. Giuliani, all of the information concerning the payments is "documented" and presumably in the possession of him and Mr. Trump.  [Avenatti Decl., Ex. 2  at 44:14-45:20.]

Further, Plaintiff is agreeable to permit Defendants to rely on Mr. Cohen's April 2

-12-

and 9 declarations during the existing stay.  Indeed, with regards to compelling arbitration and Mr. Cohen's motion to strike—the only two motions pending before the Court—these two declarations are the only testimony Defendants intended to rely upon in order to support these motions.  For this reason, the Court may simply allow the parties to move forward with the existing motions, which were close to being completely briefed at the time Defendants moved for the stay.  The issue of whether a complete stay must be reinstated later in the case based on alleged prejudice suffered by not being able to present live testimony of Mr. Cohen at the jury trial Plaintiff has requested pursuant to section 4 of the Federal Arbitration Act may be revisited if and when Plaintiff's request is granted. At this juncture, however, this hypothetical concern need not be resolved.

Defendants may utilize all of this evidence—Mr. Cohen's declarations, Mr. Trump's testimony, Mr. Giuliani's testimony, the documents in Mr. Trump's possession and available in discovery from sources other than Mr. Cohen directly, along with the testimony of all of the other witnesses previously identified (e.g., Keith Davidson, First Republic Bank, Mr. Cohen's wife and personal assistant, persons identified in the Settlement Agreement, etc.)—to mount a defense to this case.

In sum, a partial stay as proposed by Plaintiff is a "less drastic measure" than a blanket stay.  Plaintiff's motion should be granted.

### 3.    The New Developments Demonstrate That Lifting the Blanket Stay Would Not Substantially Prejudice Defendants.

Under the second <u>Keating</u> factor, the Court analyzes "the burden which any particular aspect of the proceedings may impose on defendants."  <u>Keating</u>, 45 F.3d at 325. In its stay order, the Court agreed with Defendants that this factor "weighs in favor of a stay."  [Dkt No. 53 at 8.]

The concerns articulated by the Court weighing in favor of Defendants, however, no longer apply.  The Court found that "compelling Mr. Cohen to sit for a deposition that bears heavily" on his Fifth Amendment rights "would cause undue prejudice."  [Dkt No. 53 at 7-8.]  The Court also explained that "Mr. Cohen would have to choose between his

Fifth Amendment privilege and his ability to defend himself on almost **every major aspect** of the requested discovery." [Dkt No. 53 at 8.]  Here, in contrast, Plaintiff does not seek to lift the stay on discovery from Mr. Cohen during the interim 90 day period.  This alone establishes that the burden on Mr. Cohen is minimal, or non-existent.

Moreover, as shown above, Defendant Trump's hands would not be tied in defending this action without Mr. Cohen's testimony.  Mr. Trump's newfound voice on facts concerning this lawsuit demonstrates he will be able to testify in his defense.  He will also have Mr. Giuliani available to testify for him in this case.  Further, Mr. Trump may also make use of Mr. Cohen's declarations.  And as noted above, if there is a compelling need for Defendants to introduce live testimony from Mr. Cohen at the FAA jury trial—a trial that would not have likely been scheduled within the interim 90 day period in any event—that issue may simply be revisited when and if the jury trial is scheduled by the Court.

Therefore, the second <u>Keating</u> factor—namely, the burden on Defendants—weighs decidedly in favor of denying the stay and replacing it with a partial stay as requested by Plaintiff.

### 4. Reconsideration in Part Would Promote the Efficient Use of Judicial Resources.

The third <u>Keating</u> factor permits the court to determine whether a stay will impact "the convenience of the court in the management of its cases, and the efficient use of judicial resources."  <u>Keating</u>, 45 F.3d at 325.  The Court found that this factor weighed in favor of Defendants based, in substantial part, on the following reasoning:

> [I]t is unlikely that compelling testimony from Mr. Cohen on the issues cited by Plaintiff would lead to an efficient outcome.  The majority of questions brought forth under Plaintiff's first cause of action relate to topics on which Mr. Cohen has indicated he is entitled to invoke his Fifth Amendment privilege, and are likely to cause a number of disputes related to discovery, procedure, and timing.

