BLAKELY LAW GROUP
BRENT H. BLAKELY (CA Bar No. 157292)
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone:   (310) 546-7400
Facsimile:   (310) 546-7401
Email:       BBlakely@BlakelyLawGroup.com
Attorneys for Defendants
ESSENTIAL CONSULTANTS, LLC
and MICHAEL COHEN

HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone:   (310) 546-7400
Facsimile:   (310) 546-7401
Email:       CHarder@HarderLLP.com
             RStonerock@HarderLLP.com
Attorneys for Defendant
DONALD J. TRUMP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>                    Plaintiff,<br>        v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN, an individual, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 2:18-CV-02217-SJO-FFM<br><br>**JOINT OPPOSITION TO MOTION OF PLAINTIFF STEPHANIE CLIFFORD FOR RECONSIDERATION OF ORDER STAYING THIS ACTION**<br><br>[Declarations of Brent H. Blakely and Charles J. Harder Filed Concurrently Herewith]<br><br>Assigned for All Purposes to the Hon. S. James Otero<br><br>Action Filed:  March 6, 2018 |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   RELEVANT PROCEDURAL HISTORY ...................................................... 4

III.  ARGUMENT ......................................................................................... 7

     a.    Motions For Reconsideration Are Disfavored And Rarely Granted ...... 7

     b.    The "New" Facts Relied Upon By Plaintiff Are Immaterial ................. 9

          1.    Mr. Trump's Opinion Regarding The Scope Of The Investigation Is Not "New" And Is Immaterial To The Stay Order ..................................................................................... 9

          2.    Statements Regarding Mr. Trump's Reimbursement Of The Payment To Plaintiff Are Immaterial To The Stay Order .......... 12

     c.    The *Keating/Molinaro* Facts Still Weigh in Favor of the Stay Despite Plaintiff's Purported "New" Facts ........................................... 13

          1.    Defendants Will Be Substantially Prejudiced If The Stay Order Does Not Remain In Place .................................................. 13

          2.    Plaintiff Has Not Been and Will Not Be Prejudiced by the Stay ................................................................................. 15

          3.    Judicial Economy Favors A Complete Stay ................................ 16

          4.    The Analysis of the Remaining *Keating* Factors is Unchanged ................................................................................. 17

IV.   CONCLUSION ...................................................................................... 18

JOINT OPPOSITION TO MOTION FOR RECONSIDERATION

1

## **TABLE OF AUTHORITIES**

2

3

**CASES**

4

*Brown v. United States*,
    Nos. CV 09–8186 ABC, CR 03–847 ABC, 2011 WL 333380 (C.D. Cal. Jan.
    31, 2011) ...................................................................................................... 8

5

6

*Collins v. U.S. Citizenship & Naturalization Serv.*,
    No. CV 11-9909-JFW SSX, 2013 WL 776244 (C.D. Cal. Feb. 6, 2013) ......... 8

7

8

*Delphi Connection Sys., LLC v. Koehlke Components, Inc.*,
    2012 WL 12895670 (C.D. Cal. Oct. 17, 2012) ............................................. 14

9

10

*Gray v. Golden Gate Nat. Recreational Area*,
    866 F.Supp.2d 1129 (N.D. Cal. 2011) ........................................................... 8

11

12

*Keating v. Office of Thrift Supervision*,
    45 F.3d 322 (9th Cir. 1995) ................................................................... 15, 18

13

14

*Medina v. Argent Mortg. Co.*,
    2006 WL 1305230 (N.D. Cal. May 11, 2006) ........................................ 14, 17

15

16

*Sec. & Exch. Comm'n v. Heart Tronics, Inc.*,
    SACV111962JVSANX, 2013 WL 12209968 (C.D. Cal. Apr. 15, 2013) ...... 17

17

18

*Self v. Equinox Holdings, Inc.*,
    No. CV1404241MMMAJWX, 2015 WL 13298571 (C.D. Cal. May 1, 2015) 8

19

20

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Financial, Inc.*,
    2009 WL 2136986 (E.D. Cal. July 15, 2009) ............................................... 14

21

22

*United States v. Navarro*,
    972 F.Supp. 1296 (E.D.Cal.1997) .................................................................. 8

23

24

*United States v. Westlands Water Dist.*,
    134 F. Supp. 2d 1111 (E.D. Cal. 2001) ........................................................... 8

25

26

27

28

# I.     **INTRODUCTION**

The instant motion by plaintiff Stephanie Clifford ("Plaintiff" or "Ms. Clifford") improperly seeks to re-litigate the same issues the Court decided against her in its order staying this action (the "Stay Order"). The "new" facts relied upon by Plaintiff do nothing to change the Court's conclusion in the Stay Order regarding defendant Michael Cohen's ("Mr. Cohen") critical importance to this case. The Court held: "…as the alleged mastermind behind the Agreement and **the person with the most direct knowledge of the facts and circumstances surrounding its formation**, [Mr. Cohen's] testimony would be **indispensable to the disposition of this action**." [Stay Order, p. 7, ECF No. 53.] (Emphasis added.)

