1  AVENATTI & ASSOCIATES, APC
   Michael J. Avenatti, State Bar No. 206929
2  Ahmed Ibrahim, State Bar No. 238739
   520 Newport Center Drive, Suite 1400
3  Newport Beach, CA 92660
   Telephone:  949.706.7000
4  Facsimile:   949.706.7050

5  Attorneys for Plaintiff Stephanie Clifford
   a.k.a. Stormy Daniels a.k.a. Peggy Peterson

6

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11 STEPHANIE CLIFFORD a.k.a.            CASE NO.:  2:18-cv-02217-SJO-FFM
   STORMY DANIELS a.k.a. PEGGY
12 PETERSON, an individual,
                                        **PLAINTIFF STEPHANIE**
13              Plaintiff,              **CLIFFORD'S OPPOSITION TO *EX***
                                        ***PARTE* APPLICATION OF**
14       vs.                           **DEFENDANT MICHAEL COHEN**
                                        **FOR A RESTRAINING ORDER**
15                                      **AGAINST PLAINTIFF'S COUNSEL**
   DONALD J. TRUMP a.k.a. DAVID
16 DENNISON, an individual, ESSENTIAL
   CONSULTANTS, LLC, a Delaware
17 Limited Liability Company, MICHAEL
   COHEN and DOES 1 through 10,
18 inclusive,

19
                Defendants.
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

III.  ARGUMENT ............................................................................................. 5

      A.    A Gag Order Is a Prior Restraint on Speech and Highly
            Disfavored. ..................................................................................... 5

      B.    The Court Must Deny the Requested Gag Order Because It Is
            Premature ........................................................................................ 7

      C.    Mr. Cohen Has Not Met His Burden of Showing Less
            Restrictive Means Are Unavailable to Secure Jurors Capable
            of Giving Him a Fair Trial. ............................................................ 8

      D.    Mr. Cohen Has Failed to Demonstrate a Clear and Present
            Danger or a Serious and Imminent Threat to His Right to a
            Fair Trial ...................................................................................... 10

            1.    An Threat to Mr. Cohen's Right to a Fair Trial Is Not
                  Imminent.. .......................................................................... 14

            2.    There is No Serious of Imminent Threat to Mr. Cohen's
                  Right to a Fair Trial Because He Has Not Established
                  Actual Prejudice.. ............................................................ 141

            3.    The Media Coverage of this Case Will Continue Even if
                  a Gag Order is Issued.. .................................................... 142

            4.    A Gag Order Would Grant an Unfair Tactical
                  Advantage to Defendants. ................................................ 143

      E.    Mr. Cohen's Proposed Order Is Not Narrowly Drawn. ............... 14

      F.    Mr. Cohen's Argument that Rule 5-120 of the Rules of
            Professional Conduct Has Been Violated Is Without Merit. ........ 16

      G.    No Violation of Rule 5-100 Occurred. .......................................... 19

      H.    In the Alternative, the Court Should Impose a Narrowed Gag
            Order Against All Parties and Their Attorneys. ........................... 20

V.    CONCLUSION ....................................................................................... 20

-i-

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

# TABLE OF AUTHORITIES

**CASES**

Argentieri v. Zuckerberg,
  8 Cal. App. 5th 768 (2017) ............................................. 17

Arizona Right to Life Political Action Comm. v. Bayless,
  320 F.3d 1002 (9th Cir. 2003) ........................................... 6

Bailey v. Sys. Innovation, Inc.,
  852 F.2d 93 (3d Cir. 1988) .............................................. 9

Berndt v. California Dep't of Corr.,
  No. C03-3174 TEH, 2004 WL 1774227 (N.D. Cal. Aug. 9, 2004) ........... 9, 18

Bromgard v. Montana,
  No. CV-05-32-BLG-RFC-CSO, 2007 WL 9709964 (D. Mont. July 11, 2007) ......... 7, 8

CBS Inc. v. Young,
  522 F.2d 234 (6th Cir. 1975) ............................................ 6

Chamberlain v. Les Schwab Tire Ctr. of California, Inc.,
  No. 2:11-CV-03105-JAM, 2012 WL 6020103 (E.D. Cal. Dec. 3, 2012) ............ 19

Cohen v. Brown,
  173 Cal. App. 4th 302, (2009) ........................................... 20

Columbia Broad. Sys., Inc. v. U.S. Dist. Court for Cent. Dist. of California,
  729 F.2d 1174 (9th Cir. 1984) ........................................... 12

Doe v. City of San Diego,
  No. 12-CV-689-MMA-DHB, 2014 WL 11997808 (S.D. Cal. Feb. 13, 2014) ..... 6, 10, 16

Doe v. Hawaii,
  No. CIV. 11-00550 DAE, 2011 WL 4954606 (D. Haw. Oct. 14, 2011) .......... 10

Doe v. Los Angeles W. Travelodge,
  No. CV 08-8279 CBM(CTX), 2009 WL 5227898 (C.D. Cal. Nov. 19, 2009) ......... 19

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

## TABLE OF AUTHORITIES (cont'd)

Empire State Ethanol & Energy, LLC v. BBI Int'l,
  No. 1:08-CV-623 GLS/DRH, 2009 WL 790962 (N.D.N.Y. Mar. 20, 2009) .................9

Flatley v. Mauro,
  39 Cal. 4th 299 (2006) ........................................................................................19

Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,
  742 F.3d 414 (9th Cir. 2014) ................................................................................5

Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.,
  No. 09-CV-2324 JLS CAB, 2011 WL 6182423 (S.D. Cal. Dec. 13, 2011) .........6, 10, 12

Hunt v. Nat'l Broad Co.,
  872 F.2d 289 (9th Cir. 1989) ..............................................................................7, 8

In re Dan Farr Productions,
  874 F.3d 590 (9th Cir. 2017) .........................................................................passim

In re JPMorgan Chase Bank, N.A.,
  799 F.3d 36 (1st Cir. 2015).................................................................................18

Jemine v. Cake Man Raven, Inc.,
  No. 08CV3072, 2009 WL 3174289 (E.D.N.Y. Oct. 2, 2009)..........................................7

Levine v. U.S. Dist. Court for Cent. Dist. of California,
  764 F.2d 590 (9th Cir. 1985)..........................................................................passim

Libarian v. State Bar,
  38 Cal. 2d 328 (1952) ........................................................................................20

