1  AVENATTI & ASSOCIATES, APC
   Michael J. Avenatti, State Bar No. 206929
2  Ahmed Ibrahim, State Bar No. 238739
   520 Newport Center Drive, Suite 1400
3  Newport Beach, CA 92660
   Telephone:  949.706.7000
4  Facsimile:  949.706.7050

5  Attorneys for Plaintiff Stephanie Clifford
   a.k.a. Stormy Daniels a.k.a. Peggy Peterson
6

7  BLAKELY LAW GROUP
   BRENT H. BLAKELY (CA Bar No. 157292)
8  1334 Park View Avenue, Suite 280
   Manhattan Beach, California 90266
9  Telephone:   (310) 546-7400
   Facsimile:   (310) 546-7401

10  Attorneys for Defendants
    ESSENTIAL CONSULTANTS, LLC and
11  MICHAEL COHEN

12  HARDER LLP
    CHARLES J. HARDER (CA Bar No. 184593)
13  RYAN J. STONEROCK (CA Bar No. 247132)
    132 S. Rodeo Drive, Fourth Floor
14  Beverly Hills, California 90212
    Telephone:   (310) 546-7400
15  Facsimile:   (310) 546-7401

16  Attorneys for Defendant
    DONALD J. TRUMP
17

18          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
19

| 20 | STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual, | Case No. 2:18-CV-02217 |
|---|---|---|
| 21 | | **JOINT REPORT ON STATUS OF CRIMINAL PROCEEDINGS REGARDING DEFENDANT MICHAEL COHEN** |
| 22 | Plaintiff, | |
| 23 | v. | |
| 24 | DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a | <u>Status Conference</u> Date:  July 27, 2018 Time: 9:00 a.m. |
| 25 | Delaware Limited Liability Company, MICHAEL COHEN, an individual, and | |
| 26 | DOES 1 through 10, inclusive, | Assigned for All Purposes to the Hon. S. James Otero |
| 27 | Defendants. | Action Filed:  March 6, 2018 |
| 28 | | |

1   Plaintiff Stephanie Clifford ("Plaintiff") and Defendants Essential Consultants,
2   LLC ("EC"), Michael Cohen ("Mr. Cohen") and Donald J. Trump ("Mr. Trump")
3   (collectively, "Defendants") (together with Plaintiff, the "Parties") hereby submit the
4   following joint report on the status of the criminal proceedings relating to Mr. Cohen.

5   **I.   <u>Summary</u>**

6   The criminal investigation of Mr. Cohen being conducted by the Federal
7   Bureau of Investigation ("FBI") and United States Attorney's Office for the Southern
8   District of New York ("USAO-SDNY") (collectively, the "Government") remains
9   ongoing.  However, the Parties do not know when the Government's investigation of
10  Mr. Cohen will be completed, or if a criminal indictment of Mr. Cohen will occur.

11  As of June 25, 2018, Mr. Cohen completed his review of the materials seized
12  by the FBI on April 9, 2018 (the "Seized Materials") and designated the materials he
13  believes to be protected by the attorney-client privilege or attorney-work product
14  doctrine.  From among those Seized Materials, more than three million non-
15  privileged items have been turned over to the Government for substantive review in
16  connection with the investigation, and the process is ongoing.

17  As discussed in detail in Section II below, this review process has been
18  carefully overseen by the Honorable Kimba M. Wood, United States District Judge
19  for the Southern District of New York ("SDNY"), and the Special Master appointed
20  by Judge Wood, the Honorable Barbara S. Jones (Ret.), in the case filed by Mr.
21  Cohen in the SDNY entitled, *In the Matter of Search Warrants Executed on April 9,*
22  *2018*, Case No. 18-mj-03161 (the "Cohen SDNY Action").

23  The Parties are also unaware of the exact scope of the investigation of Mr.
24  Cohen, or the full extent to which it overlaps with this case.  However, the Parties can
25  confirm that:  Plaintiff filed a motion to intervene in the Cohen SDNY Action on the
26  basis that certain privileged and/or confidential information of Plaintiff was included
27  in the Seized Materials.  The Court held the motion in abeyance to allow Plaintiff and
28  the SDNY-USAO to resolve any issues informally.  Plaintiff is currently not pursuing

the motion.  Plaintiff provided documents to the Government pursuant to a grand jury subpoena; and Plaintiff was scheduled to have a meeting with the Government in preparation for her grand jury testimony, before it was cancelled by the SDNY-USAO after the press learned of it.  A meeting between Plaintiff and the SDNY-USAO has not been rescheduled at this time.

