1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3         HONORABLE S. JAMES OTERO, U.S. DISTRICT JUDGE

4

5   STEPHANIE CLIFFORD a.k.a. STORMY       )
    DANIELS a.k.a. PEGGY PETERSON, an      )
6   individual,                            )
                                           )                  Case No.
7                    Plaintiff,            )   2:18-CV-02217-SJO-FFM
                                           )
8        vs.                               )
                                           )
9   DONALD J. TRUMP a.k.a. DAVID           )
    DENNISON, an individual, ESSENTIAL     )
10  CONSULTANTS, LLC, a Delaware Limited   )
    Liability Company, MICHAEL COHEN, an   )
11  individual, and DOES 1 through 10,     )
    inclusive,                             )
12                                         )
                     Defendants.           )
13  _____ )

14

15

16                REPORTER'S TRANSCRIPT OF
                        PROCEEDINGS
17               FRIDAY, JULY 27, 2018
                        9:02 A.M.
18              LOS ANGELES, CALIFORNIA

19

20

21

22  _____

23       CAROL JEAN ZURBORG, CSR NO. 7921, CCRR, RMR
              FEDERAL OFFICIAL COURT REPORTER
24           350 WEST 1ST STREET, SUITE 4311
            LOS ANGELES, CALIFORNIA 90012-4565
25                   (213) 894-3539


                UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | **APPEARANCES OF COUNSEL:** |
| 2 | |
| 3 | **FOR THE PLAINTIFF:** |
| 4 | AVENATTI & ASSOCIATES<br>BY:  MICHAEL J. AVENATTI |
| 5 | BY:  AHMED IBRAHIM<br>    Attorneys at Law |
| 6 | 520 Newport Center Drive, Suite 1400<br>Newport Beach, California 92660 |
| 7 | (949) 706-7000 |
| 8 | |
| 9 | **FOR THE DEFENDANT DONALD J. TRUMP:** |
| 10 | HARDER LLP<br>BY:  CHARLES J. HARDER |
| 11 | BY:  RYAN J. STONEROCK<br>    Attorneys at Law |
| 12 | 132 South Rodeo Drive, Fourth Floor<br>Beverly Hills, California 90212 |
| 13 | (424) 203-1600 |
| 14 | **FOR THE DEFENDANTS ESSENTIAL CONSULTANTS, LLC and MICHAEL COHEN:** |
| 15 | |
| 16 | BLAKELY LAW GROUP<br>BY:  BRENT H. BLAKELY |
| 17 | BY:  JESSICA COVINGTON<br>    Attorneys at Law |
| 18 | 1334 Park View Avenue, Suite 280<br>Manhattan Beach, California 90266 |
| 19 | (310) 546-7400 |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1            **LOS ANGELES, CALIFORNIA; FRIDAY, JULY 27, 2018**

2                        **9:02 A.M.**

3                        --oOo--

4        THE COURTROOM DEPUTY:  Calling Item No. 1:

5  Case number CV 18-02217 SJO; Stephanie Clifford versus

6  Donald J. Trump, et al.

7      Everyone in the audience can be seated.

8      Counsel, please state your appearances.

9        MR. AVENATTI:  Good morning, Your Honor.  Michael

10  Avenatti on behalf of the plaintiff.

11        MR. IBRAHIM:  Good morning, Your Honor.  Ahmed

12  Ibrahim on behalf of plaintiff.

13        THE COURT:  Good morning.

14        MR. BLAKELY:  Good morning, Your Honor.  Brent

15  Blakely on behalf of Essential Consultants and Michael Cohen.

16        THE COURT:  Good morning.

17        MS. COVINGTON:  Good morning, Your Honor.  Jessica

18  Covington on behalf of Essential Consultants and Michael Cohen.

19        MR. HARDER:  Good morning, Your Honor.  Charles

20  Harder on behalf of President Donald Trump.

21        MS. COVINGTON:  And good morning, Your Honor.  Ryan

22  Stonerock on behalf of defendant Donald J. Trump.

23        THE COURT:  Good morning.  Everyone, please have a

24  seat.

25      So the matter is on calendar today regarding Mr. Cohen's

**UNITED STATES DISTRICT COURT**

1    application for restraining order to prohibit or prohibiting

2    Mr. Avenatti from making certain statements to the media or the

3    public.  The Court has reviewed all of the documents and

4    pleadings that have been filed here, paying particular

5    attention to the various exhibits.

6         In the application to the court, Mr. Cohen claims that

7    commencing on or about the 7th of March 2018, after the subject

8    litigation was removed to this court, Mr. Avenatti has engaged

9    in a deliberate campaign and a continuous campaign to litigate

10   the matter not in this court but before the court of public

11   opinion.

12        Mr. Cohen has cited approximately 170 appearances

13   Mr. Avenatti has made before news shows and network news shows,

14   and then has mentioned or referenced approximately 500 tweets

15   that Mr. Avenatti has issued concerning the subject matter of

16   this case and other proceedings.

