**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 18-02217 SJO (FFMx)          DATE:  July 31, 2018**

**TITLE:     Stephanie Clifford v. Donald J. Trump et al.**

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**            **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                   Not Present

========================================================================
**PROCEEDINGS (in chambers):  ORDER DENYING DEFENDANT MICHAEL COHEN'S EX
PARTE APPLICATION FOR A RESTRAINING ORDER** [Docket No. 60]

This matter is before the Court on Defendant Michael Cohen's ("Mr. Cohen" or "Defendant") *Ex
Parte* Application for a Restraining Order Against Plaintiff's Counsel, Michael Avenatti
("Application"), filed June 14, 2018.  Plaintiff Stephanie Clifford ("Ms. Clifford" or "Plaintiff")
opposed the Application ("Opposition") on June 25, 2018.  Defendant replied ("Reply") on July 2,
2018.  A hearing on the matter was held on July 27, 2018.  For the following reasons, the Court
**DENIES** the Application.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The alleged facts of this case concern an affair between the current President of the United States
and an adult film star, a non-disclosure agreement, and a lawyer's efforts to secure this agreement
just days before an election.  Unsurprisingly, this case has garnered significant media attention
and an unprecedented level of public commentary from both the parties and their attorneys.  (*See*
Order Denying Pl's Mot. for Reconsideration 2 [citing to public comments by Ms. Clifford,
Defendant Donald J. Trump ("Mr. Trump"), and legal representatives of both parties], ECF No. 63;
Decl. Michael J. Avenatti in Supp. Opp'n ("Avenatti Decl.") ¶¶ 11-23, Exs. 10-22 [listing
statements to the media or public by Mr. Cohen, Mr. Trump, and Rudy Giuliani ("Mr. Guiliani"), a
member of Mr. Trump's legal team], ECF No. 65-1.)  No person involved in this action has been
more ubiquitous in the media than Michael Avenatti ("Mr. Avenatti"), Plaintiff's counsel.

In the Application, Defendant cites to over 170 television appearances and 439 public tweets by
Mr. Avenatti discussing facts and circumstances related to this case.  (Decl. Brent H. Blakely in
Supp. Appl. ("Blakely Decl.") ¶¶ 4-5, Exs. C-D, ECF No. 60-1; Decl. Brent H. Blakely in Supp.
Reply ("Reply Decl."), ECF No. 66-1.)  Mr. Avenatti's comments include statements that Mr.
Cohen "has a history of thuggish behavior" and "is going to be indicted within the next three
months" for "bank fraud, wire fraud, campaign finance violations" or "a whole host of potential
criminal conduct,"  (Blakely Decl. ¶¶ 23, 28 Exs. I, V), as well as speculation about the outcome
of various aspects of the case, including that "Judge Otero here in Los Angeles" will order Mr.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 18-02217 SJO (FFMx)**          **DATE:  July 31, 2018**

Trump to appear for a deposition because he "is one of the best."  (Blakely Decl. ¶ 15.)  Mr. Cohen also accuses Mr. Avenatti of publicly disseminating the private financial records of various persons named "Michael Cohen," describing the records as "Possible Fraudulent and Illegal Financial Transactions."  (Appl. 15, Blakely Decl. ¶ 25, Ex. X.)

Mr. Avenatti's incessant commentary prompted Judge Kimba Wood, who is presiding over an action filed by Mr. Cohen in the Southern District of New York (the "SDNY Action"), to admonish him with the following:

> I've a different view from you, from the one you have expressed earlier as to what it is that would subject you to the standards for professional responsibility in this court.
>
> In my view, this matter, which is a potential precursor to a criminal trial if charges are filed against Mr. Cohen, I believe that once you are participating in this proceeding, you are subject to the New York Code of Responsibility 3.6 and the local rule for the Southern District of New York 23.1. That means that you would have to stop doing some things you have been doing. If you participate here, you would not be able to declare your opinion as to Mr. Cohen's guilt, which you did; you would not be able to give publicity to documents that are not public. It would change your conduct. That is my only possible role in doing what Mr. Cohen's lawyers want, which is, to essentially stop in its tracks your publicity tour on TV and elsewhere. And I say "publicity tour" not in a derogatory sense. You are entitled to publicity so long as– that is, I can't stop you, unless you are participating in this matter before me.
>
> So I either want you to participate or not be in the matter at all. I don't want you to have some existence in limbo, where you are free to denigrate Mr. Cohen and I believe potentially deprive him of a fair trial by tainting a jury pool. I know a jury, if there is one, is way down the road, and memories certainly may fade, but this conduct is inimicable to giving Mr. Cohen eventually a fair trial.

