AVENATTI & ASSOCIATES, APC
Michael J. Avenatti, State Bar No. 206929
Ahmed Ibrahim, State Bar No. 238739
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone: 949.706.7000
Facsimile: 949.706.7050

Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 2:18-cv-02217-SJO-FFM<br><br>**PLAINTIFF STEPHANIE CLIFFORD'S SUPPLEMENTAL STATEMENT REGARDING JOINT RULE 26(f) REPORT IN RESPONSE TO SUPPLEMENTAL STATEMENTS FILED BY DEFENDANTS DONALD J. TRUMP AND ESSENTIAL CONSULTANTS, LLC** |

Plaintiff Stephanie Clifford ("Plaintiff" or "Ms. Clifford") files this supplement to the Joint Rule 26(f) Report in response to the recently filed supplements by defendants Donald J. Trump ("Mr. Trump") and Essential Consultants, LLC ("EC") (collectively, "Defendants"). To be clear, Plaintiff vigorously opposes dismissal of this action but will meet and confer with Defendants pursuant to Local Rule 7-3 on any prospective motions they intend to file. In the meantime, Plaintiff wishes to bring the following critical points to the court's attention in advance of the Scheduling Conference scheduled for September 24.

As a preliminary matter, Defendants' sudden desire to escape having to defend this action without any meaningful consequence reflects a profoundly troubling reality - that Defendants have been shamelessly deceiving this Court and the American public for more than six months. Plaintiff does not make this claim lightly; it is based on the following undisputed facts.

Beginning in February of 2018, Michael Cohen and Mr. Trump, along with their attorneys and surrogates, instituted a coordinated campaign to intimidate and bully Ms. Clifford into silence. Mr. Cohen, joined by Mr. Trump's in-house lawyer from the Trump Organization, filed an arbitration action in California claiming Ms. Clifford violated the Settlement Agreement and would be liable to pay crippling damages in the millions of dollars. On the basis of what Defendants now admit was an arbitration complaint that was bogus and completely lacking any factual or good faith basis, Mr. Cohen, through his company EC, convinced a retired judge and arbitrator to issue a broad and sweeping restraining order directed to Ms. Clifford. The White House had the audacity to then quickly claim victory, boasting to the press that the arbitration had already been won.

When Plaintiff then filed this action and stated the Agreement was invalid, Defendants took great umbrage and even went so far as threatening Plaintiff that she would have to pay $20 million in damages. [Dkt No. 1 at 5 – Notice of Removal.] In fact, Defendants were so confident that the Settlement Agreement was formed, was valid,

and was enforceable, that they elected to prosecute a motion to compel arbitration in this Court—a motion EC filed and in which Mr. Trump joined.

To the American public, Defendants waged a forceful public relations campaign to discredit and bully Ms. Clifford.  Mr. Cohen promised that he would "take a vacation on Ms. Clifford's dime" with the money he would collect from her in enforcing the Settlement Agreement. He then had his surrogate David Schwartz appear multiple times on television to claim the agreement was valid and that Ms. Daniels would be paying millions of dollars in damages. Mr. Trump tweeted to his 50-million plus followers that that Settlement Agreement "is in full force and effect" and "will be used in Arbitration for damages against Ms. Clifford (Daniels)."  He called Ms. Clifford's allegations against him "false and extortionist."  His lawyer Rudy Giuliani lodged deplorable and sexist insults directed to Ms. Clifford, stating:  "I'm sorry I don't respect a porn star the way I respect a career woman or a woman of substance or a woman who has great respect for herself as a woman and as a person and isn't going to sell her body for sexual exploitation," adding that the business you're in entitles you to no degree of giving your credibility any weight. . . . I mean, she has no reputation. If you're going to sell your body for money, you just don't have a reputation."

These threats were all premised on a giant lie.  If they are now to be believed, Mr. Trump and Mr. Cohen never had a good faith basis to assert that they would be able to enforce the Settlement Agreement as reflected by their recent filings.

This intimidation campaign was accompanied by serial misrepresentations to the press and the public.  Mr. Cohen began by lying to the American public that he did the deal on his own and paid the $130,000 out of his own pocket. Mr. Trump, on Air Force One, stated unequivocally that he knew nothing about the Agreement or the payment— only to then be contradicted by his own lawyer, Mr. Giuliani, revealing to Sean Hannity that Mr. Trump reimbursed the $130,000. Moreover, Mr. Trump and Mr. Giuliani have repeatedly claimed that no campaign money was involved, there were no campaign violations, and that the Agreement and $130,000 payment had nothing to do with them.

Those representations have now been shown to be false by Mr. Cohen's guilty plea implicating Mr. Trump.

