AVENATTI & ASSOCIATES, APC
Michael J. Avenatti, State Bar No. 206929
Ahmed Ibrahim, State Bar No. 238739
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone:   949.706.7000
Facsimile:   949.706.7050

Attorneys for Plaintiff Stephanie Clifford
a.k.a. Stormy Daniels a.k.a. Peggy Peterson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

STEPHANIE CLIFFORD a.k.a.
STORMY DANIELS a.k.a. PEGGY
PETERSON, an individual,

Plaintiff,

vs.

DONALD J. TRUMP a.k.a. DAVID
DENNISON, an individual, ESSENTIAL
CONSULTANTS, LLC, a Delaware
Limited Liability Company, MICHAEL
COHEN and DOES 1 through 10,
inclusive,

Defendants.

CASE NO.:  2:18-cv-02217-SJO-FFM

**PLAINTIFF STEPHANIE CLIFFORD'S COMBINED OPPOSITION TO MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION FILED BY DEFENDANTS DONALD J. TRUMP AND ESSENTIAL CONSULTANTS LLC**

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................... 2

    A.    The Settlement and Non-Disclosure Agreement ............................. 2

    B.    The Arbitration and Plaintiff's Lawsuit. ......................................... 3

    C.    Both Mr. Trump and EC Have Actively Pursued Enforcement
        of the Settlement Agreement and Vigorously Contested this
        Lawsuit. ............................................................................................ 4

    D.    Mr. Trump's Aggressive Public Stance Against Plaintiff
        Affirmed His Pursuit of Remedies Under the Agreement. ............. 5

    E.    Mr. Cohen's Admission to Campaign Finance Crimes Proves
        Mr. Trump and His Lawyer Rudy Giuliani Have Been Lying. ...... 6

III.   LEGAL STANDARD ................................................................................ 7

IV.    ARGUMENT ............................................................................................. 8

    A.    Defendants' Rejected Settlement Offers Do Not Moot
        Plaintiff's Claims. ........................................................................... 8

    B.    The Authority Relied Upon By Defendants Pertains to Patent
        Cases. ............................................................................................. 10

    C.    The Case Is Not Moot Because Defendants Have Not
        Conceded That the Settlement Agreement is Illegal or Void as
        Contrary to Public Policy. ............................................................. 11

        1.    Plaintiff Must Be Permitted to Choose Among Her
            Remedies. ............................................................................ 11

        2.    A Determination of Illegality Is Necessary Because EC
            Continues to Seek Recovery of the Payment Made to
            Ms. Clifford. ....................................................................... 12

    D.    Plaintiff Does Not Request Rescission of the Settlement
        Agreement. ..................................................................................... 13

    E.    Mr. Trump's Ongoing Threats of Litigation Establish the
        Continued Existence of a Case or Controversy ............................ 15

    F.    Plaintiff Is Entitled to Recover Her Attorneys' Fees. ................... 16

**PLAINTIFF'S COMBINED OPPOSITION TO MOTIONS TO DISMISS RE: SUBJECT MATTER JURISDICTION**

G.    Even if Plaintiff's Claims Are Moot, She Is Entitled To Recover Her Attorneys' Fees. .......................................................... 19

H.    Any Dismissal Must Be Without Prejudice. ................................................. 20

V.    CONCLUSION ............................................................................................ 20

**PLAINTIFF'S COMBINED OPPOSITION TO MOTIONS TO DISMISS RE: SUBJECT MATTER JURISDICTION**

# TABLE OF AUTHORITIES

## CASES

Bais Yaakov of Spring Valley v. Graduation Source, LLC,
   167 F. Supp. 3d 582 (S.D.N.Y. 2016) ................................................................. 9

Barrientos v. 1801-1825 Morton LLC,
   583 F.3d 1197 (9th Cir. 2009) ....................................................................... 16

Barry v. OC Residential Properties, LLC,
   194 Cal. App. 4th 861 (2011) ....................................................................... 14

BCL-Equip. Leasing LLC v. Tom Spensley Trucking, Inc.,
   No. 16-CV-007-JDP, 2016 WL 1064660 (W.D. Wis. Mar. 17, 2016) ............................. 9

Bennett v. Hayes,
   53 Cal. App. 3d 700 (1975) ......................................................................... 13

Bovard v. Am. Horse Enterprises, Inc.,
   201 Cal. App. 3d 832 (1988) ....................................................................... 17

Cammermeyer v. Perry,
   97 F.3d 1235 (9th Cir. 1996) ....................................................................... 20

Campbell-Ewald Co. v. Gomez,
   136 S. Ct. 663 (2016) ........................................................................... passim

Carnes v. Zamani,
   488 F.3d 1057 (9th Cir. 2007) ..................................................................... 18

Clear Channel Outdoor, Inc. v. Lee, No. C,
   08-2955 PJH, 2009 WL 57110 (N.D. Cal. Jan. 8, 2009) ........................................... 20

Cortes v. Mako Sec., Inc.,
   253 F. Supp. 3d 511 (E.D.N.Y. 2017) ............................................................... 9

de la Cuesta v. Benham,
   193 Cal. App. 4th 1287 (2011) ..................................................................... 20

Del Monte Int'l GMBH v. Del Monte Foods, Inc.,
   658 F. App'x 846 (9th Cir. 2016) ................................................................... 20

Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.,
   211 Cal. App. 4th 230 (2012) ...................................................................17

Edwards v. Oportun, Inc.,
   193 F. Supp. 3d 1096 (N.D. Cal. 2016).......................................................9

Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.,
   No. 13-CV-05038 NC, 2015 WL 7874323 (N.D. Cal. Dec. 3, 2015)...........15

Erickson v. R.E.M. Concepts, Inc.,
   126 Cal. App. 4th 1073 (2005) .................................................................19

Evey v. Creative Door & Millwork, LLC,
   No. 215CV441FTM29MRM, 2016 WL 1321597 (M.D. Fla. Apr. 5, 2016)........10

Exarhos v. Exarhos,
   159 Cal. App. 4th 898 (2008) ..................................................................19

Family Med. Pharmacy, LLC v. Perfumania Holdings, Inc.,
   No. CV 15-0563-WS-C, 2016 WL 3676601 (S.D. Ala. July 5, 2016) .............9

Fong v. Miller,
   105 Cal. App. 2d 411 (1951) ........................................................2, 13, 14

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
   528 U.S. 167 (2000)..............................................................................7, 8

Gen. Motors Corp. v. Univ. of Rome
   No. CV0707537SJOPJWX, 2008 WL 11334169, at *2 (C.D. Cal. July 10, 2008) .......10

Golden Pisces, Inc. v. Fred Wahl Marine Const., Inc.,
   495 F.3d 1078 (9th Cir. 2007) ...........................................................17, 18

