Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jessica C. Covington (SBN 301816)
jcovington@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Defendants*
*Essential Consultants, LLC and Michael Cohen*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, MICHAEL COHEN, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-CV-02217-SJO-FFM<br><br>**REPLY BRIEF RE PLAINTIFF'S "RESPONSE" TO ESSENTIAL CONSULTANTS LLC'S MOTION TO STRIKE OR, ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT**<br><br>Assigned to the Hon. S. James Otero<br>Action Filed: March 6, 2018<br><br>Date:        December 3, 2018<br>Time:        10:00 a.m.<br>Location:  350 West 1st Street<br>               Courtroom 10C, 10th Floor<br>               Los Angeles, CA 90012 |

## A. Plaintiff Has Conceded the Merits of Mr. Cohen's Motion

On October 15, 2018 this Court, in *Clifford v. Trump*, case No. 18-06893, granted Donald Trump's Special Motion to Strike pursuant to Texas' anti-SLAPP statute. (Blakely Decl. Ex. A) Seeing the proverbial "writing on the wall," Plaintiff has not even endeavored to oppose Mr. Cohen's anti-SLAPP motion on the merits, but instead only argues that New York law rather than California law, applies. Thus, Plaintiff has conceded that: a) her claim arose from acts "in the furtherance of Mr. Cohen's right of petition or free speech, and b) she cannot prevail on her defamation claim. *Reyes v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 198129 *8 (CD Cal. Aug. 7, 2017); Local Rule 7-12; *Ghazali v. Moran*, 46 Fed. 3d 52, 53 (9th Cir. 1995)

## B. California's Anti-SLAPP Statute Governs

Plaintiff, a resident of Texas, initiated this instant lawsuit in the State of California, the undisputed forum in this action. (ECF No. 1) Plaintiff alleges that Mr. Cohen made a defamatory statement which was widely disseminated and repeated "throughout California and across the country"; and that venue in California is proper because many of the events giving rise to her lawsuit "arose in California, including within the County of Los Angeles." (ECF No. 14, pp. 2-17) Nonetheless, in a ruse to avoid the laws of the very forum she selected; Plaintiff now argues that the law of New York, not California, should apply.

In a diversity case, "federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). California applies a three-step "governmental interest" analysis to choice-of-law questions. *Id.* Here, California is the forum state and therefore the application of its laws is preferred. *Fleury v. Harper & Row*, 698 F. 2d 1022, 1025 (9th Cir. 1983) (Defamation is a transitory tort to which the law of the forum will normally be applied absent a strong governmental interest of another jurisdiction); *Hurtado v. Superior Court* (1974) 11 Cal. 3d 574, 581 (The court should be expected, as a matter of course, to apply the

1  rule of decision found in the law of the forum). Thus, under the government interest

2  analysis, California will apply its own law unless it is shown that there is a

3  compelling reason to displace forum law. *Kasel v. Remington Arms Co.* (1972) 24

4  Cal.App.3d 711. There is no compelling reason to displace the law of an interested

5  forum unless such a choice of law would impair the interest of a foreign jurisdiction.

6  *Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313. Only if both states have a

7  legitimate but conflicting interest in applying its own law will the court be

8  confronted with a "true conflict" case. *Downing* at 1005.

9      As California's Supreme Court instructed in *Hurtado*, "generally speaking the

10  forum will apply its own rule of decision unless a party litigant timely invokes the

11  law of a foreign state. In such event he must demonstrate that the latter rule of

12  decision will further the interest of the foreign state and therefore that it is an

13  appropriate one for the forum to apply to the case before it." *Hurtado* at 670;

14  *Downing* at 1006.  If only one state has an interest in the application of its laws, there

15  is no "true conflict," and the law of the interested state is applied.  *Hurtado* at 580.

16  "The California Supreme Court has made it clear that when California has an interest

17  in enforcing its law within its borders and a foreign state has no interest in having its

18  law applied, then the law of California should be applied." *Downing* at 1006.

19      "California has articulated the important, substantive state interests furthered

20  by the Anti-SLAPP statute." *United States ex rel. Newsham v. Lockheed Missiles &*

21  *Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).  In the text of the statute itself,

22  California has expressed a strong interest in enforcing its Anti-SLAPP law to

23  "encourage continued participation in matters of public significance" and to protect

24  against "a disturbing increase in lawsuits brought primarily to chill the valid

25  exercise" of constitutionally protected speech "through abuse of the judicial

26  process."  *See* Cal. Civ. Proc. Code § 425.16(a). To this end, courts are instructed to

27  "construe California's statute 'broadly.'" *Sarver v. Chartier*, 813 F.3d 891, 899 (9th

28  Cir. 2016).

"Through enacting the Anti-SLAPP statute … California has indicated a stronger interest than [New York] in adjudication of certain defamation and other claims, when they are brought against defendants who engage in Constitutionally-protected activity. The California legislature has identified this as an interest it seeks to advance, while the [New York] legislature has not. This suggests application of California law to these claims, specifically as to the issue of whether the claims may be struck if they are held to violate California's Anti-SLAPP statute." *Dawe v. Corrections USA*, 2009 U.S. Dist. LEXIS 45205 *25 (E.D. Cal. May 20, 2009).