[Dkt No. 53 at 8.]

-14-

This rationale no longer applies due to the changed circumstances described in this Motion.  Plaintiff will not be seeking a deposition of Mr. Cohen during the remainder of the 90-day period.  Therefore, there is no risk of any disputes relating to discovery, procedure, and timing arising out of Mr. Cohen's assertion of the Fifth Amendment privilege.  Moreover, Plaintiff's decision to permit Mr. Cohen and the other defendants to utilize the declarations he has already filed in the case from April 2 and 9 to support Defendants' motion to compel arbitration and Mr. Cohen's motion to strike (the only supporting declarations Defendants planned to submit in any event) also promotes efficient use of judicial resources and the court's interest in "clearing its docket" by pushing the case forward toward resolution.  Molinaro, 889 F.2d at 903.  Therefore, this third Keating factor now weighs in favor of reconsideration.

### 5.   Mr. Trump's Incendiary Tweet Inciting His Followers and Renewed Threat to Seek Damages From Plaintiff Causes Continued Prejudice to Plaintiff From Maintaining the Stay.

The first Keating factor requires the Court to consider "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay."  Keating, 45 F.3d at 325.  The Court found "it is undeniable that Plaintiff has a valid interest in the prompt resolution of her claims," but decided that Plaintiff's interests did not outweigh the necessity of a stay.  [Dkt No. 53 at 7.]  The Court's conclusion was largely premised on its belief that "Mr. Cohen's Fifth Amendment rights are heavily implicated and the potential impact on the criminal investigation [are] substantial," and on its view that Plaintiff "has not established that she has actually been deterred from speaking, or that a delay would cause undue prejudice." [Dkt No. 53 at 7.]

Here, the new developments outlined above further demonstrate the prejudice to Plaintiff of a continued delay in resolving this litigation.  First, as shown above, there are valid reasons to question whether Mr. Cohen's Fifth Amendment rights are truly implicated in this case in light of the new revelations from Mr. Trump and Mr. Giuliani.

Second, in addition to Defendants' threat to sue Plaintiff for $20 million for speaking [Dkt No. 1 at 5:12-16] and Mr. Cohen's threat to use the money to "take an extended vacation on her dime" [Dkt No. 39-1 at 14], on May 3, Mr. Trump escalated his aggressive and threatening attack on Plaintiff and attempts to intimidate her by writing on Twitter to his **51 million** followers that he will use the Settlement Agreement "**in Arbitration for damages against Ms. Clifford (Daniels)**." [Avenatti Decl., Ex. 3 (emphasis added).]  He also disparaged Plaintiff personally by writing "[t]he agreement was used to stop the **false and <u>extortionist</u>** accusations made by her about an affair." [<u>Id.</u> (emphasis added).]  The only way to fully escape the cloud of millions of dollars of alleged damages and liability, would be to allow the lawsuit to proceed and to have the Settlement Agreement declared null and void.

These new factual developments reinforce Plaintiff's strong interest in proceeding expeditiously with this litigation and the prejudice to her from a delay.  The first <u>Keating</u> factor, therefore, weighs in favor of Plaintiff.

### C.    Stays Are Extraordinary Remedies and Extremely Rare.

As noted above, a stay based on the existence of a criminal action is an "extraordinary" remedy.  <u>See</u>, <u>e.g.</u>, <u>Microfinancial</u>, 385 F.3d at 79; <u>EMA</u>, 767 F.3d at 627; <u>Louis Vuitton</u>, 676 F.3d at 98; <u>ESG Capital Partners</u>, 22 F. Supp. 3d at 1045 (a "stay is an extraordinary remedy that should be granted only when justice so requires.") (citation and quotation omitted).