Plaintiff's "new" facts consist entirely of out-of-court statements by defendant Donald J. Trump ("Mr. Trump") and his attorney, Rudolph Giuliani, pertaining to events that occurred well **after** execution of the Confidential Settlement Agreement and Mutual Release (the "Agreement"). These statements have no bearing on the facts and circumstances surrounding the formation of the Agreement. Thus, Plaintiff's "new" facts are irrelevant to the Court's findings in the Stay Order and do not warrant its reconsideration.

Plaintiff relies upon these irrelevant "new" facts in an attempt to distract from the true goal of her motion: to force Mr. Trump, Mr. Cohen and Essential Consultants, Inc. ("EC") (collectively, "Defendants") to litigate this case without any further testimony from Mr. Cohen, their most knowledgeable witness.

In doing so, Plaintiff has completely reversed her position throughout this case, and in opposition to the Stay Order, that further testimony from Mr. Cohen is necessary to oppose the pending Motion to Compel Arbitration filed by EC, and joined by Mr. Trump (the "Motion to Compel Arbitration").[1]

_____

[1] Motion to Expedite, pp. 15:7-22:19, ECF No. 16-1; Renewed Motion to Expedite, pp. 2:9-12, 11:12-18:3, ECF No. 29-1; Opposition to Motion to Compel Arbitration,

(footnote continued)

1   Now, Plaintiff argues that the Motion to Compel Arbitration and Mr. Cohen's

2   pending anti-SLAPP Motion (the "Anti-SLAPP Motion") should be decided without

3   further testimony from Mr. Cohen.  [Motion, pp. 12:28-13:16.]  This belated reversal

4   of position could have been raised in opposition to Defendants' application for the

5   Stay Order, but was not.  Thus, it cannot now serve as a basis for reconsideration.

6   Plaintiff's newfound willingness to proceed without further testimony from Mr.

7   Cohen does not warrant reconsideration of the Stay Order for several reasons.

8   **First**, reconsideration of the Stay Order would cause severe prejudice to

9   Defendants.  Mr. Cohen is the person most knowledgeable with respect to the

10  formation of the Agreement.  [Stay Order, p. 7, ECF No. 53; Blakely Decl., ¶ 5, ECF

11  No. 31].  If this case proceeds without Mr. Cohen's testimony, Defendants would be

12  unable to adequately defend themselves at any trial, including under Section 4 of the

13  Federal Arbitration Action ("Section 4"), and unable to introduce any further

14  testimony from Mr. Cohen in support of the Motion to Compel Arbitration.  The

15  evidence submitted by Plaintiff in opposition to the Motion to Compel Arbitration,

16  including the Declarations of Stephanie Clifford [ECF No. 30-1], Michael Avenatti

17  [ECF No. 30-2] and Lawrence Solan [ECF No. 30-3], raises a number of issues that

18  require additional testimony from Mr. Cohen regarding the formation of the

19  Agreement.[2]

20  Defendants also would be prejudiced because they would be unable to properly

21  oppose Plaintiff's pending Motion for Expedited Jury Trial under Section 4 ("Motion

22

23  _____

24  p. 2:10-13, ECF No. 30; Opposition to Stay Application, pp. 10:2-11:4, ECF No. 39.

25  [2] EC and Mr. Trump have not yet filed a reply brief in support of the Motion to
    Compel Arbitration.  Evidence submitted in reply may be considered by the Court

26  under circumstances where, as here, it is necessary to directly respond to evidence
    raised in the opposition.  *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 560 (C.D.

27  Cal. 2014) citing *Edwards v. Toys 'R' US*, 527 F.Supp.2d 1197, 1205 n. 31 (C.D. Cal.
    2007); *Terrell v. Contra Costa County*, 232 Fed.Appx. 626, 629 n. 2 (9th Cir.2007).

28

to Expedite")[3], and Mr. Cohen also would be unable to introduce any further evidence in support of the Anti-SLAPP Motion (which has not yet been opposed).

*Second*, Plaintiff would not be prejudiced by the continued maintenance of the Stay Order. Plaintiff and her attorney have repeatedly discussed her "story" in the media. In addition to Plaintiff's interviews on *60 Minutes* and *The View*, which the Court has already addressed, Plaintiff appeared on *Saturday Night Live* eight days **after** issuance of the Stay Order. During this appearance, Plaintiff joked that she would resolve this matter in exchange for Mr. Trump's "resignation," and mockingly warned Mr. Trump that "A Storms a comin' baby." [Blakely Decl., ¶ 2.]

Plaintiff's attorney, Michael Avenatti, appeared on national television a minimum of thirty-nine times after issuance of the Stay Order.[4] [Blakely Decl., ¶ 3, Ex. A, Chart of Appearances.] Mr. Avenatti has engaged in such an extensive publicity campaign against Mr. Cohen (and Mr. Trump) that Judge Kimba Wood, who is presiding over Mr. Cohen's action in the Southern District of New York relating to materials seized during the FBI raids (the "Cohen SDNY Action"), told Mr. Avenatti, in court on May 30, 2018, that if he is admitted *Pro Hac Vice* in that matter, he would have to "change [his] conduct" and "stop in its tracks [his] publicity tour" because "this conduct is inimitable to giving Mr. Cohen eventually a fair trial" and "could potentially deprive him of a fair trial by tainting a jury pool." [*Id*., ¶ 4, Ex. B, 5/30/18 Transcript, pp. 27:12-28:13.] Apparently unwilling to stop his media tour, Mr. Avenatti withdrew his *Pro Hac Vice* application approximately one hour later.