Lindenbaum v. State Bar,
  26 Cal. 2d 565 (1945) ........................................................................................20

Long Beach Area Peace Network v. City of Long Beach,
  574 F.3d 1011 (9th Cir. 2009) ..............................................................................6

Matter of Application & Affidavit for a Search Warrant,
  923 F.2d 324 (4th Cir. 1991) ................................................................................9

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A
RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

1

**TABLE OF AUTHORITIES (cont'd)**

2

Mendoza v. Hamzeh,
3
   215 Cal. App. 4th 799 (2013) ........................................................................20

4

Nebraska Press Ass'n v. Stuart,
5
   427 U.S. 539 (1976)...................................................................................5, 6, 12

6

Sheppard v. Maxwell,
7
   874 F.3d at 596; c.f. 384 U.S. 333 (1966) ..........................................7, 13, 14

8

U.S. Bank Nat. Ass'n v. Friedrichs,
9
   No. 12CV2373-GPC KSC, 2013 WL 589111 (S.D. Cal. Feb. 13, 2013) .......................19

10

United States v. McGregor,
11
   838 F. Supp. 2d 1256 (M.D. Ala. 2012)....................................................9, 12

12

13

14

**OTHER**

15

16
Cal. Rules of Professional Conduct, Rule 5-100 .........................................passim

17
Cal. Rules of Professional Conduct, Rule 5-120 .........................................passim

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A**
**RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

# I.    INTRODUCTION

Defendant Michael Cohen's ("Mr. Cohen") request for a gag order restricting the speech of Michael Avenatti ("Mr. Avenatti"), counsel for plaintiff Stephanie Clifford ("Plaintiff"), must be denied.  Mr. Cohen seeks to impose a prior restraint on speech, the most highly disfavored and extraordinary remedy curtailing First Amendment rights under the law.  This remedy carries a heavy burden and one that Mr. Cohen fails to satisfy.

First, Mr. Cohen's request is premature.  The focus of a gag order is on prejudice that may result to a party with regards to obtaining a fair trial due to the prejudicial impact from publicity on local jurors.  Here, however, there is no jury or jury trial.[1]  Indeed, there is presently no active case because of the stay sought and obtained by Defendants over Plaintiff's objection.  As a result, the threshold requirement for a gag order does not exist.  Indeed, there can be no serious and "imminent" threat to Mr. Cohen's right to a fair trial.  And in any event, Mr. Cohen fails to establish that his negative press coverage will cease to exist if a gag order is issued given the media's intense interest in this lawsuit.

Second, Mr. Cohen fails to address why "less restrictive alternatives" to a gag order are unavailable.  The Court has at its disposal a variety of tools to ensure that the jury pool will not be tainted.  Mr. Cohen does not address any of these less restrictive alternatives.

Third, Mr. Cohen's proposed order is not narrowly drawn.  It is overbroad by sweeping in matters that are routinely public record in all civil cases, and by conflating prohibitions on discussing this case with discussing the criminal proceedings in New York, which cannot be restricted.  It also creates confusion over what is permissible and what is not permissible, which ultimately creates additional burdens on the Court to address serial disputes between the parties.

For these reasons and the reasons stated below, Mr. Cohen's *ex parte* application for a restraining order against Mr. Avenatti should be denied in its entirety.  In the alternative, the Court should adopt a more narrowly tailored order extending to both sides.

---

[1] Indeed, it is Defendants' position that no jury trial will ever occur as the entire matter belongs in arbitration.

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

## II.    FACTUAL BACKGROUND

Plaintiff filed the present action on March 6, 2018.  [Dkt No. 14 at 20.]  The action seeks a declaration that a draft agreement entitled "Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement" (the "Settlement Agreement") was never formed and should thus be found void. Widespread publicity of the underlying facts existed prior to filing of this case and prior to Plaintiff's retention of Mr. Avenatti.

In 2011, Plaintiff gave a wide-ranging interview to *In Touch* magazine concerning details of her affair and relationship with Mr. Trump.  [Avenatti Decl., Ex. 1.]  The article, however, was not published at that time.

On January 12, 2018, an article entitled "Trump Lawyer Arranged $130,000 Payment for Adult-Film Star's Silence" appeared in the *Wall Street Journal*.  [Id., Ex. 2.] The article reported on the relationship between Plaintiff and Mr. Trump, and certain details of the Settlement Agreement, including the parties and the $130,000.00 payment provided for under the agreement.  [Id., Ex. 2.]  *The Daily Beast* published an article the same day, in which Mr. Cohen denied the affair, calling them "rumors."  [Id., Ex. 3.]

On January 19, *In Touch* published excerpts of the 2011 interview of Plaintiff.  [Id., Ex. 4.]

On January 22, the *Washington Post* published an article reporting on the filing of complaints with the Federal Election Commission and Department of Justice by the watchdog group Common Cause alleging that the $130,000 payment made under the Settlement amounted to an unreported in-kind contribution to Mr. Trump's campaign. [Id., Ex. 5.]

On or about February 13, Mr. Cohen issued a public statement regarding Plaintiff and the Settlement Agreement, including an attack on Plaintiff's credibility.  [Id., Ex. 6.] Among other things, Mr. Cohen stated:  "In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford.  Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms.

Clifford, and neither reimbursed me for the payment, either directly or indirectly." [Id., Ex. 6.] In a thinly veiled reference to Plaintiff, Mr. Cohen concluded by stating: "Just because something isn't true doesn't mean that it can't cause you harm or damage. *I will always protect Mr. Trump.*" [Id. (emphasis added).]

The same day, the *New York Times* reported on the allegations of the affair and Mr. Cohen's claim that he paid the $130,000 to Plaintiff out of his own pocket. [Id., Ex. 7.] The *Associated Press* ran a story the next day. [Id., Ex. 8.]

On February 22, Essential Consultants, LLC initiated an arbitration proceeding against Plaintiff. [Dkt No. 31-2 at ¶8.] By this point, Plaintiff still had not hired Mr. Avenatti, but as shown above, the media's interest in the story was well documented. **Further, the only person to have spoken on the record at that point was Mr. Cohen.**

On March 5, the day before the lawsuit was filed, the *Wall Street Journal* published a story entitled "Trump Lawyer's Payment to Stormy Daniels Was Reported as Suspicious by Bank." [Avenatti Decl., Ex. 9.]