## II.     The Cohen SDNY Action

As the SDNY-USAO recounted in its initial filing in the Cohen SDNY Action: "On April 9, 2018, agents from the New York field office of the Federal Bureau of Investigation ('FBI') executed search warrants for Michael Cohen's residence, hotel room, office, safety deposit box, and electronic devices.  The searches were authorized by a federal magistrate judge, who had found probable cause to believe that the premises and devices searched contained evidence, fruits, and instrumentalities of conduct for which Cohen is under criminal investigation." [ECF No. 40-1, Ex. 1, p. 1.]  "These searches were carried out as part of an ongoing grand jury investigation being conducted by the USAO-SDNY and the FBI." [*Id*. at p. 3.]

On or about April 13, 2018, Mr. Cohen initiated the Cohen SDNY Action, wherein he sought, among other things, a temporary restraining order preventing the government from reviewing the Seized Materials until Mr. Cohen's counsel had an opportunity to review them for information protected by the attorney-client privilege and the attorney-work product doctrine.  [Cohen SDNY Action ECF No. 5.]

On April 16, 2018, the Court denied Mr. Cohen's request for a temporary restraining order as moot based upon the Government's agreement to refrain from substantively reviewing the Seized Materials pending a ruling by Judge Wood on Mr. Cohen's motion.  [ECF No. 51, Ex. 1, pp. 90:8-91:12; Cohen SDNY Action ECF No. 16.]

On April 27, 2018, the Court appointed Hon. Barbara S. Jones (Ret.) as Special Master to conduct "an initial privilege review of the Seized Materials and adjudicate[ ] privilege disputes between the parties…" [Cohen SDNY Action ECF No. 30.]

On May 4, 2018, the Special Master issued a Report "to provide the Court with a scheduling plan setting forth the procedure and timeline for conducting the privilege review of the Seized Materials and resolving any disputes as to privilege." [Cohen SDNY Action ECF No. 39.]  In the Report, the Special Master confirmed the Government's agreement to "provide electronic copies of the materials to [Mr. Cohen] and Special Master on an expedited and rolling basis."  [*Id.*, p. 1.]  The Report also provides that, after receipt of the Seized Materials, "counsel for [Mr. Cohen] and the Intervenors will conduct their own privilege review and will provide the results of that review to the Special Master on an expedited and rolling basis."[1] [*Id.*, pp. 1-2.]

On June 25, 2018, counsel for Mr. Cohen submitted a letter in the Cohen SDNY Action to inform the Court that they had completed their review of the Seized Materials, stating:

> We write to advise the Court that we have met the Court's deadline and have completed our review and privilege designations of the more than 4 million files produced to us by the Government.  We have designated over 12,061 files as privilege pursuant to the attorney-client privilege and attorney-work product doctrine.

> The Government's production of documents began on April 26, 2018, with the subsequent productions being made on May 1, 2018, May 3, 2018, May 17, 2018, May 18, 2018, June 14, 2018 and June 15, 2018.

---

[1] The Intervenors in the Cohen SDNY Action are Mr. Trump and the Trump Organization.  On April 14, 2018, the Court granted Mr. Trump's motion to intervene in the Cohen SDNY Action.  [Cohen SDNY Action ECF No. 4.]  On April 19, 2018, the Court granted the Trump Organization's motion to intervene in the Cohen SDNY Action.  [Cohen SDNY Action ECF No. 17.]  Mr. Trump and the Trump Organization intervened in the Cohen SDNY Action for the purpose of reviewing the Seized Materials pertaining to each of them, respectively, for privileged materials.  [*See, e.g.*, Cohen SDNY Action ECF Nos. 23, 25.]

1  [Cohen SDNY Action ECF No. 87.]