17        The claim is Mr. Avenatti regularly disparages Mr. Cohen

18   in the various documents that have been provided to the court.

19   There's certainly some support for the claim.  Mr. Avenatti has

20   referred to Mr. Cohen as -- in one instance as a moron,

21   accusing Mr. Cohen in engaging in illegal acts, selling access

22   to the Russians, and being a screw-up as a fixer.  So those are

23   opinions that Mr. Avenatti has shared on public media.

24        And then also there's a claim that Mr. Avenatti obtained

25   or possibly illegally obtained certain financial documents of

1    Mr. Cohen and others with the last name of Cohen and then

2    disclosed these documents to the public.

3        So the claim here from Mr. Cohen is that Mr. Avenatti's

4    comments in the past and continued comments are likely to have

5    a materially prejudicial effect on Mr. Cohen's right to a fair

6    trial, and there's a claim that all of this is also violative

7    of the state bar Rules of Professional Conduct, in particular,

8    Rule 5-120.

9        So there are certain important legal issues here that need

10   to be addressed.  And so let's start with -- let's start with

11   the standard that applies to the requested restraining order.

12   So the parties have referenced in the pleadings certain cases

13   that are applicable to the issue before this Court.

14       The seminal case in the Ninth Circuit for imposing a

15   public comment gag order on an attorney during the pendency of

16   a litigation or lawsuit is *Levine*.  And in *Levine*, the Court

17   applied -- what appears to have applied a clear and present

18   danger standard and held that a gag order on counsel may only

19   be imposed if the speech to be restrained poses a clear and

20   present danger or a serious and imminent threat to a protected

21   interest.

22       Six years later following *Levine*, in *Gentile*, it appears

23   that the Supreme Court lowered the standard that was applied in

24   *Levine*.  And in *Gentile*, the Supreme Court articulated a lower

25   standard.  The Supreme Court referenced in *Gentile* the speech

of lawyers representing clients in pending cases may be regulated under a less-demanding standard than the clear and present danger of actual prejudice or imminent threat standard established for regulation of press during the pending proceedings.

The court goes on to reference that a lawyer's right to free speech is extremely circumscribed in the courtroom, and in the pending case is limited outside the courtroom as well.  And then the court went on to hold that the substantial likelihood of material prejudice standard is a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the state's interest in fair trials.

So from my reading of *Gentile*, it appears that the standard has been lowered, at least as referenced in *Gentile*. I would just offer that *Gentile* is a bit of a different case. Justice Kennedy delivered the opinion of the court with respect to parts 3 and 6, and then Justice Rehnquist delivered the opinion of the Court with respect to parts 1 and 2, and there were concurring opinions offered and delivered by the other justices.  So it doesn't appear that the -- that all of the justices saw all of the issues the same.

So following *Gentile*, the constitutionality of a gag order in a civil proceeding was addressed by the Ninth Circuit again, and that's the *Dan Farr* case, which has been cited in the

1    pleadings.  And in the *Dan Farr* case, it appears, from my

2    reading of the *Dan Farr* case, that the Ninth Circuit recognized

3    that the lower standard enunciated in *Gentile* applies to the

4    issue presented to the Court today and not the higher standard

5    of clear and present danger initially articulated by the Ninth

6    Circuit in *Levine*.

7        So just a very quick question.  I recognize that the

8    burden here is on the moving party, but a very quick question

9    to Mr. Avenatti, and the question to Mr. Avenatti is:  Do you

10    agree that the lower standard articulated in *Gentile* is the

11    standard that applies in the proceedings before this Court?

12    And it's really a "yes" or "no" response.

13        MR. AVENATTI:  Yes, Your Honor.

14        THE COURT:  Okay.  That's simple.  And that's the

15    position that Mr. Blakely has taken in the reply, so that's --

16    that is easily addressed.

17        So we go on to, I think, some very important issues.  So

18    the question for Mr. Blakely.

19        Mr. Blakely, in -- let me find it.

20        Mr. Blakely, in many of the cases that you cite in support

21    of your proposition that the less stringent test for prior

22    restraint articulated in *Gentile* applies to the instant matter,

23    the cases that you cite do not address the constitutional

24    standard for prior restraint.  They appear to be cases that

25    deal with attorneys who had been sanctioned for extrajudicial

1  statements already made, and this is a prior restraint case.

2        So you've cited in your reply brief, for example, and I'm

3  looking at your reply brief on page 2, you cited *Wunsch,* that's

4  W-u-n-s-c-h; you cited *Yagman*; and you cited *Zal*.  And as I

5  read these cases, all of these cases involve discipline imposed

6  on attorneys for statements or conduct already made.

7        In this proceeding you're asking this Court to issue an

8  order going forward to preclude Mr. Avenatti from making

9  statements not made.  So why did you cite these cases?  And is

10 there an important distinction regarding prior conduct or

11 statements by counsel and sanctions issued for that conduct as

12 opposed to conduct or statements going forward?