(Blakely Decl. ¶ 2, Ex. A ("5/30/18 Hearing Transcript") 27:12-28:13.)  Soon after Judge Wood's statements, Mr. Avenatti withdrew his application to be admitted *pro hac vice* in the SDNY Action.

Buoyed by Judge Wood's comments, on June 14, 2018, Defendant moved *ex parte* for an order from this Court restraining Mr. Avenatti from making statements to the press and/or public regarding: (1) the character, credibility, or reputation of a party and/or their respective counsel; (2) the identity of a witness or the expected testimony of a party or witness; (3) the contents of any testimony, admission, or statement given by a defendant or that person's refusal or failure to make a statement; (4) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence; (5) the strengths or weaknesses of the case of either party; and (6) any information the lawyer knows or reasonably should know is likely to be inadmissible

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  **CV 18-02217 SJO (FFMx)**          **DATE:**  **July 31, 2018**

as evidence and would create a substantial risk of prejudice if disclosed.  (Appl. 18-19.)  Finding that "Defendant has not demonstrated . . . that immediate, irreparable injury would occur in the absence of emergency *ex parte* relief," the Court opted to treat the Application as a regularly noticed motion and set a briefing schedule pursuant to local rule.  (Order Setting Briefing Schedule 1, ECF No. 61.)  The Court also set a hearing for the matter on July 27, 2018.  (Scheduling Notice; ECF No. 64.)

II.     LEGAL STANDARD

The seminal case in the Ninth Circuit on the propriety of imposing a gag order on an attorney during the pendency of a lawsuit is *Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 591 (9th Cir. 1985).  The *Levine* court found that a district court order prohibiting an attorney from making public comments on a case "is properly characterized as a prior restraint," which is "subject to strict scrutiny because of the peculiar dangers presented by such restraints."  *Id.* at 595.  Under *Levine*, a gag order may only be imposed if "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available."  *Id.* (citations omitted).

The court noted that while "attorneys and trial participants do not lose their constitutional rights at the courthouse door[,]" a restraining order imposed by a district court must be analyzed "in light of the relationship between the petitioners and the court system."  *Id.* at 595-596.  In a criminal proceeding, this relationship necessarily implicates the Sixth Amendment, which "unequivocally impose[s] a duty upon trial courts to take affirmative steps to insure the fairness of a criminal proceeding in the face of excessive publicity."  *Id.* at 596.  Nevertheless, for a restraining order to meet constitutional muster, the restrained activity must pose "a serious and imminent threat to the administration of justice."  *Id.* at 598.

In *Gentile v. State Bar of Nevada*, a divided Supreme Court held that the "clear and present danger" test does not apply to rules restricting speech for a lawyer participating before the courts.  501 U.S. 1030, 1072 (1991).  Writing for the majority, Justice Rehnquist held that a Nevada Supreme Court rule prohibiting attorneys from making extrajudicial statements that the attorney "knows or reasonably should know . . . will have substantial likelihood of materially prejudicing an adjudicative proceeding" is permissible under the First Amendment.  *Id.*  This is because:

> When a state regulation implicates First Amendment rights, the Court must balance those interests against the State's legitimate interest in regulating the activity in question.  The "substantial likelihood" test embodied in Rule 177 is constitutional under this analysis, for it is designed to protect the integrity and fairness of a State's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech. The limitations are aimed at two principal evils: (1) comments that are likely

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  <u>CV 18-02217 SJO (FFMx)</u>          DATE:  <u>July 31, 2018</u>

to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found.  Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right . . . .

The restraint on speech is narrowly tailored to achieve those objectives. The regulation of attorneys' speech is limited– it applies only to speech that is substantially likely to have a materially prejudicial effect; it is neutral as to points of view, applying equally to all attorneys participating in a pending case; and it merely postpones the attorneys' comments until after the trial.

*Id.* at 1075-76.

The constitutionality of a gag order in a civil proceeding was addressed by the Ninth Circuit in *In re Dan Farr Prods.*, 874 F.3d 590 (9th Cir. 2017), which dealt with a trademark dispute between competing hosts of two comic and popular arts conventions.  The district court in this action imposed a gag order on the petitioners because they "posted on their websites and social media platforms various news articles on the case, documents that are publicly available on the district court docket, and their own opinions on the merits of the case and [the plaintiff's] conduct." *Id.* at 592.  The *Dan Farr* court held that the restraining orders on the parties were unconstitutional prior restraints as "[u]nlike other cases involving attorneys or the press, grisly crimes or national security, the district court's orders silence one side of a vigorously litigated, run-of-the-mill civil trademark proceeding" and are "unmoored from the interest they purport to protect– the integrity of the San Diego-area jury pool." *Id.* at 596.  Thus, the "district court clearly erred in determining that Petitioner's speech presents a serious and imminent threat to a fair trial and that less restrictive alternatives to a prior restraint on speech were unavailable." *Id.* at 596-597.