But in addition to the motion to compel arbitration filing, it is now apparent that the Court was being misled by Mr. Cohen's filings seeking the extraordinary and rare remedy of a stay of this proceeding. Although Mr. Cohen claimed that a stay was necessary to protect his Fifth Amendment rights—a motion which Mr. Trump rode along with, never once correcting any position taken by Mr. Cohen or claiming a stay was unnecessary—it is now clear that the request for a stay never had anything to do with any Fifth Amendment rights. Instead, the stay was pursued for the ulterior and improper purpose of evading depositions of Mr. Cohen and Mr. Trump. We know that is a certainty because Mr. Cohen and Mr. Trump's present stunt was timed to coincide precisely with the impending Scheduling Conference and expiration of Mr. Cohen's Fifth Amendment rights, which would result in the Court opening up discovery, including sworn testimony at depositions.

The above recitation does not include the incessant attacks on Plaintiff and her counsel, and the disparagement and ridicule of Plaintiff's counsel's media appearances. Needless to say, Plaintiff and her counsel were proven correct in all respects. Mr. Cohen is a criminal. And Mr. Trump is a co-conspirator. They entered into the Settlement Agreement and paid the $130,000 to benefit Mr. Trump's campaign and conceal information from voters in the 2016 election. Neither Mr. Cohen, nor Mr. Trump, nor Mr. Giuliani, were honest with the American people. Nor were they honest with this Court.

Now, after leading this Court to believe for six months that they had a good faith basis to assert that the Settlement Agreement was a valid contract, that it was not illegal, and that it had nothing to do with Mr. Trump's 2016 presidential campaign, the Court cannot simply allow Defendants to exit the case without facing any true consequences or a meaningful inquiry into the truth. The public interest in continuing with this case is self-evident. Terminating the case now after all of the lies, deceit, and chicanery set forth

above would be premature and would erode public confidence in the courts. Nor would it be legally proper for the reasons summarized below. In short, Plaintiff opposes dismissal of this action and urges the Court to proceed with the Scheduling Conference as planned. If EC is withdrawing its motion to compel arbitration, the Court should move forward with lifting the stay, setting discovery and other pretrial deadlines, and setting a trial date on the merits of the case.

Turning to the merits of Defendants' attempts to moot the case as reflected in their counsel's letters and the supplemental filings, they should be rejected for several reasons. First, Defendants' communications are not a serious concession of responsibility and liability, but instead must be viewed as a mere settlement offer. Accordingly, they fail to moot this case. This is the law, as set down by the Supreme Court in its recent opinion in Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016). There, the defendant attempted to moot the plaintiff's case by extending a Rule 68 offer of judgment offering to pay all of his damages. The plaintiff rejected the offer, with the defendant, like Defendants here, arguing that the case should be dismissed as moot because it offered the plaintiff all he was entitled to recover in the case. The Court rejected this argument. It held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." Id. at 672. The Court explained that "[u]nder basic principles of contract law, [the defendant's] settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy." Id. at 670-71. "Absent [the plaintiff's] acceptance, [the defendant's] settlement offer remained only a proposal, binding neither [the defendant] nor [the plaintiff]." Id. *Campbell-Ewald abrogates all of the case law cited by Defendants.*

But second, even assuming Campbell-Ewald does not end the inquiry (as Plaintiff contends it must), Defendants have not offered Plaintiff all that she is entitled to receive under her declaratory relief claim set forth in the First Amended Complaint (the "FAC"). To begin with, although Defendants offer to "rescind" the Agreement, the FAC does not include a demand for the specific remedy of rescission, *nor is rescission mentioned*

*anywhere in the FAC*. This is important because, among other things, EC contends that the remedy of rescission would require Plaintiff to return the $130,000 payment.

Further, even if the Court found that the remedy of rescission applies, the Court maintains discretion under Civil Code section 1692 to balance the equities in relation to whether consideration has to be returned in light of, among other factors, the fact that Defendants have already received the benefit of the Settlement Agreement by preventing Plaintiff from speaking prior to the 2016 election and thereby ensuring victory. Cal. Civ. Code § 1692 ("If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require *and may otherwise in its judgment adjust the equities between the parties*.") (emphasis added). The FAC, on the other hand, does not contemplate the return of this payment. Indeed, if the Settlement Agreement is found to be an illegal contract (as opposed to a contract that was never formed), the consideration paid under that contract would *not* have to be returned. See, e.g., Kashani v. Tsann Kuen China Enter. Co., 118 Cal. App. 4th 531, 541 (2004); 1 Witkin, Summary 11th Contracts § 437 (2018) (citing cases).

Third, and more fundamentally, although Defendants, in vague and equivocal fashion claim they are conceding that an agreement was never formed, Defendants have not conceded all of the relief sought by Plaintiff in the FAC. For example, Defendants do not offer Plaintiff a final judgment declaring the following:

1. That the Settlement Agreement is invalid, unenforceable, and/or void under doctrine of unconscionability. [FAC, ¶¶42-43, 57-61.]