Harry & Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC,
   No. CV GLR-15-3525, 2016 WL 2865363 (D. Md. May 16, 2016) ..............10

Hastings v. Matlock,
   171 Cal. App. 3d 826 (1985) ....................................................................17

Hsu v. Abbara,
   9 Cal. 4th 863 (1995)........................................................................17, 20

**PLAINTIFF'S COMBINED OPPOSITION TO MOTIONS TO DISMISS RE: SUBJECT MATTER JURISDICTION**

Leaf v. Phil Rauch, Inc.,
   47 Cal. App. 3d 371 (1975) ........................................................................17

Logan v. U.S. Bank Nat. Ass'n,
   722 F.3d 1163 (9th Cir. 2013) ...................................................................8

Martelack v. Toys R US,
   No. CV 13-7098 (RBK/KMW), 2016 WL 762656 (D.N.J. Feb. 25, 2016)...................10

MBNA Am. Bank, N.A. v. Gorman,
   147 Cal. App. 4th Supp. 1 (2006)................................................................17

MedImmune, Inc. v. Genentech, Inc.,
   535 F. Supp. 2d 1000 (C.D. Cal. 2008)........................................................10

MedImmune, Inc. v. Genentech, Inc.,
   549 U.S. 118 (2007)................................................................................7

Monsanto Co. v. Bayer Bioscience N.V.,
   514 F.3d 1229 (Fed. Cir. 2008) ................................................................11

Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil Inc., No. 14 C 2032,
   2016 WL 5720381 (N.D. Ill. Sept. 30, 2016).................................................9

Real Prop. Servs. Corp. v. City of Pasadena,
   25 Cal. App. 4th 375 (1994) ....................................................................19

Revolution Eyewear v. Aspex Eyewear,
   No. CV035965PSGMANX, 2009 WL 10700315 (C.D. Cal. Sept. 18, 2009)...............11

Richardson v. Roberts,
   210 Cal. App. 2d 603 (1962) ...................................................................13

Riordan v. State Farm Mut. Auto. Ins. Co.,
   589 F.3d 999 (9th Cir. 2009) ...................................................................16

San Lazaro Ass'n, Inc. v. Connell,
   286 F.3d 1088 (9th Cir. 2002) ..................................................................20

SanDisk Corp. v. STMicroelectronics, Inc.,
   480 F.3d 1372 (Fed. Cir. 2007) ................................................................15

Segal v. Am. Tel. & Tel. Co.,
    606 F.2d 842 (9th Cir. 1979) ............................................................20

Sharpe v. F.D.I.C.,
    126 F.3d 1147 (9th Cir. 1997) .....................................................11, 12

Spicy Beer Mix v. New Castle Beverage,
    No. CV 14-00720 SJO JEMX, 2014 WL 7672167 (C.D. Cal. Aug. 1, 2014) ...............10

Star Pac. Investments, Inc. v. Oro Hills Ranch, Inc.,
    121 Cal. App. 3d 447 (1981) ...........................................................17

True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.,
    402 F. Supp. 2d 1093 (D. Ariz. 2005) .................................................20

U.S. Rubber Recycling v. Encore Int'l,
    No. CV 09-09516 SJO OPX, 2011 WL 311014 (C.D. Cal. Jan. 7, 2011) ..............10, 11

Ung v. Universal Acceptance Corp.,
    190 F. Supp. 3d 855 (D. Minn. 2016) ....................................................9

Zucker v. Occidental Petroleum Corp.,
    192 F.3d 1323 (9th Cir. 1999) .........................................................20

## **STATUTES**

Cal. Civ. Code § 1689(b)(5) ................................................................14

Cal. Civ. Code § 1692 .....................................................................14

Cal. Civ. Code § 1717(a) .........................................................11, 16, 17

## **RULES**

Fed. R. Civ. P. 8(a)(3), (d) ..............................................................12

Fed. R. Civ. P. 54(d)(1) ..................................................................16

**PLAINTIFF'S COMBINED OPPOSITION TO MOTIONS TO DISMISS RE: SUBJECT MATTER JURISDICTION**

## I.    INTRODUCTION

Plaintiff Stephanie Clifford ("Plaintiff" or "Ms. Clifford") files this Combined Opposition to the Motions to Dismiss for Lack of Subject Matter Jurisdiction filed by Defendants Donald J. Trump ("Mr. Trump") and Essential Consultants, LLC ("EC") (collectively, "Defendants").  Defendants' sudden desire to escape having to defend this action without any meaningful consequence reflects a troubling reality – that Defendants have been deceiving this Court and the American public for more than six months.  Having spent months threatening to make Ms. Clifford pay millions of dollars for breach of the terms of the non-disclosure and settlement agreement at issue here in an attempt to intimidate her into silence, Defendants cannot now simply walk away and claim that the agreement was never a binding contract to begin with in order to moot Plaintiff's claims and avoid an otherwise unfavorable result.  Defendants' argument that Plaintiff's claims are moot must be denied for at least the following reasons:

*First*, under the holding of <u>Campbell-Ewald Co. v. Gomez</u>, 136 S. Ct. 663 (2016), Defendants cannot moot Plaintiff's claims through covenants not to sue that amount to settlement offers.  Because Plaintiff has never accepted these offers, her claims are not moot.  The case law relied upon by Defendants predates the decision in <u>Campbell</u> and therefore fails to account for its holding.  In fact, the authority cited by Defendants for the proposition that a covenant not to sue may moot a plaintiff's claims arises out of patent law.  This is not a patent case.

*Second*, Defendants have not conceded that the subject agreement is an illegal contract and void as contrary to public policy.  This is significant for several reasons.  In arguing that Plaintiff's claims are moot because they are now willing to concede that the contract may either be rescinded or was never formed in the first place, Defendants are attempting to improperly force her to accept their chosen remedies.  Plaintiff has a right to pursue her preferred remedy - a declaration that the agreement is illegal - and decide which remedy she will ultimately accept at the time of judgment.  Moreover, a determination that the agreement is *illegal* is of paramount significance because it means

that Plaintiff will not be required to return the $130,000 payment she received.  See Fong v. Miller, 105 Cal. App. 2d 411, 413–14 (1951).

*Third*, EC's argument that Plaintiff has requested rescission as a remedy is meritless.  Plaintiff does not request rescission in her complaint and EC cannot rescind an illegal contract and then demand the $130,000 be returned to him.  Indeed, EC explicitly reserves the right to seek to recover the $130,000.  This alone establishes that Plaintiff's claims are not moot as Plaintiff has a concrete interest in the outcome of the action and that the Court can award meaningful relief.  Campbell, 136 S. Ct. at 669.