In *Liberty Synergistics Inc. v. Microflo Ltd*., 718 F.3d 138 (2d Cir. 2013), the Second Circuit found California's Anti-SLAPP law would apply to other states' substantive causes of action.  The court noted that federal courts are required to apply the choice-of-law rules of the state in which the court sits, but since the case was originally filed in California and later transferred to the Eastern District of New York, the court in New York was required to act as if, for the purpose of determining the applicable state rules of decision, it was sitting in California. *Id*. at 153. The court then observed that it had "no reason to doubt that a California state court would apply California's anti-SLAPP rule as a matter of its own procedural rules, even if it applied New York substantive law to the merits of the malicious prosecution action." *Id*. at 154. It further noted that California's anti-SLAPP law was not limited to causes of action that arose under California law and consequently found the District Court erred by concluding California's anti-SLAPP law would not apply merely because New York substantive law governed the cause of action.  In so ruling, the Second Circuit focused on California's interest in preventing the abuse of its judicial system: "One of the purposes of the [California anti-SLAPP] statute is to ensure that California courts, and the state's judicial processes as a whole, are not used as a means of interfering with the valid exercise of the right of free speech or the right of petition." *Id*. at 155; s*ee also, United Tactical Sys., LLC v. Real Action Paintball, Inc*., 143 F. Supp. 3d 982, 1000 (N.D. Cal. 2015) (where court sits in California and

case filed in California, court should apply California anti-SLAPP law even where the cause of action is based on another state's substantive law).

Clifford's lawsuit attacking Mr. Cohen's right to free speech is exactly what the California Anti-SLAPP statute was designed to prevent—the abuse of California's judicial system to chill the valid exercise of Constitutionally protected speech. While California has a strong interest in ensuring the applicability of its Anti-SLAPP statute to claims such as this, New York has expressed no interest whatsoever in preventing its citizens who are sued in California from availing themselves of the protections afforded by § 425.16. *Liberty Synergistics* at 155. Consequently, there is no compelling reason to displace the law of California with that of New York. *Downing* at 1006.

For obvious reasons, Plaintiff's Opposition wrongly focuses on where Mr. Cohen is located and altogether ignores California's Legislatures intent, manifested in California's robust Anti-SLAPP statute, to prevent courts from being congested with meritless lawsuits attacking Constitutionally protected free speech. However, even if the Court goes down the path that Plaintiff urges, the outcome remains the same.  Like Texas, under California's governmental interest analysis the situs of the injury remains a relevant consideration. *Offshore Rental Co., Inc. v. Continental Oil Co.* (1978) 22 Cal. 3d 157, 168. While New York is the state where Mr. Cohen resides, the damage, if any, to Plaintiff's reputation would have occurred where Plaintiff works and/or resides, California and Texas respectively.  *See In re Yagman*, 796 F.2d 1165, 1171 (9th Cir. 1986).  Since 2000 Plaintiff has appeared in and/or directed approximately 200 films, most of them shot in the San Fernando Valley California (aka "Porn Valley") where the porn industry is located.  (Blakely Decl. Exs. C&D) Plaintiff has been under contract with Wicked Pictures, headquartered in Canoga Park, California, since 2002. (Blakely Decl. Exs E&H) She has performed in California as part of her "Make America Horny Again Tour."  (Blakely Decl. Exs. I-K) On May 23, 2018 the City of West Hollywood celebrated "Stormy Daniels Day"

REPLY BRIEF RE PLAINTIFF'S "RESPONSE" TO EC, LLC'S MOTION TO STRIKE

1  and awarded Plaintiff a key to the city. (Blakely Decl. Ex. F) In January 2019,

2  Plaintiff will be hosting the XBIZ awards, the biggest porn-industry show of the

3  year, in Los Angeles California. (Blakely Decl. Ex. G)

4         While Plaintiff may have performed throughout the Country during her career,

5  the State where she has unquestionably spent most of the time working is California.

6  As Plaintiff herself admitted in the pleadings, California is also the state, indeed the

7  only one she specifically named, where she was injured.  (ECF No. 14) In stark

8  contrast, Plaintiff, who has the burden, has failed to provide any evidence that she,

9  her claim, or her purported injury, is in any way connected to the State of New York.

10 Under these circumstances, New York has absolutely no interest in the reputation of

11 Plaintiff.[1]  *In Re Yagman* at 1171.   There is no "true conflict" of New York law with

12 California law; California law is applicable to Plaintiff's claim.  *Downing* at 1007.[2]

13  Dated: November 7, 2018              BLAKELY LAW GROUP

14

15                                      By:   */s/ Brent H. Blakely*
                                              Brent H. Blakely
16                                            **Attorneys for Defendants**
                                              **EC, LLC and Michael Cohen**

17

18  _____

19         [1] All the authority relied upon by Plaintiff is distinguishable.  For instance,

20  *Competitive Tech v. Fujitsu*, 286 F. Supp. 2d 1118 (N.D. Cal. 2003) involved Illinois
    choice of law rules and no injury in California.  Likewise, in *Mero v. USFSA*, 2006

21  LEXIS 4854 (E.D. Mich. 2006) the plaintiff was a Michigan resident and the forum

22  state, Michigan, had "an unquestionable interest" in the case.  In *Condit v. Dunne*, 317
    F. Supp. 2d 344 (S.D.N.Y. 2004), where New York was both the forum state and the

23  basis for the choice of law analysis, the Court held that California, where the plaintiff

24  was injured, had a greater interest than New York in a defamation case.

25         [2] The only state other than California that could conceivably have an interest in
    having its laws applied would be Texas, where the Plaintiff is domiciled.  *Calder v.*

26  *Jones*, 465 U.S. 783 (1984).  Like California, Texas has a robust anti-SLAPP statute,

27  the Texas Citizens Participation Act.  Tex. Civ. Prac. & Rem. Code § 27 et. al.  Thus,
    there is no conflict because the same outcome would be reached under the laws of

28  each of the states involved. *Hurtado* at 580.