In fact, it is so rare for a district court to grant a stay of a civil case based on the existence of a criminal proceeding, even aside from the Ninth Circuit, nearly all of the decisions of the circuit courts of appeal outside the Ninth Circuit are opinions affirming a district court's order *denying* a stay.  <u>See</u> EMA, 767 F.3d at 628 (6th Cir. 2014) (finding no abuse of discretion of district court's denial of stay where "there has yet to be a criminal case or even an indictment filed" and it was thus "unclear which crimes Michael would be charged with"); <u>Guggenheim Capital, LLC v. Birnbaum</u>, 722 F.3d 444, 454 (2d Cir. 2013) (district court was well within its discretion to deny stay); <u>Louis Vuitton</u>, 676

F.3d at 98 (2d Cir. 2012) (affirming denial of stay); <u>Creative Consumer Concepts, Inc. v. Kreisler</u>, 563 F.3d 1070, 1081 (10th Cir. 2009) (holding that former employee's Fifth Amendment rights were not compromised by the district court's refusal to stay proceedings pending outcome of criminal trial, and explaining there was no prejudice to the employee because she gave deposition testimony months earlier about the topic at issue in the civil trial and thus "waived her Fifth Amendment privilege with respect to the questions she answered during her deposition."); Microfinancial, 385 F.3d at 78 (1st Cir. 2004) (affirming denial of stay and noting that "an unindicted defendant who argues that going forward with a civil proceeding will jeopardize his Fifth Amendment rights usually presents a much less robust case for such extraordinary relief"); <u>United States v. Int'l Bhd. of Teamsters</u>, 247 F.3d 370, 387-88 (2d Cir. 2001) (affirming denial of stay of Independent Review Board proceedings during pendency of criminal proceedings as it did not deny union official of a full and fair hearing); <u>Serafino v. Hasbro, Inc.</u>, 82 F.3d 515, 519 (1st Cir. 1996) (district court did not abuse discretion in denying the plaintiff's request for a stay and instead dismissing his case where he did not move for a stay and the delay from waiting until criminal limitations period to expire would impose hardship on the defendants); <u>Nosik v. Singe</u>, 40 F.3d 592, 596 (2d Cir. 1994) ("[D]istrict court did not abuse its discretion in denying Nosik's motion for a preliminary injunction" and reasoning that "[a]lthough civil and criminal proceedings covering the same ground may sometimes justify deferring civil proceedings until the criminal proceedings are completed, a court may instead enter an appropriate protective order."); <u>United States v. Lot 5, Fox Grove, Alachua Cty., Fla.</u>, 23 F.3d 359, 364 (11th Cir. 1994) (affirming denial of stay of civil forfeiture proceeding against claimant's residence pending resolution of expected criminal prosecution, explaining that "a blanket assertion of the privilege is an inadequate basis for the issuance of a stay" and rejecting the defendant's argument that without her own testimony she could not establish defense to forfeiture "because Claimant provided no explanation as to why she did not use the testimony of other parties to substantiate her defense."); <u>Koester v. American Republic Investments, Inc.</u>, 11 F.3d 818, 823 (8th Cir.

1993) (no abuse of discretion in denying defendant's motion for stay based on pending criminal indictment); United States v. Certain Real Prop., Commonly Known as 6250 Ledge Rd., Egg Harbor, Wis., 943 F.2d 721, 729 (7th Cir. 1991) (even if the defendant's decision to proceed to trial on stipulated facts was not a waiver of Fifth Amendment rights, affirming denial of stay because the defendant failed to make a sufficient showing to justify a stay because "[a] blanket assertion of the privilege . . . does not provide a sufficient basis for a district court to grant a stay."); Anglada v. Sprague, 822 F.2d 1035, 1036–37 (11th Cir. 1987) (where the defendants asserted a "blanket" refusal to testify based on the Fifth Amendment, holding that the district court's denial of stay pending outcome of state criminal proceeding charging them with mortgage fraud and grand theft was not error); Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986) (rejecting argument that because statute of limitations on criminal charge had not expired, stay of civil suit should have been extended even after prosecutor announced it would decline to prosecute); Mid-Am.'s Process Serv. v. Ellison, 767 F.2d 684, 687 (10th Cir. 1985) (denying writ of mandamus to vacate district court order denying stay, but entering a protective order, and explaining that "[a]lthough postponement might be appropriate in a particular instance, we believe that the law does not require postponement of civil discovery until fear of criminal prosecution is gone"); United States v. Little Al, 712 F.2d 133, 135-36 (5th Cir. 1983) (district court properly denied request for Rule 56(f) continuance based on Fifth Amendment privilege because "[t]he very fact of a parallel criminal proceeding . . . d[oes] not alone undercut [a claimant's] privilege against self-incrimination, even though the pendency of the criminal action forced [her] to choose between preserving [her] privilege against self-incrimination and losing the civil suit."); Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc., 659 F.2d 660, 668 (5th Cir. 1981) (affirming denial of stay and noting that "[a] blanket refusal to answer questions at deposition on the ground that they are privileged is an improper invocation of the fifth amendment, irrespective of whether such a claim is made by a plaintiff, defendant, or a witness."); Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1376 (D.C. Cir.