---

[3] Plaintiff ignores that the Motion to Expedite is currently pending: "Indeed, with regards to compelling arbitration and Mr. Cohen's motion to strike – the only two motions pending before the Court…" [Motion, p. 13:2-3.] The Motion to Expedite is critical to the analysis of the instant motion because, among things, it seeks a jury trial on the Motion to Compel Arbitration. *See e.g.* Section III.c.3., *infra*.

[4] As of May 16, 2018, the *Media Research Center* placed Mr. Avenatti's total television appearances at one hundred-forty seven. [Blakely Decl., ¶ 6, Ex. D.]

1  [*Id.*, ¶ 5, Ex. C, Withdrawal.]  By way of the instant motion, Mr. Avenatti seeks to
2  continue his media tour in this courtroom.

3  　　　　Plaintiff and her counsel also engaged in an end-run around the Stay Order
4  when they filed a defamation action against Mr. Trump in the Southern District of
5  New York (the "Clifford SDNY Action") one court day after issuance of the Stay
6  Order.  Plaintiff's defamation claim against Mr. Trump falls squarely within the
7  arbitration provision at issue in this case, and also substantially overlaps with the facts
8  and issues in Plaintiff's defamation claim against Mr. Cohen in this case.  [Blakely
9  Decl., ¶ 7, Ex. E, SDNY Complaint; First Amended Complaint ("FAC"), ECF No.
10  14.]  This blatant attempt at judge-shopping and forum shopping, and effort to evade
11  the Stay Order, is confirmed in public statements made by Mr. Avenatti **before the**
12  **Stay Order** was issued, wherein he stated during an interview on *CNN* that he
13  planned to file Plaintiff's defamation claim against Mr. Trump **in this action**.
14  [Blakely Decl., ¶ 8, Ex. F, CNN Transcript.][5]

15  　　　　***Third***, the interests of judicial economy warrant the continued application of
16  the Stay Order.  If the Court, as Plaintiff requests, lifts the Stay Order to decide the
17  pending Motion to Compel Arbitration, Motion to Expedite and Anti-SLAPP Motion,
18  the Court (and potentially the arbitrator) would almost certainly be faced with another
19  application for a stay immediately thereafter.  This would be a waste of judicial
20  resources.  The more efficient approach would be to maintain the Stay Order until, at
21  the very least, the Court has clarity on the scope of the investigation into Mr. Cohen.

22  ## II.　　RELEVANT PROCEDURAL HISTORY

23  　　　　Plaintiff filed her FAC in this action on March 26, 2018.  [ECF No. 14.]  On
24  March 28, 2018, Plaintiff filed her Motion to Expedite. [ECF No. 16.]  In the Motion

---

26  [5] Mr. Avenatti also arguably violated the Stay Order by sending a letter to Mr. Cohen,
27  which he immediately released to the news media via his Twitter account, claiming
    that Mr. Cohen possesses privileged materials and demanding their return.  [Blakely
28  Decl., ¶ 12, Ex. J.]

to Expedite, Plaintiff stated, in part: "Plaintiff must be permitted to…cross-examine…Mr. Cohen at a deposition regarding these topics that are at the heart of whether an agreement was ever formed." [Motion to Expedite, pp. 16:24-17:2, ECF No. 16-1.] Plaintiff further stated, in pertinent part: "In short, deposition testimony of…Mr. Cohen…is necessary to determine whether the Agreement and the arbitration clause had a lawful object and purpose." [*Id.*, p. 20:25-27.]

This court denied the Motion to Expedite, without prejudice, on March 29, 2018. [ECF No. 17.] EC filed the Motion to Compel Arbitration, which was joined by Mr. Trump, on April 2, 2018. [ECF Nos. 20, 21.]

On April 8, 2018, Plaintiff filed a Renewed Motion to Expedite. [ECF No. 29.] In the Renewed Motion to Expedite, Plaintiff stated, in pertinent part: "Plaintiff must be permitted to…cross-examine…Mr. Cohen at a deposition regarding these topics that are at the heart of whether an agreement was ever formed" [Renewed Motion to Expedite, p. 13:4-7, ECF No. 29-1.] Plaintiff further stated, in pertinent part: "In short, deposition testimony of…Mr. Cohen…is necessary to determine whether the Agreement and the arbitration clause had a lawful object and purpose." [*Id.*, p. 16:13-15.]

On April 9, 2018, Plaintiff filed her opposition to the Motion to Compel Arbitration. [ECF No. 30.] In the opposition, Plaintiff stated, in pertinent part: "[T]o meaningfully oppose this motion, Plaintiff requires limited discovery, as set forth in Plaintiff's concurrently filed Renewed Motion for Expedited Discovery. Accordingly, before the Court issues a ruling on the motion, the Court must first allow Plaintiff to conduct discovery and must conduct the trial." [*Id.*, p. 2:10-13.]

Also on April 9, 2018, Mr. Cohen filed the Anti-SLAPP Motion. [ECF No. 31.]

On April 13, 2018, Defendants filed their Joint *Ex Parte* Application for a stay of this matter (the "Stay Application"). [ECF No. 38.] Plaintiff filed her opposition to the Stay Application on April 16, 2018. [ECF No. 39.] In the opposition, Plaintiff

argued that "less drastic measures, such as ordering Mr. Cohen to testify and requiring Mr. Cohen to invoke the Fifth Amendment on a question-by-question basis, are available to the Court than imposing a blanket stay." [*Id*., p. 5:14-16; *See Also* Stay Order, p. 6, ECF No. 53.]

On April 18, 2018, Mr. Avenatti stated on *CNN* that Plaintiff intended to bring a claim for defamation against Mr. Trump in **this action**:

> AVENATTI: We're likely going to be amending our complaint. We're looking at doing that now to **add a defamation claim directly against the president**… And we're likely to file it **in the same case that we're already in**, and we're going to add a claim.
>
> BLITZER: And file it in California?
>
> AVENATTI: Correct.

[Blakely Decl., Ex. F.] (Emphasis added.)

The Court conducted the hearing on the Stay Application on April 20, 2018 and issued the Stay Order on Friday, April 27, 2018, at 2:04 pm.  [ECF No. 53.]  In the Stay Order, the Court rejected Plaintiff's argument for less drastic measures than a blanket stay, such as requiring Mr. Cohen to assert his Fifth Amendment rights on a question-by-question basis, stating, in part:

> While the Court takes note of Plaintiff's argument that Mr. Cohen is not the only witness whose testimony would be required, as the alleged mastermind behind the Agreement and the person with the most direct knowledge of the facts and circumstances surrounding its formation, his testimony would be indispensable to the disposition of this action.

[*Id*., p. 7.]  Two minutes after the Court issued the Stay Order, at 2:06 p.m. on Friday, April 27, 2018, Mr. Avenatti announced on Twitter that Plaintiff intended to file an appeal of the Stay Order, stating:  "While we certainly respect Judge Otero's 90 day

stay order based on Mr. Cohen's pleading of the 5th, we do not agree with it.  We will likely be filing an immediate appeal to the Ninth Circuit early next week."  [Blakely Decl., ¶ 9, Ex. G.]

Instead of filing an appeal, on the next court day, Monday, April 30, 2018, Plaintiff and her counsel reversed course and filed the Clifford SDNY Action. [Blakely Decl., ¶ Ex. E.)  Plaintiff's sole claim for defamation against Mr. Trump in the Clifford SDNY Action falls squarely within the arbitration provision that is the subject of the Motion to Compel Arbitration.  [*Id.*; ECF No. 20.]  The facts underlying Plaintiff's defamation claim against Mr. Trump also heavily overlap with her defamation claim against Mr. Cohen in this action, as they both arise out of statements that allegedly accuse Plaintiff of lying about circumstances relating to "her relationship with Mr. Trump." [FAC, ECF No. 14, ¶ 67; Blakely Decl., Ex. E, ¶¶ 6, 28.]

There also is substantial overlap between Mr. Trump's and Mr. Cohen's respective defenses to Plaintiff's defamation claims.  Among others, their statements were substantially true, because Plaintiff is a liar (she repeatedly and strenuously denied any intimate relationship with Mr. Trump in multiple public statements [ECF No. 31, pp. 6:27-8:10], before alleging the exact opposite when she filed this action and embarked with her counsel on a media tour, resulting in the admitted quadrupling of her appearance fees at adult entertainment venues [ECF No. 20-2, Exs. F, G]); Plaintiff has suffered no damages; and the statements are protected opinion.  These defenses have been raised in the Anti-SLAPP motion [ECF No. 31], and will be raised by Mr. Trump at the appropriate time.

On May 24, 2018, Plaintiff filed the instant motion.  [ECF No. 56.]

## III.   ARGUMENT

### a.   Motions For Reconsideration Are Disfavored And Rarely Granted

"Generally, motions for reconsideration are disfavored, and are not the place for parties to make new arguments not raised in their original briefs." *Gray v. Golden*

1 | *Gate Nat. Recreational Area*, 866 F.Supp.2d 1129, 1132 (N.D. Cal. 2011); *see also*

2 | *Self v. Equinox* Holdings*, Inc.*, No. CV1404241MMMAJWX, 2015 WL 13298571, at

3 | *3 (C.D. Cal. May 1, 2015) ("Motions for reconsideration are disfavored and rarely

4 | granted."); *Self v. Equinox Holdings, Inc.*, No. CV1404241MMMAJWX, 2015 WL

5 | 13298571, at *3 (C.D. Cal. May 1, 2015); *Collins v. U.S. Citizenship &*

6 | *Naturalization Serv.*, No. CV 11-9909-JFW SSX, 2013 WL 776244, at *1 (C.D. Cal.

7 | Feb. 6, 2013); *Brown v. United States*, Nos. CV 09–8186 ABC, CR 03–847 ABC,

8 | 2011 WL 333380, *2 (C.D. Cal. Jan. 31, 2011).  Further, "'after thoughts' or 'shifting

9 | of ground' do not constitute an appropriate basis for reconsideration."  *United States*

10 | *v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1130 (E.D. Cal. 2001) citing *United*

11 | *States v. Navarro*, 972 F.Supp. 1296, 1299 (E.D.Cal.1997).  "Nor is reconsideration to

12 | be used to ask the Court to rethink what it has already thought."  *Gray v. Golden Gate*

13 | *Nat. Recreational Area*, *supra*, 866 F.Supp.2d at 1132; *See Also United States v.*

14 | *Westlands Water Dist.*, *supra*, 134 F.Supp.2d at 1130 ("[M]otions to reconsider are

15 | not vehicles permitting the unsuccessful party to 'rehash' arguments previously

16 | presented.")

17 |         Local Rule 7-18 sets forth the grounds upon with a motion for reconsideration

18 | can be based, stating:

19 |                 A motion for reconsideration of the decision on any motion

20 |                 may be made only on the grounds of (a) a material

21 |                 difference in fact or law from that presented to the Court

22 |                 before such decision that in the exercise of reasonable

23 |                 diligence could not have been known to the party moving

24 |                 for reconsideration at the time of such decision, or (b) the

25 |                 emergence of new material facts or a change of law

26 |                 occurring after the time of such decision, or (c) a manifest

27 |                 showing of a failure to consider material facts presented to

28 |                 the   Court   before   such   decision.   No   motion   for

-8-

reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

This Court's Standing Order states:  "L.R. 7-18 is strictly enforced."  [Standing Order, p. A-6, ECF No. 11.]

Here, the purported "new" facts relied upon by Plaintiff are irrelevant to the Stay Order.  Plaintiff offers these "new" facts to disguise her belated reversal of position (*i.e.*, that this case should proceed without discovery from Mr. Cohen), which could and should have been raised in her original opposition to the Stay Application, and her repetition of the same arguments that the Court previously rejected.

### b.   The "New" Facts Relied Upon By Plaintiff Are Immaterial

The purported new "facts" relied upon by Plaintiff consist entirely of out-of-court statements.[6]  These statements pertain to:  (1) Mr. Trump's opinion regarding the scope of the FBI investigation into Mr. Cohen; and (2) Mr. Trump's 2017 reimbursement of the $130,000 settlement payment made to Plaintiff in 2016.  These events that occurred well **after** Plaintiff entered into the Agreement and have no bearing whatsoever on the facts and circumstances surrounding its formation.

1.   Mr. Trump's Opinion Regarding The Scope Of The Investigation Is Not "New" And Is Immaterial To The Stay Order

As Plaintiff acknowledges, Mr. Trump's opinion regarding the scope of the investigation was presented to the Court prior to issuance of the Stay Order.  [Motion,

---

[6] In Plaintiff's opposition to the Stay Application, she objected to Defendants' introduction of her out-of-court statements, and out-of-court statements by her counsel (Mr. Avenatti), on the basis that they constitute, among other things, hearsay. [ECF No. 42.]  Moreover, during the hearing on the Stay Application, the Court rejected the introduction of out-of-court statements in the Cohen SDNY Action. [Hearing Transcript, pp. 19:13-20, 25:25-26:6, ECF No. 47.]  Nonetheless, Plaintiff now seeks to rely entirely upon out-of-court statements by Mr. Trump and his counsel, Mr. Giuliani, as the sole basis for the instant motion.

p. 3, fn. 1, ECF No. 56-1].  Moreover, the scope of the FBI investigation was addressed by the Court in the Stay Order.  The Court found that "there is a large potential factual overlap between the civil and criminal proceedings that would heavily implicate Mr. Cohen's Fifth Amendment rights."  [Stay Order, p. 4, ECF No. 53.]

Regardless, neither Mr. Trump's nor Mr. Giuliani's opinion regarding the scope of the FBI investigation is relevant to whether Mr. Cohen's Fifth Amendment rights are actually implicated in this case.  As this Court already noted in an exchange with Mr. Avenatti during the hearing on the Stay Application, the government is the only party that knows the scope of the investigation:

> MR. AVENATTI: Well, Your Honor, and it may, but it may have nothing to do with this case. That's the point. And the problem, Your Honor, is that we are -- you and I are – you and I are in the dark right now. The Court and plaintiff's counsel, we are in a room of darkness, and the problem is is that the folks that have the matches refuse to strike them, refuse to illuminate for us, for the Court and for plaintiff's counsel, what they know. And that's a strategic, purposeful decision, and they need to be held accountable for it.
>
> THE COURT: Mr. Avenatti.
>
> MR. AVENATTI: I don't know what the warrant is.
>
> THE COURT: Mr. Avenatti, the party that has the matches is the government, and the government knows what they know and no one else does. And constitutional rights are extremely important, and so the Court has to be very careful about the proceedings here.

[Hearing Transcript, pp. 35:9-24, ECF No. 47.]  The opinions articulated by Mr. Trump and Mr. Giuliani do nothing to change this.

Moreover, any suggestion by Plaintiff that the criminal investigation does not substantially overlap with this case is contradicted by her own actions in the Cohen SDNY Action.  There, Plaintiff sought to intervene on the basis that:

> Ms. Clifford has significant reason to believe that the government is in possession of materials that are protected by her attorney-client privilege and settlement communications privilege.  These materials are likely to include not only Ms. Clifford's direct attorney-client communications between her and Mr. Davidson, but also (1) attorney-client communications Mr. Davidson improperly shared with Mr. Cohen as reflected in e-mails, text messages, and possibly audio recordings, (2) protected settlement communications between Mr. Davidson and Mr. Cohen, and (3) communications between Mr. Davidson and Mr. Cohen (i.e. text messages and e-mails) relating to Ms. Clifford that are the property of Ms. Clifford pursuant to California law.

[Blakely Decl., ¶ 10, Ex. H, Motion to Intervene.][7]  Mr. Avenatti filed a *Pro Hac Vice* application in the Cohen SDNY Action to appear as counsel for "Intervenor Stephanie Clifford" and has appeared repeatedly at hearings in that matter, including at a hearing on May 30, 2018.  [Blakely Decl., Ex. B.]  Mr. Avenatti even filed a **sworn declaration** on May 29, 2018 stating, in part: "The firm of Eagan Avenatti, LLP is not the law firm for Ms. Daniels in this matter or any other matter nor have they ever

---

[7] This Motion was obtained from Mr. Avenatti's Twitter account.  [Blakely Decl., Ex. H.]  On Twitter, Mr. Avenatti indicated that it would be filed, but it is not reflected anywhere on the Court's docket in the Cohen SDNY Action.  Nonetheless, Mr. Avenatti has appeared numerous times in the Cohen SDNY Action as counsel for "Intervenor" or "Proposed Intervenor" Stephanie Clifford.

1   represented Ms. Daniels."  [Blakely Decl., ¶ 11, Ex. I.]  However, Mr. Avenatti and

2   his colleague have regularly communicated with counsel in this case from their Eagan

3   Avenatti LLP email addresses, and used Eagan Avenatti LLP signature blocks.

4   [Harder Decl., ¶¶ 2-5, Exs. 1 through 4.]

5              2.    <u>Statements Regarding Mr. Trump's Reimbursement Of The</u>

6                    <u>Payment To Plaintiff Are Immaterial To The Stay Order</u>

7          Mr. Trump's potential involvement in the $130,000 payment to Plaintiff was

8   before the Court at the time it considered the Stay Application, as it was one of

9   numerous issues upon which Plaintiff sought discovery from Mr. Cohen and Mr.

10  Trump.  [*See* Renewed Motion to Expedite, pp. 4:15-5:6, ECF No. 29-1.]  If

11  discovery regarding Mr. Trump's involvement in the payment would have changed

12  the Court's analysis of the Stay Application, the Court presumably would have carved

13  out an exception to the Stay Order to allow Plaintiff to continue seeking that

14  discovery.  Instead, the Court issued a stay of the entire action, finding that Mr.

15  Cohen's "testimony would be indispensable to the disposition of this action."  [Stay

16  Order, p. 7, ECF No. 7.]

17         Mr. Trump's subsequent confirmation that he reimbursed EC's $130,000

18  payment to Plaintiff in 2017 does not change this finding.  The critical issue that the

19  Court must decide in connection with the pending Motion to Compel Arbitration (and

20  one of the critical issues in this case) is whether a valid and enforceable agreement to

21  arbitrate was formed [Opposition to Motion to Compel Arbitration, ECF No. 30], and

22  Mr. Cohen is "the person with the most direct knowledge of the facts and

23  circumstances surrounding its formation."  [Stay Order, p. 7, ECF No. 53.]  Indeed,

24  Mr. Cohen was the only person on Defendants' side that was involved in the

25  negotiation and formation of the Agreement.  Thus, Mr. Cohen's testimony remains

26  indispensable to the determination of the Motion to Compel Arbitration.

27         Likewise, Mr. Trump's reimbursement of the $130,000 payment does not

28  resolve the many other challenges that Plaintiff has raised to the Agreement in the

FAC, including that it is supposedly "illegal" and "violates public policy." [FAC, pp. 9:25-13:21, ECF No. 14.] These defenses raise potential factual issues relating to, among other things, Mr. Cohen's negotiation of the Agreement, Mr. Cohen's establishment and use of EC to consummate the transaction, and the original source of the funds used by Mr. Cohen for the $130,000 payment to Plaintiff in 2016. Mr. Cohen's testimony is critical to each of these issues.

Thus, Mr. Trump's confirmation that he reimbursed the payment to Plaintiff is immaterial to the issues upon which the Court based its issuance of the Stay Order.

**c.      The _Keating/Molinaro_ Facts Still Weigh in Favor of the Stay Despite Plaintiff's Purported "New" Facts**

      1.      Defendants Will Be Substantially Prejudiced If The Stay Order Does Not Remain In Place

Defendants will be substantially prejudiced if required to proceed with this action at this juncture since it is beyond dispute that Mr. Cohen is their person most knowledgeable regarding this case. [Stay Order, p. 7, ECF No. 53.] Thus, if the stay is lifted, Defendants would be forced to proceed without the ability to present key testimony in their defense.

The unavailability of Mr. Cohen to testify would not only severely prejudice Defendants at any trial, including under Section 4, but would also prevent Mr. Trump and EC from submitting testimony from Mr. Cohen to address relevant issues in connection with their pending Motion to Compel Arbitration. The evidence submitted by Plaintiff in opposition to the Motion to Compel Arbitration, including the testimony and evidence contained in the Declarations of Stephanie Clifford [ECF No. 30-1], Michael Avenatti [ECF No. 30-2] and Lawrence Solan [ECF No. 30-3], requires Mr. Trump and EC to submit additional testimony from Mr. Cohen regarding his negotiation and formation of the Agreement in their reply brief. Moreover, if the Motion to Compel Arbitration proceeds to a jury trial under Section 4, Mr. Cohen's testimony on these issues would be necessary.

1    Defendants also would be prejudiced because they would be unable to properly

2    oppose the pending Motion to Expedite, and Mr. Cohen would be unable to introduce

3    any further evidence in support of the Anti-SLAPP Motion (which has not yet been

4    opposed).

5    Beyond the pending motions, Mr. Cohen's testimony is indispensable to the

6    additional challenges Plaintiff has raised to the Agreement in her first cause of action

7    for declaratory relief.  Without testimony from Mr. Cohen regarding his negotiation

8    of the Agreement, establishment and use of EC to consummate the transaction, and

9    the original source of the funds used by Mr. Cohen for the $130,000 payment to

10   Plaintiff in 2016, Defendants will be unable to adequately defend that claim.

11   For these reasons, the complete stay ordered by this Court is appropriate to

12   prevent manifest prejudice to Defendants.  As detailed in Defendants' original

13   application, courts hold that where the Fifth Amendment rights of an individual

14   prejudices another defendant's ability to meaningfully defend itself, a stay as to those

15   defendants is proper.  In *Delphi Connection Sys., LLC v. Koehlke Components, Inc.*,

16   2012 WL 12895670 (C.D. Cal. Oct. 17, 2012), the court found that a complete stay

17   was appropriate even though the entity defendant did not have Fifth Amendment

18   rights since the individual defendant was the president of the entity and a key witness,

19   and if he invoked his Fifth Amendment rights it would "certainly hinder [the entities]

20   defense." *Id.* at *2.  Similarly, the court in *Taylor, Bean & Whitaker Mortg. Corp. v.*

21   *Triduanum Financial, Inc.*, 2009 WL 2136986, (E.D. Cal. July 15, 2009) found that a

22   complete stay was appropriate because the entity defendant was "likely to be greatly

23   prejudiced in it [sic] ability to meaningfully defend itself" due to a key witnesses'

24   assertion of the Fifth Amendment.  *Id.* at *3.  In *Medina v. Argent Mortg. Co.*, 2006

25   WL 1305230 (N.D. Cal. May 11, 2006) the court ordered a complete stay of the

26

27

28

JOINT OPPOSITION TO MOTION FOR RECONSIDERATION

action where individual defendants asserted their Fifth Amendment privilege and were the persons most knowledgeable for the entity defendant. *Id.* at 2.[8]

As such, this *Keating* factor overwhelmingly weighs in favor of maintaining a complete stay of this action.

### 2.   Plaintiff Has Not Been and Will Not Be Prejudiced by the Stay

Plaintiff remains unable to articulate any cognizable undue prejudice to her as a result of the stay.  Instead, Plaintiff merely contends that this case must proceed in order for her to "escape the cloud of millions of dollars of alleged damages and liability." [Motion, p. 16:4-7.]  This argument has already been rejected by this Court.  [Stay Order, p. 7, ECF No. 53.]

In opposing the Stay Application, Plaintiff asserted prejudice based on "an interest in being free from the cloud of potential liability," and pointed to a then-recent statement by Mr. Cohen regarding Plaintiff's liability for breach of the Agreement.  [Opposition to *Ex Parte* Application for Stay, p.16:15-18, ECF 39; Hearing Transcript, pp. 31:13-32:12, ECF No. 47.]  In response to this argument, the Court noted Plaintiff's many media appearances and held that she "has not established that she has actually been deterred from speaking or that a delay in proceedings would cause undue prejudice."  [Stay Order, p. 7, ECF No. 53.]

The purported prejudice alleged by Plaintiff in this motion is the same argument, bootstrapped to a more recent statement made by Mr. Trump regarding

---

[8] The single case cited by Plaintiff in support of a partial stay, *Estate of Limon v. City of Oxnard*, 2013 WL 12131359 (C.D. Cal. Dec. 10, 2013), is inapposite. There, the Court granted a six month stay as to the individual police officers, but denied a stay as to the City of Oxnard and Oxnard Police Department defendants, because, among other things, the individual defendants were not the persons most knowledgeable for the entity defendants.  *Id.* at *5.  The Court also found that a stay as to the entity defendants would impede settlement discussions.  *Id.* at *3-4.  Here, settlement is not at issue and Mr. Cohen's testimony is "indispensable to the disposition of this action."  [Stay Order, p. 7, ECF No. 53.]

Plaintiff's liability.  [Motion, p. 16:1-11, ECF No. 56-1.]  As with Mr. Cohen's prior statements, the May 3, 2018 tweet by Mr. Trump did nothing to deter Plaintiff or her counsel from continuing to speak to the public.  Indeed, on May 5, 2018, **two days after** Mr. Trump's tweet, Plaintiff appeared on *Saturday Night Live* and joke about this lawsuit and her purported relationship with Mr. Trump.  [Blakely Decl., ¶ 2.]  As such, Plaintiff remains unable to identify any prejudice from the Stay Order.  Thus, this factor still weighs in favor of maintaining a complete stay.

### 3.   Judicial Economy Favors A Complete Stay

As correctly noted in the Court's Stay Order, judicial economy is best served by a complete stay of this action.  Given Mr. Cohen's central role in the facts surrounding the instant dispute, the Court found it "quite possible that that the outcome of [Mr. Cohen's] criminal investigation will benefit the parties and the Court by streamlining the issues and questions presented in this action."  [Stay Order, ECF No. 53, p. 8.]  As such, lifting the stay may result in a situation whereby the merits of the claims and defenses are tried without testimony or evidence from the most knowledgeable witness in this action and without the benefit of the criminal case streamlining the issues.

Moreover, even if this Court decides the pending motions despite the substantial prejudice to Defendants of being prevented from offering any further testimony from Mr. Cohen, the Court and the parties would remain in substantially the same position they are in now (barring Mr. Cohen being cleared of criminal wrongdoing), thereby resulting in a tremendous waste of judicial resources.  For example, from Defendants' perspective, the following potential scenarios may arise:

- **The Court denies the Motion to Expedite**:  If the Court denies the Motion to Expedite, it would decide the Motion to Compel Arbitration on the papers without any further discovery or testimony from Mr. Cohen.  Then, if the Court grants the Motion to Compel Arbitration, the arbitrator would have to decide whether to stay the case in light of Mr. Cohen's intention to assert his

Fifth Amendment rights.  If the Court denies the Motion to Compel

Arbitration, then the Court would have to make this decision yet again.

- **The Court grants the Motion to Expedite**:  If the Court grants the Motion to Expedite, the Court then would have to decide whether to allow a jury trial on the Motion to Compel Arbitration to proceed without Mr. Cohen's testimony.  If the Court allows the trial to proceed, Defendants would have to present their case without the benefit of their main witness, Mr. Cohen.  Moreover, either this Court or the arbitrator then would be faced with the same issue of staying this action in light of Mr. Cohen's assertion of his Fifth Amendment rights.

Plaintiff concedes that if the instant motion is granted, the issue of whether a complete stay should be reinstated may need to be revisited if the Court grants the Motion to Expedite.  [Motion, p. 13:6-9, ECF No. 56-1].  Thus, reconsideration of the Stay Order would likely result in piecemeal litigation of the issues and would do little to advance this action.  *See, Medina v. Argent Mortg. Co.*, 2006 WL 1305230, at *2 (N.D. Cal. May 11, 2006) (granting stay in part because litigation of case in "piecemeal" "would not appear to advance the litigation in any significant manner."); *Sec. & Exch. Comm'n v. Heart Tronics, Inc.*, SACV111962JVSANX, 2013 WL 12209968, at *2 (C.D. Cal. Apr. 15, 2013) ("[B]ecause of the potential for piecemeal discovery, the interests of judicial economy and case management weigh in favor of continuing the stay as to all claims.").  For these reasons, the interests of judicial efficiency weigh in favor of a complete stay, and denial of the instant motion.

4.   The Analysis of the Remaining *Keating* Factors is Unchanged

Plaintiff does not even address the remaining two *Keating* factors because they do not support the relief she has requested.

The fourth *Keating* factor requires a court to assess "the interests of persons not parties to the civil litigation."  *Keating v. Office of Thrift Supervision*, 45 F.3d 322,

325 (9th Cir. 1995).  Because the parties do not contend that any third party has a compelling interest in the stay, this factor is neutral.

The fifth *Keating* factor requires a court to assess "the interest of the public in the pending civil and criminal litigation."  *Keating, supra,* 45 F.3d at 326.  The Court's finding that this factor weighs in favor of the stay is not changed by the "new" facts offered by Plaintiff: "[W]here, as here, the civil litigation has just commenced, and there is significant public attention given to both proceedings, the public interest is best served by ensuring the integrity of the criminal process and strict adherence to the rule of law."  [Stay Order, ECF No. 53, p. 8-9.]  This factor therefore remains in favor of the stay.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the instant Motion for Reconsideration.

Dated: June 1, 2018                    BLAKELY LAW GROUP


By:  */s/ Brent H. Blakely*
　　　BRENT H. BLAKELY
Attorneys for Defendants
ESSENTIAL CONSULTANTS, LLC and
MICHAEL COHEN

Dated: June 1, 2018                    HARDER LLP


By:  */s/ Charles J. Harder*
　　　CHARLES J. HARDER
Attorneys for Defendant
DONALD J. TRUMP

Pursuant to Local Rule 5-4.3.4, I Brent H. Blakely, hereby attest that all other signatories to this Opposition, and on whose behalf it is submitted, concur in its content and have authorized its filing.

Dated: June 1, 2018                    /s/ Brent H. Blakely
                                       BRENT H. BLAKELY