After the lawsuit was filed on March 6, the media continued to ask questions about what Mr. Trump knew about the Settlement Agreement and the $130,000 payment made thereunder, which Mr. Trump through White House spokespeople initially denied having any involvement with. [Id., Exs. 10 and 24.]

On March 19, *Vanity Fair* published an article containing excerpts of an interview with Mr. Cohen. [Id., Ex. 11.] Mr. Cohen, who threatened to recover extensive damages against Plaintiff for allegedly violating the Settlement Agreement, stated "I might even take an extended vacation on her dime," referring to Plaintiff. [Id.]

On April 5, Mr. Trump, making his first public comments regarding this dispute, denied having knowledge of the $130,000 payment to Plaintiff under the Settlement Agreement. [Id., Ex. 12.] Mr. Trump stated he did not know where the money came from, denied setting up a fund from which Mr. Cohen could draw from to make the payment, and directed reporters' questions to Mr. Cohen. [Id.]

On April 9, the FBI raided Mr. Cohen's residence, office, and hotel room in New

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

York.  [Dkt No. 38-1 (Blakely Decl.), ¶3.]  The next day on April 10, Mr. Cohen gave a phone interview to *CNN*.  [Avenatti Decl., Ex. 13.]

On April 17, Plaintiff released a sketch of a man who she asserts threatened her not to speak out about her relationship with Mr. Trump years earlier.  [Id., Ex. 14.]  On April 18, Mr. Trump insinuated Plaintiff was lying about the incident, writing in a tweet:  "A sketch years later about a nonexistent man.  **A total con job**.  Playing the Fake News Media for Fools (but they know it)!"  [Id., Ex. 15 (emphasis added).]

On April 26, appearing on *Fox & Friends*, Mr. Trump spoke at length about the criminal investigation in New York of Mr. Cohen.  [Id., Ex. 16.]  He also admitted for the first time that Mr. Cohen represented him in this "crazy Stormy Daniels deal."  [Id.]

On May 2, Mr. Trump's attorney, Rudy Giuliani, appeared on *Fox News* with Sean Hannity for a lengthy interview covering numerous topics, including this case and the criminal investigation of Mr. Cohen.  [Id., Ex. 17.]

Early the next morning on May 3, Mr. Trump issued three separate tweets discussing Mr. Cohen, Plaintiff, the Settlement Agreement, and the $130,000 payment. [Id., Ex. 18.]  In one of the tweets, Mr. Trump, referring to Plaintiff, stated:  "The agreement was used to stop the **false and extortionist** accusations made by her about an affair."  [Id., Ex. 18 (emphasis added).]

On the same morning of May 3, Mr. Giuliani went on *Fox & Friends* and continued openly discussing the Settlement Agreement, the $130,000 payment, and Mr. Cohen.  [Id., Ex. 19.]  Mr. Giuliani also disparaged Mr. Avenatti, calling him a "complete jerk" who should "turn in his law license."  [Id.]

Later that day appearing on *Fox Business Network*, Mr. Giuliani directly attacked the credibility of both Plaintiff and Mr. Avenatti:  "What do you think [Plaintiff is] about, and her lawyer, who's an ambulance chaser? . . . Money, money, money, money, money. They sold out cheap, because the allegations aren't true."  [Id., Ex. 20.]

On June 6, at a public appearance in Israel, Mr. Giuliani renewed his fierce attacks on Plaintiff.  [Id., Ex. 21.]  He asserted Plaintiff was lying about her affair with Mr.

Trump, stating First Lady Melania Trump "believes her husband, and she knows it's untrue." [Id., Ex.21.] Later, Mr. Giuliani stated: "**I'm sorry I don't respect a porn star the way I respect a career woman or a woman of substance or a woman who has great respect for herself as a woman and as a person and isn't going to sell her body for sexual exploitation.**" [Id., Ex. 21 (emphasis added).] He added: "So Stormy, you want to bring a case, let me cross examine you. **Because the business you're in entitles you to no degree of <u>giving your credibility any weight</u>.** And secondly, explain to me how she could be damaged. **I mean, <u>she has no reputation</u>. If you're going to sell your body for money, <u>you just don't have a reputation</u>.**" [Id., Ex. 21 (emphasis added).] On June 8, Mr. Trump voiced his agreement with Mr. Giuliani. [Id., Ex. 22.]

Mr. Cohen filed this request for a restraining order to restrict Mr. Avenatti's speech as an *ex parte* application on June 14. Mr. Cohen, however, failed to properly meet and confer prior to filing the application. [Id., Ex. 23.]

## III. ARGUMENT

### A. A Gag Order Is a Prior Restraint on Speech and Highly Disfavored.

Mr. Cohen proposes that the Court impose one of the heaviest and most disfavored remedies known in American jurisprudence: a court injunction to stop speech known as a "prior restraint." However, he has not satisfied his heavy burden. Indeed, Mr. Cohen does not even engage in the proper analysis to obtain such an extraordinary remedy.

In the Ninth Circuit, a district court's order prohibiting attorneys from communicating with the media regarding the merits of the case, also known as a "gag order," is "a prior restraint" on the First Amendment right to free speech. Levine v. U.S. Dist. Court for Cent. Dist. of California, 764 F.2d 590, 595 (9th Cir. 1985). "Prior restraints 'are the most serious and the least tolerable infringement on First Amendment rights.'" In re Dan Farr Productions, 874 F.3d 590, 596 (9th Cir. 2017) (quoting Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976)). Consequently, "[p]rior restraints on speech are disfavored and carry a heavy presumption of invalidity." Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 430 (9th Cir. 2014)

(quoting Long Beach Area Peace Network v. City of Long Beach, 574 F.3d 1011, 1023 (9th Cir. 2009)).  Due to the dangers they pose, prior restraints on speech are subject to strict scrutiny.  See Arizona Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1008 (9th Cir. 2003).  Although it may be appropriate to impose greater restrictions on free speech rights of "trial participants than on the rights of nonparticipants[,]" "attorneys and other trial participants *do not lose their constitutional rights at the courthouse door.*"  Levine, 764 F.2d at 595 (emphasis added).

As the Supreme Court has emphasized, "pretrial publicity even pervasive, adverse publicity does not inevitably lead to an unfair trial."  Nebraska Press, 427 U.S. at 554.  "Consequently, courts may issue a gag order only if the moving party establishes that: (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn, **and** (3) less restrictive alternatives are not available."  Doe v. City of San Diego, No. 12-CV-689-MMA-DHB, 2014 WL 11997808, at *2 (S.D. Cal. Feb. 13, 2014) (citing Levine, 764 F.2d at 595) (emphasis added).

Courts have made clear that any order limiting an attorney's "exercise of first amendment rights of freedom of speech" must be supported by "sufficient *specific findings* by the trial court" that these requirements are met.  CBS Inc. v. Young, 522 F.2d 234, 239 (6th Cir. 1975) (emphasis added).  This is not easily done and courts in this Circuit frequently conclude that such orders should be denied.  See, e.g., Dan Farr, 874 F.3d at 593-94; City of San Diego, 2014 WL 11997808, at *2; Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist., No. 09-CV-2324 JLS CAB, 2011 WL 6182423, at *17-19 (S.D. Cal. Dec. 13, 2011).

Mr. Cohen does not explicitly address this standard in any meaningful detail and instead merely asserts that "good cause exists for a restraining order."  [Dkt. No. 60 at 15:23]  *This is plainly not the standard.*  Nor does Mr. Cohen set forth any meaningful argument as to why less restrictive alternatives are not available.  [See Dkt. No. 60 at 15-

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

19.]  In the absence of engaging in the correct analysis, Mr. Cohen has by definition failed to meet his burden.  For this reason alone, Mr. Cohen's request should be denied outright.

### B.    The Court Must Deny the Requested Gag Order Because It Is Premature.

A second reason why Mr. Cohen's application should be summarily denied is that his request is premature and unjustified because this action is presently stayed and no jury trial has been set.  In light of these facts, and at this stage in the proceedings, Defendant Cohen's request is based on an assertion of prejudice and necessity that is entirely speculative and cannot serve to justify the imposition of a prior restraint.

As the Ninth Circuit has reently made clear, "[a] prior restraint to ensure a fair trial is permissible '*only if its absence would prevent securing twelve jurors who could, with proper judicial protection, render a verdict based only on the evidence admitted during the trial*." Dan Farr, 874 F.3d at 593 (quoting Hunt v. Nat'l Broad Co., 872 F.2d 289, 295 (9th Cir. 1989)) (emphasis added).  The Court further emphasized in Levine that the trial court order was "aimed expressly at publicity *during, or immediately before, trial*" and that "the district court noted, this type of publicity has a *greater potential for prejudice than publicity months in advance of trial*." Levine v. U.S. Dist. Court for Cent. Dist. of California, 764 F.2d 590, 598 (9th Cir. 1985) (emphasis added); see also id. at 597 ("With the nearness of trial, the potential for prejudice becomes particularly acute.").  For example, in Sheppard v. Maxwell, the Supreme Court similarly found that the defendant was entitled to habeas relief (a gag order was not at issue) because of the extensive publicity the jury was exposed to *during trial*, finding that "that bedlam reigned at the courthouse *during the trial and newsmen took over practically the entire courtroom*, hounding most of the participants in the trial."  384 U.S. 333, 355 (1966).

Here, no such concerns are implicated.  This action is stayed and a jury trial is not imminent.  See Jemine v. Cake Man Raven, Inc., No. 08CV3072, 2009 WL 3174289, at *1 (E.D.N.Y. Oct. 2, 2009) (no "evidence of possible jury taint" where "discovery has not yet been completed and a trial scheduled."); Bromgard v. Montana, No. CV-05-32-BLG-

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

RFC-CSO, 2007 WL 9709964, at *3 (D. Mont. July 11, 2007) (finding the defendants' right to a fair trial will not be materially prejudiced absent a prior restraint where no trial date set in civil case.).  In fact, there has been no determination by the Court that a jury trial is actually going to take place.  While Plaintiff believes that a jury trial as to the existence of an agreement to arbitrate is necessary and authorized, Defendant Cohen opposes this position, and the Court has not yet resolved the issue.  [See Dkt. Nos. 29, 29-1.]  Thus, Mr. Cohen's position thus essentially amounts to the contention that this Court should impose the heavily disfavored burden of a prior restraint based on the *mere possibility* that at some unspecified future date the Court will both lift the stay and set a jury trial in this action.  In light of these facts, Mr. Cohen's request is, at this stage, entirely speculative and premature.  There is thus no reason to believe that the absence of the requested order "would prevent securing twelve jurors who could, with proper judicial protection, render a verdict based only on the evidence admitted during the trial."  Dan Farr, 874 F.3d at 593.  Mr. Cohen cannot meet his burden on this record to justify what is the "least tolerable infringement on First Amendment rights.'"  Id. at 596.[2]

### C.   Mr. Cohen Has Not Met His Burden of Showing Less Restrictive Means Are Unavailable to Secure Jurors Capable of Giving Him a Fair Trial.

Mr. Cohen also has failed to establish that there are no less restrictive means of ensuring a fair trial.  Levine, 764 F.2d at 595.  Because the critical issue is prejudice to the jury, courts in the Ninth Circuit "have previously approved 'voir dire, jury instructions, delay, change of venue or jury sequestration' as appropriate alternatives preferable to censorship."  Dan Farr, 874 F.3d at 595 (quoting Hunt, 872 F.2d at 295-96); see also

---

[2] As a separate threshold matter, it is also worth noting that Mr. Avenatti's media appearances have declined precipitously over the last 30 days when compared to the 30 days prior.  [Avenatti Decl., ¶27.]  It is thus unclear why Mr. Cohen, who has been apparently closely watching Mr. Avenatti's every move and contends Mr. Avenatti's public statements have caused him prejudice, elected to do nothing for more than two months after the complaint was filed to file his "emergency" application, instead of seeking a gag order immediately at the height of Mr. Avenatti's appearances.

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

<u>Bailey v. Sys. Innovation, Inc.</u>, 852 F.2d 93, 100 (3d Cir. 1988) (noting that "the district court ignored a number of alternatives … that might remedy any pretrial prejudice" such as "a possible change of venue, postponement of the trial, careful voir dire of prospective jurors, or emphatic jury instructions."); <u>United States v. McGregor</u>, 838 F. Supp. 2d 1256, 1266 (M.D. Ala. 2012); <u>Berndt v. California Dep't of Corr.</u>, No. C03-3174 TEH, 2004 WL 1774227, at *4 (N.D. Cal. Aug. 9, 2004) ("Defendants could avoid prejudicial effect through appropriate voir dire questions and clear jury instructions.").  "[A]ny imposition of a prior restraint must be based on *case-specific justifications* for why less extreme measures are not viable alternatives."  <u>Dan Farr</u>, 874 F.3d at 596 (emphasis in original).

Here, Mr. Cohen offers no substantive analysis as to why less restrictive means are not available and offers no reason to believe that jurors in this action (assuming there will be a jury) could not perform their duties properly and fairly when managed through voir dire, proper jury instructions and, if necessary, sequestration.  Mr. Cohen's request should be denied outright for failure to meet his burden and discuss this requirement.  See <u>Empire State Ethanol & Energy, LLC v. BBI Int'l</u>, No. 1:08-CV-623 GLS/DRH, 2009 WL 790962, at *11 (N.D.N.Y. Mar. 20, 2009) (denying gag order where the defendants "failed to establish that alternatives would be insufficient to protect their right to a fair trial.").

However, even assuming Mr. Cohen addressed this issue, there is no reason to believe less restrictive alternatives would not suffice.  With respect to voir dire, mere exposure to publicity does not render it ineffective as a means to ensure a fair trial.  Indeed, the Ninth Circuit emphasizes that voir dire does not "entail excluding from the jury all citizens who have read or heard about the case and who keep abreast of current events."  <u>Dan Farr</u>, 874 F.3d at 595.  "[V]oir dire means nothing of the sort" and instead "screens out 'those with *fixed opinion* as to guilt or innocence.'"  <u>Id.</u> (emphasis in original); <u>see also</u> <u>Matter of Application & Affidavit for a Search Warrant</u>, 923 F.2d 324, 329 (4th Cir. 1991) (potential jurors aware of coverage "not disqualified from sitting so long as they can set aside their impressions and adjudge the case on the basis of the evidence presented at trial.").  As to jury instructions, courts follow a "rebuttable

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

presumption that juries follow instructions." <u>Dan Farr</u>, 874 F.3d at 595.  Mr. Cohen has not established that a properly instructed jury would not act in accordance with the Court's instructions, should a jury trial take place.  As to sequestration, while presumably not enjoyable for jurors, "juror inconvenience alone" "cannot outweigh" the "exercise of fundamental First Amendment rights." <u>Id.</u> at 596.  Thus in <u>Dan Farr</u>, the Ninth Circuit reversed the prior restraint imposed by the district court because the "record does not demonstrate that those alternatives are unavailable or inappropriate." <u>Id.</u> at 596.

### D. Mr. Cohen Has Failed to Demonstrate a Clear and Present Danger or a Serious and Imminent Threat to His Right to a Fair Trial

As noted, courts may issue a gag order only if the moving party establishes that "the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest[.]" <u>City of San Diego</u>, 2014 WL 11997808, at *2 (quoting <u>Levine</u>, 764 F.2d at 595).  Under this factor, however, it is not sufficient for the moving party to merely show the speech sought to be restricted is negative or disparaging toward a trial participant; rather, the moving party must show that the speech is "a serious and imminent threat to [his or her] *right to a fair trial*." <u>Dan Farr</u>, 874 F.3d at 593 (emphasis added); <u>see also</u> <u>Hammes</u>, 2011 WL 6182423, at *18 ("[T]he court must make specific findings establishing that the party's conduct is a serious and imminent threat to the administration of justice.") (quotations omitted); <u>Doe v. Hawaii</u>, No. CIV. 11-00550 DAE, 2011 WL 4954606, at *4 (D. Haw. Oct. 14, 2011) (to obtain order enjoining speech of attorney, "a Court considers an individual's right to a fair trial by impartial jurors, not potential damage to that individual's livelihood.") (internal quotation omitted).

#### 1. Any Threat to Mr. Cohen's Right to a Fair Trial Is Not Imminent.

As shown above, Mr. Cohen cannot satisfy the threshold inquiry of showing an "imminent" threat to his right to a fair trial because there is presently no jury, no jury trial, or even an active case.  Plaintiff moved for a jury trial and sought expedited discovery to move this case along, but was thwarted by Defendants' motion to stay the case.  Mr. Cohen and the other defendants made that strategic choice.  Now having succeeded at

postponing any trial and any determination of whether a jury will decide whether a contract to arbitrate was formed, Mr. Cohen cannot turn around and argue he will be "prejudiced" before a non-existent jury at a non-existent trial in connection with a presently non-active case. Thus, Mr. Cohen's application for a gag order must be denied.

### 2. There is No Serious or Imminent Threat to Mr. Cohen's Right to a Fair Trial Because He Has Not Established Actual Prejudice.

Even if the Court indulged the strained hypothetical posed by Mr. Cohen that an imminent jury trial in this case is a certainty, Mr. Cohen's motion must nevertheless be denied because he has failed to demonstrate an actual "clear and present danger or a serious and imminent threat" to his right to a fair trial based on an actual prejudicial impact on the jury pool in the Central District. Two critical factors for evaluating the likely effect of pretrial publicity on the jury pool are: "[1] whether the subject matter of the case is lurid or highly inflammatory, and [2] whether the community from which the jury will be drawn is small and rural, or large, populous, metropolitan, and heterogeneous." Dan Farr, 874 F.3d at 594. Here, the Central District is a large metropolitan area. Mr. Cohen has made no attempt to connect Mr. Avenatti's speech to the jury pool at issue or demonstrate that it is likely to be tainted. Like this action, in Dan Farr, the party seeking the prior restraint pointed to the social media activity of the party to be restrained. However, the Ninth Circuit found that the evidence presented regarding the jury pool did "not prove that the jury pool—all adult, registered voters in the San Diego and Imperial Counties—was reached, let alone irreparably tainted" and "[w]ithout such an evidentiary demonstration, the prior restraint orders cannot stand." Id. at 595.

Mr. Cohen similarly fails to make that connection to actual potential jurors here. Mr. Cohen has made no effort to demonstrate specifically how the relevant jury pool in this action – the extremely large, populous, metropolitan, and heterogeneous Central District – has been tainted such that 12 impartial jurors could not be empaneled *should the Court order a jury trial in this action*. Indeed, "courts have long held that in a large metropolitan area, prejudicial publicity is less likely to endanger the defendant's right to a

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

fair trial." Columbia Broad. Sys., Inc. v. U.S. Dist. Court for Cent. Dist. of California, 729 F.2d 1174, 1181 (9th Cir. 1984). There is no reason to believe that the jury pool in the Central District has been tainted such that Mr. Cohen would not receive a fair trial.

As to the second critical factor, namely, whether the matter is "lurid or highly inflammatory," in Dan Farr, the Ninth Circuit contrasted the "far more banal" civil trademark infringement action with the "the subject matters of the *criminal trials* in which pretrial publicity has presented serious constitutional problems." 874 F.3d at 594 (emphasis added); see also Hammes, 2011 WL 6182423, at *17 (noting that "most, if not all of [the] trial publicity cases, including *Nebraska Press* and *Levine,* involved criminal proceedings and significant Sixth Amendment concerns."). Although the facts of this action raise issues of broad public concern, it is not a murder trial, does not involve violent conduct, and substantively involves only the relatively banal issue of the validity of a non-disclosure agreement. In fact, at this stage, it merely implicates the even narrower issue of whether the dispute must be arbitrated. The Ninth Circuit has previously found that even the case of a high-profile individual, John DeLorean, being "charged with conspiracy to import cocaine," was not lurid or inflammatory because even though it prompted great media interest, it did not compare to actions such as those involving "armed robbery, kidnapping, and murder." Columbia Broadcasting, 729 F.2d at 1181. Under this standard, this action is not inflammatory or lurid.

### 3. The Media Coverage of this Case Will Continue Even if a Gag Order is Issued.

It must further be noted that issuing a prior restraint as to Mr. Avenatti's speech would not put an end to the negative media coverage surrounding Mr. Cohen and is unlikely to be effective in curtailing media interest. See McGregor, 838 F. Supp. 2d at 1266 (gag order "unlikely to be effective" because of media "camped outside the courthouse, reported daily on the proceedings, and continued the live blog of the witness testimony."). Mr. Cohen's analysis fails to account for the widespread publicity and coverage of this case, which as chronicled above, existed well before Mr. Avenatti's

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

involvement in this case.  The facts involving Mr. Cohen, the personal attorney of the sitting President of the United States, will (justifiably so) continue to draw immense interest from the media.  If not Mr. Avenatti, a litany of television news pundits will inevitably continue to discuss and analyze the action and the developments in the case.  Because of the nature of today's media—particularly television news and Internet media—reporting of *opinions* concerning all conceivable aspects of the case will not stop.

The Ninth Circuit made a similar point in reversing the imposition of a gag order in the <u>Dan Farr</u> case.   The Court concluded the district court's gag orders "are simultaneously unmoored from the interest they purport to protect—the integrity of the San Diego-area jury pool" because nothing prohibited the defendants and their attorneys "from contacting and collaborating with San Diego-area media to create newspaper articles, magazine features, or television coverage of the case" or to take other measures to generate publicity in the area.  874 F.3d at 596; <u>c.f.</u> <u>Sheppard v. Maxwell</u>, 384 U.S. 333, 359 n.13 (1966) ("The problem here was further complicated by the independent action of the newspapers in reporting 'evidence' and gossip which they uncovered.")

This case would not even require any "collaboration" between Mr. Avenatti and the news media.  The media would simply continue its intense coverage on its own.  Even assuming, in the absence of any specific showing from Mr. Cohen, that the jury pool here at issue may be tainted by media coverage, there is little reason to believe that the order requested by Mr. Cohen would remedy it.  In point of fact, the requested order would likely accomplish little more than burdening Mr. Avenatti's First Amendment free speech rights while providing no clear benefit or remedy to any claimed prejudice.

## 4. A Gag Order Would Grant an Unfair Tactical Advantage to Defendants.

As shown above, the statements made in the media can hardly be characterized as being one-sided.  Mr. Giuliani's outrageous insults of Plaintiff are but one example:  "I'm sorry I don't respect a porn star the way I respect a career woman or a woman of substance or a woman who has great respect for herself as a woman and as a person and isn't going

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

to sell her body for sexual exploitation. . . . Because the business you're in entitles you to no degree of giving your credibility any weight. . . . If you're going to sell your body for money, you just don't have a reputation." [Avenatti Decl., Ex. 21.] To his 51.5 million followers, Mr. Trump has called Plaintiff and her lawsuit "false and extortionist" and that she is orchestrating a "con job." [Id., Exs. 15 and 18.] Mr. Cohen has also insinuated that Plaintiff is a liar in his widely reported written statement released to the media, and that he intends to "take an extended vacation on her dime. [Id., Exs. 6 and 11.][3]

Plaintiff cannot be expected to defend herself alone in public against these highly coordinated and inflammatory attacks directed against her by these powerful interests and institutions. Mr. Avenatti's speech serves an extremely important purpose in representing and advocating for Plaintiff in the context of a high-profile case of this nature that is going to be covered extensively irrespective of whether Mr. Avenatti is allowed to speak. Erwin Chemerinsky, Silence Is Not Golden: Protecting Lawyer Speech Under the First Amendment, 47 Emory L.J. 859, 867-71 (1998) (listing five important reasons why "there are times that effective representation of a client requires statements to the press."). Taking Mr. Avenatti out of the public discourse would thus score Defendants a major victory by depriving Plaintiff of her most important public advocate and leaving her defenseless. The Court must take into consideration this inevitable and patently unfair consequence of silencing Mr. Avenatti. For this additional reason, imposing a gag order against Mr. Avenatti would sanction an injustice.

**E.    Mr. Cohen's Proposed Order Is Not Narrowly Drawn.**

Mr. Cohen's proposed gag order is overbroad and he thus fails to meet his burden to demonstrate that the proposed order "is narrowly drawn[.]" Levine, 764 F.2d at 595.

*First*, Mr. Cohen conflates this case with the criminal proceedings pending in the New York. *There is simply no conceivable argument that this Court can and should*

---

[3] This does not include the incessant attacks made against Plaintiff and Mr. Avenatti on *Fox News*, a network well known to parrot the rhetoric and positions of Mr. Trump. [Avenatti Decl., ¶28.] These attacks are well documented and are continuing. [Id.]

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

*restrict Mr. Avenatti from providing opinions and relevant facts relating to the criminal proceeding*.  The criminal investigation involves matters far wider in scope than this case.  For example, Mr. Cohen's activities as a "consultant" selling access to Mr. Trump, his taxi medallion business, his banking activities, and his possible involvement with Russians seeking to interfere with the 2016 election are all matters of immense interest for the media.  More generally, the media is also understandably very interested in the political implications of a sitting president's personal attorney and "fixer" being investigated for crimes, and whether Mr. Cohen will elect to cooperate with the government against Mr. Trump.  None of these matters have anything to do with the present case.  Therefore, Mr. Avenatti should not be precluded from continuing to offer opinions and facts on these issues of public concern with little or no relationship to this case.  Issuance of a prior restraint to invade his First Amendment rights would plainly be unjustified.

Perhaps more importantly, enjoining Mr. Avenatti from speaking on these matters would be futile.  Rampant discussion in the media about all of the topics referenced above will continue unabated—whether or not Mr. Avenatti is part of the discussion.  The Court plainly cannot gag the entire press, media, and Internet.  Therefore, even assuming for the sake of argument that Mr. Cohen is being prejudiced with Central District jurors by negative media exposure, the Court imposing a gag order on Mr. Avenatti would not solve Mr. Cohen's problem, which is a much larger one than Mr. Avenatti.

*Second*, Mr. Cohen's proposed order creates confusion over what speech is and is not permissible, which creates unnecessary problems for the Court to enforce the order and for Mr. Avenatti to comply.  Virtually any speech about a case may be interpreted as a comment concerning the "strengths or weaknesses of the case of either party."  [Dkt No. 60-3 at 2(e).]  The proposed restriction on discussing "any other information the lawyer knows or reasonably should know is likely to be inadmissible as evidence..." poses similar problems.  [Dkt No. 60-3 at 2(f).]  Parties in civil cases *always* disagree on what will and will not ultimately be admissible.  These evidentiary disputes, which are hotly contested (particularly in high profile cases), remain existent throughout the proceedings

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

and are only resolved just before trial by way of motions *in limine*.  Until then, good faith disputes may exist between the parties.  Defining what constitute information a lawyer "knows or reasonably should know" is inadmissible is thus impossible.

*Finally*, Mr. Cohen's proposed order is overbroad because it sweeps in matters that merely regurgitate the content of pleadings, motions, and discovery.  For example, Mr. Cohen requests that Mr. Avenatti be prohibited from discussing the "identity of a witness or the expected testimony of a party or a witness." [Dkt No. 60-3 at 2(b).]  Similarly, he also requests a prohibition on discussing "[t]he identity or nature of physical evidence expected to be presented or the absence of such physical evidence." [Dkt No. 60-3 at 2(d).]  However, these are matters that are routinely disclosed in public filings in every civil case—whether in the parties' Rule 26(f) report, summary judgment briefing, discovery motions, and pretrial conference orders, among other routine filings.  Indeed, Plaintiff has already had to discuss potential witnesses and sources of evidence in moving for expedited discovery and opposing Defendants' motion for a stay.  [See e.g., Dkt No. 52 at 6.]  A gag order discussing matters repeating what is, or will inevitably be, public record is improper.  City of San Diego, 2014 WL 11997808, at *2.

Therefore, adopting Mr. Cohen's overbroad proposed gag order would pose serious problems with enforcement, which would risk entangling the Court in serial disputes over what is and is not a violation.  Although the language of Mr. Cohen's proposed order is taken from Levine, Levine was a criminal case and, as shown above, enforcement of these restrictions are plainly inappropriate and unworkable in the context of a civil case.

### F.   Mr. Cohen's Argument that Rule 5-120 of the Rules of Professional Conduct Has Been Violated Is Without Merit.

Mr. Cohen asserts Mr. Avenatti has violated Rule 5-120 of the California Rules of Professional Conduct.  As an initial matter, a violation of Rule 5-120 does not relieve Mr. Cohen of his burden regarding the Constitutional requirements for the imposition of a prior restraint.  As noted above, Mr. Cohen's burden is not satisfied merely by showing he has been disparaged.  He must show that there is an actual and imminent threat to his right

1   to a fair trial.  *However, no such violation has been established and in fact Rule 5-120*
2   *explicitly contemplates publicity regarding a wide variety of issues – particularly when*
3   *matters of the public interest are implicated as they are here.*

4   Rule 5-120 states that a "member who is participating or has participated in the
5   investigation or litigation of a matter shall not make an extrajudicial statement that a
6   reasonable person would expect to be disseminated by means of public communication if
7   the member knows or reasonably should know that it will have a substantial likelihood of
8   materially prejudicing an adjudicative proceeding in the matter."  Cal. R. Prof. Conduct 5-
9   120(A).  However, Mr. Cohen's discussion of Rule 5-120 is incomplete.  See Argentieri v.
10  Zuckerberg, 8 Cal. App. 5th 768, 794 (2017) (dismissing contention that Rule 5-120 was
11  violated as "meritless" because it "ignores the rest of rule 5-120" and what is plainly
12  permitted under the Rule).  Mr. Cohen conveniently fails to mention that Rule 5-120
13  permits statements on a broad range of topics including the following:  "(1) the claim,
14  offense or defense involved and, except when prohibited by law, the identity of the
15  persons involved; (2) the information contained in a public record; (3) that an
16  investigation of the matter is in progress; (4) the scheduling or result of any step in
17  litigation; (5) a request for assistance in obtaining evidence and information necessary
18  thereto; (6) a warning of danger concerning the behavior of a person involved, when there
19  is reason to believe that there exists the likelihood of substantial harm to an individual or
20  the public interest."  Cal. R. Prof. Conduct 5-120(B).  Additionally, Rule 5-120 permits a
21  member to "make a statement that a reasonable member would believe is required to
22  protect a client from the substantial undue prejudicial effect of recent publicity not
23  initiated by the member or the member's client."  Cal. R. Prof. Conduct 5-120(C).

24  Mr. Avenatti's statements fall within the categories of information enumerated by
25  Rule 5-120(B) and about which statements are permitted – most notably "information
26  contained in a public record."  Cal. R. Prof. Conduct 5-120(B)(2).  Indeed, almost all of
27  the statements qualify as discussed involve commentary on matters in the public record.
28  Furthermore, the statements involve matters of broad public concern that are not

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

necessarily at issue in this case.  As noted, this action is about the validity of the non-disclosure agreement and Mr. Cohen does not attempt to link the statements regarding broader public issues to those specifically at issue in this action to establish prejudice.

It is notable that Mr. Cohen only contends that statements made in connection with possibly illegal financial transactions were confidential or otherwise not commentary on public information.  [Dkt. No. 60 at 14:19-15:22.]  However, even as to this information, Rule 5-120 permits an attorney to state "a warning of danger concerning the behavior of a person involved, when there exists the likelihood of substantial harm to an individual or the public interest."  Cal. R. Prof. Conduct 5-120(B)(6); <u>Berndt</u>, 2004 WL 1774227, at *4. In <u>Berndt</u>, the court noted that the statements at issue regarding the alleged misconduct of a public employee were likely permissible under Rule 5-120 as "relevant to the public interest because it is not prudent to appoint a public employee who was involved in serious misconduct on the job."  <u>Id.</u>  Here, the conduct at issue pertains to foreign (Russian) interference with a U.S. presidential election – a matter of great public concern – and Mr. Cohen's proximity to and possible involvement in transactions connected to that interference.  There is very clearly a question of harm to the public interest raised by the information disclosed.  Rule 5-120 thus permits the statements.  Moreover, Mr. Cohen acknowledges that the information does not pertain to the allegations in this action [Dkt. No. 60 at 15:19-20] and thus it is unclear how it could prejudice him in this action.[4]

Finally, as discussed above, the publicity surrounding Plaintiff and the facts underlying this action began prior to Mr. Avenatti's involvement and, even assuming the imposition of a gag order, will almost certainly continue.  Rule 5-120 permits a member to "make a statement that a reasonable member would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the member or the member's client."  Cal. R. Prof. Conduct 5-120(C).  Mr. Avenatti's public

---

[4] In addition, no law was violated by the disclosures.  <u>See</u>, <u>e.g.</u>, <u>In re JPMorgan Chase Bank, N.A.</u>, 799 F.3d 36, 41-42 (1st Cir. 2015) (neither Bank Secrecy Act nor regulations restrict third parties from disclosing suspicious activity reports).

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

defense of Plaintiff is essential to representing Plaintiff due to the incessant attacks made against her by Mr. Cohen, Mr. Trump, Mr. Giuliani, and others.

### G. No Violation of Rule 5-100 Occurred.

Similarly, no violation of Rule 5-100 of the California Rules of Professional Conduct has been established.  Rule 5-100 states that a "member shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."  Cal. R. Prof. Conduct 5-100.  No such conduct has been shown here and, even if it had, it would not eliminate Mr. Cohen's Constitutional burden discussed herein.

*First*, Mr. Avenatti has not threatened to present criminal, administrative, or disciplinary charges.  Mr. Avenatti has expressed his opinion that Mr. Cohen has engaged in various forms of wrongdoing, but he has not threatened to initiate criminal proceedings. Furthermore, to the extent that he has sought to become involved in the already pending criminal investigation, it has been on behalf of Plaintiff in order to protect her interests. Simply taking actions one is entitled to under the law is not improper within the meaning of Rule 5-100.  See, e.g., U.S. Bank Nat. Ass'n v. Friedrichs, No. 12CV2373-GPC KSC, 2013 WL 589111, at *4 (S.D. Cal. Feb. 13, 2013) (no violation because "the Court concludes that seeking monetary sanctions does not amount to a threat of criminal, administrative or disciplinary charges" and "monetary sanctions are permissible under the statute."); Chamberlain v. Les Schwab Tire Ctr. of California, Inc., No. 2:11-CV-03105-JAM, 2012 WL 6020103, at *8 (E.D. Cal. Dec. 3, 2012).

*Second*, Mr. Avenatti has not sought to obtain an improper advantage in any civil proceeding.  See Doe v. Los Angeles W. Travelodge, No. CV 08-8279 CBM(CTX), 2009 WL 5227898, at *5 (C.D. Cal. Nov. 19, 2009).  Unlike here, the cases finding violations of Rule 5-100 involved actual threats to initiate criminal, administrative, or disciplinary charge *unless* the party agreed to settle or otherwise make a payment in the civil proceeding.  See, e.g., Flatley v. Mauro, 39 Cal. 4th 299, 329 (2006) (letters threatening "to publicly accuse Flatley of rape and to report and publicly accuse him of other unspecified violations of various laws *unless he 'settled' by paying a sum of money to*

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

*Robertson of which Mauro would receive 40 percent*.") (emphasis added); Libarian v. State Bar, 38 Cal. 2d 328, 329 (1952) ("Libarian threatened to permit his client to file a criminal complaint against Nadel unless Siegel received a certain amount of money."); Lindenbaum v. State Bar, 26 Cal. 2d 565, 573 (1945); Mendoza v. Hamzeh, 215 Cal. App. 4th 799, 807 (2013) (threats to report fraud to authorities "if Mendoza did not pay 'damages exceeding $75,000.'"); Cohen v. Brown, 173 Cal. App. 4th 302, 317, (2009). Here, there has been so such demand.  Thus, there is no violation of Rule 5-100.

### H.    In the Alternative, the Court Should Impose a Narrowed Gag Order Against All Parties and Their Attorneys.

If despite the arguments set forth above, the Court is not persuaded that no gag order should be imposed, Plaintiff requests that a more narrowly tailored gag order be entered that restricts them from:

1.    Making statements that another party or his or her attorney is not credible, is lying, is of poor character, or has a poor reputation.

2.    Making statements that another party or his or her attorney is a criminal. However, opinions and commentary concerning whether alleged acts or omissions of a party constitute a crime, as well as opinions and commentary concerning legal or political implications of alleged acts, omissions, or reported facts shall not be prohibited.

Further, the order must go both ways by extending to *all parties* (i.e., Mr. Trump, Mr. Cohen/Essential Consultants, and Plaintiff), and *all counsel* (whether of record in this matter or otherwise).  Any other gag order imposed in the case would be manifestly one-sided and unjust, especially in light of the insults and attacks made against her.

Although Plaintiff does not believe any gag order is justified—particularly at this early stage of the litigation—if the Court believes an order should be entered, the order set forth above is properly tailored to the circumstances and context of this case.

### V.    CONCLUSION

For the reasons stated above and in their moving papers, Plaintiff respectfully requests the Court to DENY Defendant Michael Cohen's request for a restraining order against Michael Avenatti.

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  June 25, 2018                    AVENATTI & ASSOCIATES, APC


                                         By:   _____/s/ Michael J. Avenatti_____
                                               Michael J. Avenatti

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION OF DEFENDANT COHEN FOR A RESTRAINING ORDER AGAINST PLAINTIFF'S COUNSEL**