2       Also on June 25, 2018, the USAO-SDNY submitted a letter in the Cohen

3  SDNY Action opposing any further delay in the designation of privileged materials,

4  and confirming that its investigation is ongoing, stating:  "The Government has

5  already consented to an adjournment of [Mr. Cohen's] time to make designations,

6  and it has been nearly three months since execution of the search warrants.  Further

7  delay will unreasonably impede the Government's investigation."  [Cohen SDNY

8  Action ECF No. 86.]

9       On July 2, 2018, the Special Master issued a Report confirming that all Seized

10  Materials had been provided to the Special Master (except the contents of one

11  Blackberry), and that Mr. Cohen had submitted privilege designations for all Seized

12  Materials provided to his counsel, stating:

13       As of June 15, 2018, all of the Seized Materials have been provided to

14       the Special Master with the exception of the electronic contents of one

15       Blackberry phone.  Pursuant to the Court's Order dated June 26, 2018

16       [Dkt No. 88], [Mr. Cohen] and Intervenors have submitted designations

17       to the Special Master for items in their possession with the exception of

18       22,633 items currently being reviewed by the Trump Organization,

19       which must be completed on or before July 5.

20  [Cohen SDNY Action ECF No. 89.]

21       The Special Master also confirmed that, on July 2, 2018, "[a] release of

22  1,310,365 items that were not designated Privileged, Partially Privileged or Highly

23  Personal by [Mr. Cohen] or an Intervenor were released to the Government[2]" and that

24  "once the Trump Organization submits its designations, any remaining items that are

25  _____

26       [2] Additional items were previously released to the Government by the Special
27  Master on a rolling basis, including 1,025,363 non-privileged, non-highly personal
    items that were released on or about May 30, 2018.  [Cohen SDNY Action ECF No.
28  65, p. 3.]

1 | not designated Privileged, Partially Privileged or Highly Personal will be promptly
2 | released to the Government."  [*Id*., pp. 1-2.]

3 |     On July 10, 2018, Court approved a request by Mr. Cohen's counsel in the
4 | Cohen SDNY Action, McDermott Will & Emory, to allow Mr. Cohen's newly
5 | retained counsel, Guy Petrillo, access to the Seized Materials.  [Cohen SDNY Action
6 | ECF No. 91.]  To date, Mr. Cohen's counsel in the civil litigations (*Clifford v. Trump*
7 | and *Clifford v. Davidson*), Brent Blakely, has not been given access to the Seized
8 | Materials.

9 |     On July 13, 2018, the Special Master confirmed that, on that day, "[a] release
10 | of 883,634 items that were not designated Privileged, Partially Privileged or Highly
11 | Personal by [Mr. Cohen], Intervenors or Special Master was made to the Government
12 | today."  [Cohen SDNY Action ECF No. 92.]

13 | ### III.    **Defendants' Position Regarding the Stay**

14 |     The events following the issuance of the Court's Stay Order on April 27, 2018
15 | should not change the Court's analysis set forth therein and, in fact, support an
16 | extension of the Stay Order.  Over the last several months, Mr. Cohen's legal team at
17 | McDermott Will & Emory engaged in a nearly around-the-clock review of the Seized
18 | Materials to identify privileged and/or confidential information that should be
19 | excluded from review by the Government in connection with its ongoing investigation
20 | of Mr. Cohen.

21 |     During that time, the Government was not permitted to substantively review
22 | any of the Seized Materials until after they were reviewed by Mr. Cohen's legal team
23 | (and others) and released by the Special Master.  This process is ongoing.  Thus, an
24 | extension of the stay is necessary to, among other things, allow the Government to
25 | complete its review of the Seized Materials and complete its investigation.

26 |     Moreover, Plaintiff's attempt to intervene in the Cohen SDNY Action and her
27 | involvement in the Government's investigation confirms that there is substantial
28 | overlap between this case and the ongoing investigation of Mr. Cohen, and that

1  Defendants would be severely prejudiced if the stay is lifted at this juncture.  A
2  summary of publicly available information regarding Plaintiff's involvement in the
3  Cohen SDNY Action and the Government's investigation is as follows:

### a.  Plaintiff's Appearances In The Cohen SDNY Action

5         Plaintiff's attorney, Michael Avenatti, appeared at multiple hearings in the
6  Cohen SDNY Action on behalf of Plaintiff, alternately as counsel for "Interested
7  Party Stephanie Clifford a/k/a 'Stormy Daniels'" (April 13, 2018, April 16, 2018 and
8  May 30, 2018, *see* ECF No. 51, Exs. 1-2, ECF No. 57-3, Ex. B) and as counsel for
9  "Intervenor Stephanie Clifford" (April 26, 2018, *see* Cohen SDNY Action ECF,
10 Minute Entry for 04/26/18).  As set forth in a planned Motion to Intervene posted to
11 Twitter by Plaintiff's counsel, Plaintiff sought to intervene on the basis that:

> Ms. Clifford has significant reason to believe that the government is in
> possession of materials that are protected  by her attorney-client privilege
> and settlement  communications privilege.  These materials are likely to
> include  not  only  Ms.  Clifford's  direct  attorney-client  communications
> between   her   and   Mr.   Davidson,   but   also   (1)   attorney-client
> communications  Mr. Davidson   improperly  shared  with  Mr.  Cohen  as
> reflected  in  e-mails,   text  messages,  and  possibly  audio  recordings,  (2)
> protected    settlement  communications  between  Mr.  Davidson  and  Mr.
> Cohen,  and  (3)  communications  between  Mr.  Davidson  and   Mr.  Cohen
> (i.e.  text  messages  and  e-mails)  relating  to  Ms.   Clifford  that  are  the
> property of Ms. Clifford pursuant to  California law.

[*See* https://twitter.com/michaelavenatti/status/989528885330087941?lang=en.]

      On April 30, 2018, the Court granted the Government's request, with the
consent of counsel for Plaintiff, to hold Plaintiff's motion to intervene in abeyance.
[Cohen SDNY Action ECF No. 35.]

On May 15, 2018, Mr. Avenatti filed a *Pro Hac Vice* application in the Cohen SDNY Action to appear as counsel for "Intervenor Stephanie Clifford." [Cohen SDNY Action ECF No. 49.]

On May 30, 2018, during a status conference in the Cohen SDNY Action, Judge Kimba Wood told Mr. Avenatti that if he were to be admitted *Pro Hac Vice* in that matter, he would have to "change [his] conduct" and "stop in its tracks [his] publicity tour" because "this conduct is inimitable [*sic*] to giving Mr. Cohen eventually a fair trial" and "could potentially deprive him of a fair trial by tainting a jury pool." [ECF No. 57-3, Ex. B, 5/30/18 Transcript, pp. 27:12-28:13.] Mr. Avenatti withdrew his *Pro Hac Vice* application the same day. [Cohen SDNY Action ECF No. 68.]

### b.  Plaintiff's Scheduled Interview With The Government

On June 24, 2018, *CNN* published an article reporting that a meeting between Plaintiff and the Government was scheduled the following day[3], stating:

> Stormy Daniels will be interviewed by federal prosecutors from the Southern District of New York on Monday as part of their probe into President Donald Trump's former personal attorney, Michael Cohen, according to a source familiar with the investigation.
>
> The source said the meeting is scheduled in advance of Daniels' grand jury testimony. The adult film actress has been cooperating with investigators for several months and has been in regular contact with them, the source added.
>
> Daniels' lawyer, Michael Avenatti, and a spokesman for the U.S. Attorney's Office in Manhattan declined to comment.
>
> One focus of the questioning for Daniels is expected to be the $130,000

---

[3] This article followed an article by *The Washington Post*, which, according to *CNN*, first reported the scheduled interview.

1   payment she received from Cohen in 2016 in exchange for her silence
2   about an alleged sexual encounter she had with Trump about a decade
3   earlier, which Trump denies

4   Daniels was subpoenaed by prosecutors as part of the Cohen
5   investigation, the source said, and she provided authorities with
6   documentation about the $130,000 payment. The Washington Post first
7   reported the interview.

8   [*See* https://www.cnn.com/2018/06/24/politics/stormy-daniels-trump-cohen-
9   investigators-interview/index.html.]

10   Later that night, the Government cancelled the interview with Plaintiff because
11   it was leaked to the press.  At 8:02 p.m. on June 24, 2018, Plaintiff's counsel,
12   Michael Avenatti, Tweeted the following regarding the cancellation:

13   So I was just informed by the US Attys office that they are canceling the
14   mtg tmrw scheduled with me and my client (for weeks) because the press
15   found out about the mtg and they can't handle a few cameras outside
16   their offices. If they consider this a big deal, how will they ever bring any
17   serious criminal charges against Cohen et al., let alone handle a trial, in
18   such a high profile matter? We have bent over backwards to
19   accommodate them. This is unheard of. We remain willing to cooperate
20   but something isn't right...

21   [*See* https://twitter.com/MichaelAvenatti/status/1011082062483394560.]

22   In a subsequent Tweet at 9:32 p.m. on June 24, 2018, Mr. Avenatti tweeted
23   again, stating:

24   Here is the email that we sent to the US Attys office after they first stated
25   their intention to cancel the meeting because they were concerned about
26   a few cameras outside. They don't appear to have the stomach for a case
27   of this magnitude unfortunately.

28   [*See* https://twitter.com/MichaelAvenatti/status/1011104912825077761.]  The email

referenced by Mr. Avenatti in this Tweet stated, in part:

> We have gone to great lengths to accommodate this meeting (that your office requested) and we are prepared to proceed as scheduled tomorrow.
>
> …
>
> Your office repeatedly stated that you want to proceed with the investigation as quickly as possible.  If true, then you should proceed with the meeting, which has been scheduled for weeks. …
>
> In sum, we see no reason to cancel the meeting, which we understood was important to your investigation.

[*Id*.]

Thereafter, *CNN* published an article quoting from a response to Mr. Avenatti's email by Assistant U.S. Attorney Nicolas Roos, which stated that the meeting was cancelled because Mr. Avenatti leaked it to the press.  The article stated, in part:

> According to a fuller email exchange shared by Avenatti, Assistant US Attorney Nicolas Roos responded that the meeting was canceled because "we have learned that you leaked to the press the fact and location of our meeting with your client."
>
> "Such leaks are inappropriate in and of themselves, and more importantly, call into question your commitment to maintaining the required confidentiality of the substance of our meeting with your client," Roos said. "Such confidentiality is critical to the diligence, fairness, and integrity of this, and indeed all, investigations conducted by this Office. For these reasons we have cancelled our meeting, and will reassess how to proceed."

[*See* https://www.cnn.com/2018/06/24/politics/stormy-daniels-interview-canceled/index.html.]

**c. Plaintiff's refusal to provide information about Clifford's Involvement in the SDNY Investigation**

During the preparation of this Joint Report, Defendant Cohen's counsel requested that Plaintiff provide information pertaining to Clifford's involvement with the SDNY investigation and Mr. Avenatti's recent statement that Mr. Cohen would be arrested by the end of the Summer.  Specifically, Defendant Cohen requested, in writing, the subpoena served on Ms. Clifford, any communications between Clifford/Avenatti and the U.S. Attorney's Office, and the basis for Mr. Avenatti's statement.  Plaintiff refused to provide any such information, which would be relevant to the overlap between the criminal and civil proceedings, on the basis that it would purportedly interfere with the criminal investigation.  However, as discussed above, it is reasonable to conclude that Plaintiff and her counsel have no problem disclosing such communications with the media so long as it serves their purpose.  Given the extensive communications between Clifford's counsel and the government, it is reasonable to conclude that Clifford knows more about the overlap between this case and the investigation than Cohen does at this stage of the proceedings.

**d. Conclusion**

This Court has already considered, and rejected, the arguments contained in Section IV, Plaintiff's Position Regarding the Stay.  As this Court held: "…as the alleged mastermind behind the Agreement and **the person with the most direct knowledge of the facts and circumstances surrounding its formation,** [Mr. Cohen's] testimony would be **indispensable to the disposition of this action**."  [Stay Order, p. 7, ECF No. 53.] (Emphasis added.)For the reasons stated in this Joint Status Report, the Stay Order [ECF No. 53], Defendants' Joint *Ex Parte* Application for Stay and supporting papers [ECF Nos. 38, 40, 50], Defendants' Opposition to Plaintiff's Motion for Reconsideration of the Stay Order [ECF No. 57], and the Court's Order denying the Motion for Reconsideration [ECF No. 63], there remains good cause for

this matter to be stayed and Defendants respectfully request that the Court extend the stay for another ninety (90) days.

### IV.  Plaintiff's Position Regarding the Stay

Plaintiff contends that the stay should be lifted.  Mr. Cohen has not been indicted.  Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 889, 903 (9th Cir. 1989) (case for staying civil proceedings is "far weaker" when no indictment has been returned); Perez v. Cty of Los Angeles, No. CV 15-09585 SJO (FFMx), 2016 WL 10576622, at *3 (C.D. Cal. May 3, 2016) (there is "no basis in either law or reason to create" a rule that civil litigation should be stayed based on the mere "**possibility** of bringing criminal charges . . .") (Otero, J.).  Although it has been more than three months since the FBI raised Mr. Cohen's home, office, and hotel room, Mr. Cohen has been unable to demonstrate *with actual evidence* that the government is investigating him for his conduct in relation to his representation of Mr. Trump with regards to the October 2016 non-disclosure and settlement agreement (the "Agreement"), and $130,000 payment, that are at issue in this lawsuit.

The mere fact that records pertaining to Plaintiff were seized by the government does not establish that Mr. Cohen is actually being investigated for committing crimes that have a relation to his conduct vis-à-vis Plaintiff.  By that logic, Mr. Cohen is being criminally investigated for every person and company referenced in the millions of records seized by the FBI based on the mere fact alone that Mr. Cohen sent an e-mail, wrote a letter, or made a recording that mentions said person or company.  Such an assertion would be absurd.  Instead, Mr. Cohen must be held to his evidentiary burden.

There is no reason why he would not be capable of meeting this burden if, in fact, there was a factual basis to assert that the government was investigating Mr. Cohen for his conduct with regards to the Agreement and $130,000 payment.  Mr. Cohen's criminal counsel has presumably had regular contact with the U.S. Attorney's office for the Southern District of New York and is kept apprised of

1  developments in the investigation.  That information is then shared with Mr. Cohen's

2  counsel in the present case.  Tellingly, Mr. Cohen's update includes no reporting of

3  information suggesting that Mr. Cohen and his legal team have an actual belief that

4  Mr. Cohen will be criminally charged for his work on the Agreement and $130,000

5  payment.  Instead of updating the Court with relevant developments, Mr. Cohen

6  elected to regurgitate various public filings.  Moreover, not to be overlooked, Mr.

7  Trump and his attorney Rudy Giuliani have made it clear that Mr. Cohen is only

8  being investigated for matters relating to his "businesses" and not any legal work he

9  did for Mr. Trump, and that there was no campaign finance violation.  [Dkt No. 56-1

10 at 7-12, 14-16.]

11       Defendants' discussion concerning Plaintiff's counsel's appearances in the

12 SDNY action and the USAO-SDNY's cancellation of their interview with Plaintiff is

13 completely irrelevant.  It has nothing to do with the narrow question presently before

14 the Court, which is to decide whether the stay should be extended.  Defendants'

15 inclusion of this recitation instead is designed to create a sideshow in an unfortunate

16 attempt to impugn the character and credibility of Plaintiff's counsel before this

17 Court.  Plaintiff therefore does not intend to waste the Court's time on a "tit-for-tat"

18 exchange of words in this joint report in which the Court ordered the parties to limit

19 their discussion to issues relating to the progress of the criminal investigation.

20       With regards to Defendants' comments in section III(c), the government has a

21 compelling interest to conduct its criminal investigation without interference.  Mr.

22 Cohen is a clear target of the investigation.  Therefore, Defendants' demand,

23 unaccompanied by any legal authority, to disclose sensitive communications between

24 the government and Plaintiff is wholly improper.  Among other things, disclosure

25 would create a risk of tipping Mr. Cohen off to the subject matters involved in the

26 investigation and would thus clearly interfere with the work of the government.  But

27 more to the point, as noted above, Mr. Cohen and his attorneys are plainly in a better

28 position to know and share facts concerning the investigation, including whether Mr.

Cohen will be criminally charged for the work he did with regards to the Agreement and $130,000 payment.  No such information has been made available to Plaintiff or the Court, however.

Further, Plaintiff reiterates her proposal that the Court impose a partial stay by precluding the parties from conducting discovery from Mr. Cohen.  The Court may implement such a stay for 90 days, pending further developments from the SDNY investigation.  In the meantime, nothing should delay the parties from conducting other activities in the litigation, including but not limited to, document discovery, deposition discovery of any witness other than Mr. Cohen, and the setting of the Federal Arbitration Act section 4 jury trial and other case management deadlines.  There should also be no delay with regards to resolving Plaintiff's renewed motion for expedited discovery and jury trial.  [Dkt No. 29.]  No prejudice to Mr. Cohen will result.  Because he will not be required to answer questions at a deposition under oath, his Fifth Amendment rights will remain intact with no risk of intrusion.  Moreover, even though a date for the FAA jury trial may be set, the Court may implement safeguards to ensure (if necessary) that the trial will not proceed until there is clarity concerning whether Mr. Cohen will be indicted for his activities relating to the Agreement and the $130,000 payment.[4]

_____

[4] To be clear, Plaintiff does not believe Mr. Cohen has an affirmative legal right to a stay even if it means that he would have to take the stand and assert the Fifth Amendment privilege before the jury.  That is because "[n]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, *even if that necessitates invocation of the Fifth Amendment privilege*, but it is even permissible *for the trier of fact to draw adverse inferences* from the invocation of the Fifth Amendment in a civil proceeding." <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322, 326 (9th Cir. 1995) (emphasis added).  However, the Court need not decide at this time whether the trial should actually proceed without Mr. Cohen's testimony.  The point is that the parties should not be delayed in their ability to conduct all other discovery and litigate the remainder of the case right up to the point at which the parties are prepared to try the arbitrability dispute.

Finally, Plaintiff believes that a stay should not be renewed for all of the reasons discussed in her Opposition to Defendants' Joint *Ex Parte* Application to Stay Action [Dkt No. 39], Response to Declaration of Michael D. Cohen Filed in Support of Defendants' Joint *Ex Parte* Application for Stay [Dkt No. 52], Motion for Reconsideration in Part of Order Imposing Stay [Dkt No. 56-1], and Reply in Support of Motion for Reconsideration in Part of Order Imposing Stay [Dkt No. 59], which are all incorporated herein by this reference.

In sum, although Defendants framed their initial request for a stay as a mere temporary measure that would only last for a mere 90 days, it should now be clear to the Court that this in reality this is not, and never has been, Defendants' true intention. On the contrary, Defendants seek an indefinite stay. This serves their interests nicely by permitting them to avoid having to litigate a case that contains many uncomfortable facts and continues to give them a convenient basis to publicly assert that the Agreement is valid, remains enforceable as to Plaintiff, and requires arbitration. To compound the problem, nothing outlined in Defendants' position statement places any end-point on the period during which the stay should remain in effect, nor do Defendants even identify a milestone by which it will be clear whether a stay is necessary. Instead, under the logic and rationale presented to the Court, a stay would be justified during the entire period of the review and investigation, and until after Mr. Cohen is charged, discovery is conducted, he is tried, post-trial motions are resolved, and all of his appeals are exhausted. This process may take **years**. Plaintiff should not have to wait and sit on her hands indefinitely to receive justice. This is particularly true where, as here, it is undisputed that Mr. Cohen does not possess a constitutional right to a stay. <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322, 326 (9th Cir. 1995) (there is "no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege."); <u>Molinaro</u>, 889 F.2d at 889 (stay of civil proceedings pending the outcome of parallel criminal proceedings "is not required by the Constitution.")

1    Dated: July 17, 2018                  BLAKELY LAW GROUP

2

3                                       By:  */s/ Brent H. Blakely*

4                                           BRENT H. BLAKELY

                                            Attorneys for Defendants

5                                           ESSENTIAL CONSULTANTS, LLC and

6                                           MICHAEL COHEN

7    Dated: July 17, 2018                   HARDER LLP

8

9                                       By:  */s/ Charles J. Harder*

10                                        CHARLES J. HARDER

                                            Attorneys for Defendant

11                                          DONALD J. TRUMP

12

13    Dated: July 17, 2018                   AVENATTI & ASSOCIATES, APC

14                                       By:  */s/ Michael J. Avenatti*

15                                        MICHAEL J. AVENATTI

                                            Attorneys for Plaintiff

16                                        STEPHANIE CLIFFORD

17

18        Pursuant to Local Rule 5-4.3.4, I Brent H. Blakely, hereby attest that all other

19 signatories to this Joint Report, and on whose behalf it is submitted, concur in its

20 content and have authorized its filing.

21 Dated: July 17, 2018                                 /s/ Brent H. Blakely

22                                              BRENT H. BLAKELY

23

24

25

26

27

28

JOINT REPORT ON STATUS OF CRIMINAL PROCEEDINGS