13        MR. BLAKELY:  Thank you, Your Honor.

14        Those cases were cited for the proposition and the courts

15 are stating that voir dire or -- voir dire or jury instructions

16 in many cases will not cure the prejudice.  And in this case --

17 the issue with this case, Your Honor, is, frankly, it's

18 unprecedented.  Never before in the legal system have we had

19 this level of press being driven by a party's counsel where the

20 other party's being maligned.  And so it ultimately is up to

21 your discretion as to what remedy, if any, Your Honor wants to

22 tailor.

23        THE COURT:  I think you may be missing my point.

24 Maybe I didn't articulate it clearly.  My point is that the

25 cases that you cited here, again, *Yagman*, *Wunsch*, *Zal*, *Caso*,

```
 1   these are all cases that have to do with judges or tribunals
 2   that sanction statements of counsel that were already made.
 3   What you're asking this Court to do is to silence Mr. Avenatti
 4   going forward.  And there's a clear distinction between the
 5   cases cited in the prior restraint order and what you're asking
 6   here.
 7            MR. BLAKELY:  Your Honor, I think the same principle
 8   as set forth by all these courts is applicable here in that
 9   there are two prongs here:  Mr. Cohen -- and Judge Wood
10   commented on this in the New York proceedings -- is entitled to
11   a fair trial and impartial jury, and that jury needs to decide
12   the case on what occurs inside the courtroom.
13            THE COURT:  So just to -- so that I understand it,
14   you do not see an important distinction between a sanction for
15   past statement and an order to silence an attorney's comments
16   going forward?  There's no distinction?
17            MR. BLAKELY:  I don't, Your Honor, because --
18            THE COURT:  I'm sorry, I didn't hear you.
19            MR. BLAKELY:  I don't, Your Honor.
20            THE COURT:  You do not see a distinction?
21            MR. BLAKELY:  I -- frankly, Your Honor, what I'm
22   asking this Court to do under the test that Your Honor has just
23   articulated, to issue an order that plaintiff's counsel comply
24   with the Code of Professional Conduct.
25            THE COURT:  So let me just -- let me just absorb
```

1   this.  You do not see a distinction between -- an important

2   distinction between a sanction for past conduct or statements

3   by counsel and an order from this Court silencing a lawyer

4   going forward?  There's no distinction that you see?

5               MR. BLAKELY:  Your Honor, let me make it clear,

6   then.  Maybe I'm missing Your Honor's point, but my position

7   is --

8               THE COURT:  The point is prior restraint.

9               MR. BLAKELY:  I'm not asking this Court to punish

10  anybody for anything that has already occurred.  I'm asking

11  this Court to issue an order that will prevent my client from

12  being prejudiced --

13              THE COURT:  You're asking this Court to issue a

14  prior restraint order.

15              MR. BLAKELY:  Exactly, Your Honor.

16              THE COURT:  Yes.  And the case law makes it very

17  clear that prior restraint orders have to be carefully,

18  carefully considered.

19              MR. BLAKELY:  Well, I don't disagree with that at

20  all, Your Honor.

21              THE COURT:  And issued only in exceptional

22  circumstances.

23              MR. BLAKELY:  I think issued under the standard

24  Your Honor has just articulated, if there's a reasonable

25  probability that a jury could be tainted or my client could be

prejudiced because of these statements.

THE COURT:  All right.  Let's move on and discuss that issue.  So you've spent -- you have a 20-page brief and a 5-page -- 5- or 6-page reply.  And I've poured over your pleadings and looked at all of the cases, but you have spent much time describing and detailing the extensive publicity sought by Mr. Avenatti, but you have spent little time explaining how this publicity would affect Mr. Cohen's right to a fair trial in this case.

Now, let me just make a couple of comments in reference to Mr. Cohen's right to a fair trial.  There's no trial date has been set by this Court yet.  There's a stay that's been in effect.  You do mention that there is a pending motion to expedite the trial, but -- and I haven't focused as to the particulars of the case going forward, but it seems to me that the trial, if it does go forward, is a very narrow issue of the validity of the arbitration clause in an agreement between Mr. Trump, Ms. Clifford, and then the entity Essential Consultants.

Mr. Cohen is not named in that dec relief complaint.  He is not a party in the dec relief complaint, and the issue is very narrow.  I do recognize that there is another action involving a claim of defamation regarding Mr. Cohen, but at this stage, before we focus on his right to a fair trial, the Court has to address the pending motion to dismiss.

1    So please articulate for me how Mr. Cohen's right to a

2   fair trial in the case before this Court is going to be

3   impacted by the comments that have already been made by

4   Mr. Avenatti.

5            MR. BLAKELY:  Certainly, Your Honor.  And I suspect

6   we will get into this when we start talking about the status

7   conference on whether this Court extends the stay or not, but

8   you've got on one hand plaintiff taking the position that the

9   stay should be lifted and he should get an expedited --

10           THE COURT:  No, no, this is a very specific

11  question, and the question is -- I would like you to detail how

12  the prior comments made by Mr. Avenatti or the comments made by

13  Mr. Avenatti will impact Mr. Cohen's right to a fair trial in

14  the matter proceeding in this court, not in the matter

15  proceeding in New York, but the matter proceeding in this

16  court.

17           MR. BLAKELY:  Certainly, Your Honor.  If Your Honor

18  would lift the stay and have an expedited proceeding in this,

19  it would prejudice Mr. Cohen's rights.  And as Judge Wood

20  said --

21           THE COURT:  The proceeding here is a dec relief

22  complaint.

23           MR. BLAKELY:  I understand, Your Honor.

24           THE COURT:  And Mr. Cohen is not a party to that

25  complaint.

1          MR. BLAKELY:  He is the hundred percent owner of

2    Essential Consultants.  And as Your Honor, yourself, has stated

3    in your orders, he is the mastermind of the payment.

4          THE COURT:  He is not a party.  And if plaintiff

5    prevails on that case, what harm does -- let's assume that the

6    case goes forward.  Let's assume there's some type of jury

7    trial, and let's assume that the plaintiff prevails.  What harm

8    does Mr. Cohen suffer?  It's a dec relief complaint.

9          MR. BLAKELY:  It's his company.  If he loses the dec

10   relief claim, then they lose their ability to seek damages

11   against plaintiff for violating the settlement.

12         THE COURT:  He is not entitled to damages.  In fact,

13   if the plaintiff prevails, he may be entitled to the return of

14   $130,000.

15         MR. BLAKELY:  Well, I would argue that he is

16   entitled to damages, Your Honor, under the agreement.

17         THE COURT:  He is not a party.

18         MR. BLAKELY:  Through his company.

19         THE COURT:  Take a look at the agreement, and take a

20   look at the complaint.  I would beg to differ, but -- let me go

21   back to my question.  And please articulate how it's going to

22   affect his right to a fair trial, especially in a dec relief

23   action where he is not a party.

24         MR. BLAKELY:  If there's an expedited trial,

25   Your Honor, and plaintiff is asking for a jury in that trial,

1    then those jurors, the same people that are going up to my

2    client on the street who don't know anything about my client

3    and are saying, "You're going to jail for the rest of your

4    life.  You're a horrible person," and to his son, those are

5    potential jurors.

6              THE COURT:  Mr. Blakely, I share -- I share some of

7    Judge Wood's concerns regarding the comments that Mr. Avenatti

8    has made and the number of appearances he has made; I think

9    it's verified in your exhibits, that I think on CNN -- he's

10   appeared over 70 times on CNN within a short period of time.  I

11   share your concerns regarding that, and I share Judge Wood's

12   concerns regarding that, but the matter that the Court has to

13   look at or consider is the matter before this Court, not how

14   Mr. Avenatti's statements are going to affect Mr. Cohen in the

15   New York proceeding.  This Court has no jurisdiction over that

16   proceeding.

17             MR. BLAKELY:  And I'm not asking you to issue an

18   order in connection with that proceeding.  I am asking

19   Your Honor to issue an order in connection with the matters

20   that are before it.  And --

21             THE COURT:  But before the Court can do that, take a

22   look at the cases.  You have to -- you have to establish a

23   causal connection between the statements made by Mr. Avenatti,

24   statements going forward to be made by Mr. Avenatti and how

25   that is going to deny your client a fair trial in this case.

1    And your client is not even a named party to the dec relief

2    claim complaint.  The defamation is different.  But the

3    defamation -- even before we get to defamation, the plaintiff

4    has to survive the pending motion to dismiss.

5            MR. BLAKELY:  With that said, Your Honor -- and I

6    acknowledge that there's a lot of factors that Your Honor looks

7    at in order to exercise your discretion on whether or not to

8    issue such an order.  Obviously, if this was a criminal trial,

9    and we are on the very verge of a criminal trial, that would be

10   a factor weighing in favor of issuing such an order.

11           THE COURT:  It's not a criminal trial.

12           MR. BLAKELY:  I'm saying if it's a criminal trial,

13   that is -- from the case law I've looked at, that is a

14   consideration, or, you know -- but you also look at the degree

15   of the conduct.  And, again, Your Honor, it's unprecedented.

16   And not only is it unprecedented up to the point that we

17   provided our briefs and reply brief, it continues to today.

18        Just last week, Your Honor, plaintiff's counsel approached

19   my client in a restaurant and had, in his words, a lengthy and

20   frank discussion with him without my permission, and then last

21   Sunday on this week, falsely implied that we were providing

22   plaintiff's counsel with tapes when that was absolutely not

23   true.  And that would have been in violation of Judge Wood's

24   order sealing these documents.  So it's -- what I'm saying,

25   Your Honor, it's the degree of what's going on.

1          THE COURT:  Mr. Blakely, I understand the degree,

2     and, again, I think I already said that I share some of

3     Judge Wood's concerns, and she's expressed that, I think, very

4     eloquently in the matter before her.  I share that, but that's

5     not the end of the issue.

6          The issue -- you also have -- in order to get a prior

7     restraint gag order, you have to show a substantial likelihood

8     that the comments are going to have a prejudicial effect on

9     your client's right to a fair trial, and you haven't been able

10    to establish that.  Separate and apart from that, any order

11    that would be issued by the Court has to be narrowly drawn, and

12    the requested order in this case is very expansive.

13          MR. BLAKELY:  Your Honor, that -- sorry.

14          THE COURT:  Go ahead.

15          MR. BLAKELY:  That's the same language that's proved

16    up by *Levine*, by the Ninth Circuit, that said, "Look, these are

17    the factors that we would accept."  But with regard to those

18    factors -- I mean, obviously, this Court can narrowly tailor

19    whatever relief it deems appropriate under the circumstances,

20    but -- and, again, I'm not trying to -- because I think

21    Judge Wood did eloquently frame up the issue, is that -- and

22    she made a point, and I'm not looking at the exact quote, but

23    basically jurors' memories may fade over time.  And this may be

24    in connection with the defamation claims as well.

25          And, frankly, this probably crosses over into the

1    Clifford-Davidson case where my client has also been sued.  We

2    didn't file this in there, but jurors' memories may fade, but

3    the degree of the violations of the Code of Professional

4    Conduct here, this Court -- I would urge this Court to err on

5    the side of ensuring my client receives a fair trial, whether

6    it be in connection with an expedited proceeding.  And I

7    understand Your Honor's point, but my client owns that company.

8            THE COURT:  On a prior restraint case, sir, the

9    Court has to err on the side of making sure that the Court

10   doesn't issue an order that chills First Amendment rights going

11   forward.  Those are the most sacred of rights.

12           MR. BLAKELY:  And I understand that, Your Honor.

13           THE COURT:  And in exceptional circumstances the

14   Court can grant the order that you're requesting, but you

15   haven't been able to even articulate how your client is going

16   to be denied a fair trial in this proceeding.

17           MR. BLAKELY:  I think with regard to the statements

18   plaintiff's counsel is stating, it's also like a slander, per

19   se, standard.  They are presumptively harmful to my client.

20   And this is not about, in any way, suppressing the truth.  This

21   is actually --

22           THE COURT:  Mr. Blakely, we are two ships passing in

23   the night.  We are not seeing it eye to eye.  If Mr. Avenatti

24   makes comments or statements -- extrajudicial comments or

25   statements that are violative of the Rules of Professional

1    Conduct, we have a standing committee in the Central District.

2    After the fact, if there is a violation, those violations can

3    be sent to the standing committee for further review, as they

4    were in the *Yagman* case where Mr. Yagman was sanctioned and

5    those sanctions were upheld, but that's after the fact.  And

6    you're asking this Court to impose a prior restraint order, and

7    I'm not sure you appreciate the significance of the order that

8    you're asking the Court to issue.

9              MR. BLAKELY:  Your Honor, I actually do.  And my

10   only thought on that -- and, again, I understand everything

11   that's in play, and I don't think we're passing on this,

12   actually.  My only thoughts were -- or is when do you -- I

13   mean, at what point does he stop?  Like a week before a trial

14   on the defamation claim?  A week before -- I mean, when does --

15   that's an issue as well.  I mean, when -- you know, when does

16   this Court say, "Okay.  Enough is enough"?  And my argument

17   would be, Your Honor, that has already occurred.

18             THE COURT:  That is not the issue.  Again, we are

19   not seeing it correctly, and I'm not sure that you really

20   appreciate the significance of the order that you're asking

21   this Court to issue.  And I say that in part because of a

22   comment that you made in your reply.  I'm looking for your

23   reply.

24        In your reply brief you make a comment -- let me find it.

25        In your reply brief you say that Mr. -- referring to

1   Mr. Avenatti, you reference that:  "Like a small-time" -- "Like
2   a small-town carnival magician who attempts to confuse the
3   audience with smoke and mirrors, Mr. Avenatti attempts to
4   somehow justify his conduct by pulling the First Amendment out
5   of his tiny bag of tricks."
6        And the constitutional lawyers who may be in this room
7   today I would think would take umbrage with that comment
8   because the constitution is the highest law of the land, and it
9   is neither a trick or an illusion.  And Mr. Avenatti has an
10  absolute right to raise these very important constitutional
11  issues, especially in reference to the type of order you are
12  requesting that this Court issue.  And so this is serious
13  business.
14           MR. BLAKELY:  May I respond to that, Your Honor?
15           THE COURT:  Yes.
16           MR. BLAKELY:  And these are issues that I have been
17  dealing with my entire career.  This Court need look no further
18  than the *Downey versus Abercrombie & Fitch* ruling by the
19  Ninth Circuit in 2001, which I prevailed on, where in a
20  rightful publicity case someone was trying to cloak
21  misappropriation under the First Amendment.  And, yes, there
22  were First Amendment issues involved, but at the end, it was a
23  theft, and the Ninth Circuit agreed with me.
24       There are limitations to the First Amendment, and there's
25  a limitation -- the courts -- every state in this country has

1    issued a rule similar to our rule in California which prevents

2    trial publicity, and there's a reason for that:  It prejudices

3    jurors, and it undermines the integrity of the system.

4        It's just like when we learn in law school, yes, the

5    First Amendment is very broad and important, but you can't yell

6    "Fire" in a movie theater.  I get the situation, Your Honor.  I

7    litigated this in the Ninth Circuit on numerous occasions, and

8    I respect and understand it here.  I think under this

9    situation, my client has a very real likelihood of being

10   prejudiced in any proceeding before this Court, and that's why

11   I brought the motion.

12            THE COURT:  That's your belief, but you haven't been

13   able to substantiate or articulate the ground for it.  You

14   cited the Ninth Circuit.  Well, let me cite the Supreme Court

15   in *Nebraska Press*, and let me paraphrase the Supreme Court.

16   Prior restraints are the most serious and least tolerable

17   infringement on First Amendment rights, and that is the concern

18   that the Court has in this case and in reference to your

19   request.

20            MR. BLAKELY:  And that was in the context of

21   parties, not attorneys, in a case.  This is different.  *Gentile*

22   addressed that, and the Ninth Circuit has now addressed that.

23   It's a much lower standard.  And the legislature of California

24   and every other state in the country has issued rules governing

25   this kind of conduct.

1           THE COURT:  Anything else that you have to offer?

2           MR. BLAKELY:  Nothing, Your Honor.

3           THE COURT:  Any comments, Mr. Avenatti?

4           MR. AVENATTI:  Yes, Your Honor.

5      Your Honor, one point of clarification for the record, we

6  would like to know if the president is joining in the motion,

7  if we could get an answer as to whether the president is

8  joining in the motion or not.  I don't think that's clear from

9  the record.

10           THE COURT:  Do you have any other comments to make?

11           MR. AVENATTI:  Yes, Your Honor, I do, actually.  I

12  want to bring a couple of things to the attention of the Court,

13  if I could.

14           THE COURT:  Yes.  The issue here or on the status of

15  the stay?

16           MR. AVENATTI:  Well, I'm happy to get to the stay.

17  I didn't know we were there yet, but I would like to address

18  this issue of the attempted gag order.

19           THE COURT:  Yes.

20           MR. AVENATTI:  Okay.  Your Honor, just last night

21  Rudy Giuliani, the president's attorney, said this about

22  Michael Cohen on CNN, on Chris Cuomo's show.  He called him,

23  quote, a pathological liar, close quote; quote, an incredible

24  liar who's got a tremendous motive to lie now because he's got

25  nothing to give.  He continued:  "He has lied all his life.  A

1    person who is found to be an incredible liar.  He's got a

2    tremendous motive to lie now.  I don't think anyone believes

3    that.  I expected something like this from Cohen.  He's been

4    lying all week or for two weeks.  He's been lying for years."

5         He then went on to add, and this is very important for the

6    record, Your Honor, quote, there's no doubt in my mind that

7    he's just not credible.  I would not accept him as a witness as

8    a prosecutor.  This is the kind of witness that can really

9    destroy your whole case because any finder of fact -- I'm going

10   to repeat that, any finder of fact loses confidence in the case

11   when you rely on a guy like this, when you rely on a guy where

12   before you're finished with him, you're going to have to --

13   you're going to have such a string of lies, you just can't

14   trust him, close quote.

15        Those were Rudy Giuliani's comments last night,

16   Your Honor, on CNN, who represents, along with Mr. Harder, the

17   president of the United States, talking about Mr. Cohen.  So if

18   we're going to have a discussion about potential prejudice of a

19   juror, a finder of fact, we need to incorporate these comments

20   that the president's own attorney stated on national television

21   last night relating to Mr. Cohen.

22        Evidently Mr. Cohen and Mr. Blakely aren't too concerned

23   about the president's and his lawyer's comments relating to

24   Mr. Cohen, which is why in the unlikely event this Court were

25   to issue an order restraining my speech, that should extend to

1    Mr. Giuliani and Mr. Trump.

2           THE COURT:  I think I probably made it clear that

3    I'm probably not going to issue the order requested.  And

4    Mr. Giuliani is not a lawyer involved in a matter in this

5    court, and I recognize -- I recognize the irony of the request

6    by Mr. Cohen in this matter before me today.  Mr. Cohen is

7    accusing you, through Mr. Blakely, of violating the Rules of

8    Professional Conduct that apply to lawyers.

9        It was reported not long ago that Mr. Cohen secretly

10   recorded telephone conversations or other conversations with

11   clients.  Now, I recognize that any violation of the Codes of

12   Professional Conduct that apply to Mr. Cohen are not at issue

13   here, but the irony of all of this does not escape me.  It's an

14   interesting, interesting case.

15          MR. AVENATTI:  And, Your Honor, I'm going to do my

16   best not to snatch defeat from the jaws of victory.  I want

17   to make two quick points --

18          THE COURT:  If you keep it up, you may.

19          MR. AVENATTI:  I might.  You're right.

20       It's a fine line, Your Honor.  I want to address for the

21   record -- and I know also because we have a lot of folks here

22   that are interested in these proceedings -- two points that

23   were made by Mr. Blakely:  first of all, Your Honor, there is

24   no evidence at all before this Court, or anywhere else for that

25   matter, that I obtained any documents or information illegally

1   relating to Mr. Cohen's bank accounts or otherwise.

2       In fact, Your Honor, as an officer of the court, I will

3   represent that I have not received a single inquiry from any

4   governmental body relating to my acquisition of such

5   information or publication of such information.  And to the

6   best of my knowledge, I'm not under any investigation at all

7   from any governmental body relating to that information.  And I

8   will make that representation as an officer of the court, so

9   that's number one.

10      Number two, this run-in that I had with Mr. Cohen in a

11  New York restaurant, at no point --

12          THE COURT:  Mr. Avenatti, these are matters not

13  before the Court, and --

14          MR. AVENATTI:  Well --

15          THE COURT:  -- I respect that you're interested in

16  stating your position here regarding that matter, but it's not

17  an issue or a fact that's really important to the issues before

18  me.

19          MR. AVENATTI:  Thank you.

20          THE COURT:  Thank you.

21      Any other comments by any other counsel?

22      Okay.  The matter stands under submission.

23      And then we have to get to the issue regarding the stay.

24  So I've read the joint status report regarding the stay, and

25  Mr. Cohen or Mr. Blakely would like the stay to remain in

1    effect, and Mr. Avenatti would like the stay to be vacated and

2    set aside and the matter proceed and go forward.

3         The joint status report was filed on July 17th.  Any other

4    additional developments that have taken place after July 17th

5    that the Court should be aware of?

6              MR. BLAKELY:  Yes, Your Honor.  I think we already

7    spoke about plaintiff's involvement in the New York proceeding.

8    Just yesterday it's been reported that Allen Weisselberg,

9    Trump's accountant, has been subpoenaed to testify in the Cohen

10   investigation regarding the payments, so that would be more

11   evidence of overlap.  And I think Mr. Avenatti's recent

12   prediction that Cohen would be arrested by the end of the

13   summer, it's hearsay, but I guess it's an admission.

14        So those are the only really new facts, Your Honor, that

15   are not in the joint report.

16             THE COURT:  Okay.

17             MR. AVENATTI:  Your Honor, first of all, the report

18   is that the accountant was subpoenaed for grand jury testimony.

19   No one knows what the scope of that testimony is likely to be.

20   So counsel's representation that he was subpoenaed about the

21   payments, which I believe he's suggesting we're talking about

22   the payment in this case, there's no evidence of that

23   whatsoever.  There's no reference reporting from any unnamed

24   source or otherwise that that accountant is expected to testify

25   about the $130,000 paid by Essential Consultants.  There's no

1    evidence of that whatsoever.

2        Development since the filing of the joint report,

3    Your Honor, I understand that Mr. Perillo, Guy Perillo, who is

4    the defense attorney that's representing Michael Cohen in the

5    matter before the SDNY prosecutors, my understanding, that he's

6    in regular contact with the prosecutors, and they are

7    negotiating a plea agreement.  That's my understanding.  And

8    yet, the continued application for the stay is silent as to

9    that issue.

10       Mr. Perillo, Mr. Cohen and Mr. Blakely know exactly what

11   that investigation is about, and they have far more insight

12   into the likely charges to be brought against Michael Cohen

13   than we do, than the Court does, yet the continued request for

14   the stay doesn't speak to any of that, and it could have spoke

15   to and it should have spoke to all of it.  They have not met

16   their burden for a continued stay in this case.

17       Furthermore, Your Honor, I cited to you Mr. Giuliani's

18   comments last night completely undercutting Mr. Cohen, which

19   calls into question why the case has to be stayed as it relates

20   to the president, as it relates to Mr. Cohen's testimony.  How

21   can the president now rely on Mr. Cohen's testimony in this

22   case if these are the statements by Mr. Giuliani relating to

23   the credibility of Mr. Cohen?  It doesn't make any sense

24   whatsoever.

25       Furthermore, just this morning, Your Honor, about three

1   and a half hours ago, the president sent out a tweet -- a

2   defendant in the case sent out a tweet to 51 million people

3   calling into question Michael Cohen's credibility and

4   suggesting that the charges have to do with his taxi cab

5   business, not this case, not the $130,000 payment, the taxi cab

6   business.  So how can the president argue for a continued stay

7   in light of these public statements that he's made and

8   Mr. Giuliani?

9        Furthermore, Your Honor, it's their burden.  They haven't

10  met their burden for a continued stay.

11       I can also represent, as an officer of the court,

12  Your Honor, that my client has not received any subpoena for

13  grand jury testimony whatsoever.  If, in fact, that

14  investigation centered on the $130,000 payment and the NDA at

15  issue here, we would have expected that she would have received

16  a subpoena for grand jury testimony.

17       In fact, Your Honor, based on my communications with the

18  prosecutors in SDNY I have reason to believe that investigation

19  has nothing to do with the $130,000 payment to my client.  In

20  fact, from my perspective, reading the tea leaves, I don't even

21  know if they are investigating the $130,000 payment from a

22  campaign finance violation.  If they are investigating it, they

23  appear to be in the very, very, very infant stages of such an

24  investigation, as opposed to other aspects of Mr. Cohen's

25  business.

1          So the burden is up and met to continue this matter,

2     continue the stay.  There is nothing suggesting that another 90

3     days will result in any further guidance or illumination

4     relating to the issues in the case.  And in light of the fact

5     that Mr. Cohen has not been indicted and certainly has not been

6     indicted relating to anything concerning this case or the

7     issues in this case, we believe that the stay should be issued

8     forthwith.

9          And if I could have the Court's indulgence for one --

10              THE COURT:  Please, yes.

11              MR. AVENATTI:  Mr. Ibrahim reminds me that we have

12    even offered to proceed in the case -- have the stay lifted and

13    proceed in the case and not take a deposition of Mr. Cohen

14    immediately.  And I think that that is -- that is certainly a

15    caveat that could be made in connection with the lifting of any

16    stay.  We could agree not to take Mr. Cohen's deposition for

17    90 days or 60 days or whatever time period Your Honor so

18    designates, but we need to get this show on the road.  We need

19    to proceed.  We need to deal with some of these legal issues.

20         We want to have an expedited trial on that limited issue

21    that Your Honor referenced, but we can't just continue to delay

22    this case in 90-day intervals without any evidence whatsoever

23    that this investigation has anything to do with the issues in

24    this case.  Thank you.

25              THE COURT:  Thank you.

| | |
|---|---|
| 1 | MR. BLAKELY:  May I respond, Your Honor? |
| 2 | THE COURT:  Briefly, yes, if you need to add -- if |
| 3 | it's not in your pleading already, feel free. |
| 4 | MR. BLAKELY:  Yes, Your Honor.  And I don't want |
| 5 | to -- because a lot of that was in theirs. |
| 6 | But just to the point as far as Mr. Perillo having |
| 7 | communications with the Southern District of New York, that's |
| 8 | not my understanding.  And if counsel has -- would like to |
| 9 | actually give specifics for once -- |
| 10 | THE COURT:  Look, there's a lot of noise in this |
| 11 | case -- |
| 12 | MR. BLAKELY:  I understand, Your Honor. |
| 13 | THE COURT:  -- that the Court is not going to be |
| 14 | distracted by.  I'm going to stay focused on the issues before |
| 15 | me and the record before me, so -- |
| 16 | MR. BLAKELY:  But the fact that we do know is that |
| 17 | plaintiff's counsel attempted to intervene in the New York |
| 18 | proceeding, that he was at many of the appearances there, that |
| 19 | he was at interviews set up with his client.  So I can't |
| 20 | imagine they just wanted to meet her.  There is obviously some |
| 21 | overlap there if the U.S. attorneys are interested in what |
| 22 | Ms. Daniels has to say.  And, again, I've asked counsel for |
| 23 | that information and any communications, and he's -- you know, |
| 24 | and this is something he actually would know the facts of, |
| 25 | would have that information. |

1          THE COURT:  Well, I think I recognize that in the

2    pleadings that were offered here, there was reference to the

3    fact that there was a meeting to take place between

4    Mr. Avenatti, Ms. Clifford and the U.S. attorney, and then the

5    U.S. attorney cancelled that meeting because the claim was that

6    Mr. Avenatti leaked the meeting to the press.  They thought

7    that was inappropriate and cancelled the meeting.  That's

8    referenced in the matters before the Court.

9          MR. BLAKELY:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11       The matter is under submission.

12          THE COURTROOM DEPUTY:  The Court is in recess.

13             (Proceedings concluded at 9:49 a.m.)

14                     ---oOo---

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

            I, CAROL JEAN ZURBORG, Federal Official Realtime
Court Reporter, in and for the United States District Court for
the Central District of California, do hereby certify that
pursuant to Section 753, Title 28, United States Code that the
foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
above-entitled matter and that the transcript page format is in
conformance with the regulations of the judicial conference of
the United States.


Date:  July 27, 2018



                        /s/ CAROL JEAN ZURBORG
                    _____
                    CAROL JEAN ZURBORG, CSR NO. 7921, CCRR, RMR
                        Federal Official Court Reporter