III.    <u>DISCUSSION</u>

At the outset, Defendant argues that after the Supreme Court's opinion in *Gentile*, the standard articulated in *Levine* for prior restraint on litigating attorneys is no longer good law.  (Reply 2 [citing *United States v. Wunsch*, 84 F.3d 1110 (9th Cir. 1996); *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430 (9th Cir. 1995); *Zal v. Steppe*, 968 F.2d 924 (9th Cir. 1992), as amended (July 31, 1992)], ECF No. 66.)  Indeed, *Gentile* made it clear that the "clear and present" danger portion of the test does not apply to an attorney whose speech relates to proceedings before a court in which he or she is participating.   501 U.S. at 1072.  Following *Gentile*, the Ninth Circuit recognized in *Dan Farr* that "a lower standard applies to prior restraints of *attorneys* participating in case."  874 F.3d at 593 n. 3.  It is clear, based on these opinions, that *Levine*'s requirement that prohibited extrajudicial speech must present "a serious and imminent threat to the administration of justice" no longer applies to attorneys presently

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-02217 SJO (FFMx)</u>        **DATE:** <u>July 31, 2018</u>

participating in a proceeding before a court. Instead, these attorneys are subject to the requirement that the statements are "substantially likely to have a materially prejudicial effect" on that proceeding. *See Gentile*, 501 U.S. at 1075-76.

It is important to note that the majority of the *post-Gentile* cases cited by Defendant do not address the constitutional standard for **prior restraints**, but rather, whether an attorney can be disciplined by the Court for extrajudicial statements he or she has already made. *See Wunsch*, 84 F.3d at 1117 (holding that the district court improperly sanctioned an attorney for making sexist comments outside the courtroom because there was no "substantial likelihood of material prejudice to an adjudicative proceeding" under *Gentile*); *Yagman*, 55 F.3d at 1442 (assessing the constitutionality of sanctions imposed on an attorney who made derogatory comments about a judge, citing *Gentile* for the proposition that the "Supreme Court has held that speech otherwise entitled to full constitutional protection may nonetheless **be sanctioned** if it obstructs or prejudices the administration of justice"); *see also Zal*, 968 F.2d at 928 (holding that a contempt order imposed by the trial court for violating an evidentiary order was proper as an attorney's right to free speech **inside the courtroom** "is extremely circumscribed"). This distinction is important because the First Amendment "afford[s] special protection against orders that prohibit the publication or broadcast of particular information or commentary orders that impose a 'previous' or 'prior' restraint on speech." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 556 (1976). "The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). It is with this special protection in mind that the Court analyzes Defendant's request.

    A.    <u>Substantially Likely to Have a Materially Prejudicial Effect on a Defendant's Right to a Fair Trial</u>

Defendant spends the majority of the Application describing in detail the extensive publicity sought by Mr. Avenatti regarding this case, but does not describe how this publicity would affect his right to a fair trial in this action. As an initial matter, no trial date has been set, and this action has been stayed for a number of months. It is far from clear that the publicity in this case would affect the outcome of a trial that may happen, if at all, months down the road.

Defendant points out that "Plaintiff currently has pending a Motion for Expedited Trial," which would create the potential of a jury trial within the next few months. (*See* Mot. to Expedite Jury Trial, ECF No. 29.) If Plaintiff's motion is granted, however, the trial would be on the very narrow issue of the validity of an arbitration clause in an agreement between Mr. Trump, Ms. Clifford, and Essential Consultants, LLC ("EC"), Mr. Cohen's company. (*See generally* Mot to Expedite Jury Trial.) Mr. Cohen is not a party to the agreement, nor does he receive benefits from the agreement. While he certainly has an interest in moving the case to arbitration, the validity of an arbitration agreement is an issue "far more banal than the subject matters of the criminal trials in

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority     _____
Send         _____
Enter        _____
Closed       _____
JS-5/JS-6    _____
Scan Only    _____

**CASE NO.:** CV 18-02217 SJO (FFMx)        **DATE:** July 31, 2018

which pretrial publicity has presented serious constitutional problems." *Dan Farr*, 874 F.3d at 594.

While the Court shares Judge Wood's concerns about the extent and manner of Mr. Avenatti's publicity tour, the rights and issues involved in this action are far less consequential than the potential criminal prosecution in New York. If Ms. Clifford succeeds in invalidating the agreement between herself, Mr. Trump, and EC, Mr. Cohen suffers no identifiable loss.[1] In fact, EC may even be entitled to a return of the $130,000 allegedly paid by Mr. Cohen to Ms. Daniels on its behalf. (*See* First Amended Complaint ("FAC") ¶ 27, ECF No. 14.) The sole cause of action asserted against Mr. Cohen in his personal capacity is a claim for defamation, which must survive Defendant's Motion to Strike and many other hurdles before a trial can even be contemplated. (*See* Mot. to Strike, ECF No. 31.) It is clear that Mr. Cohen's worry is not about the effect of the publicity on this litigation, but the effect of the publicity surrounding this action on the SDNY Action. While this is a valid concern, this Court does not have the constitutional authority to impose a gag order on an attorney due to the potential effect of his comments on a proceeding outside the Court's jurisdiction.

The Supreme Court has made clear that prior restraints "are the most serious and least tolerable infringement on First Amendment rights," *Nebraska Press*, 427 U.S. at 559, and Defendant must clearly demonstrate why such a drastic measure is warranted. Mr. Cohen's Application, which is largely bereft of substantive legal analysis, does not do so.

    B.    <u>Narrowly Drawn</u>

In upholding the diminished standard for prohibiting extrajudicial speech provided by the Nevada Supreme Court, Justice Rehnquist emphasized that "[t]he restraint on speech is narrowly tailored to achieve those objectives. The regulation of attorneys' speech is limited– it applies only to speech that is substantially likely to have a materially prejudicial effect; it is neutral as to points of view, applying equally to all attorneys participating in a pending case; and it merely postpones the attorneys' comments until after the trial." *Id.* at 1075-76.

The restraining order requested by Defendant prohibits Mr. Avenatti from engaging in several extraordinarily broad categories of speech, including commenting on the character, credibility, or reputation of a party and/or their respective counsel, and the contents of any testimony, admission, or statement given by a defendant or that person's refusal or failure to make a statement. (Appl. 18-19.) Not only is this order specific to only one party, it plausibly prohibits Mr. Avenatti from commenting on matters that are not substantially likely to have a materially prejudicial effect on these proceedings.

_____

[1] The liquidated damages provided for in the agreement are payable to "DD," who Plaintiff alleges is Mr. Trump. (*See* FAC Ex. A § 5.1.2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:  CV 18-02217 SJO (FFMx)**          **DATE:  July 31, 2018**

Moreover, the applicable timeline of the order is unclear.  At this point in the proceedings, the Court has not held a scheduling conference, has not ruled on several dispositive motions, and has yet to narrow down the triable issues.  A restraining order imposed at this stage could last months.  Given the breadth and scope of the order, this would almost certainly constitute an improper prior restraint.

C.      Less Restrictive Alternatives

Finally, less restrictive alternatives do exist to the imposition of a prior restraint at this stage.  As pointed out by Defendant in the Application, Mr. Avenatti must follow the Rules of Professional Conduct of the State Bar of California and the local rules of this Court.  (Appl. 16; *see also* L.R. 83-3.1.1, Cal. Code Prof. Conduct 5-120.)  If Mr. Avenatti's extrajudicial statements improperly violate these rules, he will be subject to discipline.  Unless or until Defendant can demonstrate that Mr. Avenatti's statements are substantially likely to impact his right to a fair trial in this action, however, a prior restraint is impermissible.

IV.     STATUS OF THE STAY

On July 17, 2018, the parties filed a Joint Status Report on the status of the criminal investigation against Mr. Cohen.  (Joint Status Report, ECF No. 67.)  As the criminal investigation is still ongoing, and the government and a special master appointed by Judge Wood are still reviewing relevant materials, Defendant requests that the Court extend the current stay another ninety (90) days.  (*See* Order Granting Def's *Ex Parte* Appl. to Stay Case, ECF No. 53; Joint Status Report 11.)  Given the unusual nature of the proceedings in the SDNY Action, and the parties' diligence in reviewing the materials, the Court agrees that a brief extension of the stay is warranted while the scope of the criminal investigation is narrowed down.  The Court will thus permit an extension of the stay for forty-five (45) days.

V.      RULING

For the foregoing reasons, the Court **DENIES** Defendant's *Ex Parte* Application for Restraining Order and **CONTINUES** the stay for forty-five (45) days.  A scheduling conference will be held on September 10, 2018 @ 8:30 a.m.  The parties shall file a joint 26(f) report fourteen (14) days prior to the scheduling conference.

IT IS SO ORDERED.