2. That the Settlement Agreement is void *ab initio* because it is illegal on the ground that it was entered with the illegal aim, design, and purpose of circumventing federal campaign finance law under the Federal Election Campaign Act. [FAC, ¶¶44-51.]

3. That the Settlement Agreement is void *ab initio* because it violates public policy by suppressing speech on a matter of public concern about a candidate for

President of the United States, mere weeks before the election. Agreements to suppress evidence are void as against public policy, both in California and in most common law jurisdictions. [FAC, ¶¶51-54.]

4. That the Settlement Agreement is void *ab initio* because it is illegal on the ground that Michael Cohen violated Rule 1.4 of the New York Rules of Professional Conduct by entering into an agreement on his client Mr. Trump's behalf without notifying him of the agreement. [FAC, ¶¶32, 54, 61.]

5. That the Settlement Agreement is void *ab initio* because it is illegal on the ground that Michael Cohen violated Rule 1.8 of the New York Rules of Professional Conduct by advancing or guaranteeing financial assistance to a client by paying $130,000 from his own personal funds to benefit his client Mr. Trump. [FAC, ¶¶33, 55, 61.]

6. That no agreement to arbitrate exists between Plaintiff and Essential Consultants, LLC because under paragraph 5.2 of the Settlement Agreement, only those "claims and controversies arising between DD [Mr. Trump] on the one hand, and PP [i.e., Plaintiff] on the other hand" are subject to arbitration. [FAC, ¶¶56-61.]

7. That the arbitration clause is unconscionable. [FAC, ¶¶42-43.]

8. That the arbitration clause is illegal because it was entered with the purpose of keeping facts concerning federal campaign contributions and expenditures secret and hidden from public view by using a confidential arbitration proceeding in violation of FECA's mandates to publicly report campaign contributions and expenditures. [FAC, ¶¶45-51, 59.]

9. That the arbitration clause is void because it violates public policy by suppressing speech on a matter of enormous public concern about a candidate for President of the United States mere weeks before the election. [FAC, ¶¶52, 60.]

10. That the arbitration clause is illegal because it was designed to cover up Mr. Cohen's ethical violations, including his violations of Rule 1.4 and 1.8(e) of the New York Rules of Professional Conduct. [FAC, ¶¶32-35, 54-55, 61.]

Further, Defendants have not admitted liability, or the truth of Plaintiff's allegations in the FAC. Stated differently, they have not agreed to consent to a judgment finding, for example, that the Settlement Agreement was entered into for the purpose of violating federal campaign finance law. In the Southern District of New York, Mr. Cohen admitted that he violated federal campaign finance laws and that he did so at the direction of Mr. Trump. Mr. Trump has not admitted his involvement in the Settlement Agreement and $130,000 payment under oath, nor has Mr. Cohen admitted the Agreement was entered into for the purpose of violating federal campaign finance laws in this action. Therefore, if the Court moots this action, this will cause continuing harm to Plaintiff because if she publicly asserts the contrary, Mr. Trump and Mr. Cohen will be able to continue denying these facts, having not had to testify about the Settlement Agreement under oath.

Finally, Defendants also have not offered to compensate Plaintiff for her attorneys' fees, costs and expenses that she would be owed under paragraph 8.2 of the Settlement Agreement as the prevailing party in this litigation. [Dkt No. 14, Ex. 1 at ¶8.2 ("In the event of any dispute, action, proceeding or controversy regarding the *existence*, *validity*, interpretation, performance, enforcement, claimed breach or threatened breach of this Agreement, the prevailing party in any resulting arbitration proceeding *and/or court proceeding* shall be entitled to recover as an element of such Party's costs of suit, and not as damages, *all attorneys' fees, costs and expenses* incurred or sustained by such prevailing Party in connection with such action, including, without limitation, legal fees and costs.") (emphasis added).] See, e.g., North Associates v. Bell, 184 Cal. App. 3d 860, 865 (1986) (under Civil Code section 1717, "[a]s long as an action 'involves' a contract, and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit, the other party should also be entitled to attorney fees if it prevails, even if it does so by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract."). The case cannot be mooted, therefore, because Defendants would remain free to contest Plaintiff's claim for

fees by arguing that a dismissal on mootness grounds does not make Plaintiff a prevailing party.

      Simply put, by failing to provide Plaintiff with all the relief she is seeking in this action, Plaintiff's case plainly cannot be mooted.

Dated:  September 10, 2018　　　　　　　AVENATTI & ASSOCIATES, APC

                                              By:　　　/s/ Michael J. Avenatti
                                                          Michael J. Avenatti