*Fourth*, the statements and conduct of Mr. Trump and his surrogates over the past eight months demonstrate why declaratory relief is in fact necessary.  In fact, even after Mr. Trump's attorneys took the position Plaintiff's claims were moot by virtue of the covenant not to sue, Mr. Trump again threatened Plaintiff with further legal action.  The Court cannot credit a covenant not to sue *by Mr. Trump's counsel*[1] when Mr. Trump himself continues to threaten Ms. Clifford with litigation.

*Finally*, regardless of whether the declaratory relief portion of this action is moot, the Court still has jurisdiction to award attorneys' fees.  Thus, regardless of the outcome of the presently pending motions, Plaintiff is entitled to seek to recover her attorneys' fees and costs, and the Court has jurisdiction to consider that request.

## II.   FACTUAL BACKGROUND

### A.   The Settlement and Non-Disclosure Agreement.

This case centers primarily on a settlement and non-disclosure agreement which violated federal campaign finance laws through the payment of hush money to Plaintiff to cover up an extramarital affair from American voters in order to influence the 2016 election for President of the United States.  The agreement at issue is entitled "Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement" (hereafter, the "Settlement Agreement" or

---

[1] The lack of a covenant not to sue signed by Mr. Trump is yet another reason why the motion must fail.

"Agreement").   [Declaration of Michael Avenatti ("Avenatti"), Ex. A (hereafter, the "Agreement").]   The Agreement is stated as being made "by and between '**EC, LLC**' and/or **DAVID DENNISON**, (DD), on the one part, and **PEGGY PETERSON**, (PP), on the other part."  [Id. at ¶1.1.]  DD is presumed to refer to Mr. Trump.

As the language of the Agreement makes clear, only "DD" (i.e., Mr. Trump) has the ability to enforce various substantive provisions of the Agreement, such as recovery of damages and compelling arbitration.   [See Agreement, ¶¶5.1-5.1.]   In addition, the Agreement imposes several obligations on Mr. Trump, such as providing Plaintiff a release for certain claims and providing certain representations and warranties. [Agreement, ¶¶2.2, 2.5, 2.6, 4.3, 6.1.]  Further, all duties Plaintiff was contemplated to owe under the Agreement extended only from Plaintiff to Mr. Trump.  [Agreement, ¶¶3.1, 3.2, 3.3, 4.3.2, 4.3.6.]

The Settlement Agreement contains an attorneys' fees clause that is directly applicable to this action.

> Attorneys' Fees in the case of a Dispute.  In the event of any dispute, action, proceeding or controversy regarding the *existence*, *validity*, *interpretation*, performance, enforcement, claimed breach or threatened breach of this Agreement, *the prevailing party in any resulting* arbitration proceeding and/or *court proceeding shall be entitled to recover as an element of such Party's costs of suit, and not as damages, all attorneys' fees, costs and expenses incurred or sustained by such prevailing Party in connection with such action, including, without limitation, legal fees and costs*.

[Agreement, ¶8.2 (emphasis added).]

**B.     The Arbitration and Plaintiff's Lawsuit.**

Beginning in February of 2018, Michael Cohen and Mr. Trump, along with their attorneys and surrogates, instituted a coordinated campaign to intimidate and bully Ms. Clifford into silence.  Mr. Cohen, joined by Mr. Trump's in-house lawyer from the Trump Organization (Jill Martin), filed an arbitration action in California claiming Ms. Clifford violated the Settlement Agreement and would be liable to pay damages.  [Avenatti, Ex. B.]

On February 27, 2018, Mr. Cohen, through his company EC, convinced a retired judge and arbitrator to issue a broad and sweeping restraining order directed to Ms. Clifford.   [Avenatti, Ex. C.]   Shortly thereafter, Mr. Trump's White House quickly claimed victory, boasting that the arbitration had already been won.  [Id., Ex. D.]

On March 6, Plaintiff filed this action in California state court.  [Dkt 1 at Ex. 1.] On March 16, EC filed a Notice of Removal to remove this action to this Court in which Mr. Trump joined. [Dkts 1, 5.]  On March 26, Plaintiff filed a First Amended Complaint (the "FAC").  [Dkt 14.]  Plaintiff sought several forms of relief, including, among other things, a judgment declaring that (1) the Settlement Agreement was never formed; (2) the Settlement Agreement is void *ab initio* because it is illegal on the ground that it was entered with the illegal aim, design, and purpose of circumventing federal campaign finance law; and (3) the Settlement Agreement is void because it violates public policy by suppressing speech on a matter of public concern about a candidate for President of the United States, mere weeks before the election. [Dkt 14, ¶¶41, 44-54.]

### C.   Both Mr. Trump and EC Have Actively Pursued Enforcement of the Settlement Agreement and Vigorously Contested this Lawsuit.

As noted above, EC filed a Notice of Removal in this action on March 16.  [Dkt 1.] Importantly, **Mr. Trump joined the Notice of Removal**.  [Dkt 5.]  By doing so, he joined with the following statement:   "EC and/or **Defendant Trump** have the right to seek liquidated damages against Clifford for her numerous breaches in an amount to be proven with certainty at the Pending Arbitration Proceeding, but which is approximated to already be in excess of twenty million dollars ($20,000,000)."  [Dkt 1 at 5:12-16.]

In his joinder, Mr. Trump also stated:  "Defendant Donald J. Trump hereby joins in defendant Essential Consultants, LLC's ('EC') Notice of Removal to this Court of the state court action described in said Notice of Removal. . . . **Mr. Trump intends to pursue his rights to the fullest extent permitted by law."** [Dkt 5 at 2:13.] (emphasis added).

Indeed, both Mr. Trump and EC were so confident that the Settlement Agreement was formed, was valid, and was enforceable, that they elected to jointly prosecute a

motion to compel arbitration in this Court—a motion EC filed and in which Mr. Trump joined.  [Dkts 20, 21.]  On March 21, in the meet and confer discussion regarding the motion to compel arbitration, Plaintiff's counsel asked Mr. Trump's counsel, Charles Harder, whether Mr. Trump was a party to the Settlement Agreement.  [Avenatti, ¶6.]  Mr. Harder did not answer the question.  [Id.]  Plaintiff's counsel asked the same question in e-mails between March 21 and March 30.  [Id., ¶6, Exs. E, F and G.]  Mr. Harder again provided no response.  [Id.]

Mr. Harder and his client's answer confirming their position that Mr. Trump was absolutely entitled to enforce the Settlement Agreement ultimately came on April 2 when Mr. Trump formally joined in EC's motion to compel arbitration.  [Dkt 21.]  In the pleading, Mr. Trump advised the Court as follows:  "Defendant **Donald J. Trump hereby joins** in [EC's] Motion to Compel Arbitration **and consents to arbitration of the claims against him and EC in this matter**."  [Dkt 21 at 1:1-3 (emphasis added).]  Confirming the motion to compel arbitration was being prosecuted by both Mr. Trump and EC, in a later joint filing, Mr. Trump and EC described the motion as "*their* pending Motion to Compel Arbitration."  [Dkt 57 at 13:21 (emphasis added).]

In fact, as recently as August 27, both Mr. Trump and EC stated the following in a joint filing to the Court:  "As detailed more fully in EC's currently-pending Motion to Compel Arbitration . . . , **in which Mr. Trump has joined, the Settlement Agreement constitutes a valid agreement to arbitrate**."  [Dkt 75 at 4:21-22.]

As further evidence Mr. Trump was pursuing rights under the Settlement Agreement, Mr. Trump also asserted:  "Plaintiff's defamation claim against Mr. Trump falls squarely within the arbitration provision at issue in this case[.]"  [Dkt No. 57 at 4:6-7.]

### D.   Mr. Trump's Aggressive Public Stance Against Plaintiff Affirmed His Pursuit of Remedies Under the Agreement.

Augmenting their legal filings, to the American public, both Mr. Trump and Mr. Cohen waged a forceful public relations campaign to discredit and bully Ms. Clifford.  On

May 3, Mr. Trump tweeted to his 50-million plus followers that the Settlement Agreement "is in full force and effect" and "will be used in Arbitration for damages against Ms. Clifford (Daniels)."  [Avenatti, Ex. H.]  He called Ms. Clifford's allegations against him "false and extortionist."  [Id.]

His lawyer Rudy Giuliani lodged deplorable and sexist insults directed to Ms. Clifford, stating:  "I'm sorry I don't respect a porn star the way I respect a career woman or a woman of substance or a woman who has great respect for herself as a woman and as a person and isn't going to sell her body for sexual exploitation," adding that "the business you're in entitles you to no degree of giving your credibility any weight. . . . I mean, she has no reputation. If you're going to sell your body for money, you just don't have a reputation."  [Avenatti, Ex. I.]

Mr. Cohen promised that he would "take an extended vacation on [Ms. Clifford's dime" with the money he would collect from her in enforcing the Settlement Agreement. [Avenatti, Ex. J.]  He then had his surrogate David Schwartz appear multiple times on television to claim the agreement was valid and that Plaintiff would be paying millions of dollars in damages.  [Id., Exs. K and L.]

This intimidation campaign was accompanied by serial misrepresentations to the press and the public.  Mr. Cohen began by lying to the American public that he did the deal on his own and paid the $130,000 out of his own pocket.  [Avenatti Decl., Ex. M.]

On April 5, Mr. Trump, on Air Force One, stated unequivocally that he knew nothing about the Agreement or the payment.  [Avenatti, Ex. N.] *This was also a lie*.  Mr. Trump was later contradicted by his own lawyer, Mr. Giuliani, who revealed to Sean Hannity and *Fox & Friends* in early May that Mr. Trump reimbursed the $130,000. [Avenatti, Exs. O and P.]  Mr. Trump on May 16 also admitted he reimbursed Mr. Cohen in a disclosure to the United States Office of Government Ethics.  [Id., Ex. Q.]

### E.   Mr. Cohen's Admission to Campaign Finance Crimes Proves Mr. Trump and His Lawyer Rudy Giuliani Have Been Lying.

Mr. Trump's lawyer Rudy Giuliani repeatedly claimed that no campaign money

was involved in any payment made to Plaintiff, there were no campaign violations, and that the Agreement and $130,000 payment had nothing to do with them.  [Avenatti, Exs. O and P.]

However, those representations have now been shown to be false by Mr. Cohen's guilty plea by which he directly implicates Mr. Trump in the crime.  On August 21, 2018, Mr. Cohen pled guilty to various federal crimes, including campaign finance law violations.  [Avenatti, Ex. R (Plea Agreement) at 1-2; Ex. S (USA v. Cohen, No. 1:18-cr-00602-WHP (S.D.N.Y), Information) at 14-16, 19.]  According to Mr. Cohen, he was not acting alone; Mr. Trump was also involved.  [Id., Ex. T at 23:15-25.]  Specifically, at the plea hearing, Mr. Cohen admitted, under oath, that:

> [O]n or about October of 2016, in coordination with, and at the direction of, [a candidate for federal office (referring to Mr. Trump)], I arranged to make a payment to a second individual with information that would be harmful to the candidate and to the campaign to keep the individual from disclosing the information.  To accomplish this, I used a company that was under my control to make a payment in the sum of $130,000.  The monies I advanced through my company were later repaid to me by the candidate.  I participated in this conduct, which on my part took place in Manhattan, for the principal purpose of influencing the election.

[Avenatti, Ex. T at 23:15-25 (emphasis added).]

## III.   LEGAL STANDARD

In declaratory relief actions, for the purposes of Article III, there is subject matter jurisdiction so long as "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  Defendants bear a "heavy burden" of persuading the Court of the mootness of the controversy.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).  While it is possible, as Defendants contend, for intervening circumstances to moot an action, a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016).  "As long

as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." Id. (emphasis added). "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Friends of the Earth, 528 U.S. 167, 189 (2000). In such cases, a case will only become moot if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id.; see also Logan v. U.S. Bank Nat. Ass'n, 722 F.3d 1163, 1166 (9th Cir. 2013).

## IV.   ARGUMENT

### A.   Defendants' Rejected Settlement Offers Do Not Moot Plaintiff's Claims.

Defendants' communications are not a serious concession of responsibility and liability, but instead must be viewed as mere settlement offers. Accordingly, they fail to moot this case. Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 672 (2016). In Campbell, the defendant attempted to moot the plaintiff's case by extending a Rule 68 offer of judgment offering to pay all of his damages. Like Defendants here, the defendant also sought to avoid having to make an admission of guilt and "proposed a stipulated injunction in which it agreed to be barred from sending text messages in violation of the TCPA." Id. at 668. "The proposed injunction, however, denied liability and the allegations made in the complaint, and disclaimed the existence of grounds for the imposition of an injunction." Id. The plaintiff rejected the offer and, similar to Defendants here, the defendant argued the case should be dismissed as moot because it offered the plaintiff all he was entitled to recover in the case.

The Supreme Court rejected this argument. It held that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." Id. at 672. The Court explained that "[u]nder basic principles of contract law, [the defendant's] settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy." Id. at 670-71. "Absent [the plaintiff's] acceptance, [the defendant's] settlement offer remained only a proposal, binding neither [the defendant] nor [the plaintiff]." Id.

The authority Defendants cite predates Campbell and calls into question its

continuing validity.  Defendants' failure to distinguish this precedent after already being on notice that Plaintiff would rely on it [Dkt. 81 at 4] only further demonstrates its holding applies here.  See BCL-Equip. Leasing LLC v. Tom Spensley Trucking, Inc., No. 16-CV-007-JDP, 2016 WL 1064660, at *2 (W.D. Wis. Mar. 17, 2016) (that "Defendants do not bother to distinguish [Campbell] in their reply (after [Plaintiff] brought it to their attention in its opposition)" was further evidence the case was applicable).

Following Campbell, numerous courts have found that attempts by defendants to do more than making an offer by actually attempting to give plaintiffs all of the relief requested will not moot a case if the plaintiff rejects the offer.  See, e.g., Family Med. Pharmacy, LLC v. Perfumania Holdings, Inc., No. CV 15-0563-WS-C, 2016 WL 3676601, at *4 (S.D. Ala. July 5, 2016) (sending cashier's check that would fully compensate plaintiff would not moot case); Ung v. Universal Acceptance Corp., 190 F. Supp. 3d 855, 860 (D. Minn. 2016) (claims not mooted by fully compensating plaintiff with a check failed because "there is no principled difference between a plaintiff rejecting a tender of payment and an offer of payment"); Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil Inc., No. 14 C 2032, 2016 WL 5720381, at *4 (N.D. Ill. Sept. 30, 2016) (depositing sufficient funds to satisfy claims would not moot case).  This is true even when the defendant voluntarily performs or assents to the injunction requested.  See Edwards v. Oportun, Inc., 193 F. Supp. 3d 1096, 1099 (N.D. Cal. 2016) (although defendant voluntarily followed requested injunction and unconditionally tendered payment, "absent this Court ordering the requested injunctive relief and entering judgment on Plaintiff's individual claims, they are not moot"); Bais Yaakov of Spring Valley v. Graduation Source, LLC, 167 F. Supp. 3d 582, 584 (S.D.N.Y. 2016) ("[D]epositing the full amount of statutory damages into the Court's Finance Unit and assenting to the injunctive relief requested by Plaintiff in its Complaint" not sufficient).

Significantly, although Campbell involved a putative class action, its holding is not limited to class actions and a significant number of courts have applied the Supreme Court's holding outside that context.  See Cortes v. Mako Sec., Inc., 253 F. Supp. 3d 511,

513 (E.D.N.Y. 2017) (rejecting mootness argument even though defendant had offered plaintiff more than he was entitled to for his claim); <u>BCL-Equip. Leasing LLC</u> 2016 WL 1064660, at *2 (rejecting argument that offer of judgment could moot a breach of lease action); <u>Harry & Jeanette Weinberg Found., Inc. v. St. Marks Ave.</u>, LLC, No. CV GLR-15-3525, 2016 WL 2865363, at *3 (D. Md. May 16, 2016) (unaccepted settlement offer could not moot Lanham Act claim); <u>Evey v. Creative Door & Millwork, LLC</u>, No. 215CV441FTM29MRM, 2016 WL 1321597, at *6 (M.D. Fla. Apr. 5, 2016) ("Even if defendants' offer satisfied all of plaintiff's demands, plaintiff rejected the offer and thus, his claims still give rise to a live case or controversy"); <u>Martelack v. Toys R US</u>, No. CV 13-7098 (RBK/KMW), 2016 WL 762656, at *3 (D.N.J. Feb. 25, 2016) (rejected offer to pay and reinstate plaintiff could not moot employment claims).

Because Defendants cannot moot Plaintiff's claims under <u>Campbell</u> through settlement offers Plaintiff has rejected, their motions must be denied.

### B.   The Authority Relied Upon By Defendants Pertains to Patent Cases.

The use of a covenant not to sue in the manner Defendants attempt to use it in this action finds its source in patent litigation.  <u>See MedImmune, Inc. v. Genentech, Inc.</u>, 535 F. Supp. 2d 1000, 1008 (C.D. Cal. 2008) ("A covenant not to sue is intended precisely to moot the issue of infringement and limit the scope of an invalidity counterclaim.").  This is made clear by the authority cited by Defendants.  As this Court noted in <u>U.S. Rubber</u>, the "Federal Circuit has long held that 'a patentee defending against an action for a declaratory judgment of invalidity [and unenforceability] can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present or future acts.'"  <u>U.S. Rubber Recycling v. Encore Int'l</u>, No. CV 09-09516 SJO OPX, 2011 WL 311014, at *3 (C.D. Cal. Jan. 7, 2011) (brackets in original).  Not surprisingly, in addition to <u>U.S. Rubber</u>, the decisions cited by Defendants from this Court also involve patent claims.  <u>See Spicy Beer Mix v. New Castle Beverage</u>, No. CV 14-00720 SJO JEMX, 2014 WL 7672167, at *4-7 (C.D. Cal. Aug. 1, 2014); <u>Gen. Motors Corp. v. Univ. of Rome "La Sapienza,"</u> No.

**PLAINTIFF'S COMBINED OPPOSITION TO MOTIONS TO DISMISS RE: SUBJECT MATTER JURISDICTION**

CV0707537SJOPJWX, 2008 WL 11334169, at *2 (C.D. Cal. July 10, 2008).

But this is not a patent case.  And this distinction further underscores the applicability of the Supreme Court's more recent decision in <u>Campbell</u> over those cases Defendants cite.

Further, even in the context of patent law, if the underlying claims here are determined to be moot (which they should not), the Court retains jurisdiction to decide the issue of attorneys' fees.  <u>See</u> <u>Monsanto Co. v. Bayer Bioscience N.V.</u>, 514 F.3d 1229, 1242 (Fed. Cir. 2008) ("[U]nder our precedent the district court retained independent jurisdiction over Monsanto's request for attorney fees[.]"); <u>Revolution Eyewear v. Aspex Eyewear</u>, No. CV035965PSGMANX, 2009 WL 10700315, at *8 (C.D. Cal. Sept. 18, 2009) ("Thus, although the instant covenant not to sue deprives the Court of jurisdiction … the covenant does not deprive the Court of jurisdiction to consider Aspex's request for attorney's fees[.]").  Indeed, this Court so held in <u>U.S. Rubber</u>, retaining jurisdiction over the claim for attorneys' fees and declaratory relief insofar as it addressed allegations of inequitable conduct supporting the request for attorneys' fees.  2011 WL 311014, at *8.

California law, like federal patent law, provides a statutory basis for the recovery of attorneys' fees.  <u>See</u> Cal. Civ. Code § 1717(a) ("In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.").  Accordingly, as argued elsewhere herein (<u>see</u> section IV(F), <u>infra</u>), even if the Court determines the declaratory relief claim to be moot, the Court retains jurisdiction to consider the issue of an entitlement to attorneys' fees.

**C.      The Case Is Not Moot Because Defendants Have Not Conceded That the Settlement Agreement is Illegal or Void as Contrary to Public Policy.**

**1.      Plaintiff Must Be Permitted to Choose Among Her Remedies.**

A party is required to elect between remedies before judgment because "only if the

plaintiffs' actions cause substantial prejudice to the defendant are the plaintiffs required to make a binding election of remedies prior to judgment." Sharpe v. F.D.I.C., 126 F.3d 1147, 1153 (9th Cir. 1997). In Sharpe, the Court concluded that where the plaintiffs sought "declaratory relief as well as, alternatively, rescission or damages," the defendant could not force plaintiffs into accepting a particular remedy through its conduct. Id.

Here, Plaintiff requests alternative relief by demanding "a judgment declaring that no agreement was formed between the parties, or in the alternative, to the extent an agreement was formed, it is void, invalid, or otherwise unenforceable." [FAC at 17.] These alternative forms of relief include a judgment declaring the Agreement void on the ground that it was entered with the illegal aim, design, and purpose of circumventing federal campaign finance law. [See, e.g., FAC, ¶¶44-51.] Defendants' covenants not to sue, however, do not concede this or any of the other admissions sought in the FAC. [See section II(B), supra.] Plaintiff, therefore, will not obtain all of the relief she has requested. Defendants propose they be permitted to choose among the remedies Plaintiff has available to her. However, Defendants cite no authority permitting them to do so, and Plaintiff is unaware of any. If Defendants' position were law, then the lawsuits of plaintiffs in all cases where alternative remedies have been pled would be mooted by simply picking off the alternative most desirable to the defendant (e.g., agreeing to specific performance for the breach of a contract instead of damages). This would be contrary to modern rules permitting alternative pleading. See Fed. R. Civ. P. 8(a)(3), (d).

### 2. A Determination of Illegality Is Necessary Because EC Continues to Seek Recovery of the Payment Made to Ms. Clifford.

EC explicitly reserves the right to seek to recover the $130,000 paid under the Settlement Agreement. This alone establishes that Plaintiff's claims are not moot as Plaintiff has a concrete interest in the outcome of the action and the Court can award meaningful relief. Campbell, 136 S. Ct. at 669.

When a contract is found to be illegal, no party can "recover the monies paid pursuant to the terms of the contract. It is a well settled general rule that a party to an

illegal contract may not obtain the aid of the courts . . . to recover any consideration parted with pursuant thereto; the law leaves the parties where it finds them." <u>Richardson v. Roberts</u>, 210 Cal. App. 2d 603, 606–07 (1962).  "[A] party to an illegal contract can neither recover damages for breach nor by rescinding recover the performance that he has rendered or its value."  <u>Fong v. Miller</u>, 105 Cal. App. 2d 411, 413–14 (1951).  "[T]he guilty party to an illegal contract cannot bring an action to enforce the contract or to recover on principles of quasi contract the benefits he has conferred under it." <u>Bennett v. Hayes</u>, 53 Cal. App. 3d 700, 704 (1975) (citation omitted).

Here, Plaintiff has alleged that the Settlement Agreement is illegal or void as contrary to public policy for a variety of reasons.  [<u>See</u> FAC, ¶¶32-33, 44-55, 59-61.] This conclusion is bolstered by Mr. Cohen's admission to federal campaign finance crimes in which he acted "in coordination with, and at the direction of," Mr. Trump.  Thus, if the Settlement Agreement is determined to be illegal or otherwise void for any of the reasons alleged in the FAC, Plaintiff would not be required to return the $130,000 to EC.  <u>Fong</u>, 105 Cal. App. 2d at 413–14.  In spite of this, EC has explicitly "demand[ed] that the full consideration paid to Plaintiff, $130,000.00, be returned to Essential Consultants" in the same letter containing its purported covenant not to sue.  [Dkt. No. 79 at Ex. A.]  Further, the covenant not to sue provided by EC "*reserve[s] the right to seek reimbursement for the $130,000* in consideration paid to Stephanie Clifford in connection therewith."  [<u>Id.</u> at Ex. A at 2 (emphasis added).]  Accordingly, the covenants not to sue notwithstanding, Plaintiff is still at risk of being sued if she does not return the $130,000.  A declaratory judgment that the Settlement Agreement is illegal and that Plaintiff is not required to return the $130,000 is necessary and establishes that the claims at issue are not moot.  <u>See</u> <u>Campbell</u>, 136 S. Ct. at 669 ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.").

### D.    Plaintiff Does Not Request Rescission of the Settlement Agreement.

Presumably in support of its intended effort to recover the $130,000 payment, EC argues Plaintiff is seeking rescission of the Settlement Agreement.  [Dkt. No. 88 at 7-8.]

This is not true.  The FAC does not include a demand for the specific remedy of rescission, ***nor is rescission mentioned anywhere in the FAC***.

Further, courts will not normally *rescind* illegal contracts.  "[A] party to an illegal contract can neither recover damages for breach nor by rescinding recover the performance that he has rendered or its value."  <u>Fong</u>, 105 Cal. App. 2d at 413–14.  One exception to this rule is that a party that is intended to be protected by the statute making the contract illegal may be able to rescind the contract.  <u>See</u> <u>Barry v. OC Residential Properties, LLC</u>, 194 Cal. App. 4th 861, 870 (2011).  Here, however, EC and Mr. Cohen are the perpetrators of the illegal acts, not the victims.  As detailed above, the FAC requests that the Court determine that the Settlement Agreement is illegal on numerous grounds, all of which implicate EC, Mr. Trump, and Mr. Cohen as the parties engaged in the wrongful and illegal conduct.  Accordingly, EC and Mr. Cohen cannot seek refuge in this rule and are not innocent victims entitled to obtain the return of this money through rescission.  This is consistent with the statute EC cites.  <u>See</u> Cal. Civ. Code § 1689(b)(5) (permitting rescission "[i]f the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault").

Further, even if the Court found that the remedy of rescission applies, the Court maintains discretion under Civil Code section 1692 to balance the equities in relation to whether consideration has to be returned in light of, among other factors, the fact that Mr. Trump *has already received the benefit* of the Settlement Agreement by preventing Plaintiff from speaking prior to the 2016 election and thereby ensuring victory.  Cal. Civ. Code § 1692 ("If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require *and may otherwise in its judgment adjust the equities between the parties.*") (emphasis added).  Therefore, even if the Agreement is rescinded, declaratory relief is still needed to determine whether Plaintiff must return the $130,000 to EC and a case or controversy continues to exist.  <u>Campbell</u>, 136 S. Ct. at 669.

### E.     Mr. Trump's Ongoing Threats of Litigation Establish the Continued Existence of a Case or Controversy.

In spite of his request to dismiss this action and contention that Plaintiff's claims are moot by virtue of his purported covenant not to sue, Mr. Trump continues to threaten Plaintiff with litigation.   Accordingly, it is apparent that Plaintiff maintains a concrete interest in the outcome of this action.

"The law is not, as [Defendants suggest], that a covenant not to sue automatically moots a plaintiff's claims."   Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd., No. 13-CV-05038 NC, 2015 WL 7874323, at *4 (N.D. Cal. Dec. 3, 2015).   On the contrary, "a factual inquiry is required, and the Court should consider the entirety of the circumstances in evaluating whether a controversy remains."   Id.   Even a "direct and unequivocal statement that '[Defendant] has absolutely no plan whatsoever to sue [Plaintiff]'" will not necessarily render declaratory relief moot.   SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1382 (Fed. Cir. 2007).   A "statement that [a defendant] does not intend to sue does not moot the actual controversy created by its acts," especially when the defendant is simply using the covenant not to sue as a tactic to avoid having a declaratory judgment entered against it.   Id. at 1383.

Here, Mr. Trump and his surrogates have repeatedly threatened Plaintiff with damages and stated they considered Plaintiff to be bound to the terms of the Settlement Agreement and its liquidated damages provisions.   In such circumstances, declaratory relief is necessary even if Mr. Trump's counsel now attempts to claim otherwise.   In this context, the covenant is simply not credible.   For example, on October 16, *after Mr. Trump and EC purportedly covenanted not to sue Plaintiff*, Mr. Trump tweeted:

> Federal Judge throws out Stormy Danials [sic] lawsuit versus Trump. Trump is entitled to full legal fees." @FoxNews Great, now I can go after Horseface and her 3rd rate lawyer in the Great State of Texas. She will confirm the letter she signed! She knows nothing about me, a total con!

[Avenatti, Ex. U.]   Thus, it is apparent that Mr. Trump intends to sue Ms. Clifford notwithstanding the purported covenant not to sue. And his demand that Ms. Clifford "confirm the letter she signed" appears to be a threat to either enforce the Settlement

Agreement directly or indirectly.  Mr. Trump's pronouncement that "[s]he will confirm the letter" appears to be a threat to "enforce the contract."  Alternatively, if Trump is intending to say that he will force Ms. Clifford to deny she had a relationship with him, the Settlement Agreement is the only conceivable instrument Mr. Trump may intend to use to do so.  In light of Mr. Trump's continued course of conduct, a statement by Mr. Trump's counsel promising that he will not sue Plaintiff is inadequate to moot Plaintiff's claim for declaratory relief.

### F.    Plaintiff Is Entitled to Recover Her Attorneys' Fees.

Regardless of whether the Court permits the action to continue through discovery and trial, Plaintiff is obviously the prevailing party in this litigation.  As such, she must be awarded her attorneys' fees and costs pursuant to paragraph 8.2 of the Settlement Agreement, which provides that the prevailing party "shall be entitled to recover" all "attorneys' fees, costs and expenses incurred or sustained by such prevailing party" in the event of any "dispute, action, proceeding or controversy regarding the *existence, validity, interpretation,* performance, enforcement, claimed breach or threatened breach of this Agreement[.]"  [Agreement, ¶8.2 (emphasis added).]

Mr. Trump nevertheless insists, without citing any authority, that Plaintiff is not entitled to an award of attorneys' fees against him.  EC similarly argues that "[t]he rescission of the Settlement Agreement precludes Clifford from bringing a claim for attorney's fees against EC."[2]  [Dkt. No. 88 at 10.]  Defendants are incorrect.

Under California law "[i]t is now settled that a party is entitled to attorney fees

---

[2] EC notes that neither of Plaintiff's complaints expressly request attorneys' fees.  That is irrelevant.  In federal court, "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(1).  Under California substantive law, contractual attorneys' fees "shall be an element of the costs of suit," not damages.  Cal. Civ. Code § 1717(a).  Therefore, it is appropriate to consider Civil Code section 1717(a) attorneys' fees for the first time in a post-trial motion.  See Barrientos v. 1801-1825 Morton LLC, 583 F.3d 1197, 1217 (9th Cir. 2009).  A request for fees does not need to be included in the complaint.  See Riordan v. State Farm Mut. Auto. Ins. Co., 589 F.3d 999, 1005 (9th Cir. 2009).  In any event, Plaintiff specifically requested relief in the form of "costs of suit" and "for such other and further relief as the Court may deem just and proper."  [FAC at 17.]

under [California Civil Code] section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.'" Hsu v. Abbara, 9 Cal. 4th 863, 870 (1995) (quoting Bovard v. Am. Horse Enterprises, Inc., 201 Cal. App. 3d 832, 842 (1988)); Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc., 211 Cal. App. 4th 230, 238 (2012) (party that established no contract existed was the prevailing party and entitled to attorneys' fees under section 1717). This is because "[t]he primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." Douglas Barnhart, 211 Cal. App. 4th at 237. Therefore a party that obtains a determination that an arbitration agreement is unenforceable is entitled to fees pursuant to an attorneys' fees provision in the agreement to arbitrate. See MBNA Am. Bank, N.A. v. Gorman, 147 Cal. App. 4th Supp. 1, 8 (2006).

The outcome is the same for rescission. See Hastings v. Matlock, 171 Cal. App. 3d 826, 841 (1985) ("In an action to enforce the rescission of a written land sale agreement, containing a clause for attorney's fees which does not limit recovery of such fees to any particular form of action involving the contract, the prevailing party is entitled to an award of such fees."); Star Pac. Investments, Inc. v. Oro Hills Ranch, Inc., 121 Cal. App. 3d 447, 463 (1981) (award of fees appropriate in rescission context); Leaf v. Phil Rauch, Inc., 47 Cal. App. 3d 371, 378–79 (1975).

"This rule serves to effectuate the purpose underlying section 1717" because "[s]ection 1717 was enacted to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions." Hsu, 9 Cal. 4th at 870–71. "The statute would fall short of this goal of full mutuality of remedy if its benefits were denied to parties who defeat contract claims by proving that they were not parties to the alleged contract or that it was never formed." Id.

EC cites Golden Pisces, Inc. v. Fred Wahl Marine Const., Inc., 495 F.3d 1078, 1083 (9th Cir. 2007), in support of its argument that Plaintiff is unable to obtain attorneys' fees

for rescission.  Golden Pisces, however, is plainly inapplicable because it addresses admiralty law, not substantive state law.  In fact, it specifically cites Hsu as an example of a scenario where a party could obtain attorneys' fees pursuant to contract after it had established that no contract existed.  Id.  Rather, as the Ninth Circuit explained in distinguishing Hsu from the admiralty action before it, "[t]he state courts were simply construing the legislative intent behind the state reciprocity statutes at issue.  No similar maritime reciprocity statute exists."  Id. (citation omitted).  In this diversity case, on the other hand, Plaintiff's entitlement to attorneys' fees is decided under California law.  Carnes v. Zamani, 488 F.3d 1057, 1059 (9th Cir. 2007).

Mr. Trump contends "Plaintiff and Mr. Trump are in agreement that Mr. Trump did not sign the Settlement Agreement, has never taken the position that he is a party to the Settlement Agreement, and has never affirmatively sought to invoke any rights under the Settlement Agreement."[3]  [Dkt. No. 87 at 13.]  *As discussed above, this is simply not true*.  Mr. Trump has plainly attempted to enforce the arbitration clause of the Settlement Agreement and receive the benefits of the Agreement.  He has joined with EC in every motion and legal action taken in the case, including the motion to compel arbitration.  In court filings, he asserted he is entitled to seek damages from Plaintiff in excess of $20 million and that he "intends to pursue his rights to the fullest extent permitted by law." [Dkt No. 1 at 8;15-16; Dkt No. 5 at 2:13.]  He and his attorneys never disclaimed their interest in enforcing the Settlement Agreement or took the position that he was not a party (despite being asked and having ample opportunity to do so).  To the contrary, as recently as late August, Mr. Trump and EC both stated their position clearly—that "the Settlement

_____

[3] The basis for Mr. Trump's statement that the parties are in "agreement" was a statement made in a legal brief in initially opposing to Mr. Trump's request to transfer Plaintiff's defamation claim against Mr. Trump to this Court – *an opposition Plaintiff ultimately withdrew and stipulated to the transfer of that action to this Court*. [Avenatti, Ex. V.] Indeed, the statement itself was made only in the context of pointing out the patent disconnect between Mr. Trump's argument that California was an appropriate forum because of the existence of this litigation relating to the Settlement Agreement while at the same time pretending not to have anything to do with Plaintiff, the $130,000, or the Agreement—all of which has now been proven to be untrue by virtue of Michael Cohen's guilty plea and admission that he was acting in "coordination with, and at the direction of," Mr. Trump.

Agreement constitutes a valid agreement to arbitrate." [Dkt No. 75 at 4:22.] These assertions of Mr. Trump are entirely consistent with what he has stated publicly—namely, that the Settlement Agreement "is in full force and effect" and "will be used in Arbitration for damages against Ms. Clifford (Daniels)." [Avenatti, Ex. H.]

Moreover, naming Mr. Trump was essential to this suit—more essential than even EC— *because the entire Agreement was drafted in a manner that placed all rights of enforcement in the hands of Mr. Trump as "DD."* [Agreement, ¶¶5.1, 5.2.] Having pursued enforcement of the Settlement Agreement and vigorously contested Plaintiff's lawsuit attempting to invalidate the Agreement, Mr. Trump is now bound by the attorneys' fees clause within it. Real Prop. Servs. Corp. v. City of Pasadena, 25 Cal. App. 4th 375, 382 (1994) ("A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed.").

In fact, whether or not he was a "party" to the agreement is immaterial; California courts routinely enforce contractual attorneys' fees provisions against nonparties in numerous circumstances. See id. (third party beneficiary would have to pay fees); Exarhos v. Exarhos, 159 Cal. App. 4th 898, 908 (2008) (party that had claimed it was successor in interest would be required to pay attorneys' fees); Erickson v. R.E.M. Concepts, Inc., 126 Cal. App. 4th 1073, 1087 (2005) (assignee would have to pay attorneys' fees). In short, Mr. Trump cannot now attempt to insulate himself from paying fees just because, facing certain defeat in court, he has now abandoned his attempt to compel arbitration and silence Plaintiff.

### G. Even if Plaintiff's Claims Are Moot, She Is Entitled To Recover Her Attorneys' Fees.

Regardless of whether Plaintiff's substantive claims are mooted, she is still entitled to seek attorneys' fees. "No Article III case or controversy is needed with regard to attorneys' fees as such, because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot. Its jurisdiction

outlasts the 'case or controversy.'" <u>Zucker v. Occidental Petroleum Corp.</u>, 192 F.3d 1323, 1329 (9th Cir. 1999); <u>see also</u> <u>San Lazaro Ass'n, Inc. v. Connell</u>, 286 F.3d 1088, 1096 (9th Cir. 2002) ("Although San Lazaro's substantive claims are moot, its entitlement to attorney's fees is not."); <u>Cammermeyer v. Perry</u>, 97 F.3d 1235, 1238 (9th Cir. 1996).  The cases cited by Defendants do not hold otherwise.  <u>See</u>, <u>e.g.</u>, <u>Clear Channel Outdoor, Inc. v. Lee</u>, No. C 08-2955 PJH, 2009 WL 57110, at *2 (N.D. Cal. Jan. 8, 2009) (no attorneys' fees where amount in controversy requirement not met); <u>True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.</u>, 402 F. Supp. 2d 1093, 1101 (D. Ariz. 2005) (plaintiff would not be found prevailing party if the court did consider awarding fees).

By its terms, the attorneys' fees provision is plainly applicable and provides for the recovery of attorneys' fees in any dispute over the "existence" or "validity" of the Settlement Agreement.  [Dkt. No. 14 Ex. 1 at ¶ 8.2]  "[A] party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." <u>Hsu</u>, 9 Cal. 4th at 877.

Thus, irrespective of whether the declaratory relief claim may now be considered moot, Plaintiff has prevailed in her action to determine the existence or validity of the Settlement Agreement.  <u>See</u> <u>de la Cuesta v. Benham</u>, 193 Cal. App. 4th 1287, 1296 n. 6 (2011) (plaintiff is still prevailing party if defendant's actions moot claim).  Accordingly, Plaintiff is still entitled to seek to recover her attorneys' fees and the Court should not prejudge or foreclose any such request.

**H.    Any Dismissal Must Be Without Prejudice.**

Finally, contrary to the demands of Defendants, should the Court dismiss Plaintiff's claims as moot, that dismissal must be made "without prejudice to refiling." <u>Del Monte Int'l GMBH v. Del Monte Foods, Inc.</u>, 658 F. App'x 846, 849 (9th Cir. 2016); <u>Segal v. Am. Tel. & Tel. Co.</u>, 606 F.2d 842, 844 (9th Cir. 1979).

**V.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction.

1

Dated:  October 26, 2018                AVENATTI & ASSOCIATES, APC

2

                                        By:      /s/ Michael J. Avenatti
3                                           Michael J. Avenatti
                                            Ahmed Ibrahim
4                                           Attorneys for Plaintiff Stephanie Clifford

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S COMBINED OPPOSITION TO MOTIONS TO DISMISS RE: SUBJECT MATTER JURISDICTION**