1980) (affirming district court order providing that parallel investigation into alleged "questionable foreign payments" conducted by grand jury under guidance of Justice Department did not preclude SEC from enforcing subpoena regarding use by corporation of funds to make such payments); <u>United States v. White</u>, 589 F.2d 1283, 1286-87 (5th Cir. 1979) (affirming denial of stay because there was no indication the defendant having to invoke the Fifth Amendment would have necessarily resulted in an adverse judgment); <u>Ironbridge Corp. v. C.I.R.</u>, 528 F. App'x 43, 46–47 (2d Cir. 2013) (rejecting argument that the corporate defendant's "inability to call its principal James Haber as a trial witness, given his intent to invoke his Fifth Amendment right against self-incrimination in light of pending criminal investigations" justified stay and thus district court did not abuse its discretion); <u>S.E.C. v. Wright</u>, 261 F. App'x 259, 263 (11th Cir. 2008) (no abuse of discretion in denying stay requested based on the assertion the simultaneous civil and criminal cases against the defendant would unfairly jeopardize his Fifth Amendment rights; "a blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay."); <u>Cady v. S. Suburban Coll.</u>, 152 F. App'x 531, 533 (7th Cir. 2005) (district court did not err in declining the plaintiff's request for a stay of civil rights action pending outcome of criminal appeals).

Accordingly, courts plainly disfavor granting stays of civil litigation based on the existence of a criminal investigation or action that may implicate a civil defendant's Fifth Amendment rights.   Indeed, among this sea of cases cited above reflecting an unmistakable preference for allowing civil actions to move forward even in the face of parallel criminal proceedings and legitimate assertions of the Fifth Amendment privilege, Plaintiff has located only two cases[3]—one from 1987 in the Federal Circuit and one from 1979 in the Fifth Circuit—where courts have concluded the lower court or administrative body should have ordered a stay.  See <u>Afro-Lecon, Inc. v. United States</u>, 820 F.2d 1198,

---

[3]  Plaintiff's counsel conducted exhaustive research and was unable to find additional circuit-level authority resulting in a stay.  It is possible that other cases do exist, but Plaintiff's counsel represents it could not locate any other such cases.

1199 (Fed. Cir. 1987) (vacating General Services Administration Board of Contract Appeals decision denying stay of civil action until after completion of related criminal proceedings and remanding); Wehling v. CBS, 608 F.2d 1084 (5th Cir. 1979) (the district court erred by failing to stay a civil libel action pending the outcome of a related criminal investigation and potential prosecution, or the running of the applicable statute of limitations, after the plaintiff had validly claimed his Fifth Amendment privilege in response to the defendant's discovery requests and had sought a protective order staying the civil suit).  But in another case from the Fifth Circuit, the Court held that the district court's determination that an administrative hearing concerning a police officer pending resolution of criminal charges should have been postponed was error.  See Hoover v. Knight, 678 F.2d 578, 581–82 (5th Cir. 1982).  This overwhelming weight of authority rejecting civil stays also weighs in favor of reconsideration.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests the Court to reconsider, in part, its April 27, 2018 order imposing a 90-day stay of this action.

Dated:  May 23, 2018                         AVENATTI & ASSOCIATES, APC

By:        /s/ Michael J. Avenatti
Michael J. Avenatti
Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson